Myron M. Cherry, California State Bar No. 50278
Jacie C. Zolna, Admitted *Pro Hac Vice*
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois  60602
Telephone: (312) 372-2100
Facsimile: (312) 853-0279
mcherry@cherry-law.com
jzolna@cherry-law.com

Michael L. Kirby, California State Bar No. 50895
Ethan T. Boyer, California State Bar No. 173959
KIRBY NOONAN LANCE & HOGE LLP
350 Tenth Avenue, Suite 1300
San Diego, California 92101
Telephone: (619) 231-8666
Facsimile: (619) 231-9593
MKirby@knlh.com
EBoyer@knlh.com

*Attorneys for Regent Group, Inc. d/b/a Encore Marketing International*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE:  EASYSAVER REWARDS LITIGATION** | **Case No. 3:09-cv-02094-MMA (BLM)** |
| | **DEFENDANT REGENT GROUP, INC.'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF** |
| | **The Honorable Michael M. Anello** |
| | **Courtroom: 5** |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Regent Group, Inc. d/b/a Encore Marketing International ("EMI") moves the Court to dismiss the Consolidated Class Action Complaint with prejudice. In support of this motion, EMI states as follows:

## I.     INTRODUCTION

EMI offers various savings and consumer benefit membership clubs to consumers, including the EasySaver Rewards program that is the subject of this litigation. Like other companies in its industry, EMI markets the EasySaver Rewards program to consumers who make purchases on a partner website, in this case ProFlowers.com. After a consumer completes his or her purchase on ProFlowers.com, a separate window appears (the "Enrollment Screen") offering the consumer an opportunity to enroll in the EasySaver Rewards program. The Enrollment Screen prominently describes the advertised programs' terms, including the $1.95 activation fee, the $14.95 monthly charge and that by signing up the consumer's credit card information will be transmitted to EMI from their most recent ProFlowers order for purposes of billing. These terms are not buried in fine print or in an "obscure" location, but rather are clearly and prominently displayed under the bold capitalized heading "**OFFER DETAILS**" to the immediate left of the location on the webpage where the consumer accepts the offer. Both the $1.95 activation fee and the $14.95 monthly charge are prominently exhibited in bold.[1]

---

[1] A copy of the Enrollment Screen at issue is being submitted to the Court for its review. Under the "incorporation by reference" doctrine, the Court should consider this webpage in ruling on EMI's motion to dismiss because it is referenced in and quoted from throughout Plaintiffs' Complaint and forms the basis for their claims. *See Gamboa v. Trustee Corps*, 2009 WL 656285, *3 (N.D. Cal. 2009) ("[E]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material.").

Plaintiffs nonetheless assert that they did not "knowingly consent" to the membership program because of the "deceptive nature" of the EasySaver Rewards marketing "scheme." As is clear from the Enrollment Screen itself, however, the terms of the membership are clearly and conspicuously disclosed in bolded typeface and are referenced in several locations throughout the page, including directly above and directly below the green acceptance button. In other words, Plaintiffs' conclusory assertions that the Enrollment Screen is "deceptive" and "misleading" are unsupportable. In fact, on August 31, 2009 – only twelve days after Plaintiffs' first complaint was filed – virtually identical lawsuits were dismissed against one of EMI's competitors in an MDL proceeding consolidated in the United States District Court for the Southern District of Texas. *See In re Vistaprint Corp Marketing and Sales Practices Litigation*, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009).

In *Vistaprint*, like here, the plaintiffs brought a number of claims based on the purportedly "deceptive" nature in which the defendants marketed their membership programs online, which allegedly resulted in "unauthorized" charges to consumers' debit or credit cards for the monthly fees associated with these programs. Like here, the enrollment screen in *Vistaprint* required the consumer to enter his or her email address and zip code to enroll in the program after their purchase on a partner website. Because, like here, the enrollment screen disclosed the payment terms of the membership program and the transfer of their billing information from their prior purchase, the *Vistaprint* court dismissed the case, finding, among other things, that:

> The webpages are not, as a matter of law, unfair or deceptive because they do not have the capacity to mislead reasonable consumers….

*Vistaprint*, 2009 WL 2884727, *12.

The same should be found here. The Enrollment Screen used by EMI clearly and conspicuously describes the payment and other terms of membership and complies with the

Federal Trade Commission's guidelines for online marketing.  Like the similar webpage in *Vistaprint*, EMI's "webpage contains adequate disclosures which, if read by the consumer, prevent the webpage – as a matter of law – from being deceptive." *Id.* at *6.

## II.     ALLEGATIONS OF THE COMPLAINT

Defendant Provide-Commerce, Inc. ("Provide-Commerce") operates ProFlowers.com, a website that sells flowers to consumers online.  Consolidated Class Action Complaint ("CCAC"), ¶ 10.  Consumers purchase products from Provide-Commerce's website using their credit cards, debit cards or Paypal accounts.  Id., ¶ 19.  EMI offers benefit programs and membership clubs to consumers.  CCAC, ¶ 11.  One of the programs offered by EMI is a membership in EasySaver Rewards, a savings club that provides discounted entertainment, travel, dining and shopping to its members.  Id.  EMI markets the EasySaver Rewards program to consumers who purchase flowers or other products on ProFlowers.com.  Id.

After a consumer completes his or her purchase on ProFlowers.com a separate window appears thanking the consumer for his or her order and offering a gift code for $15 off their next ProFlowers.com purchase.  Id., ¶ 19.  By clicking the link on this page, the consumer is directed to a webpage (the "Enrollment Screen") which describes the terms and conditions for obtaining the gift code, including enrolling in a trial membership in EasySaver Rewards.  Id.  The Enrollment Screen contains a brief description of the "Program Privileges" of EasySaver Rewards, including $15 off their next ProFlowers.com purchase, cash back on gift cards and other benefits.  *See* Exhibit 1 to Declaration of Lee Carson ("Carson Decl."), submitted contemporaneously herewith.  The payment terms and other conditions of the program are contained in the Offer Details set forth directly to the left of the green acceptance button and highlighted in gray, which state:

3

> **OFFER DETAILS**
> Activate your membership in EasySaver Rewards℠ to claim your $15 Gift Code good for your next purchase and start saving and enjoying all the benefits and access for the next 30 days for just a **$1.95 activation fee** billed by EasySaver Rewards to the credit card or PayPal account you just entered during your ProFlowers purchase. Please note, by entering your e-mail address and zip code ("Enrollment Details") and clicking the Green Acceptance Button, your Enrollment Details as well as the following information from your most recent ProFlowers order will be transmitted securely through PGP and SSL encryption to EMI, the EasySaver Rewards Administrator, to be stored and to secure and administer your membership: your name, credit card information or PayPal billing ID number, billing address, billing telephone number and order ID number. To continue after the introductory trial period, do nothing and all the great benefits and savings will automatically continue for just **$14.95 per month**, billed by EasySaver Rewards to the same credit card or PayPal account where applicable. You may cancel at anytime, with no further obligation, just by calling the toll-free number contained in the membership information provided to you. **And, you keep the $15 Gift Code just for trying EasySaver Rewards for 30 days.**

*See* Carson Decl., Exhibit 1 (bold in original); *see also* CCAC, ¶ 19.[2]

The following language (in all capital letters and bolded) is also included directly <u>above</u> the boxes in which the consumer enters his or her email address and zip code and clicks the green acceptance button:

> JUST ENTER YOUR E-MAIL ADDRESS AND ZIP CODE AS YOUR ELECTRONIC SIGNATURE AND CLICK THE GREEN ACCEPTANCE BUTTON BELOW TO **ACTIVATE YOUR EASYSAVER REWARDS℠ MEMBERSHIP** AS DESCRIBED IN THE **OFFER DETAILS** ON THIS PAGE.
>
> Email Address                                          Zip
> [                                    ]                 [          ]
>
> *Click Here to Join EasySaver Rewards ℠ and Claim Your Savings!*

---

[2] Contrary to Plaintiffs' conclusory assertion that the Offer Details are contained in an "obscure location," CCAC, ¶ 19, they are contained on the very same Enrollment Screen, are prominently displayed directly to the left of the green acceptance button, use bold type-face for the pertinent payment terms and are referenced again both above and below the green acceptance button. *See* Carson Decl., Exhibit 1.

4

*See* Carson Decl., Exhibit 1 (bold and capitalization in original).  And again directly <u>below</u> the green acceptance button, the following language is included:

> By entering my details above and clicking the Green Acceptance Button, I am activating my membership in EasySaver Rewards℠ as described in the OFFER DETAILS which I have read and accepted.
>
> ENCORE MARKETING INTERNATIONAL (EMI) IS THE OFFERER AND ADMINISTRATOR OF EASYSAVER REWARDS℠

Id. (capitalization in original).

In other words, if a consumer looks either above, below or even to the side of the green acceptance button he or she is informed of the Offer Details for the EasySaver Rewards membership.  Indeed, directly above the green acceptance button the consumer is invited "to Join EasySaver Rewards" by clicking it.  References to the Offer Details (which are made in numerous locations) are highlighted in all capital letters and bolded in virtually every instance.

Once a consumer completes his or her enrollment, Provide-Commerce transmits certain customer credit card and other information to EMI for purposes of billing the activation fee and monthly membership fees as explicitly disclosed on the Enrollment Screen.  *See* CCAC, ¶ 32; *see also* Carson Decl., Exhibit 1.  Plaintiffs claim that the Enrollment Screen is "misleading, deceptive and fraudulent" and that Defendants "unwittingly" enroll consumers into the EasySaver Rewards program.  CCAC, ¶ 31.  While the Consolidated Class Action Complaint contains fourteen causes of action, only five are directed to EMI: (1) Count III – Breach of Contract, (2) Count IV – Declaratory Relief, (3) Count XI – Unjust Enrichment, (4) Count XII – Electronic Funds Transfer Act, and (5) Count XIII – Electronic Communication Privacy Act.

The breach of contract and declaratory relief counts are brought only on behalf of Plaintiff Deanna Hunt ("Hunt").  CCAC, ¶¶ 67-78.  Hunt acknowledges that she provided her email address and zip code and clicked the green acceptance button, but claims that she "did not

5

knowingly consent to join any rewards program … due to the deceptive nature of the EasySaver Rewards marketing scheme."  CCAC, ¶ 28.  The remaining counts against EMI – unjust enrichment and the Federal statutory claims – were brought by both Hunt and the other three Plaintiffs: Josue Romero ("Romero"), Kimberly Kenyon ("Kenyon") and Gina Bailey ("Bailey").  Unlike Hunt (and, in fact, in contradiction to her claims), both Romero and Kenyon read and understood the terms and offer details on the Enrollment Screen, but allegedly "did not want to become a member of EasySaver Rewards...."  CCAC, ¶¶ 20, 23.[3]  Romero and Kenyon claim that "[i]nstead [they] clicked on the 'X' at the top right corner of the webpage to close the window," but nonetheless later discovered that they were still charged the activation fee and monthly membership fees for the EasySaver Rewards program.  Id., ¶¶ 20-21, 23-24.[4]

### III.   ARGUMENT

A.   **Legal Standards For a Rule 12(b)(6) Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129

---

[3] Bailey simply alleges that she "does not remember" the EasySaver Rewards' Enrollment Screen, but it is her "general" practice to close pop-up windows.  CCAC, ¶ 25.

[4] EMI's enrollment process is done electronically.  Much like an individual signing into his or her email or other online account, the computer code underlying the Enrollment Screen requires that the fields (in this case the email address and zip code) be filled out and the green acceptance button be clicked to process the membership enrollment.  ***It is a technological impossibility for a consumer to be enrolled in the EasySaver Rewards program without entering his or her email address and zip code and clicking the green acceptance button – a fact that can be readily verified by a review of the code underlying the Enrollment Screen.***  Counsel for EMI made this information available to Plaintiffs' counsel for their review (or for the review by an expert) to demonstrate that consumers cannot be enrolled without following this process.  Plaintiffs' counsel refused this offer and – despite the technological impossibility of the allegations – continue to assert on behalf of Romero and Kenyon (and possibly Bailey) that they never entered their email address and zip code or clicked the green acceptance button.  While these allegations are unsupportable, they ultimately are irrelevant to the present motion to dismiss since the only claims brought by these individuals – an unjust enrichment claim and two statutory claims – are inapplicable or legally insufficient for other reasons.

S.Ct. 1937, 1949 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949, *citing Twombly*, 550 U.S. at 556. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.*, *quoting* FED. R. CIV. P. 8(a)(2).

Here, as set forth more fully below, Plaintiffs do not and can not allege any facts that would "allow[] the court to draw the reasonable inference that [EMI] is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949, *citing Twombly*, 550 U.S. at 556. The Court, therefore, should grant EMI's motion to dismiss in its entirety.

**B.     All of the Causes of Action Against EMI Fail to State a Claim Upon Which Relief Can Be Granted**

   **1.     Plaintiff Hunt's Breach of Contract Claim (Count III) Fails Because She Does Not Allege That EMI Breached Any Provision of the Online Agreement**

Plaintiff Hunt's claim for breach of contract fails because she can not allege that EMI breached any provision of the online agreement that she entered in to. With respect to this count, Hunt alleges that EMI "agreed to not obtain consumers' Private Payment Information … from Provide-Commerce in order to charge fees or enroll customers in the purported EasySaver Rewards program unless customers affirmatively and knowingly join … by providing their email address and zip code on [EMI's] signup page, and clicking the green acceptance button." CCAC, ¶ 68. According to Plaintiffs, EMI "breached" this agreement by obtaining Hunt's

7

information and charging her membership fees "even though [she] never knowingly or intentionally agreed to become a member of the EasySaver Rewards program." Id., ¶ 69.

Hunt, however, specifically alleges that she signed up for the EasySaver Rewards program on EMI's Enrollment Screen by entering her email address and zip code and clicking the green acceptance button. CCAC, ¶ 28. As set forth in the Offer Details prominently displayed on the Enrollment Screen, the terms of this agreement specifically authorized (i) EMI to charge Hunt the $1.95 activation fee and $14.95 monthly charge, and (ii) Provide-Commerce to forward her billing information to EMI for purposes of these charges.

To the extent Hunt claims that she was not given reasonable notice of these terms, such an assertion is flatly contradicted by the Enrollment Screen referenced in, but not attached to, the Complaint. As noted above, the terms of this online agreement were prominently displayed on the *very same* Enrollment Screen and are referenced again in bold both *above* and *below* the green acceptance button. And when, as Hunt alleges here, "a party uses [her] computer to click on a button signifying [her] acceptance of terms and conditions in connection with an online transaction, [s]he thereby manifests [her] assent to an electronic agreement." *Davis v. Dell, Inc.*, 2007 WL 4623030, *4 (D.N.J. 2007); *see also Vistaprint*, 2009 WL 2884727, *10-12 (noting that a nearly identical online membership enrollment screen "fully compl[ies] with FTC guidelines" for online advertising and constitutes a binding "electronic contract"); *ESLWorldwide.com, Inc. v. Interland, Inc.*, 2006 WL 1716881, *3 (S.D.N.Y. 2006) (enforcing terms of online agreement where "the text above the 'Accept' icon clearly states that by clicking 'Accept,' a user is bound to the new Terms of Service…."); *U.S. v. Drew*, 259 F.R.D. 449, 462, fn 22 (C.D. Cal. 2009) (noting that online agreements "have been routinely upheld by circuit and

district courts."); *CoStar Realty Information, Inc. v. Field*, 612 F. Supp. 2d 660, 669 (S.D. Md. 2009) (same); *Burcham v. Expedia, Inc.*, 2009 WL 586513, *2 (E.D. Mo. 2009) (same).[5]

In short, Hunt does not and can not allege a breach of contract against EMI. According to Hunt's own allegations, EMI simply followed the very terms of the online agreement she accepted by entering her email address and zip code and clicking the green acceptance button. The mere fact that Hunt allegedly failed to read the terms of the online agreement before clicking the green acceptance button does not render the contract unenforceable. *See Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008) ("[A] party may be bound by a[n] [online] agreement if the terms are clear and acceptance is unambiguous, regardless of whether he actually reads them."); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007) ("[F]ailure to read an enforceable [online] agreement, as with any binding contract, will not excuse compliance with its terms."); *Vistaprint*, 2009 WL 2884727, *6 ("A consumer cannot decline to read clearly and easily understandable terms that are provided on the same webpage in close proximity to the location where the consumer indicates his agreement to those terms and then claim that the webpage, which the consumer has failed to read, is deceptive"); *Burcham*, 2009 WL 586513, *3 ("[Plaintiff] denies that he ever saw or read the terms [of the online agreement], but this is not a sufficient reason to invalidate the contract."); *see also Merit Music Service, Inc. v. Sonneborn*, 245 Md. 213, 221-22 (1967) ("[T]he law presumes that a person

---

[5] Hunt claims that she "provided her email address and zip code with the understanding that the information was necessary to complete her transaction with ProFlowers…." CCAC, ¶ 69. No reasonable person could hold such a belief. In fact, the Enrollment Screen *thanks the consumer for her ProFlowers order* and offers a $15 gift code for her *next* purchase.

9

knows the contents of a document that he executes and understands at least the literal meaning of its terms.").[6]

Plaintiffs' attempt to avoid the terms of the contract by claiming that they are "unconscionable" is equally unavailing.  According to the Complaint, the terms of the online agreement are allegedly unconscionable because they allow EMI to charge the activation fee and monthly fees without obtaining "informed consent."  CCAC, ¶ 71.  This is just another way of saying that the terms are not adequately disclosed to consumers, an assertion that flies in the face of the actual and glaring terms plastered just about everywhere on the Enrollment Screen.  In its simplest form, Plaintiffs "argue that they should not be held to an agreement that they signed but did not take the time to read," which is insufficient to find the terms of a contract "unconscionable."  *Walther v. Sovereign Bank*, 386 Md. 412, 430 (Md. 2005); *see also Dieng v. College Park Hyundai*, 2009 WL 2096076, *5-6 (D. Md. 2009) (rejecting "unconscionability" argument where terms were clearly disclosed in the agreement); *Doyle v. Finance America, LLC*, 173 Md. App. 370, 382-391 (Md. App. 2007) (same).[7]

Because Plaintiff Hunt has failed to allege a breach of any of the terms of the EasySaver Rewards online agreement (which she alleges she signed up for) and because Hunt does not and can not allege any facts supporting her assertion of "unconscionability," Count III should be dismissed with prejudice.

---

[6] Notably, while Hunt claims that she did not "knowingly" sign up for the EasySaver Rewards program due to its "deceptive" nature, the other Plaintiffs allege just the opposite (*i.e.*, that they read and understood the terms of the membership program, but did not want to enroll and purportedly closed out of the window).  Not only do these allegations completely undermine Hunt's claim, but they also raise serious questions about the suitability of this case for class treatment as individual issues exist amongst even the named Plaintiffs.

[7] As set forth in Plaintiffs' Complaint, EMI's "membership agreements contain a provision indicating that Maryland law governs membership disputes."  CCAC, ¶ 11.

### 2. Plaintiff Hunt's Claim for Declaratory Relief (Count IV) Fails For the Same Reasons as Count III and Is Also Duplicative

Count IV seek a declaration that EMI's online agreement is "unconscionable" because it allows EMI to enroll consumers in the EasySaver Rewards program, obtain their "Private Payment Information," and use that "Private Payment Information" to charge their debit and credit cards without obtaining "informed" consent. CCAC, ¶ 76. Because the alleged grounds for declaring the online agreement "unconscionable" in Count III are the same for Count IV, this count should be dismissed for the very same reasons set forth above.

Furthermore, because Hunt's claim for declaratory relief is based on the same alleged conduct set forth in her breach of contract claim, it should also be dismissed because "[a] claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action." *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009); *see also Ricon v. Recontrust Co.*, 2009 WL 2407396, *6 (S.D. Cal. 2009) ("Plaintiff's complaint offers no reasons to believe declaratory judgment will resolve any issues aside from those already addressed by the substantive claims. As such, the Court dismisses the declaratory judgment claim as needlessly duplicative."); *Camillo v. Washington Mut. Bank, F.A.*, 2009 WL 3614793, *13 (E.D. Cal. 2009) ("Where the 'relief [a] plaintiff seeks is entirely commensurate with the relief sought through [his] other causes of action ... [the] declaratory relief claim is duplicative and unnecessary.'"). For these reasons, Count IV should be dismissed.

### 3. The Existence of a Contract Defeats Plaintiff Hunt's Unjust Enrichment Claim (Count XI) and This Count Fails For the Remaining Plaintiffs Because Unjust Enrichment Is Not an Independent Legal Claim

Plaintiffs' "unjust enrichment" claim fails for all of the reasons set forth above (*i.e.*, there is nothing "unjust" with EMI charging membership fees specifically agreed to by consumers). This "claim" also fails for two additional reasons. First, with respect to Plaintiff Hunt, the

11

existence of a contract (pled and acknowledged by Hunt) defeats any "unjust enrichment" claim on her behalf. *See Janusz v. Gilliam*, 404 Md. 524, 537 (Md. 2008) ("In Maryland, a claim of unjust enrichment … 'may not be brought where the subject matter of the claim is covered by an express contract between the parties.'"). To the extent the remaining Plaintiffs are claiming they never entered into the online agreement with EMI, the "unjust enrichment" claim still fails because "unjust enrichment is a theory of recovery, not an independent legal claim." *The NVIDIA GPU Litigation*, 2009 WL 4020104, *12 (N.D. Cal. 2009). For these reasons, Count XI fails to state a cause of action and, therefore, should be dismissed with prejudice.

    **4.** **The Claim Brought by Plaintiffs Hunt and Romero Under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* (Count XII) Fails Because Hunt Authorized the Charges and Romero Does Not Meet the Definition of an "Account" Covered Under the Act**

The claim brought by Plaintiffs Hunt and Romero under the Electronic Funds Transfer Act ("EFTA") fails because, with respect to Hunt, there was no "unauthorized charge." To the extent Romero claims that he never entered into an agreement with EMI to charge his debit card, his claim under EFTA fails because he cannot meet the definition of "account" under 12 C.F.R. Pt. 205, Supp. I, Section 205.3(a)(1)(ii).

    **a.** **Plaintiff Hunt's EFTA Claim Fails Because She Alleges That She Entered Into an Online Agreement With EMI That Authorized the Alleged Charges**

With respect to Plaintiff Hunt, the EFTA claim fails because there was no "unauthorized charge" since she agreed to those charges by entering her email address and zip code and clicking the green acceptance button. Under the regulations interpreting EFTA, a preauthorized electronic fund transfers may be authorized by "a writing signed ***or similarly authenticated***." 12 C.F.R. 205.10(b) (emphasis added). The "similarly authenticated standard permits … authorizations to be provided electronically." 12 C.F.R. Pt. 205, Supp. I, Section 10(b)(5)

12

(stating that "[t]he writing and signature requirements of this section are satisfied by complying with the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. 7001 et seq.").

The enrollment process used by EMI (and alleged by Hunt) satisfies these requirements. The Enrollment Screen explicitly states:

> JUST ENTER YOUR E-MAIL ADDRESS AND ZIP CODE <u>AS YOUR ELECTRONIC SIGNATURE</u> AND CLICK THE GREEN ACCEPTANCE BUTTON BELOW TO **ACTIVATE YOUR EASYSAVER REWARDS℠ MEMBERSHIP** AS DESCRIBED IN THE **OFFER DETAILS** ON THIS PAGE.

*See* Carson Decl., Exhibit 1 (underline added, bold and capitalization in original).

The Offer Details (which are prominently displayed directly to the left of the green acceptance button), in turn, provide that:

> [B]y entering your e-mail address and zip code ("Enrollment Details") and clicking the Green Acceptance Button, your Enrollment Details as well as the following information from your most recent ProFlowers order will be transmitted securely through PGP and SSL encryption to EMI, the EasySaver Rewards Administrator, to be stored and to secure and administer your membership: your name, credit card information or PayPal billing ID number, billing address, billing telephone number and order ID number.

*Id.*

In other words, by entering her email address and zip code and clicking the green acceptance button, Hunt provided her authorization "electronically" in accordance with EFTA. And because Hunt does not allege that EMI charged her anything different than what was explicitly set forth in the Offer Details, she has not alleged a violation of EFTA.[8]

---

[8] Because the payment terms are clearly set forth on the Enrollment Screen, Plaintiffs' assertion that EMI violated EFTA because it allegedly did not provide a written copy of the authorization terms is without merit. The EFTA regulations allow such terms to be disclosed "electronically." *See* 12 C.F.R. Pt. 205, Supp. I, Section 10(b)(5) ("The person that obtains the authorization must provide a copy of the terms of the authorization to the consumer either electronically or in paper form.").

As the court in *Vistaprint* noted in dismissing an identical claim under EFTA:

> Plaintiffs typed their email addresses into the spaces provided on Defendants' webpages, thereby authorizing Defendants to "charge/debit [their] account according to the Offer Details." *** Because the debits to Plaintiffs' accounts were not "unauthorized electronic fund transfers," the EFTA claim must be dismissed.

*Vistaprint*, 2009 WL 2884727, *9.

Because Hunt similarly gave electronic authorization for the alleged charges, her claim under EFTA should be dismissed.[9]

### b. Plaintiff Romero Fails to State a Claim Under EFTA Because His Allegations Do Not Meet the Definition of an "Account" Covered Under the Act

Because Plaintiff Romero alleges that he never entered into an online agreement with EMI, his claim under EFTA fails because he can not meet the definition of an "account" covered under the Act. For purposes of coverage under EFTA, the pertinent regulations define "account" as follows:

> Accounts covered. The requirements of the regulation apply only to an account **for which an agreement for [electronic fund transfer] services to or from the account has been entered into** between … [t]he consumer and a third party (for preauthorized debits or credits, for example)….

12 C.F.R. Pt. 205, Supp. I, Section 205.3(a)(1)(ii) (emphasis added).

---

[9] Plaintiffs' reliance on 15 U.S.C. § 1693e(b) to assert that EMI must give "reasonable advance notice … of the amount to be transferred" is equally misguided. Section 1693e(b) only applies when the electronic funds transfer "will ***vary in amount from the previous transfer*** under the same authorization or from the preauthorized amount." 12 C.F.R. § 205.10(d)(1) (emphasis added). Here, Hunt initially authorized a $1.95 activation charge and monthly payments thereafter in the amount of $14.95. Hunt does not allege that she was charged anything different from the original authorization and, in fact, alleges that she was charged these very same amounts. *See* CCAC, ¶ 29 (alleging that EMI charged Hunt "the $1.95 activation fee and the $14.95 monthly charge, on three separate occasions…."). Because the amounts allegedly charged to Hunt's debit card did not "vary" from the "same authorization or from the preauthorized amount," Section 1693e(b) simply does not come into play.

Because Plaintiff Romero specifically alleges that he never entered into an agreement for electronic fund transfer services with EMI, he does not meet the definition of a covered "account" under EFTA. Indeed, if, as Romero alleges, there was no agreement with EMI to charge his debit card the provisions of EFTA by their very nature could not be applicable. For example, Section 1693e requires that a copy of a preauthorization for funds transfers be provided to the consumer "when made." 15 U.S.C. § 1693e(a). If an authorization was purportedly *never* "made" EMI would be under no obligation to provide a copy of a non-existent preauthorization. In fact, EFTA defines "preauthorized electronic fund transfer" as "an electronic fund transfer *authorized in advance* to recur at substantially regular intervals." 15 U.S.C. § 1693a(9). Again, if there was no advance authorization, as alleged by Romero, EMI would not and could not be subject to the copy and notice provisions of Section 1693e. His claim under EFTA, therefore, should be dismissed.

  **5.**  **Plaintiffs Fail to State a Claim Under the Electronic Communication Privacy Act, 18 U.S.C. § 2510 *et seq.* (Count XIII) Because They Have Not Alleged an "Interception" and Because Provide-Commerce Was a Consenting Party to <u>the Alleged Communication</u>**

Plaintiffs' claim under the Electronic Communication Privacy Act ("ECPA") fails because Plaintiffs do not and can not allege an "interception" as that term is defined under the Act. Plaintiffs' ECPA claim also fails because there is no violation "where one of the parties to the communication has given prior consent to such interception" and Plaintiffs alleged that Provide-Commerce was a consenting participant to the communication. 18 U.S.C. §2511(1)(a).

    **a.**  **Plaintiffs Do Not and Can Not Allege an "Interception" Under ECPA**

Plaintiffs' ECPA claim should be dismissed because Plaintiffs have not alleged an "interception" under the Act. With respect to this claim, Plaintiffs acknowledge that they voluntarily provided their billing information to Provide-Commerce for the purchases they made

15

on ProFlowers.com.  *See* CCAC, ¶ 19.  Plaintiffs do not and can not allege that their information was "intercepted" during this transaction, but rather allege that Provide-Commerce thereafter "transmitted the information to [EMI]."  Id., ¶ 32; *see also* id., ¶ 54 (alleging that "Provide-Commerce breached this agreement by transmitting Plaintiffs' … Private Payment Information to [EMI].").

This does not meet ECPA's definition of "interception," which requires that the information "be acquired during transmission."  *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).  Because Plaintiffs do not allege that EMI acquired this information "during transmission," but only after it was voluntarily provided to Provide-Commerce there was no "interception" under ECPA.  *Id.*; *see also Vistaprint*, 2009 WL 2884727, *9 (dismissing identical ECPA claim); *Crowley v. CyberSource Corp.*, 166 F.Supp.2d 1263, 1265 (N.D. Cal. 2001) (dismissing ECPA claim based on allegations that plaintiff "went to Amazon's web site to purchase goods, and gave Amazon his name, e-mail address, mailing address, credit card number and expiration date, and telephone number [and] Amazon then transmitted this information to CyberSource.… [who] used it to create a personal profile.").  For this reason alone, Plaintiffs ECPA claim should be dismissed.

        **b.**      **Plaintiffs' ECPA Claim Also Fails Because They Alleged That Provide-Commerce Was a Consenting Party to the Communication**

Even if there was an "interception," which there was not, Plaintiffs' ECPA claim still fails because there is no violation "where one of the parties to the communication has given prior consent to such interception."  18 U.S.C. §2511(2)(d).  Here, Plaintiffs allege that they voluntarily provided their billing information to Provide-Commerce who, therefore, was a party to that alleged "communication."  Plaintiffs further allege that Provide-Commerce "permitted" and gave EMI its "consent" to obtain their billing information.  *See, e.g.,* CCAC, ¶¶ 15, 32

16

(alleging that Defendants were "acting … with the knowledge, consent and permission of … each other" and that Provide-Commerce "permitted [EMI] to intercept the information."). In other words, even if there was an "interception," which there was not, Provide-Commerce would have been a consenting party to the transmittal of Plaintiffs' billing information to EMI. Accordingly, under 18 U.S.C. §2511(2)(d), there was no violation of ECPA. Count XIII, therefore, should be dismissed on this ground as well.

## CONCLUSION

While Plaintiffs brought several causes of actions, their Complaint is based primarily on one straight-forward issue – the sufficiency of EMI's Enrollment Screen. As set forth above, the Court should consider this document despite Plaintiffs' failure to attach it to the Complaint. Indeed, any claim that a consumer did not see or understand the clear and glaring terms of EMI's membership program is flatly contradicted by this document. Plaintiffs' mere characterization of this screen as "deceptive" and "fraudulent" is insufficient to withstand a Rule 12(b)(6) motion to dismiss. The Enrollment Screen speaks for itself and, like the similar webpage in *Vistaprint*, requires the dismissal of this claim.

Plaintiffs' other assertion – that certain Plaintiffs simply closed out of the window, but were still enrolled in EMI's membership program – defies all common sense and logic. To say that this allegation is "plausible" would be a gross overstatement. Even the most technologically unsavvy would understand the impossibility of such an assertion. Moreover, these allegations are in complete contradiction to Plaintiff Hunt's claim that the offer terms are not clearly and conspicuously disclosed. Indeed, the Complaint itself demonstrates that – by a score of 3 to 1 – the Plaintiffs read and were able to understand the terms of the EasySaver Rewards program prominently displayed on the Enrollment Screen, but simply did not want to enroll. In all events,

and notwithstanding the impossibility of these allegations, the claims brought against EMI by these Plaintiffs are legally insufficient for a variety of other reasons as set forth above. For those reasons, these claims should be dismissed as well.

**WHEREFORE,** EMI respectfully requests the Court to grant its motion in its entirety and dismiss Counts III, IV, XI, XII and XIII against EMI with prejudice.

Dated:  February 22, 2010

Respectfully submitted,

By:  _____/s/ Jacie C. Zolna_____
Jacie C. Zolna
*One of the Attorneys for Defendant Regent Group, Inc.*

Myron M. Cherry, California State Bar No. 50278
Jacie C. Zolna, Admitted *Pro Hac Vice*
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois  60602
Telephone: (312) 372-2100
Facsimile: (312) 853-0279
mcherry@cherry-law.com
jzolna@cherry-law.com

Michael L. Kirby, California State Bar No. 50895
Ethan T. Boyer, California State Bar No. 173959
KIRBY NOONAN LANCE & HOGE LLP
350 Tenth Avenue, Suite 1300
San Diego, California 92101
Telephone: (619) 231-8666
Facsimile: (619) 231-9593
MKirby@knlh.com
EBoyer@knlh.com

***Attorneys for Regent Group, Inc. d/b/a Encore Marketing International***