# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

IN RE:  EASYSAVER REWARDS
LITIGATION

CASE NO. 09-CV-2094-MMA (BLM)

**ORDER:**

**GRANTING IN PART AND DENYING IN PART DEFENDANT PROVIDE COMMERCE'S MOTION TO DISMISS**

[Doc. No. 34]

**DENYING DEFENDANT ENCORE MARKETING INTERNATIONAL'S MOTION TO DISMISS**

[Doc. No. 38]

**GRANTING PLAINTIFFS' MOTION TO STRIKE**

[Doc. No. 48]

Before the Court are separate motions to dismiss by the two Defendants in this class action consumer rights case.  The Court submitted the motions on the written briefs.  Local Civ. R. 7.1(d)(1).  For the reasons stated below, the Court **DENIES** the motion to dismiss by Defendant EMI, and **GRANTS IN PART** and **DENIES IN PART** the motion by Defendant Provide.

I.      FACTUAL ALLEGATIONS IN CONSOLIDATED COMPLAINT

The Consolidated Complaint alleges that Defendant Provide-Commerce, Inc. (hereinafter "Provide" or "Provide-Commerce") operates several internet businesses, including ProFlowers.com.  Customers order fresh flowers, bouquets, and plants on the ProFlowers' website

1   and pay for the purchase with a credit or debit card.[1]  The four named Plaintiffs are Josue Romero,

2   Deanna Hunt, Kimberly Kenyon, and Gina Bailey.  Each consumer purchased flowers on

3   Provide's website between February and September 2009 with a credit or debit card.

4        Plaintiffs allege that Provide, as a part of its "revenue generating efforts . . . routinely and

5   fraudulently transmits its consumers' credit card, debit card and/or Paypal information ("Private

6   Payment Information") to its third party marketing partners."  Compl. ¶ 1.  Plaintiffs name

7   Defendant Regent Group, Inc. doing business as Encore Marketing International (hereinafter

8   "EMI" or "Encore") as Provide's marketing partner.  Plaintiffs allege EMI "fraudulently charge[s]

9   the cards or accounts without permission under the guise that" Provide's customers have

10  "supposedly joined a savings program known as EASYSAVER Rewards, which Encore manages

11  on Provide-Commerce's behalf."  *Id.*  "[T]he EASYSAVER Rewards program does not provide

12  the promised savings, benefits products or services and is nothing more than a sham."  *Id.*

13       Plaintiffs allege that Provide leads customers to believe they will receive a complimentary

14  $15.00 gift code to use on their next flower order as a thank you gift.  After Plaintiffs completed

15  the purchase of flowers on Provide's website by providing their personal and payment

16  information, "a window popped up that thanked Plaintiffs and Class Members for their order and

17  offered a gift code for $15.00 off their next purchase at ProFlowers.  The window also contained a

18  link for Plaintiffs and Class Members to click on to claim the gift code."  *Id.* ¶ 19.  Plaintiffs

19  contend the pop-up window is part of an intentionally misleading and deceptive scheme, jointly

20  orchestrated by Provide and EMI.

21       "When customers try to obtain their 'gifts,' they are directed to a webpage operated by

22  Encore."  *Id.* ¶ 2.  Plaintiffs quote the webpage, in all capital letters, as stating:  "CLAIM YOUR

23  GIFT CODE BELOW!  JUST ENTER YOUR E-MAIL ADDRESS AND ZIP CODE AS YOUR

24  ELECTRONIC SIGNATURE AND CLICK THE GREEN ACCEPTANCE BUTTON BELOW

25

26        [1] All references to credit and debit accounts include payments through a PayPal account.
    PayPal provides an intermediary account for internet purchases.  PayPal charges the seller a
27  fee for its service.  The customers fund their PayPal accounts through electronic transfers from
    their own financial institution (*e.g.*, checking account, debit card, or credit card).  PayPal keeps
28  the customers' financial information confidential, thereby, providing a measure of security for
    online purchases.  PayPal, https://www.paypal.com (last visited June 16, 2010).

09CV2094

1   TO ACTIVATE YOUR EASYSAVER REWARDS MEMBERSHIP AS DESCRIBED IN THE

2   OFFER DETAILS ON THIS PAGE." *Id.*

3       Each named Plaintiff had a slightly different experience.[2]  Plaintiffs Romero and Kenyon

4   allege that they closed the pop-up window by clicking the "X" on the top right corner without

5   entering their e-mail address and without clicking the acceptance button. *Id.* ¶ 20 & 23.  Plaintiff

6   Bailey does not remember the pop-up window, but alleges that "it is her general practice to always

7   close pop-ups." *Id.* ¶ 25.  By contrast, Plaintiff Hunt responded to the pop-up window by entering

8   her e-mail address and clicking the acceptance button.  Hunt, however, "did not even realize that

9   she had been redirected away from ProFlowers' website to Encore's website due to the deceptive

10  nature of EASYSAVER Rewards marketing scheme." *Id.* ¶¶ 28, 31.  Rather, she believed the

11  information was necessary to complete her ProFlowers transaction.  All Plaintiffs state they did

12  not want to join EASYSAVER Rewards, yet they were immediately charged an activation fee, and

13  thirty days later, they were charged a monthly membership fee. *Id.* ¶¶ 20-30.  These complaints

14  are mirrored by numerous unidentified consumers who posted comments on the internet. *Id.* ¶ 36.

15      All Plaintiffs state they never received any correspondence from the EasySaver program let

16  alone any benefits, savings, or rewards.  *Id.*  ¶¶ 21, 24, 26, 29.

17      Efforts to have the charges reversed were unsuccessful.  For example, when Plaintiff

18  Romero contacted ProFlowers, the representative "indicated she had been receiving numerous

19  calls about unauthorized charges by Encore via the EASYSAVER Rewards Program." *Id.*  ¶ 22.

20  Plaintiff Bailey closed her bank account to stop the unauthorized charges. *Id.* ¶ 27.

21      Plaintiffs allege the marketing practice is deceptive because it "unwittingly" enrolls

22  customers.  The EasySaver Rewards offer does not refer to charges for membership, does not

23  disclose that Provide will share the customer's financial information with EMI, and does not

24  require the re-entry of that financial information.   *Id.* ¶¶ 31-32.

25

26      [2] The proposed nationwide class includes those who purchased merchandise from any
    of Provides's webpages from August 19, 2005 and had EasySaver Rewards charges on their
27  credit or debit cards. *Id.* ¶ 42.  Subclass A are those consumers who did not provide their email
    address or click the acceptance button; subclass B includes those who did provide their email
28  address and clicked the acceptance button; and subclass C is all class members who had their
    debit card charged. *Id.*

1    The Complaint recites that a Senate Committee investigated similar marketing practices

2   that abuse a consumer's trust in "familiar" websites.  *Id.* ¶ 38.  While the pop-up offer appears to

3   be related to the online purchase, consumers unwittingly enter an ongoing financial relationship

4   with an unfamiliar company.  *Id.*  The "misleading and confusing" tactic allows the retailer to

5   automatically transfer the consumer's credit and debit card information without requiring the

6   customer to re-enter that financial data on the unfamiliar website.  *Id.*

7    Plaintiffs further allege that the "unconscionable terms" of the Offer Details include the

8   consumers' consent to allow Provide to transmit their personal and payment information to EMI

9   and to permit EMI to immediately bill a $1.95 activation charge and thereafter a monthly

10  membership fee of $14.95.  *Id.* ¶ 19. The Consolidated Complaint quotes the Offer Details as

11  follows:

> Activate your membership in EASYSAVER Rewards to claim your $15 Gift Code
> good for your next purchase and start saving and enjoying all the benefits and access
> for the next 30 days for just a **$1.95 activation fee** billed by EASYSAVER Rewards
> to the credit card or PayPal account you just entered during your ProFlowers purchase.
> Please note, by entering your e-mail address and zip code ("Enrollment Details") and
> clicking the Green Acceptance Button, your enrollment Details as well as the
> following information from your most recent ProFlowers order will be transmitted
> securely through PGP and SSI encryption to EMI, the EASYSAVER Rewards
> Administrator, to be stored and to secure and administer your membership:  your
> name, credit card information or PayPal billing ID number, billing address, billing
> telephone number and order ID number.  To continue after the introductory trial
> period, do nothing and all the great benefits and savings will automatically continue
> for just **$14.95 per month**, billed by EASYSAVER Rewards to the same credit card
> or PayPal account where applicable.  You may cancel at anytime, with no further
> obligation, just by calling the toll-free number contained in the membership
> information provided to you.  **And, you keep the $15 Gift Code just for trying
> EASYSAVER Rewards for 30 days.**

21  *Id.*

22   Plaintiffs allege that Provide's Privacy Policy claims it will not disclose customers'

23  personal and payment information with EMI "absent customers completing Encore's signup page

24  and affirmatively and knowingly agreeing to join the EASYSAVER Rewards program."  *Id.*  ¶ 34.

25  "Provide-Commerce intentionally transferred Plaintiffs' Private Payment Information to Encore

26  and/or permitted Encore to intercept the information without authorization."  *Id.* ¶ 32.

27   The Consolidated Complaint contains fourteen causes of action on theories of contract,

28  tort, and statutory liability.  Provide is named in twelve claims and EMI is named in five.

1   Plaintiffs allege that Provide and EMI engage in the unlawful conduct together (either by aiding

2   and abetting, agency, joint venture, or conspiracy). *Id.* ¶¶ 14-16.

3   **II.   STANDARD OF REVIEW AND EXTRINSIC EVIDENCE**

4   **A.   Pleading Standards on Motion to Dismiss**

5   "Dismissal can be based on the lack of a cognizable legal theory or the absence of

6   sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

7   F.2d 696, 699 (9th Cir. 1988).  The pleading must contain "enough facts to state a claim to relief

8   that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

9   "All allegations of material fact are taken as true and construed in the light most favorable

10  to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).  The

11  Court is not obligated to accept every conclusory allegation as true; rather, it "will examine

12  whether conclusory allegations follow from the description of facts as alleged." *Holden v.*

13  *Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted).

14  When a complaint contains allegations of fraud, Rule 9(b) requires that the circumstances

15  be stated with particularity.  Fed. R. Civ. P. 9(b).  Generally, this requires plaintiff to state the

16  time, place, and specific content of the representations and to identify the parties. *Odom v.*

17  *Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).

18  **B.   Motion to Strike Documents Outside the Complaint**

19  In ruling on a Rule 12(b)(6) motion, the Court is limited to the facts alleged in the

20  complaint and may not consider extrinsic evidence.  Two exceptions exist.

21  First, the Court may consider authenticated documents attached to or incorporated by

22  reference into the complaint. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *In re*

23  *Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *superceded by statute on other*

24  *grounds*; *Townsend v. Columbia Operations*, 667 F.2d 844, 848 (9th Cir. 1982).  The rule applies

25  to documents that form the basis of a plaintiff's case or documents that are quoted extensively on

26  the theory that such documents are not truly "outside" the complaint. *Branch v. Tunnell*, 14 F.3d

27  449, 453 (9th Cir. 1994).  One purpose of the rule is to prevent a plaintiff from quoting "an

28  isolated statement from a document" in the complaint, when the complete document refutes the

allegations.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)

(consideration of entire document made clear that isolated statement was not fraudulent); *accord*

*Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998) (applying rule to documents "critical

to plaintiff's claims" to prevent "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately

omitting references to documents upon which their claims are based.").  However, the rule is

limited to a document "whose authenticity no party questions."  *Branch*, 14 F.3d at 453.

Second, a Court may consider adjudicative facts that are subject to judicial notice.  *Lee v.*

*City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); Fed. R. Evid. 201 ("A judicially

noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and

ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

Judicial notice is proper only when the matter is "'beyond reasonable controversy.'"  *Rivera v.*

*Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005) (quoting Fed. R. Evid. 201 advisory

committee's note).  A district court cannot take judicial notice of a fact that is subject to

"reasonable dispute" simply because it is contained within the public record.  *Lee*, 250 F.3d at

689-90 (for example, court may take judicial notice of *existence* of court opinion, but not "'the

truth of the facts recited therein.'") (citation omitted).

### 1.    Notice of Violation Letter

Defendant Provide attached a copy of a letter, dated September 24, 2009, in which

Plaintiffs notified the Defendants of the alleged violation of California's Consumer Legal

Remedies Act.  Norton Decl. Ex. A.  Plaintiffs do not oppose the use of the letter.

Provide titled its request as one for judicial notice, but the body of its brief argues that the

notice letter can be considered because Plaintiffs rely on it in their Complaint.  Provide Br. at 23.

The Court construes Provide's request as seeking to introduce the letter in this motion to dismiss

by the incorporation by reference doctrine.  The Complaint refers to this notice.  Compl. ¶ 140.  In

addition, Plaintiffs attached the letter as a Exhibit B to their original complaint.  Accordingly, the

Court will consider the letter as being incorporated into the pleading.  *Silicon Graphics*, 183 F.3d

at 986.

### 2.   Screen Shots of Web Pages[3]

Defendant Provide asks the Court to take judicial notice of eleven exhibits which are screen shots of webpages from the internet.  Plaintiffs object to the exhibits.  These exhibits include an EASYSAVER Rewards popup (or slider) window (Ex. 1), four versions of the EASYSAVER Rewards Policy (Exs. 2-5), four versions of EMI's Enrollment page (Exs 6-9); and two versions of Provide's Privacy Policy (Exs. 10-11).  Provide supports its request with the declaration of Joshua Rabinovitz, Senior Manager for Special Programs at Provide.  Mr. Rabinovitz manages the contractual marketing relationship with EMI.  He states that he "captures" "screenshots" of Provide's and EMI's webpages in the course of his job duties.  Rabinovitz Decl. ¶ 2.  Specifically, he captures the current page whenever new versions are released to the public.  *Id.* Mr. Rabinovitz cross-checked the records of the four named Plaintiffs' orders with the versions of the webpages in effect and accessible on those dates.  *Id.* ¶ 4.

Similarly, Defendant EMI submitted five versions of EMI's enrollment screen.[4] Carson Decl. Ex. 1.  Plaintiffs move to strike these exhibits.  Fed. R. Civ. P. 12(f).  EMI argues the Court can consider the documents under the incorporation by reference doctrine because the Complaint quotes language from the offer details and the "claim your gift code below" screen of the EASYSAVER Rewards sign up screen.  Compl. ¶ 19.  EMI's exhibits are supported by the declaration of EMI's Internet Marketing Director, Lee Carson, who states that the screen was in effect at the time Plaintiff Hunt enrolled in the EASYSAVER Rewards program in May 2009.  Carson Decl. ¶ 2.  He provided five versions of this screen because "the picture at the top of the screen automatically rotates through different images which generally set forth some of the membership benefits offered through the EASYSAVER Rewards program."  *Id.* ¶ 3.

---

[3] The electronically filed versions are in color.  [Doc. Nos. 33-2 & 34-2.]

[4] It is unclear who owns the various webpages, especially what the Court will call EMI's Enrollment page. The Complaint refers to it as "Encore's webpage," Compl. ¶ 19; EMI calls it the "enrollment screen"; and Provide calls it "EASYSAVER Rewards enrollment webpage ('EMI Registration Page')."  It is questionable whether Rabinovitz, an employee of Provide, has the personal knowledge to authenticate webpages controlled by EMI. *See infra* footnote 5 (citing Rabinovitz Decl. ¶ 2 & Exs. 6-9).  Page 2 of EMI's exhibit  appears to correlate to the image on Provide's exhibit 6.  Both of these versions contain EMI's copyright notice at the bottom of the page; however, the screenshot provided by Provide as Exhibit 6, contains web addresses for both Provide and EMI at the top.

1    The Court **DENIES** the request to take judicial notice of the eleven screenshots submitted

2  by Provide.  *In re Poirier*, 346 B.R. 585, 588 (D. Mass. 2006) (taking judicial notice of fact that

3  party maintained website, but not of changing content on webpage); *see generally Rivera*, 395

4  F.3d at 1151 ("Because the effect of judicial notice is to deprive a party of an opportunity to use

5  rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be

6  used in determining that a fact is beyond controversy under Rule 201(b).") (quotation and citation

7  omitted).  The Court finds that whether these are the webpages Plaintiffs would have viewed

8  during their online transactions is subject to "reasonable dispute," Fed. R. Evid. 201, as Rabinovitz

9  states that the pages were changed, modified, and revised over time.[5]  Decl. Rabinovitz ¶¶ 2-3.  It

10  would be inappropriate for the Court to compare and contrast the several versions of the webpages

11  to determine if there are any material differences in the language.  That exercise is best left to the

12  parties in the context of a summary judgment motion.

13    Although judicial notice is not the appropriate avenue to introduce Provide's exhibits, the

14  Court construes Provide's request as one to incorporate documents into the complaint by reference

15  because Provide makes this argument in the body of its brief.  EMI also expressly relies on this

16  doctrine for the five pages it submitted with the Carson declaration.  The incorporation by

17  reference doctrine may apply here, because Plaintiffs quote extensively from Provide's and EMI's

18  _____

19  [5] Both Rabinovitz and Carson state that EMI's Enrollment page is programmed to rotate five different images at the top of the screen.  Decl. Rabinovitz ¶ 3; Decl. Carson ¶ 3 (images alternate every three seconds).

20

21    Although Rabinovitz states that the text of the "Offer Details" and "Claim Your Gift Code Below!" sections on this page remains unchanged, it is not clear that Rabinovitz, as an employee of Provide, has personal knowledge of pages "hosted by EMI."  Rabinovitz Decl. ¶ 5 ("the content appearing below the images remains the same").  Carson's declaration is silent on whether the five versions contain the same language.

22

23

24    A cursory comparison between Provide's exhibits 6 to 9 and the five versions of EMI's exhibit reveal differences in the arrangement of items on the page.  EMI's five pages appear to be arranged in the same manner as Provide's exhibit 7.  But while it appears that Provide's exhibit 7 is visually the same as page 2 of EMI's submission, the identifying numbers in the footer are different ("S/665B" on Provide's but "S133/665B" on EMI's version).

25

26

27    In addition, the Defendants' versions of the Enrollment page vary as to the text below the green acceptance button.  (Text which is not quoted in the Complaint.)  The three paragraphs of text are in a different order on three of Provide's exhibits (Nos. 6, 7, and 9) than those on EMI's copies.  Even when the pages appear to be arranged is a similar layout, the wording of this text is slightly different.  *Compare* Provide's Ex. 7 *with* EMI's Ex. 1 at 2.

28

1  webpages in their Complaint, *e.g.*, Compl. ¶¶ 19, 32, 50-59, 92-101, and the language is critical to

2  most, if not all, of Plaintiffs' claims. *Branch*, 14 F.3d at 453.

3  Plaintiffs argue the Court should not consider the various screenshots based on the law and

4  the facts. Plaintiffs object on the ground that the screenshots are not properly authenticated.

5  Information from the internet does not necessarily bear an indicia of reliability and therefore must

6  be properly authenticated by affidavit. *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d. Cir. 2007);

7  *see In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 769, 782-83 (C.D. Cal. 2004) (in

8  summary judgment motion, requiring a declaration from someone with personal knowledge to

9  authenticate printouts from website). Plaintiffs state they are not in the position to determine

10  whether the exhibits are authentic representations of the webpages. Plaintiffs assert their right to

11  conduct discovery into the circumstances of their production and completeness.

12  Defendant Provide argues that Rabinovitz's sworn declaration is sufficient to authenticate

13  the webpages, and EMI argues that Carson's declaration serves that purpose for its webpages.

14  Fed. R. Evid. 901(b)(1). Defendants ask the Court to reject Plaintiffs' objection to the

15  authentication of the exhibits as specious.

16  The law allows a court to consider extrinsic evidence in a motion to dismiss when it is

17  incorporated into the complaint, however, the rule expressly states that the material must be

18  beyond dispute. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by

19  reference doctrine applies to internet pages if "the parties do not dispute the authenticity of the

20  document"); *Parrino*, 146 F.3d at 705-06 & n.4 (court may consider "a document the authenticity

21  of which is not contested" when it is integral to plaintiffs' claims). In this instance, the

22  requirements of the rule have not been met because Plaintiffs challenge the authenticity of the

23  screenshots. *Hotel Employees & Restaurant Employees Local 2 v. Vista Inn*, 393 F. Supp. 2d 972,

24  979 (N.D. Cal. 2005) (declining to incorporate an extrinsic document when plaintiff raised

25  evidentiary objection). Plaintiffs' objection is not frivolous. Plaintiffs should have an opportunity

26  to question Carson and Rabinowitz on the thoroughness of the process they used to capture

27  changes to the webpage (especially since it is not clear if they were the employees who actually

28

1   input those changes) as well as how they determined that the exhibits reflect the webpage on the

2   dates that the named Plaintiffs visited the website. *See supra* footnote 5.

3        Plaintiffs' factual argument relates to the dynamic nature of internet shopping.

4   Defendants' exhibits present single pages whereas consumers who accessed the site were exposed

5   to a variety of pages with links and scroll bars. *See Flentye v. Kathrein*, 485 F. Supp. 2d 903, 917

6   (N.D. Ill. 2007) (declining to consider defendant's offer of webpages with disclaimers that

7   contradicted allegations in complaint because there was no indication the printouts were the

8   entirety of site, and discovery required to authenticate documents and eliminate any ambiguity).

9   Plaintiffs also state that the website had an audio component that gave verbal instructions on how

10  to obtain a discount on their next purchase from ProFlowers.  The Court agrees, and **GRANTS**

11  Plaintiffs' motion to strike the screenshots as extrinsic evidence to the motion to dismiss.

12       The Court appreciates Defendants' concern that Plaintiffs should not be allowed to artfully

13  plead facts that directly contradict the content of the webpages. *Parrino*, 146 F.3d at 705-06;

14  *Burlington Coat Factory*, 114 F.3d at 1426.  The Court is, however, confident that that problem

15  does not exist in this case.  Defendants have not cited any language from their proposed exhibits

16  that contradicts a quotation from the Complaint.  EMI, in fact, states that its exhibits contain the

17  exact language that Plaintiffs' include in paragraph 19 of the Complaint.  EMI's Opp. to Mot. to

18  Strike at 2-3 (stating that Complaint quotes webpage "verbatim," including same bold face

19  emphasis and uppercase letters).  Importantly, Plaintiffs have not hidden the weakness in their

20  case.  The Complaint reveals that the "offer details" disclosed that clicking a green "accept" button

21  would result in an activation fee charged to the financial account the customer used to purchase

22  flowers.  Compl. ¶ 19.  The parties dispute the adjectives that describe the visual appearance of

23  this language – Plaintiffs describe the offer details as being "in small print, in an obscure location,"

24  but Defendants describe them as being "prominently displayed" "to the immediate left" of the

25  webpage – but these descriptions amount to attorney argument, and they have not impacted the

26  Court's decision on the motions to dismiss.

27       There are, however, a few instances in which the Defendants cite to language in their

28  exhibits that was omitted from the Compliant.  For example, Plaintiffs quote excerpts from two

paragraphs of Defendant Provide's Privacy Policy in their Complaint.  Compl. ¶ 33.  Provide submitted two versions of the complete, twelve-page text of the Privacy Policy.  Exs. 10-11. Another omission exists with respect to the text below the green acceptance button on EMI's Enrollment page.  For simplicity, *see supra* footnote 5, the Court quotes from page 2 of EMI's exhibit, where the green box with the link states "I want my $15 Gift Code now ⇨" (arrow symbol).  Carson Decl. Ex. 1 at 2.  Below the link, the text states, "By entering my details above and clicking the Green Acceptance Button, I am activating my membership in EasySaver Rewards℠ as described in the OFFER DETAILS which I have read and accepted." *Id.*  The next paragraph states, in all capital letters "ENCORE MARKETING INTERNATIONAL (EMI) IS THE OFFERER AND ADMINISTRATOR OF EASYSAVER REWARDS℠." *Id.*  The third paragraph states:  "I don't wish to receive my free $15 Gift Code[,]" which is followed by a box containing the text **"No, thank you."** *Id.*  Finally, Provide cites text from the pop-up window, that "Clicking above will connect you to our Rewards Policy partner."  Rabinowitz Decl. Ex. 1. Defendants refer to these omitted passages in their briefs. *E.g.*, Provide's Mot. Br. at 4-5, 9; Provide's Reply Br. at 4; EMI's Reply Br. at 7.

As discussed below, the Court was able to decide the motions to dismiss without reliance on these passages; had Plaintiffs included this information in their Complaint, the ruling would remain the same.  The Court must accept the truth of Plaintiffs' allegations that they were mislead by the tactics employed to promote the EasySaver Rewards offer.

### 3.   Senate Investigation and Findings

Plaintiffs ask the Court to take judicial notice of two reports by Majority Staff of the United States Senate's Committee on Commerce, Science, and Transportation.  Plaintiffs contend the two government reports are matters of public record that are not subject to reasonable dispute. Defendants object.

The Court takes judicial notice of the fact that the Senate Committee investigated "aggressive" sales techniques on the internet.[6]  The Senate defined "aggressive" internet sales

---

[6] Pls. Exs. 1 (Staff of S. Comm. on Commerce, Sci., and Transp., Office of Oversight and Investigations, Majority Staff Report for Chairman Rockefeller, 111th Cong., Supplemental Report (continued...)

1    tactics to include an offer, during the post-transaction phase of an online purchase from a website,

2    for a cash back reward that appears related to the current purchase.  Pls.' Ex. 2 at i; *id.* at 1 ("A

3    prominent feature of the post-transaction offers is up-front gifts, such as '$10 Cash Back on Your

4    Next Purchase!'").  The unfamiliar company's membership offer uses terms like "Yes" and

5    "Continue" that "cause consumers reasonably to think they are completing the original

6    transaction," but instead they are automatically transferring their credit or debit card information

7    to another company.  *Id.* at i-ii.  "After a 30-day 'free trial' period, the [unfamiliar companies]

8    begin charging the consumer a monthly fee of $10-$20 dollars until the consumer cancels the

9    membership." *Id.* at ii.

10         The Court also takes judicial notice that Defendants Provide and EMI are *not* among the

11   companies that the Senate investigated or discussed in the reports.  Pls.' Ex. 2 at i & 8 (naming

12   three companies in Connecticut).

13         The Court will not, however, consider the findings within the Senate's reports.  As the

14   Defendants correctly note, the facts can be disputed, the findings pertained to other companies,

15   and the conclusions involve interpretation, opinion, and judgment.  *Lee*, 250 F.3d at 690 (district

16   court erred in taking judicial notice of disputed facts stated in public records, such as whether

17   waiver was voluntary); *United States v. Southern Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D.

18   Cal. 2004) (court cannot take judicial notice "of the *veracity* of the arguments and disputed facts"

19   in public documents); *see also Northwest Envtl. Def. Ctr.  v. Bonneville Power Admin.*, 477 F.3d

20   668, 684 (9th Cir. 2007) (a Congressional committee report that did not become a statute is not

21   binding).

22         In a related request, Plaintiffs ask the Court to take judicial notice of a decision by an Iowa

23   State Court which is referred to in the Senate's Staff report.  Pls. Ex. 3.  The Court **DENIES** this

24

25         [6](...continued)

26   on Aggressive Sales Tactics on the Internet (May 19, 2010) & 2 (Staff of S. Comm. on Commerce,
     Sci., and Transp., Office of Oversight and Investigations, Majority Staff Report for Chairman
     Rockefeller, 111th Cong., Aggressive Sales Tactics on the Internet and Their Impact on American

27   Consumers (Nov. 16, 2009); *Lee*, 250 F.3d at 689 (taking judicial notice of fact that extradition
     hearing was held and individual signed waiver of extradition form); *Del Puerto Water Dist. v. U.S.*

28   *Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1234 (E.D. Cal. 2003) (taking judicial notice of
     existence of Senate and House reports, but not their disputed content).

1    request.  *Cf. United States v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). Plaintiffs may cite

2    the decision for whatever persuasive value it may have.

3    **III.    BREACH OF CONTRACT CLAIMS**

4           The elements of a breach of contract claim are (1) the existence of a contract, (2) plaintiff's

5    performance (or excuse for non-performance), (3) defendant's breach, and (4) resulting damages.[7]

6    *Reichert v. General Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968).

7           **A.    Defendant Provide**

8           Plaintiffs allege Defendant Provide breached the EasySaver Rewards Policy, terms of

9    conditions of use, and the Privacy Policy by sharing their payment information with EMI without

10   their authorization.  Compl. ¶¶ 50, 51, 54, 55.  Provide allegedly "breached its agreement by

11   assuring customers that they would not be enrolled in the EasySaver Program without giving

12   explicit permission."  *Id.* ¶ 54.  Plaintiffs allege the agreements posted on the webpages could not

13   be altered by the consumers and therefore constitute contracts of adhesion.  *Id.*  ¶ 52.  Moreover,

14   the terms are allegedly ambiguous, misleading, confusing, unconscionable, and unenforceable.  *Id.*

15   ¶¶ 52, 56, 57.

16          **1.   *In re Vistaprint Corp.***

17          Both Defendants cite an unpublished district court decision from Texas to support their

18   argument that the EasySaver Rewards offer, as a matter of law, is not misleading or deceptive.  *In*

19   *re Vistaprint Corp. Marketing and Sales Prac. Litig.*, 2009 WL  2884727, *4-8 (S.D. Texas 2009).

20   Although the plaintiffs in *Vistaprint* did not allege a breach of contract claim, Defendants rely on

21   the case at several points in their motions.  Provide's Mot. Br. at 8-11, 27-28; EMI's Mot. Br. at 2,

22   8-9, 14, 16.  Defendants state the case involved a "virtually identical" internet marketing

23   technique.  There, the district court found that the pop-up window at the completion of a sale that

24   offered a thank you gift used clear language to disclose that customers were authorizing charges to

25   _____

26        [7] The Complaint states that Provide's website contains a choice of law provision that
     California law applies, whereas EMI's website indicates that Maryland law governs
27   membership disputes. Compl. ¶¶ 10-11. EMI has not suggested that the elements of a contract
     action are different in Maryland than they are in California.  *See generally* Rosemary E.
28   Williams, Maryland Law Encyclopedia § 1 (2010) ("A contract is defined as an agreement
     which creates an obligation or a promise or set of promises for breach of which the law gives
     a remedy.").  Plaintiffs cite Maryland case law in their opposition brief.

their debit cards to join the rewards program.  Defendants urge this Court to follow that analysis and hold that no reasonable consumer could have been deceived by the EasySaver enrollment process or the terms of the offer.

The Court is not persuaded by Defendants' reliance on *Vistaprint*.  *See Starbuck v. San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977) (published district court decisions are only persuasive authority to another district court).  Defendants' vociferous argument depends upon the Court rejecting and ignoring the plain allegations of the Complaint that consumers were confused and deceived by the EasySaver offer.  *E.g.*, Compl. ¶¶ 28, 31, 35, 36, 38.  The reasonableness of a particular customer's expectations about shopping on the internet and dealing with pop-up windows offering a thank you gift cannot be determined from the face of this Complaint.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct.");  *Holden*, 978 F.2d at 1121.  At this early pleading stage of the litigation, the Court accepts as true, and as plausible, the Plaintiffs' allegations that they were deceived into authorizing separate charges to their debit cards simply by typing in their e-mail address for a complimentary gift.   Other courts have denied motions to dismiss on similar facts.  In a published decision, a district court from the Northern District of California held that plaintiffs stated claims against a rewards program where consumers alleged they had been automatically enrolled in membership program through a pop-up advertisement, without their consent, that charged monthly fees to their financial accounts unless the consumer affirmatively canceled.  *Nordberg*, 445 F. Supp. 2d at 1087-88 (holding plaintiffs stated various claims for relief and granting leave to amend to cure other claims).

## 2. **Elements of Contract Claim**

Turning to the required pleading elements, Provide argues the Complaint does not identify an actionable contract but instead relies upon general statements of policy.  *Beverage Distrib., Inc. v. Olympia Brewing Co.*, 440 F.2d 21, 29 (9th Cir. 1971) ("A gratuitous and unsolicited statement of policy or of intention which receives the concurrence of the party to whom it is addresses, does not constitute a contract.").  The Court rejects this argument because the Complaint, when read as

09CV2094

a whole, relies on the Plaintiffs' purchases of flowers from Provide's ProFlowers.com internet store. *Id.* ¶¶ 9, 19. The terms of use, Privacy Policy, and the EasySaver Rewards Policy that appear on Provide's web page are part of that contract.

Provide also argues the Privacy Policy is not applicable based upon its interpretation of specific clauses (that are not quoted in the Complaint) which allowed it to transfer data to third parties like EMI. *See e.g.*, Rabinowitz Decl. Exs. 10 ¶ 10 & 11 ¶ 10. Provide argues it did not breach the terms of the Privacy Policy because the word "authorization" does not appear anywhere in that twelve-page document.

Even if the Court had not stricken any exhibits from this motion, however, Plaintiffs have alleged that "[t]o the extent Provide-Commerce's policy allows it to transmit its consumers' personal and Private Payment Information to Encore without consumers' informed consent or authorization, the policy is deceptive, unfair and unconscionable." Compl. ¶ 34. The Complaint contains sufficient factual allegations to support a claim that Provide would not share its customers' financial information beyond that which was necessary to complete the flower order. Interpretation of the disputed contract terms must await summary judgment.

Provide next suggests Plaintiffs did not give any consideration in exchange for the EasySaver Rewards Policy because it was accessible only after Plaintiffs purchased flowers. *Passante v. McWilliam*, 53 Cal. App. 4th 1240, 1247 (1997) ("Past consideration cannot support a contract."). This argument fails because, taken as a whole, the Complaint alleges that the gift code offer and the accompanying EasySaver Rewards program were part and parcel of the underlying flower purchase. *See Martin v. World Sav. & Loan Ass'n*, 92 Cal. App. 4th 803, 809 (2001). In any event, Plaintiffs were charged $1.95 to enroll in the program, and Plaintiffs allege that Provide shared the proceeds with EMI. *E.g.*, Compl. ¶¶ 15, 21, 32.

Provide also argues Plaintiffs have not alleged damages. The activation fee satisfies the damages element. *See e.g., id.* ¶ 30 ("unauthorized charges caused Plaintiff Hunt to bounce several checks").

As to Provide's related argument that it cannot be held accountable for any breach by EMI of the EasySaver Rewards program, the Complaint contains sufficient allegations to defeat the

Rule 12(b)(6) motion.[8]  *See Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 1002-03 (N.D. Cal. 2007) (at pleading stage, plaintiffs alleged sufficient facts of direct conduct by parent corporation, even though it was not a party to agreement between consumers and its subsidiary).  Namely, Provide describes the EasySaver Rewards Policy as "our" program and describes EMI as a "partner."  Compl. ¶ 32.  The Complaint adequately alleges Provide's role in transmitting Plaintiffs' financial information to EMI without their knowledge or permission.  *E.g., id.* ¶ 15 ("Provide-Commerce contracted with Encore explicitly to create and implement the EasySaver Rewards and to jointly promote and operate the EasySaver Program"); *id.* ¶ 31 ("Provide-Commerce and Encore together engaged, and continue to engage, in systematic nationwide practice of making unauthorized charges to consumers' credit cards, debit cards and Paypal accounts under the guise of the EasySaver Rewards program."); *id.* ¶ 32 ("Provide-Commerce is equally complicit in this scam and liable for the damages it caused because, among other things, Defendants jointly operated and profited from the EasySaver Rewards program.").

This disposes of Provide's related attack that the Complaint does not allege Provide "caused" Plaintiffs' damages.  Plaintiffs state that "the only way Encore could gain access to consumers' Private Payment Information was with Provide-Commerce's participation." *Id.* ¶ 32. In addition, some Plaintiffs allege they never received the promised $15 gift code that could be used on their next order from ProFlowers.com.  *E.g., id.* ¶ 21, 29.

The Court **DENIES** Defendant Provide's motion to dismiss the breach of contract claim.

### B.     Defendant EMI

A similar breach of contract claim is brought by Plaintiff Hunt (and the proposed subclass B, those consumers who completed the enrollment page) against Defendant EMI.  Compl. ¶¶ 67-72.  Plaintiff Hunt alleges she "did not knowingly consent to join the EasySaver Reward program" because she "provided her email address and zip code with the understanding that the information was necessary to complete her transaction with ProFlowers and receive a complimentary Gift

---

[8]Provide repeats this argument throughout its motion to dismiss.  The Court rejects it as to all causes of action except the two federal statutory claims.

Both Defendants argue a variety of minor points in its briefs which the Court determined lack merit, and therefore, has not expressly addressed in this Order.

09CV2094

Code." *Id.* ¶¶ 68-69.  But if she is bound by the terms of the EasySaver Rewards program, she alleges that EMI breached the contract by failing to provide the purported benefits and savings. *Id.* ¶ 70.  The Complaint also alleges the terms are unconscionable and unenforceable.  *Id.* ¶ 71.

EMI argues that, by her own admission, Hunt entered her email address and clicked the acceptance button; therefore, Hunt accepted the terms in the Offer Details which informed her that her credit card or PayPal information would be transferred and used to secure the $1.95 activation fee and subsequent monthly membership fee.  *Id.* ¶ 19 (quoting Offer Details on EasySaver Rewards sign up screen); *id.* ¶ 28 (Hunt entered her email address and zip code and clicked the green acceptance button).  EMI argues the Court can disregard Hunt's conclusory allegation that she did not know she was signing up for the program because it is flatly contradicted by the express terms of the offer, which are displayed on the same webpage.  EMI's Mot. Br. at 8.

This argument ignores that Plaintiff Hunt pleads the contract claim in the alternative to her claim that she did not knowingly enter into a contract with EMI.[9]  Moreover, Plaintiffs allege that to the extent they are bound by the terms of the rewards program, they never received the promised benefits and savings.  *E.g.*, Compl. ¶¶ 21, 24, 70.  That alone suffices to state a breach of contract claim against EMI.  Accordingly, the Court **DENIES** EMI's motion the breach of contract claim.

## IV.   BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The Fifth cause of action alleges that Provide breached the implied covenant of good faith and fair dealing.  Compl. ¶¶ 70-91.  Provide argues the claim must be dismissed as duplicative because it does not allege conduct different from the breach of contract claim.  *Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1392-95 (1990).

Here, the Complaint alleges that Provide, by sharing consumers' financial account numbers with EMI, "unfairly interfered with Plaintiffs and Class members' rights to receive the security and privacy benefits they were entitled to under the contract."  Compl. ¶ 82.  Construing the

---

[9] EMI argues, as a matter of law, that Hunt could not have been deceived because by clicking the acceptance button, she is bound by the statement that she "read and accepted" the Offer Details.  That text is not in the Complaint, but even if the Court had not stricken the exhibit, the Court would deny the Rule 12(b)(6) motion.  Hunt's alleged confusion is plausible.

1  factual allegations in the light most favorable to Plaintiffs, the Court concludes Plaintiffs have

2  satisfied the pleading requirement of alleging Provide unfairly frustrated a benefit of the contract,

3  that is, the confidentiality of the financial information they used to buy flowers on the internet.

4  *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000) ("The covenant of good faith and fair

5  dealing, implied by law in every contract, exists merely to prevent one contracting party from

6  unfairly frustrating the other party's right to receive the benefits of the agreement actually made.")

7  (emphasis omitted).    Plaintiffs also allege the online contract was written by Provide in

8  ambiguous terms that could not be modified by the customer and therefore constitutes a contract of

9  adhesion.  Finally, the claim is not duplicative of the contract claim because it seeks tort recovery

10  of punitive damages.  *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal.

11  2004) (citing *Careau*, 222 Cal. App. 2d at 1395).

12         The Court **DENIES** Provide's motion to dismiss this cause of action.

13  **V.    DECLARATORY RELIEF**

14         Defendant Provide is named as the defendant in the second claim for declaratory relief,

15  while Defendant EMI is named in the fourth claim by Plaintiff Hunt and proposed sub-class B.

16  Compl. ¶¶ 60-66, 73-78.  Plaintiffs ask the Court to declare that the Defendants' putative contracts

17  are void on the ground that they are unconscionable.  *Id.* ¶¶ 64, 78.

18         Both Defendants argue the request for declaratory relief duplicates Plaintiffs' other causes

19  of action and is therefore unnecessary.  The law, however, permits a plaintiff to seek declaratory

20  relief as to the rights and validity of a contract.  Cal. Civ. P. Code § 1060; 28 U.S.C. § 2201.

21  Plaintiffs are permitted to plead alternative theories of relief.  Fed. R. Civ. P. 8(d)(2).  Unlike the

22  decisions cited by Defendants, the Court concludes Plaintiffs' request for declaratory relief is

23  appropriate because it is premised on other, surviving claims.  Fed. R. Civ. P. 57 ("The existence

24  of another adequate remedy does not preclude a declaratory judgment that is otherwise

25  appropriate."); *California v. Kinder Morgan Energy Partners, L.P.*, 569 F. Supp. 2d 1073, 1090

26  (S.D. Cal. 2008) (refusing to dismiss declaratory relief claim which was "properly premised on the

27  other, valid claims" in complaint).

28

1    The Court **DENIES** Provide's and EMI's motions to dismiss the request for declaratory

2    relief.

3    **VI.    FRAUD CLAIMS**

4         Plaintiffs plead several tort and statutory claims against Defendant Provide that are

5    grounded in fraud and deceit by misrepresenting and concealing material facts.  The Sixth cause of

6    action alleges negligent misrepresentation and the Seventh cause of action is for intentional fraud.

7    Compl. ¶¶ 92-121.  The Eighth cause of action alleges violations of California's Consumers Legal

8    Remedies Act ("CLRA").  Compl. ¶¶ 122-141.  That statute prohibits deceptive practices in

9    consumer transactions.  Cal. Civ. Code § 1770(a).  Plaintiffs' false advertising claim is based upon

10   California's Unfair Practices Act.  Cal. Bus. & Prof. Code § 17500.  The Fourteenth claim is

11   brought pursuant to California's Unfair Competition Law, which prohibits "unlawful, unfair or

12   fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal.

13   Bus. & Prof. Code § 17200.

14        **A.    Rule 9(b): Pleading Fraud with Particularity**

15        Provide argues the allegations in these fraud-based claims do not satisfy the heightened

16   pleading standard required by Rule 9(b).  "Rule 9(b) requires the identification of the

17   circumstances constituting fraud so that the defendant can prepare an adequate answer from the

18   allegations."  *Odom*, 486 F.3d at 553 (quotations and citations omitted).  "The pleader must state

19   the time, place, and specific content of the false representations as well as the identities of the

20   parties to the misrepresentations."  *Id.* (quotations and citations omitted).

21        First, Provide argues the Complaint does not identify a single actionable statement, but

22   instead relies on vague allegations that the rewards program was "legitimate" and the gift was

23   "free."  Provide's Br. at 19.  The Court, however, concludes the Complaint contains the details

24   required by Rule 9(b) so that Provide can respond to the fraud claims.  The alleged

25   misrepresentations were made when Plaintiffs purchased flowers on Provide's website.  The

26   claims are straightforward.  They rely on two primary misrepresentations/concealments.  First, the

27   Complaint alleges that Provide promised "it would not disclose their Private Payment Information

28   to Encore unless authorized to do so," yet Provide concealed the fact that it intended to transmit

1   Plaintiffs' financial information to EMI regardless of whether it had authorization to do so.

2   Compl. ¶ 93; *id.* ¶¶ 32-35; *id.* ¶ 94 (negligent misrepresentation); *id.* ¶ 104-05 (fraud); *id.* ¶ 132-34

3   (CLRA); *id.* ¶ 144 (false advertising); *id.* ¶ 175-76 (unfair competition/unlawful business

4   practices).  The other central claim is that Provide characterized the EasySaver Reward program as

5   legitimate (under the guise of offering a free gift code to use with their next purchase), when it

6   knew it was a sham.  *Id.* ¶ 93; *id.* ¶¶ 32-35; *id.* ¶ 95 (negligent misrepresentation); *id.* ¶ 106-07,

7   112 (fraud); *id.* ¶ 132-34 (CLRA); *id.* ¶ 144 (false advertising); *id.* ¶ 176 (unfair

8   competition/unlawful business practices).  Plaintiffs have explained why the statements are

9   allegedly false and misleading.  *E.g., id.* ¶¶ 1-4, 31, 107, 118, 138, 144 (Provide entices customers

10  with free gift, transmits debit card information under that guise, and unwittingly enrolls customers

11  in an illusory savings programs that they would not have joined absent the subterfuge).  Provide

12  has ample "notice of the particular misconduct . . . so that they can defend against the charge."

13  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

14      Provide next argues that the Complaint lumps the two co-defendants together so that

15  Provide cannot identify the statements it is alleged to have made from those made by EMI.  The

16  Court rejects this argument.  The Complaint alleges that part of the deceptive quality of EasySaver

17  Rewards program is that it is difficult for consumers to determine when they have be re-directed

18  from Provide's webpage to EMI's separate website.  *E.g.*, Compl. ¶ 28.  The customers were re-

19  directed to EMI's webpage *with Provide's assistance* since they were visiting the ProFlowers

20  website.  *Id.* ¶ 32.  Any ambiguity in the pleading is attributable to Defendants' description of their

21  partnership on the webpages.[10]  *E.g., id.* ¶ 32 (quoting EasySaver Rewards Policy).  In addition,

22

23      [10] In their briefs, Defendants refer to each others' "partner" websites.  Provide states that
24  it "promotes" EasySaver Rewards, but describes EMI as the "administrator" of the program
    pursuant to "a confidential marketing agreement."  Provide's Br. at 3; EMI's Br. at 1.

25      Provide also argues that language omitted from the Complaint clearly refutes this
26  allegation.  Provide relies on the statement on the pop-up that clicking the link "connects you
    to our Rewards Policy partner" and a statement on the Enrollment page that EMI is the "offerer
27  and administrator" of the rewards program.  The Court is not persuaded this additional
    language would dispel the confusion Plaintiffs claim they experienced when the pop-up
28  window appeared on ProFlowers' webpage.  For the purpose of this motion, the Court accepts
    the truth of the allegations that customers thought they were dealing with ProFlowers as they
    completed their purchase of flowers and offered a coupon on their next purchase.

the Complaint contains facts, *see supra* footnotes 4 & 7, that support the Plaintiffs' allegations of joint liability.  Compl. ¶¶ 14-16 (alleging aiding and abetting, joint venture, and conspiracy). Plaintiffs have not yet conducted discovery on the true nature of the business relationship between Provide and EMI.  In the interim, the Court finds the pleading sufficient to support the allegation that the two defendants were acting in concert to their mutual benefit.

In sum, Plaintiffs have satisfied Rule 9(b).  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986).

**B.    Elements of Common Law Fraud Claims**

The elements required to establish Plaintiffs' common law fraud claims are the same, with the exception that intent is not required for negligent misrepresentation.  The elements of an action for fraud or deceit are (1) misrepresentation (false misrepresentation, concealment, or nondisclosure); knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage.  5 Witkin, Summary of Cal. Law, Torts § 772 (10th ed. 2005).  "The elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage."  *Blickman Turkus, L.P. v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868 (2008) (citations and quotation omitted).

Provide characterizes the statements as opinions about future events, which were dependent upon the actions of third parties.  The Court does not agree that the alleged misstatements fall within the category of an non-actionable opinion.  *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 718-19 (2002) (distinguishing statement of past or existing fact from opinion).

Provide also argues the Complaint fails to identify when during the transactions the Plaintiffs saw these materials prior to placing the ProFlowers order.  Plaintiffs had to give their credit or debit card information to purchase flowers so Defendant contends the Privacy Policy (if

Plaintiffs read it) did not impact that decision.  The EasySaver Rewards window did not pop-up until after Plaintiffs completed their flower order.  On these facts, Provide argues Plaintiffs cannot establish the element of reliance.  *Bank of St. Helena v. Lilienthal-Brayton Co.*, 89 Cal. App. 258, 263 (1928) ("there can be no reliance on statements which do not come to the knowledge of the contracting party until after he has consummated the transaction").[11]

It is unclear from the Complaint when and where the Privacy Policy appears on Provide's webpage.  The Court reads the Complaint, however, to allege that the Privacy Policy was part of the underlying contract between Plaintiffs and Provide to buy flowers.  Whether or not Plaintiffs read the Privacy Policy or had adequate notice of it is a question of fact that cannot be determined in a Rule 12(b)(6) motion.  *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29-32 (2d Cir. 2002) (Sotomayor, J.) (applying California law to arbitration clause on website and finding consumers did not manifest assent to terms only accessible by using scroll bar).  The Complaint further alleges the consumer is deceived by the tactic of offering a discount on their next ProFlowers purchase, but that they never receive the $15 gift code.  Taken as a whole, the Court finds the Complaint fulfills the requirement of pleading reliance.

### C. Procedural Requirements of Consumer Legal Remedies Act

Defendant Provide argues Plaintiffs' Consumer Legal Remedies Act ("CLRA") claim fails because they did not comply with two of the statute's pre-conditions of notice.  "The CLRA's notice requirement is not jurisdictional, but compliance with this requirement is necessary to state a claim."  *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007).

---

[11] Plaintiffs argue that reliance can be presumed.  The Court rejects this argument.  The cases Plaintiffs cite for this proposition dealt with motions to certify a class.  *E.g.*, *Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971).  The California Supreme Court has expressly stated that "[i]t is settled that a plaintiff, to state a cause of action for deceit based on a misrepresentation, must plead that he or she actually relied on the misrepresentation."  *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1088 (1993).  The Supreme Court held that plaintiffs must plead actual reliance on both negligent misrepresentations and omissions.  *Id.* at 1088-93 & n.2  The plaintiffs in *Mirkin* conceded they had never read the alleged misrepresentations.  *Id.* at 1088.

A fair reading of the Complaint indicates that Plaintiffs have alleged both misrepresentations and concealment.  Thus, the Court does not address Plaintiffs' argument about the differences between pleading these two types of fraud.

09CV2094

1      First, the statute requires a plaintiff to file an affidavit of proper venue.  Cal. Civ. Code §

2    1780(d).  Provide complains that when Plaintiffs filed the original complaint, Bobbi Sledge

3    submitted the affidavit, but she is no longer one of the named Plaintiffs.  Provide argues the Court

4    must dismiss the CLRA claim.

5      The Court rejects this argument.  The purpose of the rule has been satisfied.  When this

6    putative class action commenced, Provide was notified that Sledge was complaining on her own

7    behalf and all others similarly situated.  Norton Decl. Ex. A at 1.  The notice identified the facts

8    showing that the action was properly commenced in San Diego County.  The Consolidated

9    Complaint accurately states that the declaration establishing venue "was submitted and previously

10   attached to the original complaint filed in this case."  Compl. ¶ 131.

11     Second, before a lawsuit can be filed, the CLRA requires the consumer to notify the

12   defendant of "the particular alleged violations" and demand that they be corrected.  Cal. Civ. Code

13   § 1782(a).  Provide argues that Plaintiffs' pre-filing notice was defective because it did not

14   describe Plaintiff Hunt's circumstances, that is, consumers who entered their email addresses and

15   clicked the acceptance button, but who did not want to enroll in the EasySaver Rewards program.

16   Provide also argues the letter did not give notice of two particular sub-sections of the statute.

17   Plaintiffs allege in the Complaint that Provide violated § 1770(a)(13) by "making false or

18   misleading statements of fact concerning reasons for, existence of, or amounts of price reductions"

19   and § 1770 (a)(19) by "inserting an unconscionable provision in the contract."  Compl. ¶ 133(d) &

20   (g).  Provide argues the CLRA claims as to Plaintiff Hunt and subclass B and § 1770 (a)(13) and

21   (19) should be dismissed.

22     The Court finds Plaintiffs' notice letter satisfies the pre-filing notice requirement because it

23   explicitly alleges violations of CLRA.  *Strickrath*, 527 F. Supp. 2d at 1001-02 (rejecting "assertion

24   that the notice failed to describe the alleged violations with the requisite specificity" when purpose

25   of giving defendant "sufficient notice of alleged defects to permit appropriate corrections" had

26   been met).  The first page of the letter explains in plain language the conduct that Plaintiffs allege

27   violates the statute.  The second page lists five sub-sections of the CLRA, and asks for specific

28

1  corrections and remedies.  The content of the letter suffices to put Provide on notice of the alleged

2  CLRA violations.  *Id.*

3        As to the particular circumstances of Plaintiff Hunt's experience on the web page, the

4  Court is not persuaded that the omission is fatal.  The notice letter describes those consumers who

5  "declined" the EasySaver Rewards Offer, the unauthorized debit charges, and the illusory nature

6  of the promised rewards.  Norton Decl. Ex. A at 1.  Hunt's experience on the webpage, though

7  slightly different, is well within the scope of those complaints; thus, the purpose of the notice letter

8  was satisfied.  Provide was given an opportunity to correct the alleged wrongs thirty days before

9  Plaintiffs filed their lawsuit.  *Morgan v. AT&T Wireless Serv., Inc.*, 177 Cal. App. 4th 1235, 1260-

10  61 (2009).  By contrast, in the cases cited by Provide, the plaintiff failed to write a letter, or sent

11  the letter after filing the complaint.  *Cattie*, 504 F. Supp. 2d at 950 (collecting cases).

12        Therefore, the Court **DENIES** Provide's motion to dismiss for failure to comply with the

13  notice requirement.

14  **VII.    CONVERSION**

15        Plaintiffs allege Defendant Provide wrongfully converted their Private Payment

16  Information and the money charged to enroll them in the EasySaver Rewards program.  Compl. ¶

17  149.  Plaintiffs define "Private Payment Information" as the consumers' credit card, debit card

18  and/or PayPal account information.  Compl. ¶ 1.  Provide argues that neither the intangible

19  financial information nor the fees ($1.95 to enroll and $14.95 monthly membership charge) qualify

20  as "property" that can be converted.

21        Conversion is the "wrongful exercise of dominion over personal property of another."  5

22  Witkin, Summary of Cal. Law, Torts § 699 (2005); *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th

23  445, 451-52 (1997) (setting forth elements).  Historically, the tort was limited to tangible property

24  and did not apply to intangible property (with an exception for intangible property represented by

25  documents, such as stock certificates).  5 Witkin, §§ 701-702.  Modern courts, however, have

26  permitted conversion claims against intangible interests such as checks and customer lists.  *Acme*

27  *Paper Co. v. Goffstein*, 125 Cal. App. 2d 175, 179 (1954); *Palm Springs-La Quinta Dev. Co. v.*

28  *Kieberk Corp.*, 46 Cal. App. 2d 234 (1941) (conversion of index cards with information on

potential customers, including their financial standing); *see Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559 (1996) (leaving open question whether confidential codes to gain computer access could be converted because trespass to personal property claim existed); *see generally Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) (noting modern rejection of hard line between tangible and intangible property and holding plaintiff could state conversion claim as to internet domain name).

Similarly, the original tort did not apply to money.  Witkin, Torts § 703 ("Money cannot be the subject of conversion unless a *specific identifiable sum* is involved."); *Baxter v. King*, 81 Cal. App. 192, 194 (1927) ("where the money or fund is not identified as a specific thing the action is to be considered as one upon contract or for debt and not for conversion").  Courts created an exception when an agent accepts an identifiable sum of money to be paid to another but fails to make that payment.  *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 396 (2007) ("California cases permitting an action for conversion of money typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others."); *e.g.*, *Haigler v. Donnelly*, 18 Cal. 2d 674, 681 (1941) ("defendant, acting as agent for plaintiffs, received stipulated sum of money belonging to plaintiffs and refused to account for it after a proper demand."); *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1491 (2006); *Farmers Ins.*, 53 Cal. App. 4th at 452; *Weiss v. Marcus*, 51 Cal. App. 3d 590, 599 (1975).

Although there is no clear authority, the Court concludes that Plaintiffs may state a conversion claim based upon the misappropriation of their Private Payment Information, which was then used to make allegedly unauthorized debits from their financial accounts.  Possession of the debit card or PayPal account information is similar to the intangible property interest in a check.  *Acme Paper*, 125 Cal. App. 2d at 179.  Plaintiffs assert the right to control the use of their Private Payment Information, which can be used to withdraw funds from their bank accounts.  *See In Re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1323 (S.D. Fla. 2010) (applying California law, holding that conversion action is available for wrongful debiting of funds from customer's account because it interfered with plaintiffs' right to possess and use those funds).

1   Provide argues Plaintiffs have not shown their exclusive right to control the payment
2   information on the theory that Plaintiffs authorized Provide to transmit the information to EMI.
3   This conclusory statement however directly contradicts the allegations in the Complaint that the
4   consumers did not knowingly or affirmatively authorize Provide to transmit their banking
5   information to EMI.  Plaintiffs contend that no reasonable consumer would know that entry of
6   their email address would permit Provide to give the Plaintiffs' financial information to EMI.

7   Plaintiffs' conversion claim is arguably based upon certain sums of money (namely a $1.95
8   enrollment fee and subsequent monthly membership fees of $14.95).  California courts have
9   loosened the historic restrictions on the tort, such that "it is not necessary that each coin or bill be
10  earmarked." *Haigler*, 18 Cal.2d at 681.

11  The Court **DENIES** Provide's motion to dismiss the conversion claim for failure to state a
12  claim upon which relief can be granted.

13  **VIII.   UNJUST ENRICHMENT**

14  Plaintiffs name both Defendants Provide and EMI in the unjust enrichment claim.  Compl.
15  ¶¶ 155-58.

16  Defendants argue that California does not recognize a cause of action for unjust
17  enrichment.  Provide cites two unpublished district court decisions for that statement; however,
18  California courts permit a plaintiff to invoke the doctrine of unjust enrichment.  *E.g.*, *First
19  Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1663-64 (1992) (restitution available when
20  defendant unjustly enriched at expense of plaintiff).  Defendants also argue that the claim
21  duplicates that Plaintiffs' request for restitution.  Plaintiffs, however, are permitted to seek
22  alternative remedies in their complaint.  *Id.*

23  The Court **DENIES** Defendants' motions to dismiss the unjust enrichment claim.

24  **IX.   ELECTRONIC FUNDS TRANSFER ACT**

25  Plaintiffs allege both Defendants violated the federal Electronic Funds Transfer Act
26  ("EFTA").  This consumer rights statute establishes the rights, liabilities, and responsibilities of
27  participants (consumers, financial institutions, and intermediaries) in electronic fund transfer
28  systems.  15 U.S.C. § 1693.  It governs, for example, automatic direct payroll deposits,

- 26 -                                                    09CV2094

1 transactions at automated teller machines, and debit card purchases at retail or online shops. *See*

2 *id.* § 1693a(6), (7).  Plaintiffs Hunt, Romero, and the members of proposed sub-class C allege that

3 Defendants engaged in "unauthorized" transfers by debiting their bank accounts for the activation

4 fee and monthly membership charges for the EasySaver Rewards program.  Compl. ¶¶ 21, 29, 161-

5 62.  Plaintiffs contend the electronic fund transfers were made without their permission, without

6 obtaining prior written authorization, without providing copies of their purported authorizations,

7 and without providing reasonable notice of the amount to be transferred or the scheduled date of

8 the transfer.  *Id.* ¶¶ 5, 165

9      **A.**   <u>**Defendant Provide**</u>

10      Provide moves for dismissal on the ground that the facts alleged establish it did not engage

11 in unauthorized billing.  *Cf. Azose v. Washington Mut. Bank*, 588 F. Supp. 2d 366, 372 (E.D.N.Y.

12 2008) (owner of automatic teller machine was not liable for the bank's violations of EFTA and

13 vice versa).

14      This argument has merit.  Plaintiffs do not allege the electronic funds transfer to pay

15 Provide for the flowers violated EFTA; instead, Plaintiffs challenge the transactions to pay EMI

16 for the EasySaver Rewards program.  The facts state that EMI was the party who charged

17 Plaintiffs' debit cards.  *E.g.*, Compl. ¶¶ 21, 24, 26, 29, 31.

18      Plaintiffs offer no case law to support their theory that this *federal* statute applies to one

19 who aids and abets another's violation.  *Cf. Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 93-

20 97 (2007) (applying aider and abettor liability to California's unfair competition statute).

21 Plaintiffs fail to identify any such language in the statute, regulations, or official commentary.

22 "Congress has not enacted a general civil aiding and abetting statute."  *Central Bank of Denver,*

23 *N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994).  Consequently, "when

24 Congress enacts a statute under which a person may sue and recover damages from a private

25 defendant for the defendant's violation of some statutory norm, there is no general presumption

26 that the plaintiff may also sue aiders and abetters."  *Id.*  at 175-77 & 181-85 (holding federal

27 securities laws do not allow claims based upon aiding and abetting a primary violation because

28 statute was silent and Congress "knew how to impose aiding and abetting liability when it chose to

1   do so").  The Court concludes the EFTA does not reach those who aid and abet a statutory

2   violation.

3         Therefore, the Court **GRANTS** Provide's motion to dismiss it from the EFTA claim.  The

4   dismissal is with prejudice because the claim cannot be amended to overcome this legal problem.

5         **B.**      **Defendant EMI**

6         Defendant EMI attacks the EFTA claims of two named Plaintiffs based upon their specific

7   circumstances.

8               **1.**      **Plaintiff Romero**

9          As to Plaintiff Romero, EMI argues the facts supporting his claim do not meet the

10  definition of an "account."  Romero alleges he "did not want to become a member of EasySaver

11  Rewards and did not provide his email address and zip code to receive the $15.00 Gift Code.  Nor

12  did he click the green acceptance button.  Instead he clicked on the 'X' at the top right corner of

13  the webpage to close the window."  Compl. ¶ 20.  Nonetheless, EMI charged fees on Romero's

14  debit card.  *Id.* ¶ 21.  EMI argues Romero "never entered into an online agreement with EMI"

15  therefore he cannot state a claim under the EFTA.  EMI Br. at 12.  "Indeed, if, as Romero alleges,

16  there was no agreement with EMI to charge his debit card the provisions of the EFTA by their

17  very nature could not be applicable."  *Id.* at 15.

18        The statute and the governing regulations[12] define "account" similarly as "a demand

19  deposit (checking), savings, or other consumer asset account (other than an occasional or

20  incidental credit balance in a credit plan) held directly or indirectly by a financial institution and

21  established primarily for personal, family, or household purposes."  12 C.F.R. § 205.2(b)(1);

22  *accord* 15 U.S.C. 1693a(2).  The regulations further state that the Act applies "to any electronic

23  fund transfer that authorizes a financial institution to debit or credit a consumer's account."  12

24  C.F.R. § 205.3(a).

25

26  _____

27        [12]The Board of Governors of the Federal Reserve System drafted the regulations that
    enforce the EFTA.  12 C.F.R. § 205.1 (20100 (also known as "Regulation E").  In addition, the
28  Board of Governors designated its Director of Consumer and Community Affairs to issue
    official staff interpretations of the regulations.  This "official commentary" is published in
    Appendix C, Supplement I to Part 205 of the Code of Federal Regulations.

09CV2094

1    EMI's argument is based upon an official staff interpretation of the statute and its

2    regulations.  That commentary concerns "accounts covered" by the regulations:  "The

3    requirements of the regulation apply only to <u>an account</u> for which <u>an agreement</u> for EFT services

4    to or from the account <u>has been entered into between</u> (i) [t]he consumer and the financial

5    institution (including an account for which an access device has been issued to the consumer, for

6    example); (ii) [t]he consumer and a third party (for preauthorized debits or credits, for example),

7    when the account-holding institution has received notice of the agreement and the fund transfers

8    have begun."  *Id.* app. C, supp. I, ¶ 3(a) (emphasis added).  Defendant EMI asserts Romero cannot

9    satisfy the definition because he admits he did not agree that EMI could transfer funds from his

10   debit card to pay for the EasySaver Rewards program.

11   This counterintuitive argument fails.  The Complaint alleges that $1.95 was electronically

12   transferred from Romero's financial institution to EMI on February 14, 2009.  Compl. ¶ 21.  "Then

13   one month later, on March 17, 2009, Encore [EMI] charged $14.95 to Plaintiff Romero's debit

14   card."  *Id.*  The electronic transfer of funds by consumers to purchase goods (at brick and mortar

15   stores or over the internet) falls within the plain language of the statute and its governing

16   regulations.  *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1087-88 & 1093-95 (N.D. Cal.

17   2006) (on similar fact pattern, internet customers may state EFTA claim against marketer who

18   allegedly failed to obtain written or proper authorization for electronic transfers of enrollment and

19   membership fees); *see Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 989 & 995-96

20   (C.D. Cal. 2008) (plaintiffs stated EFTA claim against fitness center that allegedly withdrew

21   membership fees from customers' bank accounts without authorization after members cancelled

22   their membership).  Plaintiffs are allowed to plead alternative theories that EMI received these

23   funds electronically from Romero's financial institution *either* with pre-authorization but without

24   proper notice *or* without proper authorization in violation of § 1693e of the EFTA.  *See* § 1693m;

25   §1693a(11), § 1693f(f)(1); 12 C.F.R. § 205, app. C, supp. I, ¶ 10(b).

26   In addition, Plaintiffs allege EMI continued to withdraw funds from their financial

27   institutions even after they called to cancel membership.  Compl. ¶¶ 22, 27.  Such charges would

28   be unauthorized and without the permission of Plaintiffs.

1

2.      **Plaintiff Hunt**

2          EMI also challenges the viability of Plaintiff Hunt's EFTA claim.

3          Hunt's claim is pled in the alternative depending upon whether she "preauthorized" the

4    debit card transfers or whether EMI's transfers were "unauthorized."  Hunt alleges she did not

5    want to become a member of the EasySaver Rewards program, but completed the pop-up screen

6    because she thought the information was required to complete her purchase of flowers from

7    Provide.  Compl. ¶ 28.  Hunt did not "knowingly consent to join any rewards program or pay any

8    fees associated" but "discovered unauthorized billing to her debit card by [EMI]."  *Id.* ¶¶ 28-29.

9    EMI argues the facts alleged by Hunt do not state a claim under the EFTA because she "agreed" to

10   the activation fee and membership "charges by entering her email address and zip code and

11   clicking the green acceptance button."  EMI Br. at 12.  EMI cites the provision of the official staff

12   commentary that permits consumers to provide "written" authorization "electronically."  12 C.F.R.

13   § 205.10, app. C, supp. I, ¶ 10(b)(5).

14          This argument relies on *Vistaprint* (the unpublished decision discussed above), in which

15   the district court dismissed an EFTA claim because the facts did not support an <u>un</u>authorized

16   transfer.  The Court discussed its reasons for rejecting that unpublished decision above and the

17   same ruling applies here.  The Court instead follows the published *Nordberg* decision, where the

18   Northern District of California held that (with amendment to specify the correct sub-section of the

19   statute) plaintiffs had stated an EFTA claim against a similar internet rewards program.  *Nordberg*,

20   445 F. Supp. 2d at 1088 ("the named plaintiffs allege that defendants debited amounts from their

21   credit or debit card accounts without the prior approval of the plaintiffs").  That Court, like this

22   Court, accepts as true the Plaintiffs' allegations that the electronic fund transfers were

23   "unauthorized" within the meaning of the statute.  *Id.* at 1093-95.

24          The EFTA claim also survives for a separate reason.  Plaintiff Hunt alleges EMI did not

25   provide her with a copy of the purported authorization to deduct funds from her bank account.

26   Compl. ¶¶ 29, 165.  This is a separate violation of the EFTA's notice and disclosure provisions.  15

27   U.S.C. § 1693e(a) ("A preauthorized electronic fund transfer from a consumer's account may be

28   authorized by the consumer only in writing, and a copy of such authorization shall be provided to

1   the consumer when made."); 12 C.F.R. § 205.10(b) ("The person that obtains the [electronic or

2   written] authorization shall provide a copy to the consumer."); 12 C.F.R. § 205.10, app. C, supp. I,

3   ¶ 10(b)(5) (same).

4          The Court **DENIES** EMI's motion to dismiss Plaintiffs' EFTA cause of action.

5   **X.**     **ELECTRONIC COMMUNICATIONS PRIVACY ACT**

6          The Thirteenth Claim alleges both Defendants violated the Electronic Communications

7   Privacy Act.  Compl. ¶¶ 167-72.  This federal statute (which amended the federal Wiretap Act)

8   prohibits the intentional interception and disclosure of electronic communications, such as an

9   electronic transfer of funds in a financial institution.  18 U.S.C. §§ 2510, 2511; *Konop v. Hawaiian*

10  *Airlines, Inc.*, 302 F.3d 868, 874 (9th Cir. 2002) (purpose of Act is "to afford privacy protection to

11  electronic communications").  Plaintiffs base this claim on their transmission of data from their

12  computers to Provide for the purpose of buying flowers only, and their allegation that EMI

13  intercepted it without Plaintiffs' knowledge or consent.  Compl. ¶ 170.  Plaintiffs allege that

14  Provide and EMI committed the unlawful conduct in the "joint operation" of the EasySaver

15  Rewards program and that both Defendants profited from the unauthorized charges.  *Id.*

16         Defendant Provide moves to dismiss the claim on the ground that Plaintiffs cannot meet the

17  statutory definition of the term "intercept."  *Konop*, 302 F.3d at 878 (Congress narrowly defined

18  "intercept" to limit reach of Act).  Provide argues it did not "intercept" any communication

19  because Plaintiffs voluntarily sent information to Provide, which then conveyed that information

20  to a third party.  *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001)

21  (when plaintiff purchased goods on Amazon website, Amazon merely received the information but

22  did not "intercept" it, even though Amazon transmitted information to third party to verify identity

23  of customer using credit card).

24         This argument has merit.  The statute expressly states that it does not apply to a person who

25  "is a party to the communication."  18 U.S.C. § 2511(2)(c).  Like the Defendant Amazon in

26  *Crowley*, 166 F. Supp. 2d at 1269, Provide merely received information from the Plaintiffs.  The

27  Complaint establishes that Provide was the intended, direct recipient of the information.  Compl. ¶

28  170; *Conte v. Newsday, Inc.*, — F. Supp. 2d —, 2010 WL 1257887, at * 9 (E.D.N.Y. Mar. 25,

2010) (dismissing claim as to direct party to email).  Because Plaintiffs would be unable to amend the Complaint to save this statutory claim, the Court **DISMISSES** it as to Defendant Provide with prejudice.  *See Crowley*, 166 F. Supp. 2d at 1268-69 (statute "does not provide a civil action against one who aids and abets a violation the Wiretap Act") (citing *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168-69 (5th Cir. 2000) (when Congress amended Wiretap Act to delete civil liability on any other person who "procures" an interception of communication, it limited civil action to person who "engaged" in the violation)).

For its part, Defendant EMI argues the alleged facts do not satisfy the Act because EMI did not interrupt the transmission from Plaintiffs to Provide; therefore, the information was not "acquired during transmission."  *Konop*, 302 F.3d at 878.  EMI highlights the language in the Complaint that states the EasySaver Rewards offer was introduced only after Plaintiffs completed their flower purchase.  Plaintiffs seek to avoid dismissal by arguing that they have alleged EMI intercepted the information "while" Plaintiffs were in the "process" of transmitting information to Provide.  Plaintiffs distinguish the timing of the alleged interception from the undisputed facts in the cases cited by the Defendants.  In reply, EMI asks the Court to disregard the factual allegations that refer to interceptions "during transmission."

As noted above, the Complaint is ambiguous as to whether the alleged interception of information occurred during the course of the transaction with Provide or after Plaintiffs completed that purchase.  *Compare* Compl. ¶ 1 ("While customers are in the process of transmitting their Private Payment Information to Provide," EMI "intercepts the information") *with* ¶ 19 ("After Plaintiffs and Class members completed the purchase transaction" with Provide, they were directed to EMI's webpage).  Because the Court must accept as true Plaintiffs' allegations of fact, and the Court must construe the allegations in the light most favorable to Plaintiffs, the Court rejects EMI's argument.  EMI's argument raises factual disputes that should be addressed in a summary judgment motion.  Plaintiffs have not yet conducted discovery and do

/ / /

- 32 -

1    not have access to the information needed to determine when or how the information was

2    intercepted by the alleged interloper.[13]

3          The Complaint alleges plausible facts that, if true, state a statutory violation against EMI;

4    namely, that some Plaintiffs closed the pop-up window without accepting the gift code offer, yet

5    EMI intercepted the Private Payment Information that these Plaintiffs were in the process of

6    sending to Provide.  Compl. ¶¶ 20-21 (Romero), 23-24 (Kenyon), 32 ("Plaintiffs and Class

7    Members never gave Encore their Private Payment Information."); 34, 36.  Plaintiffs provide facts

8    that take their case beyond a "formulaic recitation of the elements of a cause of action" and "more

9    than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949.

10         Accordingly, the Court **GRANTS** Provide's motion, but **DENIES** EMI's motion to

11   dismiss the Electronic Communication Privacy Act claim.

12                                        CONCLUSION

13         For the reasons stated herein, the Court:

14   (1)    **DENIES** Defendant Provide's request for Judicial Notice [Doc. No. 34-2];

15   (2)    **GRANTS** Plaintiffs' Motion to strike EMI's exhibits [Doc. No. 48];

16   (3)    **GRANTS**, with the limitations noted above, Plaintiffs' supplemental request for

17          judicial notice [Doc. No. 57];

18   (4)    **DENIES** Defendant EMI's motion to dismiss [Doc. No. 38]; and

19   (5)    **GRANTS IN PART AND DENIES IN PART** Defendant Provide's motion to

20          dismiss [Doc. No. 34].  Plaintiff's twelfth cause of action (Electronic Fund Transfer

21          Act) and thirteenth cause of action (Electronic Communications Privacy Act) are

22          dismissed with prejudice.

23         **IT IS SO ORDERED.**

24   DATED:  August 13, 2010

25

26                                        Hon. Michael M. Anello
                                          United States District Judge
27

28
     _____
     [13] EMI states that it offered technical evidence to Plaintiffs that could be reviewed by an
     expert, but the Court cannot consider extrinsic evidence in a motion to dismiss.