1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10

11                                    ) Civil No. 09-CV-2094-AJB(WVG)
                                       )
12   In re: EASYSAVER REWARDS          ) ORDER GRANTING IN PART AND
     LITIGATION                        ) DENYING IN PART *EX PARTE* MOTION
13                                     ) FOR RECONSIDERATION
                                       )
14                                     ) [Doc. No. 159]
                                       )
15                                     )
     _____ )
16

17         On June 30, 2011, the Court ruled on numerous discovery

18   disputes between Plaintiffs and both Defendants.   Plaintiffs now

19   seek the Court's reconsideration of the portion of the Order that

20   involves Defendant Regent Group, Inc. ("EMI").   The Court opts to

21   reevaluate its previous rulings because class certification is a

22   major milestone in this case and the interests of many individuals

23   may be at stake.   In the Court's estimation, the significance of

24   this process outweighs any technical rule violation, and the Court

25   wishes to afford Plaintiffs every opportunity to be heard.   After

26   due consideration, the Court GRANTS IN PART and DENIES IN PART

27   Plaintiffs' motion.

28   / / /

09CV2094

1                           I.   **DISCUSSION**

2     **A.      Failure to Comply With Local Rules or Legal Standard**

3              EMI points out Plaintiffs' apparent failure to comply with

4     the Local Rules.  However, because the issues here are important to

5     the class certification phase, the Court wishes to leave no doubt

6     that it considered every argument made.  As a result, the Court

7     excuses Plaintiffs' transgression and considers their motion.

8     However, _all_ parties are henceforth on notice that a similar

9     violation in the future may result in the summary denial of their

10    motion if appropriate.

11             Moreover, EMI argues that Plaintiffs have not presented new

12    evidence or arguments that could not have been presented in the

13    original briefing.  However, the Court limited the number of pages

14    the parties could use in the original briefing, and that limitation

15    partially cabined how in-depth Plaintiffs could flesh out their

16    arguments.[1]

17             In the end, the Court always has discretion to reconsider its

18    own rulings.  Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983) (*en*

19    *banc*), *superceded on other grounds as recognized by* In re: Alexan-

20    der, 197 F.3d 421, 426 (9th Cir. 1999).  The Court does so at this

21    time only because the class certification process is a major step in

22    the life of cases such as the case at bar.  Given that the Court

23    will allow full briefing in the future, as explained in footnote 1,

24

25    _____

26    [1] The informal discovery dispute resolution procedure in the Court's Chambers
      Rules has worked well in the past in nearly every case the Court has handled to
      date.  However, based on the Court's experience with, and observations of, this
27    case, in the future, the Court will require full briefing of all written discovery
      disputes (*i.e.*, disputes over SROGs, RFPs, RFAs, and other similar discovery
28    tools).  The parties shall continue to comply with the Chambers Rules' requirement
      to call chambers regarding disputes.  The Court will provide further guidance at
      that time.

1    the Court will be far less inclined to be so accommodating or

2    permissive in the future.

3    **B.**     **RFP Nos. 7, 18, 29, 31, and 40**

4            Plaintiffs argue that the RFPs above are relevant to class

5    certification because they bear on Rule 23(b)(3)'s predominance and

6    superiority prongs.  They note that "[c]ourts have generally found

7    the predominance and superiority standards met <u>in certifying common</u>

8    <u>law fraud classes</u> where there was a showing that class representa-

9    tives and absent members were victims of a <u>common design or scheme</u>

10   that the defendant was liable for." (Doc. No. 159 at 6.)[2]  They go

11   on to discuss four cases that they claim establish that "discovery

12   related to EMI's 'centrally orchestrated' scheme to defraud the

13   class is directly relevant to Plaintiffs' class certification motion

14   because it would demonstrate that 'each plaintiff [was] similarly

15   situated with respect to it' therefore justifying class treatment."

16   (<u>Id.</u> at 8 (alteration in original; citation omitted).)

17           In response, EMI points out that (1) the only claim in the

18   Third Amended Complaint ("TAC") that involves common law fraud is

19   brought against co-defendant Provide Commerce only, not EMI, and (2)

20   the four cases Plaintiffs discuss involve either common law fraud or

21   federal securities fraud claims.  (Doc. No. 166 at 6.)  They

22   conclude: "Plaintiffs' entire argument for reconsideration is based

23   on the faulty premise that the requested discovery is needed to

24   certify a claim that they have not even brought against EMI." (<u>Id.</u>)

25   Upon review of the arguments, case law cited, and the Third Amended

26   Complaint, the Court agrees with EMI.

27

28

---

[2] All page references to documents on the Court's docket are to the CM/ECF page numbers, not to the document's original pagination.

1    Plaintiffs' motion states that they will face a "robust
2    factual showing" when they seek to certify their common law fraud
3    claims. (Doc. No. 159 at 11.)   However, while Plaintiffs reference
4    multiple such claims, the only instance in the entire 58-page TAC
5    where "common law fraud" is mentioned is in Claim Seven, which is
6    for "Fraudulent Misrepresentations/Omissions . . . Against Defendant
7    Provide-Commerce." (Doc. No. 164 at 32, 33 at ¶ 111.)   Relying on
8    the case law cited, this section of Plaintiffs' motion contends that
9    (1) they need the discovery in the disputed RFPs (2) because this
10   case, like the cited cases, involves "certifying common law fraud
11   classes," (3) which requires them to show that they were "victims of
12   a common design or scheme." (Doc. No. 159 at 6.)   Plaintiffs'
13   moving papers focus exclusively on EMI.   However, none of the at-
14   issue RFPs propounded to EMI bear on certification of common law
15   fraud class against EMI because that claim does not involve EMI.
16   The only Defendant named in Claim Seven is Provide Commerce.   These
17   RFPs therefore are not relevant for certifying a class against EMI
18   because they are directed to, and seek information from, a defendant
19   that is <u>not</u> named in that claim.

20   The four cases Plaintiffs cite are inapposite.   While the
21   Court's review of the cases revealed that they are distinguishable
22   and inapplicable here on various grounds, the Court will forgo an
23   at-length discussion because, in the end, EMI is correct that all of
24   these cases involve securities fraud and common law fraud, which are
25   not claims brought against EMI.   This distinction alone is suffi-
26   cient basis to render these cases inapplicable here.

27   Moreover, although Plaintiffs' TAC alleges throughout that
28   Provide Commerce and EMI conspired together and ran the EasySaver

1 Rewards "scheme" or "scam" together, it is unclear why Plaintiffs

2 need evidence of a "common design or scheme," which only applies to

3 the common law fraud claim, to certify the proposed classes and sub-

4 classes against each individual defendant for any claim <u>other than</u>

5 Claim Seven.  In other words, Plaintiffs have not shown how or why

6 these RFPs are relevant to any claim other than Claim 7.  Moreover,

7 this case cannot be correctly characterized as a common law fraud

8 case--and thus bring it within Plaintiffs' cases--when only 1 of <u>17</u>

9 claims involves common law fraud.

10 Based on the foregoing, the documents in the RFPs at issue

11 are not discoverable for class certification purposes and are

12 outside the scope of discovery at this stage.  Whether these

13 documents are discoverable during merits discovery is a question for

14 another day.  The Court denies the motion for reconsideration with

15 respect to RFP Nos. 7, 18, 29, 31, and 40.

16 **C.     Rulings on RFPs 4, 11, 12, and 13**

| RFP | Produce | Do Not Produce | Comments |
|---|---|---|---|
| 4 | | x | Objections sustained.  Plaintiffs cite no case law whatsoever, but importantly none that supports the bald assertion that use of the Kroll reports during the confidential ENE for settlement discussions constitutes waiver of the work-product doctrine.  (<u>See</u> Doc. No. 159 at 12:12-25.) |
| 11-13 | See Comments | | Subject to Rule 11, EMI states in detail that it has produced all code versions that exist.  EMI states in no uncertain terms that it has produced whatever it has and cannot further comply because additional responsive documents do not exist.  As a result, the Court cannot compel EMI to produce what it does not have.  The Court can only accept at face value what parties represent to it.  So long as EMI |

| | | states it has complied with the date-related orders on page 9 of the Court's June 30, 2011, Order, the Court will not order further produc-tion. However, if EMI has not com-plied with the date-related orders on page 9 of the June 30, 2011, Order, EMI shall so comply. |
|---|---|---|

**D.       Request For Reconsideration In Section 4 Is Denied**

The combination of Parts B and C, above, renders moot portions of Section 4 of Plaintiffs' motion, which relies on arguments previously made and herein not accepted. The remaining portion, specifically the RFPs at the top of page 14, are simply much too broad for the Court to allow. The Court realizes that Plaintiffs will never realize this or admit as much, but these RFPs go <u>far</u> beyond matters that bear on class certification, such that they are primarily focused on the merits of the case. Contrary to Plaintiffs' belief, they are not absolutely entitled to a response to every RFP simply because it somehow or may relate(s) to certifi-cation. When an RFP far oversteps the bounds of bifurcated discovery, tangentially touches certification, and places a heavy burden on EMI, the Court is fully within its authority to limit such obtrusive discovery. Plaintiffs cannot draft such expansively worded RFPs, knowing full well the limits of bifurcated discovery, and then protest that they need it <u>all</u>. If the Court compels EMI to respond to these expansive RFPs, the Court is certain that Plain-tiffs will once again object that EMI has not fully responded to the RFP as broadly phrased when EMI limits its response to certification issues. However, the Court will use this opportunity to clarify an issue Plaintiffs raise.

1       With regard to Plaintiffs' statements on page 14, lines 15
2   through 25, EMI should be mindful that it should have produced
3   whatever code that was the _basis for_ the Easysaver Rewards program,
4   regardless of whether such code was _exclusive_ to that program.
5   Footnote 5 in EMI's opposition appears to take the position that
6   shared codes infringe on business relationships with third parties.
7   However, any shared codes _are_ discoverable if they were the basis
8   for the Easysaver program even if those codes were also used to
9   develop programs for third party partners.  Codes _exclusive_ to third
10  parties need not be produced, but codes must be produced if they
11  were the basis for the Easysaver program regardless of whether they
12  were also the basis for programs created for third parties.   The
13  protective order in place in this case expressly protects third
14  party interests.

15      The foregoing is consistent with the Court's June 30, 2011,
16  Order.   Shared codes used to implement the Easysaver program were
17  certainly used in EMI's "association or partnership with Provide
18  Commerce, Inc., only." If EMI interprets the word "only" at the end
19  of the quoted sentence to mean that codes must have been used
20  "exclusively" to implement the Easysaver program, this interpreta-
21  tion is off base.  As the Court understood the previous dispute, EMI
22  objected to production of information that was exclusive to third
23  parties and not related to Provide Commerce or the Easysaver program
24  in any way.   Such information is not discoverable because codes
25  written _exclusively_ for _other_ EMI partners are not relevant to this
26  case.  However, insofar as EMI developed code for other partners _and_
27  Provide Commerce, such code certainly is relevant.   Therefore, _if_
28  EMI has heretofore withheld any code on this basis, it shall produce
    the withheld code.

1   **E.       RFPs That Bear on Usage of Easysaver Benefits**

2          Plaintiffs next seek reconsideration of the Court's rulings

3   on RFP Nos. 24(j), 24(k), 26, and 27.  They argue they need this

4   information to "test EMI's thesis" that "the fact that some people

5   redeemed EasySaver Rewards benefits is conclusive evidence that they

6   intentionally enrolled, which somehow undermines the class." (Doc.

7   No. 159 at 14-15.)  EMI does not deny Plaintiffs' representation

8   that certification may be opposed partly on this basis.  Regardless

9   of whether this argument is sound, Plaintiffs' may potentially face

10  it.  Because Plaintiffs had limited space in their original briefing

11  to flesh out their need for the above RFPs, this point did not come

12  across well at that time.    Therefore, with the limitation of

13  bifurcated discovery in mind, the Court now reevaluates each RFP.

14         Plaintiffs' motion is granted as to RFP Nos. 24(j) and 24(k).

15  If EMI's anticipated argument is that Easysaver enrollees were not

16  enrolled against their will because they used the program's

17  benefits, then the "number" and "percentage" of enrollees who

18  actually used benefits may be relevant.  This information has the

19  potential to rebut the idea that class members used the benefits and

20  would have willingly registered for Easysaver as a result.

21         Plaintiffs' motion is denied as to RFP 26.  RFP 26 seeks the

22  physical copy of each document that shows a putative class member

23  made a request for benefits.  The Court again denies Plaintiffs'

24  request for the additional reasons that it is duplicative and

25  imposes an undue burden on EMI.  First, the information EMI will

26  produce in response to RFP 24(j) and 24(k) will be the total number

27  of persons who sought benefits, while RFP No. 26 will produce only

28  a subset of that number (*i.e.*, registrants who sought benefits

    solely through the EMI website as opposed to via the telephone and

1   the website).  Second, searching its records for physical copies of

2   each request, the aggregate of which represents only a portion of

3   the number or percentage provided for RFP Nos. 24(j) and 24(k),

4   places and undue burden on EMI when weighed against the utility of

5   the information sought.  The entire purpose of bifurcating discovery

6   is to minimize unnecessary costs and fees, and RFP 26 accomplishes

7   exactly the opposite result.

8       Plaintiffs' motion is granted in part as to RFP 27(a)-(c),

9   but denied in part as to RFP 27(d)-(f).  If the purpose of this

10  information is to rebut EMI's "defense," that Easysaver enrollees

11  were not enrolled against their will because they used Easysaver

12  benefits, EMI's variable cost of the discounts and coupons are

13  irrelevant to that analysis.

14  **F.**    **EMI Shall Not Redact Complainants' Contact Information**

15      In their original briefing, Plaintiffs sought identifying

16  information both for all class members in general and for persons

17  who complained to EMI. (Doc. No. 117 at 2-3.) Now, they seek that

18  information only for those persons who complained to EMI. (Doc. No.

19  159 at 15-16.)  While this distinction was not drawn well in

20  original briefing and their argument was not developed, the Court

21  grants Plaintiffs' motion insofar as it requests that contact

22  information for complainants not be redacted.

23      Plaintiffs' cases certainly do not support their request for

24  absent class members' contact information at this stage of the

25  proceedings.  However, insofar as Plaintiffs seek the contact

26  information of Easysaver registrants who complained to EMI, the

27  Court concludes that their contact information should not be

28  redacted.  Although Plaintiffs did not make the following argument

    in original briefing, and superficially fleshed it out in the

1    instant motion, the Court is aware that Defendants may argue that

2    Easysaver registrants were not enrolled against their will by

3    clicking the "X" that closed the registration window.  In light of

4    this argument, persons who clicked the "X," who were nonetheless

5    registered, and who complained to EMI afterwards certainly are

6    percipient witnesses that may be able to provide facts that bear on

7    certifying their particular subclass.  The Court reiterates that EMI

8    shall un-redact the contact information of only those persons who

9    complained to EMI.  EMI need not produce the contact information for

10   every person who registered for the Easysaver program.  Finally,

11   this Order applies to EMI only, not Provide Commerce.  Provide

12   Commerce was not a target of the reconsideration motion, and the

13   Court will not now accept such an untimely motion as to Provide

14   Commerce.

15   **G.     EMI Has Produced Documents Beyond March 2007**

16          EMI's representations on page 12 of its opposition render

17   Section 7 of Plaintiffs' motion moot, and this portion of the motion

18   is denied accordingly.

19                          **III.   CONCLUSION**

20          Where EMI is ordered to produce documents or information, it

21   shall do so by September 30, 2011.

22   IT IS SO ORDERED.

23   DATED:   September 1, 2011

24

25                           _____
                             Hon. William V. Gallo
26                           U.S. Magistrate Judge

27

28