1   James R. Patterson, State Bar No. 211102
    Alisa A. Martin, State Bar No. 224037
2   PATTERSON LAW GROUP
    402 West Broadway, 29th Floor
3   San Diego, CA 92101
    Telephone:  (619) 756-6990 / Facsimile:  (619) 756-6991
4   jim@pattersonlawgroup.com
    alisa@pattersonlawgroup.com
5
6   Jennie Lee Anderson, State Bar No. 203586
    Lori E. Andrus, State Bar No. 205816
7   ANDRUS ANDERSON LLP
    155 Montgomery Street, Suite 900
8   San Francisco, CA 94104
    Telephone:  (415) 986-1400 / Facsimile:  (415) 986-1474
9   jennie@andrusanderson.com
    lori@andrusanderson.com

10  *Attorneys for Plaintiffs and Co-Lead Interim Class
    Counsel for the Proposed Class*
11
    *[Additional Counsel Listed On Signature Page]*
12

    **UNITED STATES DISTRICT COURT**
13
    **SOUTHERN DISTRICT OF CALIFORNIA**
14
    In Re: EASYSAVER REWARDS          )   CASE NO.: 09-CV-02094-AJB (WVG)
15  LITIGATION                        )
                                      )   **FOURTH AMENDED CONSOLIDATED**
                                      )   **CLASS ACTION COMPLAINT FOR:**
16                                    )
                                      )   1.  BREACH OF CONTRACT
17                                    )   2.  BREACH OF CONTRACT
                                      )   3.  BREACH OF IMPLIED COVENANT
18                                    )       OF GOOD FAITH AND FAIR DEALING
                                      )   4.  FRAUD
19                                    )   5.  VIOL. OF CONSUMER LEGAL REM. ACT
                                      )   6.  UNJUST ENRICHMENT
20                                    )   7.  VIOL. OF ELEC. FUNDS TRANSFER ACT
                                      )   8.  INVASION OF PRIVACY
21                                    )   9.  NEGLIGENCE
    This Document Relates to all Actions )   10. VIOL. OF UNFAIR BUSINESS PRACTICE
22                                    )
                                      )   **[JURY TRIAL  DEMANDED]**
23                                    )
                                      )
24                                    )
                                      )
25  ————————————————————             )

26       Plaintiffs, on behalf of themselves, and all others similarly situated (the "Class Members"

27  or "Classes" as defined below), allege upon personal knowledge as to themselves and their acts,

28  and as to all other matters upon information and belief, as follows:

FOURTH AMENDED CONSOLIDATED                              3:09-cv-02094-MMA-BLM
CLASS ACTION COMPLAINT

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

## I.   NATURE OF THE ACTION

1.    This is a class action brought against Defendant Provide-Commerce, Inc. ("Provide-Commerce") who operates several internet businesses, including Red Envelope, Cherry Moon Farms, Secret Spoon, Shari's Berries and ProFlowers.  As part of its revenue generating efforts, Provide-Commerce transmits its consumers' credit card, debit card and/or Paypal information ("Private Payment Information") to its third party marketing partners, Defendants Regent Group, Inc., doing business under Encore Marketing International and Encore Marketing International, Inc. (altogether referred to as "Encore").  Encore then uses this information to charge consumers' credit or debit accounts[1] without permission under the guise that that the consumers authorized the charges when they supposedly joined savings programs such as EasySaver Rewards, Red Envelope Rewards, or Preferred Buyers Pass, each of which Encore manages on Provide-Commerce's behalf.

2.    Provide-Commerce and Encore admit that they work completely and collaboratively with each other to create, implement, and operate the membership programs, as well as the enrollment process.  Their actions are unlawful because none of the programs — the EasySaver Rewards, Red Envelope Rewards, or Preferred Buyers Pass provided the promised savings, benefits, products or services and is nothing more than a sham.

3.    To elaborate, when a customer completed a transaction on a Provide-Commerce site, Provide-Commerce seemingly offered a coupon, gift code, or other savings gifts to its customers as a "Thank You" for shopping at its store.  When the customer tried to obtain their "gifts," they were directed to a webpage operated by Encore.  Customers are then asked to provide their email address and zip code and click a large green "Accept" button in the center of the page to claim their coupon or gift code.  Regardless of whether customers provide the requested information or clicked the "Accept" button, consumers unwittingly, unknowingly and without their consent were enrolled in membership programs.  Provide-Commerce unlawfully transmitted consumers' Private Payment Information to Encore, who then charged consumers'

---

[1] All references to credit and debit accounts shall include credit card, debit card and Paypal accounts.

FOURTH AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT

3:09-cv-02094-MMA-BLM

credit or debit accounts a $1.95 activation fee and $14.95 monthly fees.

4.     Defendants also implemented and operated other membership programs on Provide-Commerce websites, including Preferred Buyers Pass and Red Envelope Rewards. These programs are identical in all material respects to EasySaver Rewards.  Defendants enroll consumers in both programs using the same terms, procedures and deceptive tactics as described herein regarding EasySaver Rewards.  All references to the EasySaver Rewards program apply equally to the Preferred Buyers Pass and Red Envelope Rewards programs as well as to all other membership programs offered on Provide-Commerce websites and operated by Encore, and thus EasySaver Rewards is defined hereinafter to include those programs.

5.     Despite billing consumers for purportedly joining one of the program, Encore never sent the putative enrollees in the program an email confirming their intent to become a member or to be charged these fees, and Encore never communicated with these consumers about their membership or the program, nor provided the consumers with the promised coupons, gift codes, or any other savings benefits.

6.     In short, Defendants touted their marketing programs as legitimate when, in fact, they used the Program as a means to fraudulently bill consumers' credit and debit accounts every month.  Because this conduct resulted in Defendants reaping unearned financial gains to the consumers' detriment, Defendants are subject to contractual, tort and statutory liability as further elaborated below.

**II.     THE PARTIES**

7.     Plaintiff Josue Romero is an individual who at all times mentioned herein resided, and continues to reside, in San Diego County, California.

8.     Plaintiff Gina Bailey is an individual who at all times mentioned herein resided, and continues to reside, in Atkins, Arkansas.

9.     Plaintiff Jennifer Lawler is an individual who at all times mentioned herein resided, and continues to reside, in Omaha, Nebraska.

10.     Plaintiff John Walters is an individual who at all times mentioned herein resided, and continues to reside, in Satellite Beach, Florida.

FOURTH AMENDED CONSOLIDATED                                    3:09-cv-02094-MMA-BLM
CLASS ACTION COMPLAINT

11.     Plaintiff Daniel Cox is an individual who at all times mentioned herein resided, and continues to reside, in Alameda County, California.

12.     Plaintiff Christopher Dickey is an individual who at all times mentioned herein resided, and continues to reside, in Morrisville, North Carolina.

13.     Plaintiff Grant Jenkins is an individual who at all times mentioned herein resided, and continues to reside, in San Diego County, California.

14.     Plaintiff Bradley Berentson is an individual who at all times mentioned herein resided, and continues to reside, in Omaha, Nebraska.

15.     Plaintiffs, each of them, purchased merchandise from Provide-Commerce's online store, had their Private Payment Information disclosed to Encore without authorization, suffered unauthorized charges to their card and debit accounts via membership programs, and did not receive anything in return for those charges.

16.     Defendant Provide-Commerce is an e-commerce company that operates at least five online stores: Red Envelope, Cherry Moon Farms, Secret Spoon, Sharri's Berries, and ProFlowers.  Provide-Commerce's principal place of business is located in San Diego County, California.  Provide-Commerce initially launched Proflowers.com, which offers flowers direct from growers.  Thereafter, Provide-Commerce launched its other brands that offer fresh fruit, chocolate and other gourmet foods direct from the suppliers.  Because Provide-Commerce is headquartered in California, all significant decision-making with respect to the conduct alleged herein occurred in California.   For instance, Provide-Commerce's marketing, promotional activities, and literature are drafted, developed and coordinated in, and emanate from, California.  Moreover, Provide-Commerce's contracts, communications, agreements with Plaintiffs, Class members and Encore all emanated from its headquarters in California.  Provide-Commerce's terms and conditions of use published on its website contain a choice of law clause stating that California law applies to any legal action brought by consumers regardless of conflict of law principles.  In short, Provide-Commerce conducts substantial business in California.

17.     Defendants Regent Group, Inc., doing business under Encore Marketing International and Encore Marketing International, Inc. (together referred to as "Encore" or

- 4 -

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

"Defendant Encore") provides "revenue enhancement solutions" to internet merchants by offering consumer benefit programs, including various membership clubs. Their principal place of business is located in Lanham, Maryland. Their membership agreements contain a provision indicating that Maryland law governs membership disputes. Encore's membership clubs include a program known as EasySaver Rewards, which claims to be savings club that offers discounted entertainment, travel, dining and shopping to its members. Encore partnered with Provide-Commerce to create and manage an EasySaver Rewards program aimed at Provide-Commerce's customers.

**Doe Defendants**

18. Plaintiffs are ignorant about the true names of Defendants sued as DOES 1 through 50, inclusive, and their wrongful conduct, and therefore sue these Defendants by fictitious names. Plaintiffs will seek Court leave to amend this complaint to allege their true names and capacities when ascertained.

19. Plaintiffs allege on information and belief that at all relevant times, DOES 1-50, inclusive, were agents, servants, employees, representatives, partners, and related or affiliated entities of Defendants, and in doing the things hereinafter mentioned, were acting in the course and scope of their agency, employment, or retention with defendants' permission, consent, authority and ratification.

**Defendants' Aiding and Abetting**

20. At all times relevant, Defendants aided and abetted, encouraged and rendered substantial assistance to the each other in breaching their obligations to Plaintiffs and the Class. For example, Provide-Commerce aided and abetted and substantially assisted Encore by, *inter alia*, unlawfully transmitting Plaintiffs' Private Payment Information and allowing Plaintiffs' Private Payment Information to be intercepted by Encore at the point of sale without authorization. Similarly, Provide-Commerce aided and abetted Encore by offering illusory "gifts" and "Thank You" offers on the Provide-Commerce website at the point of sale, which led Plaintiffs and Class members to interface with the Encore webpage. Once Plaintiffs and Class members were diverted to the Encore promotional page, their Private Personal Information was

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

- 5 -

1  unlawfully provided to and intercepted by Encore without authorization and their accounts were

2  unlawfully charged.  In taking action, as particularized in greater detail herein, to aid and abet

3  and substantially assist the commissions of these wrongful acts and other wrongdoings

4  complained of, Defendants mutually acted with an awareness of the primary wrongdoing and

5  realized that its conduct would substantially assist the accomplishment of the wrongful conduct,

6  wrongful goals and wrongdoing.

7  **Defendants' Agency/Joint Venture Relationship**

8  21.    In addition to acting on their own behalf individually, Defendants, each of them,

9  are and were acting as the agent, servant, employee, joint venturer, and representative of, and

10  with the knowledge, consent and permission of, and in conspiracy with each other Defendant and

11  within the course, scope and authority of that agency, service, employment, representation, joint

12  venture, and conspiracy.  Defendants' conduct was fully ratified by the other.  Specifically, on

13  information and belief, Provide-Commerce contracted with Encore to create and implement the

14  EasySaver Rewards and to jointly promote and operate the EasySaver Program in connection

15  with the Provide-Commerce sites.  Provide-Commerce acknowledges its relationship with

16  Encore on its website, describing Encore as a "third-party marketing partner…who manages ***our***

17  EasySaver Rewards program." (Emphasis added.)  Indeed, on information and belief, the

18  EasySaver Rewards was designed for the Provide-Commerce sites and managed and

19  implemented by Encore. Thus, the actions, failures to act, breaches, conspiracy, and

20  misrepresentations alleged herein and attributed to one or more of the specific Defendants were

21  approved, ratified, and done with the cooperation and knowledge of each and all of the

22  Defendants.

23  **Defendants' Conspiracy**

24  22.    Defendants knowingly entered into an agreement, combination and conspiracy to

25  profit from unauthorized charges to Plaintiffs' and the Class' debit and credit accounts under the

26  guise that Plaintiffs and the Class entered into the membership programs that purportedly

27  provided various savings benefits.  As alleged herein, Defendants agreed to jointly implement a

28  system by which Provide-Commerce customers would be unwittingly enrolled in the programs.

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

- 6 -

Throughout the relevant time period, Defendants were aware that the program did not provide the promised coupons, savings, benefits, products or services. Regardless, Defendants agreed to jointly promote this sham program and enroll consumers who declined to participate in the program without their consent. Pursuant to this conspiracy, Defendants, their agents, servants, and employees, acting both jointly and severally, committed or caused to be committed against Plaintiffs a series of unlawful and fraudulent acts, namely: making, or causing to made, unauthorized charges to Plaintiffs and the Class' credit and debit cards. These acts were all made in furtherance of an agreement whereby Defendants knowingly conspired with each other to generate unlawful income at Plaintiffs' and the Class' expense.

## III.   JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 as one or more claims arises under the laws of the United States, and under 28 U.S.C. § 1332(d)(2) because, on information and belief, the amount in controversy exceeds $5,000,000 exclusive of interest and costs and this is a class action in which at least one defendant and at least one class member are citizens of different states, and this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) as all claims herein arise under the same set of facts comprising a single case or controversy.

24.    Pursuant to 28 U.S.C. § 1391(b), this Court is the proper venue for this action because this Court has personal jurisdiction over Defendants and a substantial amount of the events giving rise to the claim occurred in this District.

## IV.   THE MEMBERSHIP PROGRAMS' SIGN-UP SCREEN

25.    Defendants collaboratively operated and profited from EasySaver Rewards, Red Envelope Rewards, and Preferred Buyers Pass. While Plaintiffs and Class members purchased products from one or more of Provide-Commerce commercial websites, a window popped up that thanked Plaintiffs and Class members for their order and offered a savings benefit in connection with their next purchase. The window contained a link for Plaintiffs and Class members to click on to claim the savings benefit. Upon clicking the link, Plaintiffs and Class members were directed to Encore's webpage.

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

- 7 -

FOURTH AMENDED CONSOLIDATED                    3:09-cv-02094-MMA-BLM
CLASS ACTION COMPLAINT

26.   For instance, when certain plaintiffs and class members purchased items from Proflowers.com, they were offered a gift code for $15.00 off their next purchase at ProFlowers. When Plaintiffs and Class members clicked on to link to retrieve the gift code, they were directed to Encore's webpage that stated:

> CLAIM YOUR GIFT CODE BELOW!  JUST ENTER YOUR E-MAIL ADDRESS AND ZIP CODE AS YOUR ELECTRONIC SIGNATURE AND CLICK THE GREEN ACCEPTANCE BUTTON BELOW TO ACTIVATE YOUR EASYSAVER REWARDS MEMBERSHIP AS DESCRIBED IN THE OFFER DETAILS ON THIS PAGE.

Then in small print, in an obscure location, the offer details indicated — in unconscionable terms — that by accepting the gift code, Plaintiffs and Class members consented to (1) ProFlowers transmitting their personal and payment information to Encore and (2) Encore billing a $1.95 activation fee and a $14.95 monthly fee to their debit card:

> Activate your membership in EasySaver Rewards to claim your $15 Gift Code good for your next purchase and start saving and enjoying all the benefits and access for the next 30 days for just a **$1.95 activation fee** billed by EasySaver Rewards to the credit card or PayPal account you just entered during your ProFlowers purchase.  Please note, by entering your e-mail address and zip code ("Enrollment Details") and clicking the Green Acceptance Button, your enrollment Details as well as the following information from your most recent ProFlowers order will be transmitted securely through PGP and SSI encryption to EMI, the EasySaver Rewards Administrator, to be stored and to secure and administer your membership: your name, credit card information or PayPal billing ID number, billing address, billing telephone number and order ID number.  To continue after the introductory trial period, do nothing and all the great benefits and savings will automatically continue for just **$14.95 per month**, billed by EasySaver Rewards to the same credit card or PayPal account where applicable.  You may cancel at anytime, with no further obligation, just by calling the toll-free number contained in the membership information provided to you.  **And, you keep the $15 Gift Code just for trying EasySaver Rewards for 30 days**. (Emphasis in original).

27.   Defendants' other membership programs, like Red Envelope Rewards and Preferred Buyers Pass, involved a similar process.

28.   Using that process, Defendants together engaged, and continue to engage, in a systematic nationwide practice of making unauthorized charges to consumers' credit cards, debit

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

- 8 -

FOURTH AMENDED CONSOLIDATED                    3:09-cv-02094-MMA-BLM
CLASS ACTION COMPLAINT

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

cards and Paypal accounts under the guise of various membership programs. Defendants' tactics to enroll consumers in the programs are misleading, deceptive and fraudulent. Plaintiffs Romero, and Bailey, for instance, did not click the green acceptance button to enroll in the EasySaver Rewards program, yet Encore still charged their debit and credit cards the $1.95 activation fee and the subsequent $14.95 monthly fees. And other Plaintiffs admittedly clicked the green acceptance button, yet they never intended to enroll in any program. Rather, they were deceptively tricked into providing their email address and/or zip code so that Provide-Commerce could claim that it had authorization to transmit their Private Payment Information to Encore. Encore then used the information to charge consumers' credit and debit accounts without proper authorization.

29. Provide-Commerce acknowledges that the EasySaver Rewards program, as well as the other programs, is a joint venture and collaborative effort between the companies on its website and via testimony. Indeed, the only way Encore could gain access to consumers' Private Payment Information was with Provide-Commerce's participation. Plaintiffs and Class Members never gave Encore their Private Payment Information. Encore never asks for consumers' Private Payment Information directly, knowing that reasonable consumers would not be interested in paying to enroll in an illusory "rewards" program that provides no benefits whatsoever. Instead, Provide-Commerce deceptively and unlawfully transmitted the information to Encore at which point Plaintiffs' accounts were charged without authorization after Plaintiffs and Class Members provided Provide-Commerce with their Private Payment Information for the limited purpose of purchasing a product from one of Provide-Commerce's sites, *e.g.*, flowers from Proflowers.com. More importantly, Provide-Commerce intentionally transferred Plaintiffs' Private Payment Information to Encore in violation of its own published policies. For instance, its EasySaver Rewards policy states:

**EasySaver Rewards Policy**

> One of our third-party marketing partners is Encore Marketing International ("EMI"), *who manages our EasySaver Rewards program.* By clicking on the promotional link on our order confirmation page, or elsewhere on our website or emails as may be indicated from time to time, you will be connected to an

1
2
3
4
5
6

EasySaver Rewards signup page hosted by EMI, and *certain information* such as your email address, zip code, site/order ID and survey responses ("Enrollment Details") will be transferred to the EMI site.  Should you choose to complete the application on such signup page, your credit card information or PayPal Billing ID as well as your name, billing address, and order ID number will be PGP encrypted and transmitted through SSL encryption from your most recent order to EasySaver Rewards.  This information, as well as your original Enrollment Details, will be stored and processed on the EMI site to secure your membership. (Emphasis added.)

7
8
9

Despite that written policy, which was maintained at an obscure location on Provide-Commerce's website, Provide-Commerce knew that its partner, Encore, was charging consumers' debit and credit accounts without providing any meaningful benefits to consumers.

10       30.      Provide-Commerce also has an privacy policy that says in pertinent part:

11       **Personally Identifiable Information:**

12       …

13       Personally Identifiable Information might include your name, mailing address, telephone number, mobile phone number, email address, and other identification and contact information…. We may also collect certain financial information, like your credit card number… whenever we do so, we will attempt to provide a link to this Policy so that you can confirm how this information will be used. With this information, we can fill your service and product orders and better provide you with personalized services. You also may have the option of importing information into certain Sites from third-party software.

18       …

19       Except as otherwise stated in this Policy, we do not sell, trade or rent your Personally Identifiable Information collected on our Sites to others.  The information collected by our Sites is used to process orders, to keep you informed about your order status, to notify you of products or special offers that may be of interest to you, and for statistical purposes for improving our Sites.  We will disclose your Personally Identifiable Information to third parties for tracking purposes, to charge your credit card (or process your check or money order, as appropriate), fill your order, improve the functionality of our Sites, customize our marketing efforts with you and perform statistical and data analyses, deliver your order and deliver promotional emails to you from us.  These third parties may not use your Personally Identifiable Information other than to provide the services requested by us.

26       31.      Based on its own policies, Provide-Commerce claims that it will not disclose

27       consumers' personal and Private Payment Information to Encore absent customers completing

28       Encore's signup page and affirmatively and knowingly agreeing to join a membership program.

- 10 -

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

1   To the extent Provide-Commerce's policy allows it to transmit its consumers' personal and

2   Private Payment Information to Encore without consumers' informed consent or authorization,

3   the policy is deceptive, unfair and unconscionable.  Despite Provide-Commerce's written policy,

4   Provide-Commerce disclosed Plaintiffs' information to Encore absent them completing Encore's

5   signup page, agreeing to join a membership program, or authorizing the disclosure.

6          32.    Due to Defendants' deceptive business practices, Plaintiffs either did not provide

7   their email and zip code, or at most believed they were providing their email address and zip

8   code to *Provide-Commerce* only to complete their transactions and receive a complimentary Gift

9   Code or savings benefit from Provide-Commerce.  Had Plaintiffs known that it would cost them

10  money to receive a $15.00 Gift Code or savings benefit and that they did not need to provide

11  their email addresses and zip codes to complete their transactions with Provide-Commerce, they

12  would not clicked on the initial offer link, provided information, and/or clicked the green

13  acceptance button.

14  **V.     PLAINTIFFS' EXPERIENCES WITH THE MEMBERSHIP PROGRAMS**

15       **Plaintiff Romero's Experience with EasySaver Rewards:**

16         33.    In early February 2009, Plaintiff Romero purchased flowers from Proflowers.com

17  website using his debit card.  Plaintiff Romero entered into this transaction in California.

18  Plaintiff Romero did not want to become a member of EasySaver Rewards and did not provide

19  his email address and zip code to receive the $15.00 Gift Code.  Nor did he click the green

20  acceptance button.  Instead he clicked on the "X" at the top right corner of the webpage to close

21  the window.  After clicking on the "X", Plaintiff Romero was directed back to Proflowers'

22  website.

23         34.    Two weeks later, Plaintiff Romero discovered that Encore via its EasySaver

24  Rewards program made unauthorized charges to his debit card.  Encore first charged Plaintiff

25  Romero's debit card $1.95 on February 14, 2009.  Plaintiff Romero initially did not notice this

26  bill because the amount was so small.  Then one month later, on March 17, 2009, Encore

27  charged $14.95 to Plaintiff Romero's debit card.  Plaintiff Romero was completely surprised to

28  see this charge, as well as the previous charges, since he did not provide Encore with his email

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

- 11 -

1   address and zip code, did not click on the green acceptance button on the signup page, did not

2   authorize Provide-Commerce to transfer any information to Encore, and did not authorize Encore

3   to charge his debit card.  Moreover, Plaintiff Romero never received anything from Encore.  He

4   did not receive any confirmation email for purportedly joining the EasySaver Rewards program,

5   the $15.00 Gift Code, or any other benefits, savings or rewards.

6        35.     On March 17, 2009, Plaintiff Romero called both Encore and Provide-Commerce

7   to have the charges removed from his debit account.  When Plaintiff Romero called Encore's toll

8   free number for its EasySaver Rewards program, no one answered the phone.  He then called

9   ProFlowers and spoke with a representative who indicated that she could not do anything about

10  the charges.  The representative further indicated that she had been receiving numerous calls

11  about unauthorized charges by Encore via the EasySaver Rewards program.

**Plaintiff Bailey's Experience with EasySaver Rewards:**

13       36.     On August 11, 2009, Plaintiff Bailey purchased flowers from Provide-

14  Commerce's ProFlowers.com website using her credit/debit card.  Similarly, Plaintiff Bailey did

15  not want to become a member of EasySaver Rewards.  At the time of purchase, Ms. Bailey does

16  not remember a pop-up offer during her payment transaction, but it is her general practice to

17  always close pop-ups.  But Ms. Bailey does recall clicking on a coupon for $10 off her next

18  Proflowers purchase, which she did.  When she was taken to the next page – what Defendants

19  call the "enrollment page," she clicked out of the page and closed all browser windows.  Plaintiff

20  Bailey never intentionally accepted an offer from EasySaver.

21       37.     Several days later, Encore via its EasySaver Rewards Program charged a $1.95

22  activation fee to Plaintiff Bailey's credit card. Between September and November 2009, Encore

23  charged $14.95 to Plaintiff Bailey's credit card on three separate occasions.  Plaintiff Bailey

24  never authorized these charges, nor did she receive any benefits, savings or services from any

25  Defendant or the EasySaver Rewards program.

26       38.     In September 2009, Plaintiff Bailey noticed the unauthorized charges from

27  EasySaver Rewards and called Encore to stop the recurring unauthorized charges.  Encore

28  assured her that the charges would stop.  Despite the representation, Encore continued to charge

- 12 -

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

1   $14.95 to Plaintiff Bailey's credit card in October and November 2009.  After the November

2   charge, because of Encore's misrepresentations, Ms. Bailey was forced to cancel and close her

3   bank account to stop the unauthorized charges.

4   **Plaintiff Cox's Experience with EasySaver Rewards:**

5   39.   Plaintiff Cox purchased flowers from the Proflowers.com website using his debit

6   card.  Plaintiff Cox provided his email address and zip code, believing that the information was

7   necessary to complete his transaction with ProFlowers and receive a complimentary Gift Code.

8   Plaintiff Cox did not want to become a member of EasySaver Rewards.  He did not knowingly

9   consent to join any rewards program or pay any fees associated with any rewards program.  In

10  fact, he did not even realize that he had been redirected away from ProFlowers' website to

11  Encore's webpage due to the deceptive nature of EasySaver Rewards marketing scheme.

12  40.   Around August 2010, Cox discovered unauthorized billing to his debit card by

13  Encore via its EasySaver Rewards program.  Encore charged the $1.95 activation fee and the

14  $14.95 monthly charge, on multiple occasions, to his debit card.  He also was surprised to

15  discover the charges on his debit card since he never intended to join the program or authorize

16  Provide-Commerce to transfer any information to Encore.  He does not recall receiving any

17  confirmation email from anyone for purportedly joining the EasySaver Rewards program, the

18  $15.00 Gift Code, nor any other benefits, savings or rewards.

19  **Plaintiff Lawler's Experience with EasySaver Rewards:**

20  41.   Plaintiff Lawler purchased flowers from Proflowers.com.   She discovered

21  unauthorized charges to her credit card by Encore via its EasySaver Rewards program.  Encore

22  charged an activation fee of $1.95 and monthly fees of $14.95 on multiple occasions.  She was

23  surprised to discover the charges since she never intended to join the program or authorize

24  Provide-Commerce to transfer any information to Encore.

25  **Plaintiff Walter's Experience with EasySaver Rewards:**

26  42.   Plaintiff Walters purchased flowers from Proflowers.com.   He discovered

27  unauthorized charges to his card by Encore via its EasySaver Rewards program.  Encore charged

28  an activation fee of $1.95 and monthly fees of $14.95 on multiple occasions.  He was surprised

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

1  to discover the charges since he never intended to join the program or authorize Provide-

2  Commerce to transfer any information to Encore.

3  **Plaintiff Dickey's Experience with EasySaver Rewards:**

4  43.    Plaintiff Dickey also purchased flowers from Proflowers.com.  He discovered

5  unauthorized charges to his card by Encore via its EasySaver Rewards program.  Encore charged

6  an activation fee of $1.95 and monthly fees of $14.95 on multiple occasions.  He was surprised

7  to discover the charges since he never intended to join the program or authorize Provide-

8  Commerce to transfer any information to Encore.

9  **Plaintiff Jenkins' Experience with Preferred Buyers Pass:**

10  44.    Plaintiff Jenkins' purchased flowers from Proflowers.com using his debit card.

11  While purchasing flowers, Plaintiff Jenkins recalls seeing on Proflowers.com's checkout

12  webpage a coupon offer for a savings benefit on the next Proflowers.com purchase.  Plaintiff

13  Jenkins clicked on the offer and recalls a pop-up window that contained an enormous amount of

14  text.  Because he was in a hurry, he did not want to continue the process to redeem the offer.

15  Plaintiff Jenkins clicked to exit out of the window and return to the Proflowers.com checkout

16  window.

17  45.    Plaintiff Jenkins thought he had declined the offer.   Plaintiff Jenkins never

18  realized that by clicking on the initial offer, he was redirected to a webpage operated by Encore

19  MI.  Because Plaintiff was never asked to enter his debit card account number, name, billing

20  address, and contact information in connection with the offer, Plaintiff was shocked to discover

21  monthly charges of $14.95 on his debit account from Preferred Buyers Pass, a program operated

22  by Encore.

23  46.    Plaintiff Jenkins was billed monthly until he noticed the charges and cancelled his

24  membership in February 2011.  He received no notice that he had enrolled in a membership

25  program for $14.95 per month and was not provided with a copy of his "authorization."

26  **Plaintiff Berentson's Experience with Red Envelope Rewards:**

27  47.    Plaintiff Berentson purchased merchandise from Provide-Commerce's website,

28  RedEnvelope.com.  During the process, Plaintiff Berentson recalls seeing on the check out page

- 14 -

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA  92101

an offer for freeshipping.  He may have clicked on the offer to receive a savings benefit and to complete his purchase transaction.

48.     Plaintiff never realized that he was redirected to a webpage operated by Encore. Because Plaintiff was never asked to enter his account number, name, billing address, and contact information in connection with the offer, Plaintiff was shocked to discover monthly charges of $14.95, over a nine month period.  The charges were from Red Envelope Rewards, another program operated by Encore.

49.     After discovering the charges, Plaintiff cancelled his membership.  He never received notice that he had enrolled in a membership program for $14.95 per month, and was not provided with a copy of his "authorization."

## VI.   DEFENDANTS' PRACTICES HAVE BEEN EXPRESSLY BANNED

50.     Plaintiffs' experiences with Defendants mirror those of hundreds, if not thousands, of other consumer complaints about Defendants and their membership programs, which can be found on various consumer protection websites:

> I just purchased flowers for Valentine's Day last week from ProFlowers. I too had a charge of $1.95 to my credit card this morning that said EasySaver (Phone number 800-355-1837). I called and got through to them. They told me that when I purchased from Pro Flowers that I signed up for EasySaver Rewards program.   I was not aware of signing up for ANYTHING….

> I have been billed by EasySaver Rewards (EASYSAVER 800-355-1837 PA) for $14.95 per month since making a purchase on Proflowers.com.  EasySaver is apparently associated with ProFlowers and I inadvertently signed up for their 'services' while placing my order. They claim that I requested to be a member when I replied to an email after placing an order. I do not recall replying to any email or asking for the service. Obviously, their business practices are disingenuous at best, since I, and many others, have been fooled by this blatantly unethical business practice.

> … I have been charged 14.95 every month from AT LEAST [J]uly by this "EasySaver" program. Turns out when [I] ordered my mom chocolates for mother[']s day from SECRET SPOON, they took my information and gave it to these guys.  I called the 800 number on my online statement and she said the only way they could get my information was if [I] filled in my email and clicked the button saying [I] wanted to do this EasySaver thing, which [I] know for a FACT that [I] didn[']t do.  [S]he also told me that the program was

- 15 -

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA  92101

FOURTH AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT

3:09-cv-02094-MMA-BLM

to save me money on my hotels, vacations, etc but how is charging me 15 bucks a month without my permission saving me money!?!?....

I just got my bank statement with a notice from my bank letting me know that Easy Sav[e]r has been taking that same 14.95 out of my account for three months but that I should be concerned as this company has a lot of red flags. I called the bank today as I have never even heard of Easy Sav[e]r and I have never placed an order from them for anything. The bank has done a lot of research for me and found out that it was after ordering flowers for [V]alentine[']s [D]ay for my aunt these charges started. Easy [S]av[e]r said that they were an affiliate program of Proflowers.com.

Simply wanted to order a fruit basket from CherryMoonFarms (www.cherrymoonfarms.com) to send to grieving friend and ended up with unauthorized membership to EasySaverRewards (www.easysaverrewards.com) aka Encore Marketing International. They billed my credit card used to purchase fruit for $1.95 and then $14.95 even after I followed their cancellation process to the letter. Cancellation for something I never knowingly agreed to. Do NOT buy online at Cherry Moon Farms or ProFlowers and save yourself a headache. This is fraud as far as I'm concerned…..

I also am disgusted that "Red Envelope[]" would have such a practice as this! What really upset me was that there was no confirmation of credit card usage. Instead the credit card number was stolen from the one I had entrusted with Red Envelope for the order I made.

What a scam...I called ProFlowers and EasySaver about the three months of unauthorized charges to my credit card made by EasySaver. I ordered flowers from ProFlowers and was signed up for EasySaver. I know I didn't agree to EasySaver as I never sign up for these kind[s] of things (I don't even know what it is and what it saves me)….

I am the victim of Proflowers / EasySavers deceptive practice also. I saw several charges from EMI Marketing and EasySaver on my credit card.  I did not provide my information to either of these companies at the end of my Proflowers order and did not accept the 15% offer, so the information was definitely given without my permission….

51.    Because consumer complaints have been so pervasive, in May 2009, Senator John D. Rockefeller IV, Chairman of the U.S. Senate Committee on Commerce, Science, and Transportation investigated e-commerce marketing practices that generate thousands of monthly charges to consumer credit and debit cards.  The investigation focused on marketing companies with the same business model as Encore.  The Committee found, among other things, that the data pass enrollment process was deceptive and misleading, particularly since "[c]onsumers rely

- 16 -

FOURTH AMENDED CONSOLIDATED                    3:09-cv-02094-MMA-BLM
CLASS ACTION COMPLAINT

on the process of providing a credit card number as a barrier to unexpected charges." (*See* Ex. 1, Preliminary Report; Ex. 2, Final Report.)

52.     The Committee found the companies like Encore use "aggressive sales tactics <u>intentionally designed</u> to mislead online shoppers.  [It] exploits shoppers' expectations about the online purchasing process to charge millions of consumers each year for services the consumers do not want and <u>do not understand that they have purchased.</u>" (Exhibit. 1, Preliminary Report at p. 30, "Conclusion")(emphasis supplied).

53.     The Committee concluded that once marketing companies, like Encore obtained consumers Private Payment Information, they continued to charge "consumers month after month for services the consumers did not use <u>and did not understand that they had purchased</u>" and that this industry "was able to flourish because reputable websites were willing to share their customers' billing information." (Exhibit 2 at p. 20, "Conclusion")(emphasis supplied).

54.     The Committee also determined that companies like Encore were not following credit card processing rules, noting that "the 'data pass' process used by online merchants to enroll consumers in membership clubs appeared to violate both the generally-accepted norms of online commerce and the credit card companies' rules for online transactions."  (Exh. 2 at 2) Both MasterCard and Visa acknowledged that the data pass method violated a number of their general rules for merchants or their specific rules for card-not present transactions.

55.     As a result of the Senate Investigation, on December 29, 2010, the President signed the Restore Online Shoppers' Confidence Act ("ROSCA").  ROSCA outlaws the "data pass" process.  Most significantly, ROSCA requires companies like Encore to obtain "the full account number of the account to be charged; and the consumer's name and address and a means to contact the consumer."

## VII.   PLAINTIFFS' CLASS ACTION ALLEGATIONS

### EasySaver Rewards Class and Subclasses:

56.     **Class 1**: This lawsuit is brought on behalf of an ascertainable nationwide Class consisting of all persons residing in the United States or who have a United States-based account, who, between August 19, 2005 and the date of Class Notice, (1) purchased merchandise from

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

Proflowers.com, Red Envelope, Cherry Moon Farms, Secret Spoon, or Shari's Berries; and (2) clicked on a coupon offer and then had their credit card, debit card, bank account, or PayPal accounts charged by Regent Group, Inc., which operates EasySaver Rewards, (herein referred to as the "Class 1").

    a. **Subclass 1(A)**:  All Class members who did not (1) provide their email address or zip code, or (2) click a green acceptance button to receive a gift code for their next purchase transaction with Provide-Commerce.

    b. **Subclass 1(B):**  All Class members who (1) provided their email address and zip code, and (2) clicked a green acceptance button to receive a gift code for their next purchase transaction with Provide-Commerce.

    c. **Subclass 1(C):**  All Class members who are California residents who purchased from a Provide-Commerce site and who were charged by Encore via Easy Saver Rewards.

**Preferred Buyers Pass Class and Subclasses:**

57.    **The Class 2**:  This lawsuit is brought on behalf of an ascertainable nationwide Class consisting of all persons residing in the United States or who have a United States-based account, who, between August 19, 2005 and the date of Class Notice, (1) purchased merchandise from Proflowers.com, Red Envelope, Cherry Moon Farms, Secret Spoon, or Shari's Berries; and (2) clicked on a coupon or discount offer, and had their credit card, bank account, debit card, or PayPal account charged by Regent Group, Inc., which operates Preferred Buyers Pass (herein referred to as the "Class 2").

    a. **Subclass 2(A)**:  All Class members who did not (1) provide their email address or zip code, or (2) click a green acceptance button to receive a gift code for their next purchase transaction with Provide-Commerce.

    b. **Subclass 2(B)**:  All Class members who (1) provided their email address and zip code, and (2) clicked a green acceptance button to receive a gift code for their next purchase transaction with Provide-Commerce.

- 18 -

**c.** **Subclass 2(C):**  All Class members who are California residents who purchased from a Provide-Commerce site and who were charged by Encore via Preferred Buyers Pass.

**Red Envelope Rewards Class and Subclasses:**

58.  **The Class 3**:  This lawsuit is brought on behalf of an ascertainable nationwide Class consisting of all persons residing in the United States or who have a United States-based account, and who, between August 19, 2005 and the date of Class Notice, (1) purchased merchandise from Red Envelope; and (2) had their credit card, debit card, or PayPal accounts charged by Regent Group, Inc. which operates Red Envelope Rewards (herein referred to as the "Class 3").

**a.** **Subclass 3(A)**:  All Class members who did not (1) provide their email address or zip code, or (2) click a green acceptance button to receive a gift code for their next purchase transaction with Provide-Commerce.

**b.** **Subclass 3(B):**  All Class members who (1) provided their email address and zip code, and (2) clicked a green acceptance button to receive a gift code for their next purchase transaction with Provide-Commerce.

**c.** **Subclass 3(C):**  All Class members who are California residents who purchased from a Provide-Commerce site and who were charged by Encore via Red Envelope Rewards.

**EFTA Class**

59.  All persons who are United States residents, or who have a U.S.-based bank account or PayPal account, and who, between August 19, 2008 and the date of Class Notice, had their bank account, debit card, or PayPal account charged by Regent Group or any of its affiliates.

60.  **Excluded from Classes and Subclasses**:  Excluded from the Classes and Subclasses are Defendants, their corporate parents, subsidiaries and affiliates, officers and directors, any entity in which defendants have a controlling interest, and the legal representatives, successors or assigns of any such excluded persons or entities, and the attorneys

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

for Plaintiffs herein.  Also excluded from the Classes and Subclasses are any judges presiding over these proceedings and their immediate family.

61.  **Numerosity**:  The members of the Classes and each Subclass are so numerous that joinder of all members is impracticable.  While the exact numbers of Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that the Classes and each Subclass consists of hundreds, if not thousands of individuals.  Class members are readily ascertainable through appropriate discovery from records maintained by Defendants and their agents.

62.  **Superiority**:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable, the likelihood of individual Class members prosecuting separate claims is remote and individual members do not have a significant interest in individually controlling the prosecution of separate actions.  No difficulty will be encountered in this case's management to preclude maintenance as a class action.

63.  **Common Questions of Law and Fact Predominate**:  The questions of law and fact common to the Classes predominate over questions affecting only individuals.  Among the questions of law and fact common to the Classes are:

    **a.**  whether Class members were automatically joined in EasySaver Rewards or other similar membership program;

    **b.**  whether Class members' Private Payment Information was improperly transferred to Encore;

    **c.**  whether Encore unlawfully charged Plaintiffs' and Class members' credit or debit cards;

    **d.**  whether Provide-Commerce complied with its privacy policy;

    **e.**  whether Defendants engaged in unfair or unlawful business practices;

    **f.**  whether Defendants engaged in false advertising;

    **g.**  whether Defendants breach the implied covenant of good faith and fair dealing;

- 20 -

**h.** whether Defendants' contracts, agreements, or policies contained unconscionable terms;

**i.** whether Defendants violated the Electronic Funds Transfer Act;

**j.** whether Plaintiffs and the Classes are entitled to injunctive relief; and

**k.** whether Plaintiffs and the Classes sustained damages and, if so, the proper measure of those damages.

64. **Typicality**:  Plaintiffs' claims are typical of other Class members' claims because Plaintiffs, like every other Class member, were exposed to materially identical conduct.

65. **Adequacy**:  Plaintiffs can fairly and adequately represent the Classes' interests; Plaintiffs have no conflicts of interest with other Class members, and have retained counsel competent and experienced in class action and complex civil litigation.

## VIII.   <u>CLAIMS</u>

**<u>FIRST CLAIM</u>**
**For Breach of Contract**
**Brought by Plaintiffs, the Classes and All Subclasses**
**Against Defendant Provide-Commerce**

66.     Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

67.     Provide-Commerce's privacy policy sets forth its obligations to Plaintiffs and class members as to the handling of their Private Payment Information.   Provide-Commerce agreed that it would not share any Private Payment Information that Plaintiffs and class members provided to complete their purchases without authorization.

68.     Plaintiffs and Class members did everything Provide-Commerce required via its agreements.   They provided their Private Payment Information for the limited purpose of completing their purchases and did not affirmatively agree to enroll in any membership program.

69.     Provide-Commerce breached its own agreements by transmitting Plaintiffs' and Class members' Private Payment Information to Encore without authorization. Provide-Commerce unfairly interfered with Plaintiffs' and Class members' rights to receive the security and privacy benefits they were entitled to under the contract.   Indeed, Provide-Commerce

- 21 -

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

expressly represented to Plaintiffs and the Class members that they would only use their Private Payment Information for purposes of completing their selected purchase on the Provide-Commerce website and that their Private Payment Information would neither be used for other purposes nor shared with unauthorized parties, including Encore.   Provide-Commerce also expressly represented that consumers would only be enrolled in the EasySaver Program, or other programs, if they knowingly and explicitly agreed to do so.

70.   But Provide-Commerce provided Plaintiffs' and Class members' Private Payment Information to Encore without informed authorization and thus denied Plaintiffs and Class members of the security benefits to which they were entitled.

71.   Provide-Commerce also assumed a special relationship with, and fiduciary obligations to, Plaintiffs and the Classes, and agreed to abide by its respective duties when it obtained their Private Payment Information via processing their purchase transactions.   Despite its obligations and duties, Provide-Commerce failed to act with good faith and fair dealing when it tricked its customers into signing up for membership programs and otherwise failed to protect and maintain Plaintiffs' and the Classes' Private Payment Information.

72.   Further, Provide-Commerce and Encore collaboratively represented in small print that Encore would bill members $14.95 per month, when it actually billed members on a 28-day cycle, resulting in members being charged, on some occasions, twice in one month.   Plaintiffs Jenkins and Berentson, as well as other Plaintiffs, experienced being billed the monthly fee twice in one month.

73.   Provide-Commerce engaged, and continues to engage, in a course of conduct to further its own economic interests and in violation of its own policy.   As a direct and proximate result of Provide-Commerce's aforementioned conduct, Plaintiffs and the Classes have been damaged in that their Private Payment Accounts were wrongfully charged fees for a program in which they declined to enroll and in a sum to be proven at trial.

74.   The acts alleged were part of Provide-Commerce's ordinary business practice to increase revenue by facilitating unauthorized charges to Plaintiffs' and the Classes' credit and debit cards.   In doing so, Provide-Commerce acted despicably, willfully, wantonly, oppressively,

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

1 fraudulently and in conscious disregard of Plaintiffs' and the Classes' rights.

2   75. To the extent Provide-Commerce's website contains terms that allow it to transfer

3 its consumers' personal and payment information to Encore absent informed consent to enroll in

4 the membership programs, those terms are unconscionable and thus unenforceable.

5   76. Plaintiffs and Class members seek judgment against Provide-Commerce for

6 compensatory and punitive damages and declaratory relief along with pre-judgment interest,

7 costs of suit and other relief as the Court deems just and proper.

8         **SECOND CLAIM**
         **For Breach of Contract**

9   **Brought by All Plaintiffs and Subclasses 1(B), 2(B), and 3(B)**
          **Against Encore**

10

11   77. Plaintiffs refer to and incorporate by reference the above paragraphs as though set

12 forth fully herein.

13   78. At all times herein relevant, Plaintiffs did not knowingly consent to join a

14 membership program or to be bound by any terms or agreements set forth on Encore's website.

15 To the extent it is found otherwise, Encore nonetheless breached its own published agreement.

16 Specifically, Encore agreed to not obtain consumers' Private Payment Information either directly

17 or indirectly from Provide-Commerce in order to charge fees or enroll customers in the purported

18 membership programs unless customers affirmatively and knowingly join the programs by

19 providing their email address and zip code on Encore's signup page, and clicking the green

20 acceptance button.

21   79. Encore breached this agreement by intercepting or obtaining Plaintiffs'

22 information from Provide-Commerce, charging activation fees and monthly fees to their debit or

23 credit cards, and otherwise purportedly enrolling them in membership programs even though

24 they never knowingly or intentionally agreed to became a member of any program, and never

25 knowingly or intentionally authorized Encore to have access to any of their information,

26 particularly their debit card accounts.  As indicated above, several Plaintiffs likely provided their

27 email addresses and zip codes with the understanding that the information was necessary to

28 complete their transactions with ProFlowers.com and to receive a complimentary Gift Code *from*

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

*Proflowers.com.*  They did not knowingly consent to join any rewards program or pay any fees associated with any rewards program.  In fact, they did not even realize that they had been redirected away from ProFlowers' website to Encore's website due to the deceptive nature of the EasySaver Rewards marketing scheme.

80.    Encore further breached the purported agreement by failing to provide any meaningful consideration in return for charging Plaintiffs' credit and debit accounts the $1.95 activation fee and $14.95 monthly service fee, by failing to provide any notice that Plaintiffs had been enrolled in the program, and by failing to provide the purportedly promised savings, benefits, and discounts.  In fact, Encore took affirmative steps to hide the fact that Plaintiffs were purportedly enrolled in membership programs in order to continue charging Plaintiffs' credit and debit accounts for as long as possible without their knowledge, and without providing them with any meaningful benefits.

81.    Encore further breached the purported agreement by representing in small print that it would bill members $14.95 per month, when it actually billed members on a 28-day cycle, resulting in members being charged, on some occasions, twice in one month.  Plaintiffs Jenkins and Berentson, as well as other Plaintiffs, experienced being billed the monthly fee twice in one month.

82.    Encore further failed to act with good faith and fair dealing because it took steps to prevent class members from canceling their memberships in a timely fashion, which was a promised benefit, and it took steps to prevent members from obtaining or seeking any benefits.

83.    To the extent Encore's website contains terms that allows it, among other things, to charge activation fees and monthly fees to Plaintiffs' credit and debit cards without obtaining authorization or informed consent and without providing any meaningful benefit in return, those terms are unconscionable and thus unenforceable.

84.    As a direct and proximate result of defendants' aforementioned conduct, Plaintiffs and the Classes have been damaged in a sum to be proven at trial.  Alternatively, Plaintiffs seek declaratory judgment that Encore's contractual agreements are unconscionable and unenforceable, along with unjust enrichment damages.

FOURTH AMENDED CONSOLIDATED                    3:09-cv-02094-MMA-BLM
CLASS ACTION COMPLAINT

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA  92101

### THIRD CLAIM
**For Breach of the Implied Covenant of Good Faith and Fair Dealing
Brought by Plaintiffs, the Classes and All Subclasses
Against Defendants**

85.     Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

86.     Provide-Commerce, as well as its collaborative partner Encore, entered into a contract with Plaintiffs and Class members based on representations made via policies and terms of conditions posted on Provide-Commerce's websites about whether Private Payment Information would be transmitted to Encore and, if so, under what conditions.

87.     Plaintiffs and Class members did everything the contracts required of them.  They provided their Private Payment Information for the limited purpose of completing their purchases on the Provide-Commerce website and did not affirmatively consent to have their information transmitted to Encore for any reason.  In fact, some Plaintiffs and class members affirmatively declined the savings coupon that was used as bait to enroll unsuspecting consumers into Defendants' membership programs.  Thus, all conditions had been met to allow Provide-Commerce to fully protect Plaintiffs' and the Class' Private Payment Information from disclosure to Encore.

88.     Provide-Commerce, along with Encore, interfered with Plaintiffs' and Class members' rights to receive the security and privacy benefits that they were entitled to under the contract.  Indeed, Provide-Commerce expressly represented and implied to Plaintiffs and the Class members that they would only use their Private Payment Information for purposes of completing their selected purchase on the Provide-Commerce website and that their Private Payment Information would neither be used for other purposes nor shared with unauthorized parties, including Encore.  Provide-Commerce also expressly and impliedly represented that consumers would only be enrolled in a membership program,  if they knowingly and explicitly agreed to do so.

89.     But Provide-Commerce provided Plaintiffs' and Class members' Private Payment Information to Encore without informed authorization, thereby unfairly denying Plaintiffs and

- 25 -

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

1  Class members of the security benefits to which they were entitled.    As such, Provide-

2  Commerce — along with its collaborative and undisclosed partner, Encore — failed to act in

3  good faith to further its economic interests and at the expense of Plaintiffs and Class members.

4        90.    Provide-Commerce, as well as its collaborative and undisclosed partner, assumed

5  a special relationship with, and fiduciary obligations to, Plaintiffs and the Classes, and agreed to

6  abide by its respective duties, when it obtained Plaintiffs' and the Classes' Private Payment

7  Information to process purchase transactions.

8        91.    Defendants, however, refused and failed to act in good faith and deal fairly with

9  Plaintiffs and the Classes, and breached said obligations by mishandling Plaintiffs' and the

10  Classes' Private Payment Information, and by utilizing a deceptive practice to intentionally trick

11  customers into unwittingly signing up for membership programs.

12       92.    Lacking a reasonable basis for doing so, and with full knowledge and/or

13  conscious disregard of the consequences, Provide-Commerce, along with Encore, failed to

14  protect and maintain Plaintiffs' and the Classes' Private Payment Information.

15       93.    Defendants engaged, and continues to engage, in a course of conduct to further

16  their own economic interests and in violation of their own implied policies.

17       94.    Because Defendants continue to engage in the above acts, their actions constitute

18  a continuing tort and continuing bad faith, causing Plaintiffs and the Classes to suffer continuing

19  damages.

20       95.    As a direct and proximate result of Defendants' conduct, Plaintiffs and the

21  Classes have been damaged in that their Private Payment Information was misused via

22  unauthorized charges to their credit and debit accounts.

23       96.    The conduct was part of Defendants' ordinary business practice to increase

24  revenue by facilitating unauthorized charges to Plaintiffs' and the Classes' credit and debit

25  accounts.    In doing so, Defendants acted despicably, willfully, wantonly, oppressively,

26  fraudulently and in conscious disregard of Plaintiffs' and the Classes' rights.

27       97.    Plaintiffs and Class members seek judgment against Defendants for compensatory

28  and punitive damages and declaratory relief along with pre-judgment interest, costs of suit and

- 26 -

1  other relief as the Court deems just and proper.

2  **FOURTH CLAIM**
**For Fraudulent Misrepresentations/Omissions**
3  **Brought by Plaintiffs, the Classes and All Subclasses**
**Against Defendants**
4

5  98.    Plaintiffs refer to and incorporate by reference the above paragraphs as though set

6  forth fully herein.

7  99.    Common law fraud is the making of a knowingly false representation or

8  concealment of a material fact with intent to deceive or induce reliance that causes justifiable

9  reliance and resulting damages.  And California Civil Code section 1710 defines deceit/fraud as

10  either: (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be

11  true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground

12  for believing it to be true; (3) the suppression of a fact, by one who is bound to disclose it, or

13  who gives information of other facts which are likely to mislead for want of communication of

14  that fact; or (4) a promise, made without any intention of performing it.

15  100.    Provide-Commerce and Encore admit that they work completely and

16  collaboratively with each other in creating, implementing and operating the membership

17  programs and their enrollment process.   Provide-Commerce represented through its published

18  policy that it will not transmit Plaintiffs' and the Class members' Private Payment Information

19  absent authorization.  Provide-Commerce publishes its policy with the intent to induce Plaintiffs

20  and the Classes to purchase merchandise from Provide-Commerce under the guise that Provide-

21  Commerce will protect their information.  But in actuality, Provide-Commerce transmits the

22  information to its partner Encore and/or allows Encore to intercept the information during

23  Plaintiffs' and the Classes' purchase transaction.  Encore then makes unauthorized charges to

24  Plaintiffs' and the Classes' credit and debit accounts under the guise that Plaintiffs and the

25  Classes enrolled in membership programs, which they did not do.

26  101.    Likewise, Provide-Commerce's agent, joint venturer, and co-conspirator Encore

27  represented that it would only obtain Plaintiffs' and the Classes' Private Payment Information

28  from Provide-Commerce if Plaintiffs and the Classes affirmatively agreed to enroll in

- 27 -

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

membership programs by providing their email address and zip code. Provide-Commerce via Encore also represented that Plaintiffs and the Classes would only be charged for EasySaver activation and membership fees if they enrolled in the program by providing their email address and zip code. In reality, Provide-Commerce provided to Encore, or allowed Encore to intercept, Plaintiffs' and the Classes' Private Payment Information without authorization; and thereafter, via Encore charged Plaintiffs' and the Classes' credit and debit cards without authorization.

102.   Further, Provide-Commerce, directly and via its partner, agent and coconspirator, Encore, touted membership programs as legitimate savings clubs that provide coupons, gift cards, and other savings benefits to its members. But in reality, the programs were nothing more than a sham that provided no meaningful benefits, products or services to its members.

103.   Provide-Commerce further misrepresented that Plaintiffs could receive a "free" gift simply by providing their respective email address and zip code as part of Provide-Commerce's EasySaver Rewards program. These misrepresentations were also made via its partner, agent and coconspirator, Encore. Hidden in an entirely separate area on the website are deceptive terms and conditions stating that Plaintiffs would be charged for enrolling in the reward program. Provide-Commerce, along with Encore, knew, or reasonably should have known, that Plaintiffs would likely not see the hidden terms and conditions, and that Plaintiffs would not have provided their email addresses and zip codes if they knew Provide-Commerce via Encore would thereafter begin billing their debit cards. Provide-Commerce, separately and via Encore, further concealed the terms and conditions and Plaintiffs' "enrollment" in the program by not providing any confirmation of "enrollment" either at the time of enrollment or in a subsequent email notification, and by intentionally not requesting Plaintiffs' credit and debit card information at the time of enrollment. Provide-Commerce, along with Encore, knew that Plaintiffs would not provide their credit or debit card information or intentionally enroll in the rewards program if Encore directly asked Plaintiffs to provide their credit and debit card information. Simply put, Provide-Commerce deceptively transmitted to Encore, or allowed the interception of, Plaintiffs' and Class members' Private Payment Information without their knowledge or consent.

104.    Provide-Commerce further misrepresented through Encore that members would be billed $14.95 per month, when in actuality they were billed on a 28-day cycle, resulting in members being charged, on some occasions, twice in one month.   Plaintiffs Jenkins and Berentson, as well as other Plaintiffs, experienced being billed the monthly fee twice in one month.

105.    Plaintiffs and the Classes relied on Provide-Commerce's misrepresentations and omissions by providing their Private Payment Information to Provide-Commerce and were damaged because unauthorized charges were made to their credit and debit accounts.   Further, Plaintiffs and the Classes received no benefits, services or products from membership programs. Provide-Commerce thus reaped unearned financial gains the unauthorized charges to Plaintiffs' and the Classes' credit and debit cards, and from the EasySaver Rewards activation fees and membership dues.   This conduct is unjust and unlawful and thus violates California Civil Code section 1710.

106.    As a proximate result of Provide-Commerce's fraud, Plaintiffs and the Classes have been damaged in an amount that was improperly charged to their credit and debit cards and all other resulting damages.

107.    Plaintiffs and the Classes are further informed and believe that Defendants' conduct as was motivated by malice, fraud, and oppression, and was done in conscious disregard of Plaintiffs' rights.   Punitive damages should be assessed against Provide-Commerce in an amount that would punish and deter Defendants from further engaging in fraud.

108.    Additionally, Provide-Commerce concealed material information about the membership programs from Plaintiffs and Class members.   Provide-Commerce failed to disclose that Plaintiffs and Class members would be enrolled in the program regardless of whether they clicked the acceptance button.   At the same time, Provide-Commerce made affirmative representations on its website when Plaintiffs and Class members were processing their purchases, that the program was optional and that the acceptance button would have to be selected to be enrolled.

109.    Provide-Commerce also concealed the material fact that it was transmitting

- 29 -

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

Plaintiffs' and Class members' Private Payment Information to Encore in connection with the Defendants' EasySaver Rewards program without authorization. At the same time, Provide-Commerce made affirmative representations to Plaintiffs and Class members at the point of sale and in its written policies and agreements that Private Payment Information would not be transmitted or used without authorization beyond what was necessary to fill the customer's original order. Provide-Commerce further concealed and/or failed to disclose that Plaintiffs and Class members' Private Payment Accounts would be charged an EasySaver activation fee or monthly fees regardless of whether they declined the offer to join. To the contrary, Provide-Commerce misrepresented to Plaintiffs and Class members that the program was optional when it presented the offer to Plaintiffs and Class members at the time of their purchase, and represented that they would have to affirmatively enroll by providing additional information and clicking the "acceptance" button. Provide-Commerce further misrepresented to Plaintiffs and Class members at the point of sale that they would have to affirmatively enroll in the program to be charged. Provide-Commerce also failed to disclose material information regarding the program itself, including, but not limited to, the fact that the program did not provide any savings or benefits and that consumers would be charged monthly regardless of whether they used, or even affirmatively enrolled, in the program. Instead, Provide-Commerce affirmatively misrepresented that, if enrolled, Plaintiffs and Class members would immediately receive a "gift code" and that "benefits and savings will automatically continue." Plaintiffs and Class members were unwittingly enrolled in the program, but did not receive the gift code at the time of their purchase and/or other benefits or savings as a result of being enrolled in the Program. Provide-Commerce also concealed and failed to disclose that it was financially benefiting from its partnership with Encore, instead misrepresenting the offer as a "gift." These misrepresentations and omissions were made by Provide-Commerce and/or by Encore acting with Provide-Commerce's authorization and on its behalf, while Plaintiffs and Class members were processing and completing their Provide-Commerce transactions.

110. The concealed information is material in that a reasonable consumer would find information important when deciding whether to purchase products from Provide-Commerce's

- 30 -

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

website. Had the concealed information been disclosed to Plaintiffs and Class members, they would have acted differently, by not providing Provide-Commerce with their Personal Payment Information, not clicking on the gift code link, or acting to cancel their membership before they were charged.

111.   Plaintiffs and Class members were unaware that by declining the EasySaver program offers that Provide-Commerce would provide their Private Payment Information to Encore or that their Payment Accounts would be charged as a result because Provide-Commerce concealed the material information as alleged above.

112.   Plaintiffs and the Classes justifiably acted or relied upon to their detriment the omissions and misrepresentations that their Private Payment Information would not be transmitted, as evidenced by the fact that they gave Provide-Commerce their Private Payment Information to complete their purchase, but did not authorize, in fact declined, any offer that their Private Payment Information transmitted to Encore or their accounts charged in connection with the EasySaver Program.

113.   Provide-Commerce was and continues to be under a duty to Plaintiffs and the Classes to disclose these facts because:

    **a.**   Provide-Commerce is in a superior position to know the truth about the membership programs and its business practice of transmitting Private Payment Information to Encore;

    **b.**   Provide-Commerce made partial disclosures and representations as alleged above about the program and about its policies regarding use of consumers' Private Payment Information; and

    **c.**   Provide-Commerce actively concealed from Plaintiffs and the Classes the true nature of the program and its true practices with respect to the use of Private Payment Information.

114.   Provide-Commerce intentionally represented and concealed from and/or failed to disclose to Plaintiffs and the Classes the facts described above with the intent to defraud Plaintiffs and Class members, and for the purpose of inducing Plaintiffs and the Class to provide

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

- 31 -

their Private Payment Information, which was later transmitted to Encore to involuntarily enroll Plaintiffs and Class members in the illusory Program. By concealing this material information, Defendant sought to ensure that Plaintiffs and Class members would complete their transaction on the Provide-Commerce website while allowing it to still profit by giving that information to Encore without authorization to enroll Plaintiffs and Class members in the sham Program. Defendant knew that Plaintiffs and Class members would not have provided their Private Payment Information to Encore if all material information was disclosed because Plaintiffs and Class members declined to participate in the Program. Despite this, Defendant completed their transactions with Plaintiffs and Class members, fraudulently enrolled them in the membership programs and unlawfully transmitted Plaintiffs' and Class members' Private Payment Information to Encore.

115. Had Provide-Commerce disclosed that it intended to transmit Plaintiffs' and Class members' Private Payment Information to Encore without their permission and that their Private Payment Accounts would be charged as a result, Plaintiffs and Class members would have taken additional steps to secure their accounts, would not have provided their Private Payment Information and/or purchased products from Provide-Commerce.

116. As a direct and proximate cause of Provide-Commerce's misconduct, Plaintiffs and the Class members have suffered actual damages in that they have paid activation and monthly fees without receiving any benefits, discounts or savings.

117. Provide-Commerce's misconduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

118. Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Provide-Commerce for actual and punitive damages for themselves and each member of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

/ / /

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA  92101

FOURTH AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT

3:09-cv-02094-MMA-BLM

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

### FIFTH CLAIM
**For Violations of the Consumers Legal Remedies Act Cal. Civil Code section 1750 *et seq.*
Brought by Plaintiffs, the Classes and All Subclasses
Against Defendants**

119.   Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

120.   California Civil Code section 1770(a) provides that it is unlawful to use unfair methods of competition and unfair or deceptive acts or practices in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.

121.   Provide-Commerce and Encore are each a "person" as defined by Civil Code § 1761(c).

122.   Plaintiffs and the members of the CLRA Sub-Class are "consumers" within the meaning of Civil Code §1761(d).

123.   The flowers and gifts ordered by Plaintiffs and Class members from Provide-Commerce constitute "goods" as defined by Civil Code § 1761(a).

124.   The EasySaver Rewards, Red Envelope Rewards, and Preferred Buyers Pass programs constitute "services" as defined by Civil Code § 1761(b).

125.   The purported benefits of the membership programs in which Plaintiffs and Class members were enrolled, including coupons for Provide-Commerce's flowers and gifts, also constitute "goods" as defined by Civil Code § 1761(a).

126.   Plaintiffs' and Class members' purchase of the flowers and gifts, and their unwitting enrollment in and payment for the membership programs' benefits, are "transaction[s]" as defined by Civil Code § 1761(e).

127.   Provide-Commerce and Encore admit that they worked completely and collaboratively with each other in creating, implementing, and operating the membership programs and their enrollment process.  Defendants together provided or purported to provide goods to Plaintiffs and Class members by offering a rewards program in connection with the ordering, sale and delivery of the flowers and gifts on their online retail stores.

128.   Venue is proper pursuant to Civil Code § 1780(c) because Provide-Commerce is

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

1   headquartered and does a significant amount of business in this County.  Encore also does a

2   significant amount of business in this County.  Plaintiff's declaration establishing proper venue

3   was submitted and previously attached to the original complaint filed in this case.

4          129.    Provide-Commerce violated the CLRA by misrepresenting its affiliation and

5   association with third parties, including Encore, and by sharing Plaintiffs' and Class members'

6   Private Payment Information with Encore.  Provide-Commerce also, along with Encore, violated

7   the CLRA by representing that the membership programs would provide benefits it does not

8   offer because Plaintiffs and Class members received no savings or discounts as a result of being

9   enrolled.  Defendants also violated the CLRA by advertising the EasySaver Program as a

10  program that Plaintiffs and Class members could decline, representing the Program as a

11  voluntary program that would only activate when the consumer affirmatively signs up by

12  clicking the enroll button, and as a Program that would offer consumer discounts, savings, and

13  other economic benefits.  In fact, Plaintiffs and Class members were enrolled in the EasySaver

14  Program after declining to join and they received no benefits or savings as a result.  Furthermore,

15  Provide-Commerce represented that Plaintiffs and Class members would receive a rebate or

16  discount by enrolling in the program, although the earning of the benefit was contingent on

17  Plaintiffs and Class members knowingly and actively enrolling in the program to obtain the

18  promised coupon.  Because they declined the offer, Plaintiffs and Class members did not receive

19  a discount code or discount on their purchase, but were nonetheless charged an activation fee and

20  subsequent monthly charges.

21          130.    Defendants specifically violated California Civil Code section 1770(a) by, among

22  other things:

23          a.    Misrepresenting the affiliation, connection, or association with, or certification

24                by, another, in violation of California Civil Code section 1770(a)(3);

25          b.    Representing that goods or services have sponsorship, approval, characteristics,

26                ingredients, uses, benefits, or quantities which they do not have or that a person

27                has a sponsorship, approval, status, affiliation, or connection which he or she does

28                not have, in violation of California Civil Code section 1770(a)(5);

- 34 -

3:09-cv-02094-MMA-BLM

**c.** Advertising goods or services with intent not to sell them as advertised, in violation of California Civil Code section 1770(a)(9);

**d.** Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions, in violation of California Civil Code section 1770(a)(13);

**e.** Representing that a transaction confers or involves rights remedies, or obligations which it does not have or involve, or which are prohibited by law, *i.e.*, the right to decline to join the EasySaver Program, which the transaction did not have in violation of California Civil Code section 1770(a)(14);

**f.** Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction, in violation of California Civil Code section 1770(a)(17); and

**g.** Inserting an unconscionable provision in the contract, in violation of California Civil Code section 1770(a)(19).

131. Defendants engaged in deceptive practices, in violation of the CLRA, that were designed to induce Plaintiffs and the members of the Class to purchase products on Provide-Commerce websites (and provide their Private Payment Information to do so) and to force Plaintiffs and Class members to involuntarily enroll in the program.  Defendants also engaged in deceptive practices by telling consumers their Private Payment Information would not be transmitted and then transmitting such information and enrolling them, without authorization, in an illusory "rewards program."

132. By engaging in the foregoing unfair or deceptive conduct, Defendants actively concealed and failed to disclose material facts about the Program and its use of Private Payment Information.

133. The representations set forth above regarding the program and Provide-Commerce's privacy policy are material facts that a reasonable person would have considered important in deciding whether or not to purchase products on Provide-Commerce's sites.

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

- 35 -

Plaintiffs and the Class justifiably acted or relied upon to their detriment the misrepresentations and/or concealed or non-disclosed facts as evidenced by their providing the Private Payment Information to Provide-Commerce to complete their purchase while declining to affirmatively enroll in the Program.

134.    Defendants' acts were intended to be deceptive and/or fraudulent.  Specifically, Defendants secretly enrolled Plaintiffs and Class members in membership programs and Provide-Commerce intentionally shared their Private Payment Information with Encore, its collaborative partner, without authorization.

135.    Plaintiffs and the members of the Class suffered injury in fact as a direct result of Defendants' misleading marketing campaign and/or concealment of material facts in violation of the CLRA in that they have paid, or will have to pay, fees in connection with membership programs from which they receive no benefits.  Had Defendants disclosed the true nature of the program and their intention to transmit Private Payment Information to Encore for the purposes of charging consumers debit and credit accounts when no services or benefits are rendered in exchange, Plaintiffs and the members of the Class would have taken steps to further secure or withhold their Private Payment Information and/or would not have purchased products on Provide-Commerce's sites.

136.    To this day, Defendant continues to violate the CLRA by concealing its affiliation with membership programs, by transmitting Private Payment Information without authorization and misrepresenting and concealing the true nature of the program.

137.    Pursuant to Civil Code § 1782(a), Plaintiffs served Defendant with notice of the alleged violations of the CLRA on behalf of all Class members by certified mail, return receipt requested, on September 24, 2009.  After 30-days, Provide-Commerce failed to adequately address the violations alleged herein,.

138.    Plaintiffs, on behalf of themselves and all others similarly situated, demands judgment against Provide-Commerce under the CLRA for damages and injunctive relief as may be appropriate and an award of attorneys' fees and costs.

FOURTH AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT

3:09-cv-02094-MMA-BLM

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

**SIXTH CLAIM**
**For Unjust Enrichment**
**Brought by Plaintiffs, the Classes and All Subclasses**
**Against Defendants**

139. Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

140. By billing Plaintiffs' and the Class members' credit and debit accounts without authorization as set forth herein and by otherwise billing Class members for joining the sham EasySaver Rewards, Preferred Buyers Pass, or Red Envelope Rewards programs that provided Plaintiffs or the Class no meaningful benefits, services or products, Defendants received unearned financial gains and unjustly retained the financial gains at Plaintiffs' and the Classes' expense.

141. It would be inequitable for Defendants — who admit to working collaboratively together on implementing the membership programs — to retain the profits, benefits, and other compensation obtained from its wrongful conduct as alleged herein.

142. As a result of this unjust enrichment, Plaintiffs and the Classes seek damages in an amount sufficient to compensate them for their losses. These losses include the amount Defendants were unjustly enriched by the unauthorized charges to Plaintiffs' and the Classes' credit and debit cards and interest in amount to be proven at trial. Plaintiffs and the Classes further seek an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from its wrongful conduct.

**SEVENTH CLAIM**
**For Violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.***
**Brought by Plaintiffs Romero, Bailey, Cox, and Jenkins and the EFTA Class**
**Against Defendant Encore**

143. Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

144. The Electronic Funds Transfer Act ("EFTA") provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system. 15 U.S.C. § 1693. The primary objective of the EFTA "is the provision of

- 37 -

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

individual consumer rights." *Id.*

145.   Plaintiffs Romero, Bailey, Cox, and Jenkins and the members of EFTA Class each maintained an "account" as that term is defined in 15 U.S.C. § 1693a(2), and are "consumers" as that term is defined in 15 U.S.C. § 1693a(5).

146.   Encore Marketing, engaged in "unauthorized electronic funds transfers," as that term is defined in 15 U.S.C. § 1693a(11), by debiting  the bank accounts of Plaintiffs Romero, Bailey, Cox, and Jenkins and the members of EFTA Class without written authorization.

147.   The EFTA provides that "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a).  "In case of preauthorized transfers from a consumer's account to the same person which may vary in amount…the designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with the regulations of the Board, of the amount to be transferred and the scheduled date of the transfer." 15 U.S.C. § 1693e(b).

148.   The EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205 *et seq.,* provide: "Preauthorization electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. § 205.1(d).  According to the Official Staff Interpretations ("OSI") of Regulation E, the EFTA's requirement that electronic fund transfers "be authorized by the consumer 'only in writing' cannot be met by a payee's signing a written authorization on the consumer's behalf with only an oral authorization from the consumer."  Regulation E, Supp. I, Part 10(b), ¶ 3.  When "a third-party payee fails to obtain the authorization in writing or fails to give a copy to the consumer…it is the third-party payee that is in violation of the regulation."  *Id.* at ¶ 2.

149.   Defendant Encore violated the EFTA because Encore initiated electronic fund transfers from Plaintiffs Romero's, Bailey's, Cox's, and Jenkins' accounts, as well as the accounts of the EFTA Class, without obtaining prior written authorization.  Further, Encore did not provide Plaintiffs Romero, Bailey, Cox, and Jenkins and the members of EFTA Class with

- 38 -

1   copies of their written authorizations or provide reasonable advance notice of the amount to be

2   transferred and the scheduled date of the transfer.

3       150.   Accordingly, under 15 U.S.C. § 1693m, Plaintiffs Romero, Bailey, Cox, and

4   Jenkins on behalf of themselves and the members of Subclass C seek damages, statutory

5   damages, costs of suit, including reasonable attorneys' fees, and such other further relief as the

6   Court deems appropriate.

7   **EIGHTH CLAIM**

8   **For Violations of Invasion Of Privacy – Intrusion Into Private Matters**
**Brought by Plaintiffs, the Classes and All Subclasses**

9   **Against Defendants**

10       151.   Plaintiffs refer to and incorporate by reference the above paragraphs as though set

11   forth fully herein.

12       152.   Plaintiffs and the Class have constitutionally protected privacy interests in their

13   Private Payment Information and their ability to control the disclosure and dissemination of this

14   information.  Plus, one who intentionally obtains unwanted access to another's private data is

15   liable for invasion of privacy in tort.   *Taus v. Loftus,* 40 Cal.4th 683, 725, 54 Cal. Rptr. 3d 775,

16   807-808 (2007).

17       153.   Plaintiffs and the Class had reasonable expectations that their Private Payment

18   Information would remain private from Encore when they entered into credit or debit card

19   transactions with Provide-Commerce.  They were certainly not aware that Provide-Commerce

20   would disclose to Encore this information.  Provide-Commerce did not adequately disclose its

21   intentions to provide Plaintiffs' and the Class' Private Payment Information to Encore.  In fact,

22   Provide-Commerce represented to its customers that it would guard their Private Payment

23   Information and would not disclose this information to anyone else absent informed

24   authorization.  But Provide-Commerce passed this information on to Encore without obtaining

25   authorization to do so.  Provide-Commerce relied on the fact that Plaintiffs and the Class

26   believed that Provide-Commerce would only use their Private Payment Information to process

27   their purchase from a Provide-Commerce website.

28       154.   Defendants' actions constitute a "serious" invasion of privacy resulting in

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

- 39 -

1  Plaintiffs and the Class being charged millions of dollars in unauthorized charges and having

2  their Private Payment Information disclosed to or obtained by Encore without their authorization

3  or consent.

4       155.   Defendants' conduct is highly offensive to a reasonable person, as evidenced by

5  the thousands of consumer complaints regarding Defendants' practices.

6       156.   Defendants realize that customers protect their privacy rights in their Private

7  Payment Information.

8       157.   As a proximate result of Defendants' above acts, Plaintiffs and the Class' Private

9  Payment Information was compromised and was obtained and used by Encore for profit without

10 their knowledge or consent, and all to the general damage in an amount according to proof.

11      158.   Defendants are guilty of oppression, fraud, or malice by using Private Payment

12 Information with a willful and conscious disregard of Plaintiffs' and the Class' privacy rights.

13      159.   Plaintiffs and the Class seek judgment for actual and punitive damages, plus

14 attorneys' fees for the establishment of a common fund, interest, and costs.  They also seek

15 injunctive relief.  Unless and until enjoined, and restrained by court order, Defendants' will

16 continue to cause Plaintiffs, the Class, and the public great and irreparable injury in that Private

17 Payment Information maintained by Provide-Commerce will be disclosed for profit and that

18 Encore will make unauthorized charges to the credit and debit card accounts.  Plaintiffs, the

19 Class, and the general public have no adequate remedy at law for the injuries in that a judgment

20 for the monetary damages will not end the invasion of privacy.

21                                    **NINTH CLAIM**
                                        **Negligence**
22              **Brought by Plaintiffs, the Classes and All Subclasses**
                                 **Against Defendants**
23

24      160.   Defendants Provide-Commerce and Encore collaboratively represented and

25 contractually agreed not to disclose Plaintiffs' and the Class Members' Private Payment

26 Information unless expressly authorized to do so.

27      161.   Despite its representation and contractual obligation, Provide-Commerce

28 negligently shared with Encore this information without informed authorization.

                                        - 40 -

FOURTH AMENDED CONSOLIDATED                           3:09-cv-02094-MMA-BLM
CLASS ACTION COMPLAINT

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

162.    Defendant Encore negligently accepted and used Plaintiffs' and the Class Members' Private Payment Information without their knowledge or consent.

163.    Defendants collaboratively represented in small print that Encore would bill members $14.95 per month, when it actually billed members on a 28-day cycle, resulting in members being charged, on some occasions, twice in one month.   Plaintiffs Jenkins and Berentson, as well as other Plaintiffs, experienced being billed the monthly fee twice in one month.

164.    Defendants knew, or reasonably should have known that Plaintiffs and the Class Members did not want their Private Payment Information passed to Encore; that they did not want to enroll in the EasySaver Rewards, Red Envelope or Preferred Buyers Pass programs; and that they did not want Encore to bill them without their express consent.

165.    But for Defendants' negligence, Plaintiffs would not have unauthorized charges on their credit and debit card bills for a service that was never requested, used, or provided.

166.    Plaintiffs and the Class have been damaged by Defendants' negligent conduct in an amount to be proven at trial.

### TENTH CLAIM
**For Unlawful Business Practices in Violation of Cal. Bus. & Prof. Code § 17200, et seq.**
**Brought by Plaintiffs, the Classes and All Subclasses**
**Against Defendants**

167.    Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

168.    The Unfair Competition Law, Business & Professions Code § 17200, *et seq.* ("UCL") defines unfair competition to include any unfair, unlawful or fraudulent business act or practice.   Unlawful business acts are those which are in violation of federal, state, county, or municipal statutes or codes, common law, or federal and state regulations.

169.    Provide-Commerce and Encore admit that they work completely and collaboratively with each other in creating, implementing, and operating the membership programs and enrollment process.   Their acts, practices, misrepresentations and omissions as herein alleged are unlawful and violate the laws and statutes alleged herein, and thus amount to

- 41 -

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

unfair competition as set forth in the UCL.  As a direct and proximate cause of Defendant's violations of the UCL, Plaintiffs and the Class suffered an injury in fact and have money because, among other things, they have suffered unauthorized transmission or interception of their Private Payment Information and unauthorized charges to their credit and debit cards, and because they were charged for services and benefits they did not receive.

170.    To the extent Provide-Commerce's website contained terms that allowed it to transfer its customers Private Payment Information to Encore absent affirmative and informed authorization, those terms are unconscionable and thus unenforceable.  And to the extent Provide-Commerce's agent, joint venturer, and co-conspirator Encore's website contained terms that allowed it to charge activation fees and monthly fees associated with customers purportedly enrolling or participating in membership programs, those terms are likewise unconscionable and thus unenforceable.  As discussed above, the membership programs are a sham because they do not provide any meaningful coupons, gift codes, or other savings benefits.

171.    Defendant's unlawful, unfair and fraudulent business practices, as described herein, present a continuing threat to Plaintiffs, the Classes, and the general public in that Defendants continue to wrongfully tout the sham EasySaver Rewards program as a legitimate savings program, continue to mishandle Class members' Private Payment Information, and continue to bill Class members' credit and debit cards without authorization.  In addition, Defendants have been unjustly enriched as a result of its conduct.  Plaintiffs and the Class seek equitable relief because they have no other adequate remedy at law.  Absent equitable relief, Provide-Commerce is likely to continue to injure consumers, reap unjust enrichment, and harm the public's interest, thus engendering a multiplicity of judicial proceedings.

172.    Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1572, 1668, 1709, 1710, 1770(a)(3), 1770(a)(5), 1770(a)(9), 1770(a)(14) and/or 1770(a)(17), as well as the Electronic Funds Transfer Act, 15 U.S.C. 1693, as described above.

173.    Defendant's acts and practices are also unlawful because they violate California Business & Professions Codes § 22576 and 17500.  Provide-Commerce is an operator of a commercial website that collects personally identifiable information through its website from

consumers. Class members include consumers who used or visited the commercial website who reside in all fifty states, including California. Provide-Commerce violated its posted privacy policy by sharing personal payment information with Encore without authorization beyond what was necessary to complete Plaintiffs' and Class members' orders and permitted Encore to charge Plaintiffs' and Class members' Private Payment Accounts without authorization.

174. Defendants violated the UCL by fraudulently misrepresenting and concealing from and/or intentionally failing to disclose to Plaintiffs and the Classes the true facts about its business practice of transmitting Private Payment Information without authorization and the EasySaver Program, as alleged herein.

175. Defendants' conduct was fraudulent in violation of the UCL, in that Defendants actively misrepresented in, and/or concealed and omitted from, their advertising, marketing and other communications, material information about the programs and their policies with respect to the use of private consumer information, including Private Payment Information, in a manner that has deceived and is likely to continue to deceive consumers and the public.

176. As alleged herein, Plaintiffs relied on these misrepresentations and omissions when providing Provide-Commerce their Private Payment Information and purchasing products on Provide-Commerce's website and, as a result, suffered an injury in fact and lost money.

177. Defendants violated the UCL by representing to Plaintiffs and Class members that their Private Payment Information would be secure and not transmitted to unauthorized parties, while knowing that the information would be transmitted to Encore without explicit authorization.

178. Defendants also violated the UCL by representing that Plaintiffs and Class members who were enrolled in membership programs would immediately receive a discount code and that they would receive discounts and savings their purchasers. Plaintiffs and Class member were unwittingly enrolled in the Program, and did not receive the promised discounts, savings or other benefits.

179. Defendants also violated the UCL by representing in small print that they would bill members $14.95 per month, when they actually billed members on a 28-day cycle, resulting

- 43 -

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

1  in members being charged, on some occasions, twice in one month.  Plaintiffs Jenkins and

2  Berentson, as well as other Plaintiffs, experienced being billed the monthly fee twice in one

3  month.

4           180.    Defendants' conduct was unfair in violation of the UCL, because, *inter alia,* the

5  injury to Plaintiffs and Class members by Provide-Commerce's conduct greatly outweighs any

6  alleged countervailing benefit to consumers or competition under all of the circumstances.

7           181.    To this end, Defendants continue to violate the UCL by continuing to

8  misrepresent and actively conceal material information regarding the membership programs, the

9  benefits offered, and their own privacy policies and practices.

10           182.    Meanwhile, Defendants profited from the membership programs through their

11  partnership, conspiracy and agency relationship.  Thus, as a proximate result of Defendants'

12  violation of the UCL, Defendants have been unjustly enriched and should be required to make

13  restitution to Plaintiffs and the Classes and/or disgorge their ill-gotten profits pursuant to

14  Business & Professions Code § 17203.

15           183.    Plaintiffs, on behalf of themselves and all others similarly situated, demand

16  judgment against Defendants for injunctive relief, restitution, and/or proportional disgorgement

17  of profits earned as a result of the conduct alleged herein, including promised discounts and

18  savings that were not given, along with interest, attorneys' fees and costs pursuant to, inter alia,

19  Cal. Code  Civ. Proc. § 1021.5.

20           184.    Defendant's unlawful, unfair, and fraudulent business practices, as described

21  herein, present a continuing threat to Plaintiffs, the Classes, and the general public in that

22  Defendants continue to wrongfully tout the sham EasySaver Rewards program as a legitimate

23  savings program, continue to mishandle Class members' Private Payment Information, and

24  continue to bill Class members' credit and debit cards without authorization.  In addition,

25  Defendants have been unjustly enriched as a result of its conduct.  Plaintiffs and the Classes seek

26  equitable relief because they have no other adequate remedy at law.  Absent equitable relief,

27  Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the

28  public's interest, thus engendering a multiplicity of judicial proceedings.

FOURTH AMENDED CONSOLIDATED            3:09-cv-02094-MMA-BLM
CLASS ACTION COMPLAINT

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA  92101

185. Plaintiffs and the Classes request that this Court issue preliminary and permanent injunctions against such acts and practices. Additionally, Plaintiffs and the Class seek restitution and recovery of attorneys' fees and litigation expenses pursuant to California Code of Civil Procedure section 1021.5, the substantial benefit doctrine, the common fund doctrine or other authority requiring Provide-Commerce to pay Plaintiffs' attorneys' fees and litigation expenses.

186. Additionally, ROSCA bans the "data pass" process by prohibiting initial merchants from disclosing a credit card, debit card, bank account, or other financial account number, or other billing information that is used to charge a customer, to any post-transaction third party seller for use in an Internet-based sale of any goods or services.

187. ROSCA also requires post transaction third party sellers to fully disclose the goods and services being offered and their costs, and severely restricts use of the "negative option" feature. Most significantly, before post-transaction third party sellers, such as Encore, can charge consumers' debit and credit cards, ROSCA requires them to receive express informed consent. Post transaction third party sellers are required to obtain from consumers their full account number, name, address, and contact information. They also must require consumers to perform an additional affirmative action that shows consent.

188. Provide-Commerce is an initial merchant as defined under ROSCA because it obtained Plaintiffs' and the Class' billing information directly from Plaintiffs and the Class when they were in the process of purchasing merchandise from a Provide-Commerce website.

189. Encore is a post-transaction third party seller as defined under ROSCA because it sells access to membership clubs on the Internet, and it solicits this service on the Internet through a Provide-Commerce website, after Plaintiffs and the Class initiated a transaction with Provide-Commerce on the Provide-Commerce website. Encore is not the initial merchant, a subsidiary or corporate affiliate of the initial merchant or a successor of those entities.

190. Defendants' acts and practices are unlawful, fraudulent, and unfair because, among other things, Encore charges, with Provide-Commerce's assistance, consumers' credit and debit cards without obtaining express informed consent as required under ROSCA. Instead it charges the cards using information obtained through the data pass process.

- 45 -

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

1      191.    Defendants have and continue to violate ROSCA and are unjustly enriched by this

2 violation.  As a direct and proximate cause of Defendants' conduct, Plaintiffs and the Class

3 continue to suffer unauthorized charges to their credit and debit cards.

4      192.    Plaintiffs and the Class seek equitable relief because they have no other adequate

5 remedy at law.  Absent equitable relief, Defendants will continue to injure consumers, reap

6 unjust enrichment, and harm the public's interest, thus engendering a multiplicity of judicial

7 proceedings.  Additionally, Plaintiffs and the Classes seek judgment against Encore for

8 preliminary and permanent injunctive relief, restitution, and/or proportional disgorgement of

9 profits earned as a result of the conduct alleged herein, along with interest, attorneys' fees and

10 costs under Cal. Code Civ. Proc. § 1021.5, the substantial benefit doctrine, the common fund

11 doctrine or other authority requiring Defendants to pay attorneys' fees and litigation expenses.

### **PRAYER FOR RELIEF**

13 Plaintiffs and the Classes pray for judgment against Defendants as follows:

14 A.    An order certifying the Classes and any appropriate subclasses and designating

15        Plaintiffs as the Class Representatives and Plaintiffs' counsel as Class Counsel;

16 B.    That the Court preliminarily and permanently enjoin Defendants from engaging in

17        the conduct alleged herein;

18 C.    Other injunctive and declaratory relief as may be appropriate;

19 D.    Restitution and disgorgement any ill-gotten profits from Defendants to the extent

20        permitted by applicable law, together with interest thereon from the date of

21        payment;

22 E.    For statutory damages according to proof;

23 F.    For general damages according to proof;

24 G.    For special damages according to proof;

25 H.    For exemplary or punitive damages;

26 I.    A declaration that Defendants are financially responsible for notifying all Class

27        members of the pendency of this action;

28 J.    Reasonable costs and attorneys' fees;

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

K.    Statutory pre-judgment interest; and

L.    For such other relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the Class members, demand a jury trial in this action for all of the claims so triable.

**December 14, 2011**

**Co-Lead Counsel For the Plaintiffs**

By: */s/* James R. Patterson
   James R. Patterson
   PATTERSON LAW GROUP

| | |
|---|---|
| James R. Patterson, (SBN 211102)<br>Alisa A. Martin (SBN 224037)<br>PATTERSON LAW GROUP<br>402 West Broadway, 29th Floor<br>San Diego, CA 92101<br>Telephone:  (619) 756-6990<br>Facsimile:  (619) 756-6991<br>jim@pattersonlawgroup.com<br>alisa@pattersonlawgroup.com | Bruce Steckler (*pro hac vice*)<br>Mazin A. Sbaiti (SBN 275089)<br>BARON & BUDD, P.C.<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, Texas 75219<br>Tel:  (214) 521-3605<br>Fax: (215) 520-1181<br>bsteckler@baronbudd.com<br>msbaiti@baronbudd.com |
| Jennie Lee Anderson, (SBN 203586)<br>ANDRUS ANDERSON LLP<br>155 Montgomery Street, Suite 900<br>San Francisco, CA 94104<br>Telephone:  (415) 986-1400<br>Facsimile:  (415) 986-1474<br>jennie@andrusanderson.com | Isam C. Khoury, (SBN 58759)<br>Kimberly D. Neilson (SBN 216571)<br>COHELAN KHOURY & SINGER<br>605 C Street, Suite 200<br>San Diego, CA 92101<br>Telephone:  (619) 595-3001<br>Facsimile:  (619) 595-3000<br>ikhoury@ckslaw.com<br>kneilson@ckslaw.com |
| Gene J. Stonebarger  (SBN 209461)<br>STONEBARGER LAW, APC<br>75 Iron Point Circle, Suite 145<br>Folsom, California 95630<br>Telephone: (916) 235-7140<br>Facsimile: (916) 235-7141<br>gstonebarger@stonebargerlaw.com | |

*PLAINTIFF'S CO-LEAD COUNSEL COMMITTEE*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 14, 2011 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4, and that all parties herein are represented by counsel have consented to electronic service.

/s/ James R. Patterson
James R. Patterson

PATTERSON LAW GROUP, APC
402 West Broadway
29th Floor
San Diego, CA 92101

- 48 -