Jennie Lee Anderson, State Bar No. 203586
Lori E. Andrus, State Bar No. 205816
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone:  (415) 986-1400
Facsimile:  (415) 986-1474
jennie@andrusanderson.com
lori@andrusanderson.com

James R. Patterson, State Bar No. 211102
Alisa A. Martin, State Bar No. 224037
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone:  (619) 756-6990
Facsimile:  (619) 756-6991
jim@pattersonlawgroup.com
alisa@pattersonlawgroup.com

*Co-Lead Interim Class Counsel for the Proposed Class*

*[Additional Counsel Listed On Signature Page]*

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: EASYSAVER REWARDS LITIGATION<br><br><br>This Document Relates to all Actions | CASE NO.: 09-CV-02094-AJB (WVG)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR (1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, (2) PROVISIONAL CLASS CERTIFICATION, (3) DISTRIBUTION OF CLASS NOTICE, AND (4) SCHEDULING OF FAIRNESS HEARING**<br><br>Date:  July 13, 2012<br>Time:  1:30 p.m.<br>Judge:  Anthony J. Battaglia<br>Courtroom: 12<br><br>**<u>CLASS ACTION</u>** |

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION............................................................................................ 1

II.  STATEMENT OF THE FACTS........................................................................ 3

   A.  Plaintiffs' Allegations............................................................................. 3

   B.  Relevant Procedural History................................................................... 3

   C.  Plaintiffs' Extensive Discovery.............................................................. 5

   D.  Mediation and Settlement Negotiations. ................................................ 6

III. THE SETTLEMENT TERMS ........................................................................... 7

   A.  The Settlement Class. .............................................................................. 7

   B.  Relief to the Class.................................................................................... 7

   C.  Class Representatives' Incentive Payments. ........................................... 9

   D.  Attorneys' Fees and Costs. ..................................................................... 9

   E.  Settlement Administration and Notice. ................................................... 9

   F.  Objections and Opt-Out Procedures. .................................................... 10

IV.  ANALYSIS ................................................................................................... 11

   A.  The Law Favors Settlement.................................................................. 11

   B.  The Preliminary Approval Process........................................................ 11

   C.  The Settlement Should Be Preliminarily Approved. ............................ 12

     1.  The Settlement Enjoys a Presumption of Fairness Because the Negotiations Were Conducted at Arm's Length. ................................. 13

     2.  Counsel Engaged in Extensive Discovery. ................................. 13

     3.  The Settlement Suffers From No Obvious Deficiencies. ............................. 14

     4.  The Incentive Awards Are Reasonable. ................................. 14

     5.  The Attorneys' Fees And Costs Are Reasonable......................... 15

     6.  The Proponents of the Settlement Are Experienced in Similar Litigation. ................. 17

     7.  The Proposed Settlement Class Warrants Certification............................. 18

1

D.   The Proposed Form And Method Of Class Notice Satisfies Due Process. ...................... 20

2   V.   CONCLUSION ............................................................................................................ 21

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF AUTHORITIES

**Page No.**

**CASES**

*Alberto v. GMRI, Inc.*
  252 F.R.D. 652 (E.D. Cal. 2008)..........................................................................12

*Amchem Prods., Inc. v. Windsor*
  521 U.S. 591 (1997) ...............................................................................12, 18

*Baxter v. Intelius*
  No. 09-1031 SACV-AG (MLGx), 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010) ................2

*Berry v. Webloyalty.com, Inc.*
  No. 10-CV-1358-H (CAB), 2011 WL 1375665 (S.D. Cal. Apr. 11, 2011) ...........................2

*Bott v. Vistaprint USA, Inc.*
  392 Fed. Appx. 327 (5th Cir. Tex. 2010) ...............................................................2

*Browning v. Yahoo! Inc.*
  No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ...................................21

*Fernandez v. Victoria Secret Stores, LLC*
  No. CV 06-04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. Jul. 21, 2008) ...................17

*Ferrington v. McAfee, Inc.*
  No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ...................................2

*Gautreaux v. Pierce*
  690 F.2d 616 (7th Cir.1982)...............................................................................12

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*
  446 U.S. 318 (1980) ...........................................................................................19

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998)...............................................................16, 19, 20

*In re Activision Sec. Litig.*
  723 F. Supp. 1373 (N.D. Cal. 1989)...................................................................16

*In re EasySaver Rewards Litig.*
  737 F. Supp. 2d 1159 (S.D. Cal. Aug. 13, 2010) ...................................................2

*In Re HP Laser Printer Litig.*
  No. SACV 07-0667 AG (RNBx), 2011 WL 3861703 (C.D. Cal. Aug 31, 2011)................13

*In re Pac. Enter. Sec. Litig.*
  47 F.3d 373 (9th Cir. 1995)...............................................................................16

*In re Portal Software, Inc. Sec. Litig.*
  No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. Jun. 30, 2007)...................................18

*In re Syncor ERISA Litig.*
  516 F.3d 1095 (9th Cir. 2008) ......................................................................... 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
  No. 3:07-md-1827 SI, 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) ..................... 15

*In re VistaPrint Corp. Mktg. and Sales Practices Litig.*
  MDL No. 4:08-md-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) ............... 2

*In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Pracs. Litig.*
  No. 5:09-md-02015 JF, 2011 WL 1877630 (N.D. Cal. May 17, 2011) ................. 15

*Jaffe v. Morgan Stanley & Co., Inc.*
  No. C-06-3903 TEH, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ......................... 18

*Keithly v. Intelius Inc.*
  764 F. Supp. 2d 1257 (W.D. Wash. 2011) ......................................................... 2

*Lierboe v. State Farm Mut. Auto. Ins. Co.*
  350 F.3d 1018 (9th Cir. 2003) ........................................................................ 20

*Lundell v. Dell, Inc.*
  No. CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ........... 21

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
  221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 12

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*
  688 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) ............... 11, 12

*Rannis v. Recchia*
  380 Fed. Appx. 646 (9th Cir. 2010) ................................................................. 19

*Rodriguez v. West Publishing Corp.*
  563 F.3d 948 (9th Cir. 2009) ........................................................................... 14

*Singer v. Becton Dickinson and Co.*
  08-cv-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ................. 15

*Williams v. MGM-Pathe Comm'n Co.*
  129 F.3d 1026 (9th Cir. 1997) ......................................................................... 16

*Young v. Polo Retail, LLC*
  No. C-02-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ................. 13

*Young v. Polo Retail, LLC*
  No. C-02-4546 VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ................... 17

**STATUTES**

15 U.S.C. § 1693, *et seq.* ................................................................................ 3

Cal. Bus. & Prof. Code § 17200 *et seq.* .......................................................... 3

Cal. Civ. Code § 1750, *et seq.* ........................................................................... 3

**RULES**

Fed. R. Civ. P. 23(a) ........................................................................... 18, 20

Fed. R. Civ. P. 23(a)(1) ........................................................................... 18

Fed. R. Civ. P. 23(a)(2) ........................................................................... 19

Fed. R. Civ. P. 23(b) ........................................................................... 18

Fed. R. Civ. P. 23(b)(3) ........................................................................... 18, 19

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................... 20

Fed. R. Civ. P. 23(e)(1) ........................................................................... 20

**TREATISES**

Herbert B. Newberg & Alba Conte, *2 Newberg on Class Actions,* (4th ed. 2002) ................... 13

*Manual for Complex Litigation,* (2nd ed. 1985) ........................................................ 13

*Manual for Complex Litigation,* (4th ed. 2004) ........................................................ 12, 18

I.      __INTRODUCTION__

Plaintiffs and proposed Class Representatives Josue Romero, Gina Bailey, Jennifer Lawler, John Walters, Daniel Cox, Christopher Dickey, Grant Jenkins and Bradley Berentson, and Defendants Provide Commerce, Inc. ("Provide Commerce") and Regent Group, Inc. d/b/a Encore Marketing International and Encore Marketing International, Inc. ("EMI") (collectively "Defendants") have reached an agreement resolving all claims asserted in this action on a class-wide basis.

This motion seeks preliminary approval of a settlement that will provide benefits to the approximately 1.3 million Class members who placed an order on a Provide Commerce website and were subsequently enrolled in, and charged fees in connection with, EasySaver Rewards, RedEnvelope Rewards, or Preferred Buyers Pass (collectively "Rewards Program") from August 19, 2005 to the present.[1]  With an estimated value of more than ***$38 million***, the proposed settlement provides meaningful relief to all Class members.  Specifically, the settlement provides that the Defendants will establish a non-reversionary cash fund ("Cash Fund") of $12.5 million from which eligible Class members will have the opportunity to claim a cash refund of non-reimbursed monthly fees in connection with the Rewards Program.  Every Class member will ***also*** automatically receive a $20 fully transferrable $20 credit good for online purchases on any of the following Provide Commerce websites:  Proflowers.com, RedEnvelope.com, Berries.com and CherryMoonFarms.com websites ("Merchandise Code").

Each Class member will receive direct notice advising them of their rights under the Settlement Agreement And Release ("Settlement Agreement"), including their rights to make a claim from the Cash Fund, opt out of the settlement, or be heard by the Court.  This will ensure that Class members are fully informed and have ample opportunity to participate or exclude themselves from the proposed settlement.

---

[1] Defendants have stated that they do not and will not oppose this motion.  Declaration of Jennie Lee Anderson in Support Of Unopposed Motion for Preliminary Approval ("Anderson Decl."), ¶ 22.

Overall, the proposed Settlement Agreement provides a fair resolution of hotly contested claims and novel issues of law on which courts remain divided.  Indeed, this case is one of a handful of federal lawsuits challenging the online marketing practice of retailers sharing consumers' billing information, including their debit and credit card numbers and home addresses, for purposes of ongoing "reward club" type memberships.  Some courts, including this one, have held that the fact finder should consider the overall enrollment **process** and determine whether it is deceptive in nature.  *See In re EasySaver Rewards Litig.,* 737 F. Supp. 2d 1159, 1172 (S.D. Cal. Aug. 13, 2010); *Keithly v. Intelius Inc*., 764 F. Supp. 2d 1257, 1267-69 (W.D. Wash. 2011); *Ferrington v. McAfee, Inc*., No. 10-CV-01455-LHK, 2010 WL 3910169, at *9-11 (N.D. Cal. Oct. 5, 2010).  But other courts have held that the offer details and disclosures associated with enrollment in an online reward club are not deceptive as a matter of law, *see Berry v. Webloyalty.com, Inc.,* No. 10-CV-1358-H (CAB), 2011 WL 1375665, at *14 (S.D. Cal. Apr. 11, 2011); *In re VistaPrint Corp. Mktg. and Sales Practices Litig.,* MDL No. 4:08-md-1994, 2009 WL 2884727, at *12 (S.D. Tex. Aug. 31, 2009), *aff'd; Bott v. Vistaprint USA, Inc.¸*392 Fed. Appx. 327, 328 (5th Cir. Tex. 2010); *Baxter v. Intelius*, No. 09-1031 SACV-AG (MLGx), 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010).

Plaintiffs and Class Counsel vigorously litigated this case, which is largely one of first impression, for almost three years in the face of great risk and at substantial costs and effort. Only after at least six separate settlement conferences, including two private mediations, did they agree to the proposed Settlement Agreement.  For these reasons and those set forth in further detail below, the proposed Settlement Agreement is fair and reasonable, serves the best interests of the Class members and is worthy of this Court's approval.

The parties seek an order from this Court: (a) preliminarily approving the proposed settlement; (b) provisionally certifying the Class and appointing Class Representatives and appointing Class Counsel; (c) approving the proposed notice and authorizing its dissemination; and (d) setting dates and procedures for the fairness hearing, including deadlines for Class

1    members to object to or request exclusion from the settlement.

2    **II.**      <u>**STATEMENT OF THE FACTS**</u>

3        **A.**      **Plaintiffs' Allegations.**

4        Plaintiffs' allegations are extensive, as set forth in the Fourth Amended Complaint.

5    (Dkt. No. 221). In summary, they allege that Defendants' practices of enrolling customers in

6    the Rewards Programs are unfair and unlawful. Specifically, when Class members completed a

7    purchase on one of Provide Commerce's retail websites, they were presented with a pop-up

8    window offering $15 off their next purchase as a "Thank You" gift, and asking them to enter

9    their zip code and email address and click "Accept" to receive the gift. Regardless of whether

10    Class members actually or knowingly provided their zip code and email address and clicked

11    "Accept," however, Provide Commerce transmitted their private payment information to EMI

12    without consent. EMI proceeded to enroll Plaintiffs and Class members in a Rewards Program

13    and charged their credit and debit cards a $1.95 activation fee, followed by a $14.95 monthly

14    fee, which occurred every 28 days. Plaintiffs allege that the Rewards Programs provided no

15    meaningful benefits and that Class members were enrolled in the Rewards Programs without

16    their knowledge or consent. Plaintiffs challenged Defendants' conduct as constituting fraud,

17    violating the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, the

18    California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, the Federal

19    Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* (as to EMI only), and alleged that the

20    conduct constituted breach of contract, breach of the implied covenant of good faith and fair

21    dealing, invasion of privacy, and negligence.

22        Defendants deny Plaintiffs' allegations, contending that the Rewards Program details

23    were adequately disclosed and that Plaintiffs entered into electronic contracts with EMI for

24    membership in the Rewards Program.

25        **B.**      **Relevant Procedural History.**

26        On August 19, 2009, Plaintiff Josue Romero filed a case in San Diego County Superior

1   Court, which was subsequently removed to this Court on September 25, 2009.  On September

2   24, 2009, a second case was filed in this Court.  (Dkt. No. 1).  The Court granted a motion to

3   consolidate both cases and appointed Interim Co-Lead Class Counsel on November 13, 2009.

4   (Dkt. No. 26).  Plaintiffs then filed Consolidated Class Action Complaint on December 14,

5   2009.  (Dkt. No. 27).

6           On February 22, 2010, Defendants filed Motions To Dismiss the Consolidated Class

7   Action Complaint.  (Dkt. Nos. 33 and 34).  On August 13, 2010, the Court issued an order

8   upholding the Plaintiffs' claims and limiting Plaintiffs' Electronic Fund Transfer Act and

9   Electronic Communications Privacy Act claims to EMI only.  (Dkt. No. 61).

10          On December 15, 2010, the Court convened an Early Neutral Evaluation Conference for

11  this case.  (Dkt. No. 90).  No settlement was reached, however, and the parties proceeded with

12  formal discovery.  Anderson Decl., ¶ 2.

13          In May 2011, the parties again explored the possibility of settlement.  On May 18, 2011,

14  the parties conducted a day-long mediation session with the Honorable Leo S. Papas (Ret.),

15  and, on May 20, 2011, Magistrate Judge Gallo convened a Mandatory Settlement Conference

16  with the parties.  (Dkt. No. 109).  Despite these efforts, the case did not settle and litigation

17  proceeded.  Anderson Decl., ¶ 2.

18          Plaintiffs filed the First Amended Consolidated Complaint on February 10, 2011 (Dkt.

19  No. 93) and the Second Amended Consolidated Complaint on May 25, 2011.  (Dkt. No. 110).

20          On June 17, 2011, after holding a telephonic hearing on the matter, the Court issued an

21  Order of Consolidation, consolidating a third case, Case No. 11cv0349, which had been

22  transferred from the District of New Jersey.  (Dkt. No. 121).

23          On June 20, 2011, Magistrate Judge Gallo convened another settlement conference

24  between Defendants and their insurance carriers.  (Dkt. No. 131).  No settlement was reached,

25  and the parties continued to litigate.

26          On July 28, 2011, Plaintiffs filed a Third Amended Consolidated Class Action

1 Complaint.  (Dkt. No. 164).

2       On October 7, 2011, Magistrate Judge Gallo convened another settlement conference

3 with all Plaintiffs and their counsel.  (Dkt. No. 198).  No settlement was achieved.

4       On December 14, 2011, Plaintiffs filed a Fourth Amended Consolidated Complaint

5 ("4th Amended Complaint").  (Dkt. No. 221).  On January 24, 2012, EMI and Provide

6 Commerce each moved to dismiss certain claims asserted in 4th Amended Complaint.  (Dkt.

7 Nos. 227-228).

8       On April 9, 2012, the parties conducted a full-day mediation with the Honorable

9 Edward A. Infante (Ret.).  This time, the parties were able to reach a settlement in principle and

10 continued to negotiate the details in the weeks that followed.  Anderson Decl., ¶ 3.

11       On April 12, 2012, the parties appeared before Magistrate Judge Gallo and reported that

12 they had reached a settlement in principle.  Judge Gallo ordered the parties to file a motion for

13 preliminary approval no later than May 18, 2012.  Anderson Decl., ¶ 3.

14       On May 18, 2012, the parties again appeared before Magistrate Judge Gallo to report on

15 the status of the settlement discussions.  Judge Gallo ordered the parties to file a motion for

16 approval on or before June 8, 2012. Anderson Decl., ¶ 3.  On June 11, 2012, the parties

17 attended a telephonic hearing regarding the status of the settlement with Judge Gallo.  (Dkt. No.

18 246).

19       The parties continued to negotiate the remaining terms, and on June 13, 2012 they

20 entered into the Settlement Agreement, which, as a class-wide settlement is subject to Court

21 approval.  Anderson Decl., ¶ 4.

22       **C.**    **Plaintiffs' Extensive Discovery.**

23       Plaintiffs have thoroughly investigated this case, using both formal and informal

24 discovery methods.  Prior to filing the lawsuit, Plaintiffs conducted substantial research through

25 public records and the Internet to verify the scope and nature of the conduct alleged.  Anderson

26 Decl., ¶ 5.

1    After filing the lawsuit, Plaintiffs continued their investigation and aggressively sought

2    formal discovery.  Plaintiffs propounded extensive written discovery, including numerous

3    document requests, interrogatories and requests for admission.  Anderson Decl., ¶ 6.  Plaintiffs

4    further filed several motions to compel discovery from EMI.  *Id.*  Plaintiffs also took seven

5    corporate and individual fact depositions in California and Maryland over the span of several

6    months.  *Id.*, ¶ 7.  Defendants produced more than 450,000 pages of documents in the case. *Id.*,

7    ¶ 8.  Plaintiffs' counsel expended significant time and resources seeking and reviewing the

8    documents produced, utilizing the latest in technology to enable them to fully analyze the

9    weight of the evidence produced.  *Id.*,¶ 9.  Plaintiffs also conducted extensive third party

10   discovery, issuing at least 22 nonparty document subpoenas to credit card companies and

11   companies who Defendants represented offered certain benefits to Class members as part of the

12   Rewards Program.  *Id.*, ¶ 10.  To further assess the claims, Plaintiffs retained and worked

13   closely with source code experts who evaluated Defendants' electronic code.  *Id.*, ¶ 11.

14   Plaintiffs' counsel also reviewed and analyzed discovery regarding Defendants' data systems

15   and worked with a statistics expert to prepare potential damages models.  *Id.*, ¶ 12.  Throughout

16   the litigation, Plaintiffs' counsel continued to interview putative Class members regarding their

17   claims.  *Id.*, ¶ 13.

18        **D.    Mediation and Settlement Negotiations.**

19        The parties participated in at least four Court-sponsored settlement conferences and two

20   full day mediations with highly-respected private mediators in order to settle this case.

21   Anderson Decl., ¶¶ 2-3.  The first private mediation session with Judge Papas on May 18, 2011

22   resulted in no settlement.  *Id.*, ¶ 2.  The parties continued to vigorously litigate the case for

23   another year.  *Id.*  Judge Infante presided over a second mediation that resulted in the proposed

24   settlement on April 9, 2012.  *Id.*, ¶ 3.  During the mediations and following settlement

25   discussions, the parties engaged in negotiations that were at all times adversarial, non-collusive,

26   and at arm's length.  *Id.*  The parties vigorously clashed over core issues such as the amount of

1  the Cash Fund, the full transferability of the Merchandise Codes and the scope of allowable

2  blackout dates.  *Id*.  With Judge Infante's assistance those negotiations finally resulted in an

3  agreement in principle.  *Id*.  The parties continued to negotiate the details and remaining terms

4  of the proposed Settlement Agreement over the course of several weeks.  *Id.*

5         Throughout the negotiations, the parties considered factors such as the ongoing cost of

6  litigation, the potential damages, the risks of class certification and trial, and the possibility of

7  appeals following any judgment.  Class Counsel believe that the proposed settlement is in the

8  Class' best interest.  Anderson Decl. ¶ 3.

9  **III.**    **THE SETTLEMENT TERMS**

10        The details of the Settlement Agreement signed by the parties and attached to the

11  Anderson Declaration as Exhibit 1 are summarized below.

12        **A.**    **The Settlement Class.**

13     The proposed settlement Class consists of

14              All persons who, between August 19, 2005 and the date of entry
               of the Preliminary Approval order, placed an order with a website
15              operated by Provide Commerce, Inc. and were subsequently
               enrolled by Regent Group Inc. dba Encore Marketing
16              International, Inc. in one or more of the following membership
               programs:  EasySaver Rewards, RedEnvelope Rewards, or
17              Preferred Buyers Pass.

18  Anderson Decl., Ex. 1 ("Settlement Agreement And Release"), at 4.  Excluded from the Class

19  are (a) Defendants, (b) any entities in which Defendants have a controlling interest or which

20  have a controlling interest in Defendants, (c) the officers, directors, employees, subsidiaries,

21  affiliates, and attorneys of Provide Commerce or EMI, and (d) the Judges presiding over this

22  action and any of their employees or  immediate family members.  *Id.,* Ex. 1, Exhibit B ("Full

23  Notice").

24        **B.**    **Relief to the Class.**

25        In exchange for a release of claims and subject to this Court's approval, Defendants

26  have agreed that (1) they will, via a neutral professional claims administrator selected from

1   among three proposed by the parties, notify all Class members via direct email or U.S. Mail

2   about their rights under the Settlement Agreement.  Anderson Decl., Ex. 1, at 6, 10.  (2)

3   Provide Commerce will directly email *every* Class Member a $20 in the form of a Merchandise

4   Code.  No Class Member will be required to submit a claim form to receive this code.  *Id.*, at 8.

5   The Merchandise Codes will be fully transferable and valid for one year for online purchases at

6   Proflowers.com, RedEnvelope.com, Berries.com and CherryMoonFarms.com.  *Id.*, at 3, 8.  At

7   the time of settlement, Plaintiffs' counsel verified that these websites offered a selection of

8   items under $20, but Class Members may use the money towards larger purchases as well.  *Id.*,

9   ¶ 15.  And (3) Defendants will fund a $12.5 million Cash Fund that eligible Class members can

10  make claims against for refunds of payments for monthly membership fees.  *Id.*, Ex. 1, at 5.

11          To make a claim from the Cash Fund, Class members need only visit the neutral Claims

12  Administrator's website, a link to which is provided to them via the direct email notice.

13  Anderson Decl., Ex. 1, Exhibit C ("Summary Notice").  Class members will only be required to

14  submit their contact information and verify that they did not intend to enroll and did not use the

15  benefits of the program (excluding the initial discount code offered for a future Provide

16  Commerce website purchase).  Anderson Decl., Ex. 1, Exhibit D ("Claim Form").  Class

17  members will ***not*** be required to submit documents, or other proof of having been charged to

18  make a claim.  *Id.*  The Claims Administrator will evaluate and calculate all claims for payment

19  based upon Defendants' records.  Claims will be paid on a *pro rata* basis up to the full amount

20  owed.  *Id.*, Ex., 1, Exhibit B.  The parties must meet and confer in good faith to resolve any

21  disputed claims, with EMI's records being entitled to a rebuttable presumption of accuracy.

22  *See Id.*, Ex. 1, at 11. The Cash Fund will also be used to pay attorneys' fees and costs, incentive

23  awards and administration costs.  *Id.*, at 6. The Cash Fund is non-reversionary and any

24  remaining funds will be distributed as a *cy pres* award, subject to Court approval, to fund

25  higher education projects relating to internet privacy and consumer protection.  *Id.,* at 8.

26  //

1

     **C.**    **Class Representatives' Incentive Payments.**

2

     Class Representatives have worked diligently for years to represent the best interests of

3 the Class.  They have stayed apprised of the litigation, responded to written discovery, and

4 traveled, sometimes from across the country, to be deposed and attend Court-sponsored

5 settlement conferences.  Anderson Decl., ¶ 16.  Subject to Court approval, the Settlement

6 Agreement provides for incentive awards as follows: a) $15,000 for Class Representatives

7 Romero and Bailey; b) $10,000 for Class Representatives Berentson, Jenkins, Cox and Lawler;

8 and c) $5,000 for, Class Representatives Walters and Dickey.  Anderson Decl., Ex. 1, at 6.

9 These awards are based on each Class Representative's respective efforts and are designed to

10 recognize these efforts and the personal risks they undertook on behalf of the Class.

11

     **D.**    **Attorneys' Fees and Costs.**

12

     The Settlement Agreement provides that Class Counsel may request fees of ***up to*** a total

13 of $8.65 million, plus actual costs up to $200,000.  Anderson Decl., Ex. 1, at 6-7.  This within

14 25% of the settlement value and is reasonable and fair under well-settled Ninth Circuit law.

15 Class Counsel will file a detailed application for attorneys' fees and costs at least fourteen (14)

16 days before the objection deadline and prior to the fairness hearing.  Anderson Decl., Ex. 1, at

17 7.

18

     **E.**    **Settlement Administration and Notice.**

19

     Class members will receive the Summary Notice via direct email or U.S. Mail,[2] which

20 will provide them with an electronic link to a website dedicated to the settlement and

21 containing Full Notice details.  *See* Anderson Decl., Ex. 1, Exhibits B-C.  The Summary and

22 Full Notices includes all the pertinent information necessary for Class members to make an

23 informed decision about whether to make a claim, object to the proposed settlement, or exclude

24

---

25 [2] Within 75 days of this Court's entry of the preliminary approval order, the Claims
Administrator will send the Summary Notice via direct email to every Class Member.
Anderson Decl., Ex. 1, at 9.  Where direct email notice fails or "bounces back," the Claims
26 Administrator will send a Summary Notice via postcard sent by U.S. Mail within three weeks
to each person for whom EMI has a facially valid postal address.  *Id.*, at 10..

1   themselves from the Class.  The Full Notice will also provide further detail of the relief

2   provided by the settlement, the range of fees and costs to be sought by Class Counsel, and the

3   scope of the release and binding nature of the settlement on Class members.  *Id.,* Exhibit B.

4   Class members may also download a copy of the Claim Form and Full Notice or request that a

5   paper copy of the Claim Form and Full Notice be sent via U.S. Mail.  *Id.*, Exhibits C-D.

6        To make a claim for a payment from the Cash Fund, Class members will only be

7   required to supply their contact information and verify that they did not intend to enroll in a

8   Rewards Program and that they did not use any of the Rewards Program benefits (other than

9   the initial discount code offered for a future Provide Commerce website purchase).  Anderson

10   Decl., Ex. 1, Exhibit D.  Using electronic records provided by EMI the Claims Administrator

11   will assess the validity of the claims and calculate the amounts owed.  *Id.,* Ex. 1, at 10.  The

12   parties must meet and confer in good faith to resolve any disputed claims, with EMI's records

13   being entitled to a rebuttable presumption of accuracy.  *Id.*, at 11.

14        **F.        Objections and Opt-Out Procedures.**

15        To be excluded from the Class, a Class member must timely send a written request for

16   exclusion to the Claims Administrator at the address set forth in the Class Notice.  Anderson

17   Decl., Ex. 1, at 12.  The request for exclusion must contain (a) the name of the Action, *"In re*

18   *Easy Saver Rewards Litigation"*; (b) the Class member's full name, address, and telephone

19   number; and (c) a statement that he/she does not wish to participate in the settlement.  *Id.*  All

20   requests for exclusion must be made as specified in the Class Notice and postmarked within 60

21   days of the date on which notice is emailed to the Class.  *Id.*

22        Any Class member who does not submit a valid and timely request for exclusion to the

23   Claims Administrator may object to the settlement by submitting a written statement of the

24   objection to the Claims Administrator.  *Id.*, at 11-12.  The objection must be postmarked by the

25   deadline specified in the Class Notice (within 60 days of the date on which notice is emailed),

26   and must include (1) a heading containing the name and case number of the Action: *In re*

1   *EasySaver Rewards Litigation*, Case No. 3:0-cv-02094-AJB (WVG); (2) the Class member's

2   name, email address, postal address, and telephone number; (3) a detailed statement of each

3   objection and the factual and legal basis for each objection, and the relief that the Class

4   member is requesting; (4) a list of and copies of all documents or other exhibits which the Class

5   member may seek to use at the Fairness Hearing; and (5) a statement of whether the Class

6   member intends to appear, either in person or through counsel, at the fairness hearing.  *Id.*

7   **IV.   ANALYSIS**

8      **A.     The Law Favors Settlement.**

9          It is well established that settlements are the preferred means of dispute resolution,

10  particularly in class actions where substantial resources can be conserved by avoiding the time,

11  cost and rigor of prolonged litigation.  *See Officers for Justice v. Civil Serv. Comm'n of the City*

12  *and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217

13  (1983) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution.

14  This is especially true in complex class action litigation.").  Indeed, the preference for

15  settlement is evident in the Federal Rules of Civil Procedure themselves.  *In re Syncor ERISA*

16  *Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

17         The policies favoring settlement apply with particular force in this case, where more

18  than a million Class members across the country were charged fees in connection with Reward

19  Programs.  The individual damages incurred vary, but the average out-of-pocket claim is less

20  than one hundred dollars per Class member.  Given the very high costs of litigating a consumer

21  protection case against large and well-funded companies, Class members would have no

22  practical way to individually pursue their claims.  Plus, individual litigations would clog the

23  courts and take years to resolve.  The proposed settlement is the best and only means to ensure

24  that all Class members receive prompt and efficient relief.

25      **B.     The Preliminary Approval Process.**

26         Court approval of class action settlements is a two-step process: preliminary approval

MPA ISO PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 11
09-CV-02094-AJB (WVG)

1   and final approval.  *Manual for Complex Litigation, (Fourth)* ("*MCL 4th*") § 21.632 (2004).  At

2   the preliminary approval stage, the court must "make a preliminary determination on the

3   fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation

4   of notice of the certification, proposed settlement, and date of the final fairness hearing."  *Id.*

5   The court must also make a preliminary determination whether the class may be certified for

6   settlement purposes under Rule 23.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21

7   (1997).

8          After preliminary approval, notice of the proposed settlement is given to the class, and

9   the court conducts a final approval hearing, also known as a fairness hearing.  *Nat'l Rural*

10  *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  At the fairness

11  hearing, the court will consider arguments for and in opposition to approval of the settlement,

12  including comments submitted by class members in response to the class notice.  The fairness

13  hearing, however, is not "a trial or rehearsal for trial on the merits."  *Officers for Justice*, 688

14  F.3d at 625.  "[T]he court's intrusion upon what is otherwise a private consensual agreement

15  negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

16  reasoned judgment that the agreement is not the product of fraud or overreaching by, or

17  collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

18  reasonable and adequate to all concerned."  *Id.*

19         While the parties certainly believe that this settlement meets all the criteria for final

20  approval, at this juncture, they ask only that the Court take the first step in the process and grant

21  preliminary approval of the settlement.

22         **C.      The Settlement Should Be Preliminarily Approved.**

23         At this preliminary approval stage, the Court need only "determine whether the

24  proposed settlement is within the range of possible approval."  *Alberto v. GMRI, Inc.*, 252

25  F.R.D. 652, 666 (E.D. Cal. 2008) (citing *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th

26  Cir.1982)).  "If the proposed settlement appears to be the product of serious, informed, non-

collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . ." *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (citing *Manual for Complex Litigation,* § 30.44 (2nd ed. 1985)).

In determining whether a settlement falls within the range of possible approval, courts consider whether the negotiations occurred at arm's length, whether sufficient discovery or investigation took place, and whether the proponents of the settlement are experienced in similar litigation. *See* Alba Conte & Herbert B. Newberg, *2 Newberg on Class Actions*, § 11.41 (4th ed. 2002). Considering the enormous discovery and settlement efforts in this case, these criteria are unquestionably satisfied.

1.    **The Settlement Enjoys a Presumption of Fairness Because the Negotiations Were Conducted at Arm's Length.**

The settlement is presumptively fair because there is nothing to suggest collusion between the parties. On the contrary, all material terms of the Settlement Agreement were reached after multiple adversarial settlement discussions with Judge Gallo, who has also been overseeing discovery, and after two private mediation sessions conducted by highly regarded and experienced mediators: Judge Papas and Judge Infante. *See also* Section II.D., *supra*. The fact that mediation was overseen by neutral third parties evidences the non-collusive nature of the negotiations. *See, e.g., In Re HP Laser Printer Litig.,* No. SACV 07-0667 AG (RNBx), 2011 WL 3861703, at *4 (C.D. Cal. Aug 31, 2011) (finding the fact that the parties appeared before a neutral third party mediator evidence supporting a finding that there was no collusion between the parties in reaching settlement).

2.    **Counsel Engaged in Extensive Discovery.**

Plaintiffs' counsel has engaged in extensive discovery. These efforts began before the lawsuits were even filed and have been ongoing through almost three years of litigation.

1  Counsel's investigation includes:  (1) propounding and enforcing extensive written discovery

2  requests on parties and nonparties; (2) taking multiple corporate and individual depositions

3  both in California and Maryland; (3) consulting with computer experts to analyze Defendants'

4  code; (4) extensive online research; (5) communications with absent class members;

5  (6) preparing a damages models based upon the information gathered; and (7) reviewing and

6  analyzing a significant volume of documents produced by the Defendants and nonparties.  *See*

7  *also* Section II.C, *supra*.

8  **3.     The Settlement Suffers From No Obvious Deficiencies.**

9  The settlement has no "obvious deficiencies" and confers substantial benefits to Class

10  members, as set forth in greater detail above.  In sum, as many as 1.3 million Class members

11  who were enrolled in a Rewards Program will automatically receive a fully transferable $20

12  Merchandise Code to use on certain Provide Commerce websites, and be given the opportunity

13  to submit a claim to receive a payment for monthly fees charged for the Rewards Programs,

14  less any refund previously received.  Given the substantial nature of the relief and the

15  uncertainties of protracted litigation, the settlement is unquestionably well within the range of

16  possible approval.

17  **4.     The Incentive Awards Are Reasonable.**

18  The proposed Class Representative incentive awards are fair and reasonable.  As the

19  Ninth Circuit has observed:

20          Incentive awards are fairly typical in class action cases.  Such

        awards are discretionary, and are intended to compensate class

21          representatives for work done on behalf of the class, to make up

        for financial or reputational risk undertaken in bringing the

22          action, and, sometimes, to recognize their willingness to act as a

        private attorney general.  Awards are generally sought after a

23          settlement or verdict has been achieved.

24  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (emphasis and

25  citations omitted).

26  The parties have agreed that the Class Representatives may seek the following incentive

1   awards:  a) $15,000 for Plaintiffs Romero and Bailey, who have been intimately involved in

2   this case since 2009, gave lengthy depositions, attended multiple mandatory in-person

3   settlement conferences with the Court (which required them to travel and incur expenses, miss

4   several days of work, and forgo their earnings on those days), responded to written discovery

5   and provided amended responses thereto, and regularly consulted with Class Counsel;

6   b) $10,000 for Plaintiffs Berentson, Jenkins, Cox, and Lawler, who joined the case later, but

7   traveled for or had their depositions taken, , attended in-person conferences with the Court,

8   responded to extensive written discovery, and/or consulted with Class Counsel; and c) $5,000

9   for Class Representatives Walters and Dickey, who consulted with Class Counsel, responded to

10  extensive written discovery, and were willing to make the personal sacrifices associated with

11  being a named plaintiff in a federal lawsuit for the good of the Class.  Anderson Decl., ¶ 16, Ex.

12  1, at 6.  Each of the Class Representatives took the initiative to be named in lawsuit, assisted in

13  the case investigations, and accepted substantial personal risks and responsibilities on behalf of

14  the Class.  Anderson Decl., ¶ 16.

15         The amounts sought are reasonable in light of these circumstances, and Defendants do

16  not object to these amounts.  *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-

17  md-1827 SI, 2011 WL 7575003, at *2 (N.D. Cal. Dec. 27, 2011) (approving $15,000 incentive

18  awards for 11 class representatives "in recognition of their work performed for the benefit of

19  the Class and risks undertaken"); *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. &*

20  *Sales Pracs. Litig*., No. 5:09-md-02015 JF, 2011 WL 1877630, at *7 (N.D. Cal. May 17, 2011)

21  (approving class representative incentive awards ranging from $5,000 to $14,250 each); *Singer*

22  *v. Becton Dickinson and Co.*, 08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June

23  1, 2010) (finding class representative award of $25,000 reasonable).

24                    5.    **The Attorneys' Fees And Costs Are Reasonable.**

25         Considering the excellent value of the settlement, the benefits conferred on the Class

26  and Class Counsel's knowledge and experience, the attorneys' fees and costs are reasonable.

MPA ISO PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 15
09-CV-02094-AJB (WVG)

1    Class Counsel achieved an excellent settlement while ultimately avoiding the uncertainties and

2    risks of contested class certification and trial.  Throughout this litigation, Class Counsel has

3    dedicated substantial time and resources litigating the case and will continue to expend

4    significant amounts of time through the settlement and claims process.  *See* Anderson Decl., ¶¶

5    5-13.  Class Counsel will file a separate and more detailed motion for an award of attorneys'

6    fees and costs at least fourteen (14) days prior to the deadline for objections by Class members

7    and in advance of the fairness hearing.  For purposes of preliminary approval, the Court is only

8    being asked to determine whether the Settlement Agreement's provision allowing Class

9    Counsel to *request* up to the stated amount should be preliminary approved.

10            The Settlement Agreement provides and the parties have agreed that Class Counsel may

11   apply to the Court for an amount not to exceed $8.65 million in attorneys' fees plus up to

12   $200,000 in actual costs.  Anderson Decl., Ex. 1, at 6-7.  This constitutes a maximum fee

13   request of ***25 percent*** of the common fund value of the settlement.  Twenty-five percent has

14   long been the benchmark in the Ninth Circuit, *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

15   1029 (9th Cir. 1998), and many courts in this Circuit have awarded fees in excess of 25 percent

16   of the settlement value.  *See, e.g. In re Pac. Enter. Sec. Litig.,* 47 F.3d 373, 379 (9th Cir. 1995)

17   (33% fee award); *Williams v. MGM-Pathe Comm'n Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997)

18   (one-third of total fund awarded); *see also In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1375

19   (N.D. Cal. 1989) (noting that fee awards in common fund cases "almost always hovers around

20   30% of the fund created by the settlement").  "[A]bsent extraordinary circumstances that

21   suggest reasons to lower or increase the percentage, the rate should be set at 30%," reasoning

22   that this will "encourage plaintiffs' attorneys to move for early settlement, provide

23   predictability for the attorneys and the class members, and reduce the time consumed by

24   counsel and court in dealing with voluminous fee petitions."  *In re Activision Sec. Litig.,* 723 F.

25   Supp. at 1378-1379.

26            While the total value of the benefits obtained on behalf of the Class is estimated to

MPA ISO PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 16
09-CV-02094-AJB (WVG)

1    exceed $38 million, for the purposes of calculating fees, Plaintiffs conservatively discounted

2    the value of the Merchandise Codes to **85 percent** of their $20 face value, which is reasonable

3    and supported by fee orders from other district courts in this Circuit.  *See, e.g., Fernandez v.*

4    *Victoria Secret Stores, LLC,* No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *6, 10-11

5    (C.D. Cal. Jul. 21, 2008) (valuing Merchandise Codes in settlement at 85 percent of face value,

6    noting that the cards were fully transferrable and that class members would likely use the cards

7    themselves); *Young v. Polo Retail, LLC,* Case No. C-02-4546 VRW, 2007 WL 951821, at *4

8    (N.D. Cal. Mar. 28, 2007) (finding that the cash value of Merchandise Codes in a settlement to

9    be 80-85 percent of face value).[3]

10         Again, at this juncture Class Counsel has not yet requested a specific fee award so the

11   Court is merely being asked to approve the right to do so as set forth in the Settlement

12   Agreement.

13               6.      **The Proponents of the Settlement Are Experienced in Similar**
                         **Litigation.**
14

15         As recognized in the Court's November 13, 2009 order appointing interim co-lead

16   counsel, proposed Class Counsel have extensive experience in prosecuting complex class

17   actions, including cases involving consumer fraud.  Anderson Decl., Exs.  2-5. With their

18   combined breadth and depth of experience, there can be no doubt that Class Counsel are

19   qualified to conduct the litigation.  Likewise, Defendants' counsel are well versed in complex

20

21   [3] As in *Fernandez* and *Young*, the Merchandise Codes here are fully transferrable. Under
     applicable case law, they have independent value to the class.  Class members are also very
22   likely to use the Merchandise Codes themselves since discovery shows most Class Members
     continue to be customers of Provide Commerce, and because, indeed, Class members have
23   already demonstrated an interest in receiving the original offer of $15 off their next purchase
     from Provide Commerce's sites. Importantly, the conditions of this settlement are considerably
24   more favorable than *Fernandez* and *Young* because Class members will ***automatically*** receive
     the Merchandise Codes without being required to submit a claim.  By contrast, in *Fernandez*
25   and *Young*, where the court awarded class counsel ***34%*** and ***31%*** of the discounted value of the
     settlement, respectively, class members were required to submit claims to receive any benefit at
26   all.  *See Fernandez,* 2008 WL 8150856, at *16; *Young*, 2007 WL 951821, at *5.  In those cases,
     the amount of Merchandise Codes that were actually distributed was drastically less than the
     amount being made available, which was used to calculate the percentage of fees awarded.

1    class action and are highly qualified defense counsel.  Accordingly, the parties are well-suited

2    to make informed judgments regarding the nature of the settlement.

3                    **7.**     **The Proposed Settlement Class Warrants Certification.**

4          In the context of granting preliminary approval of the Settlement, this Court must also

5    determine that the proposed Class is certifiable.  *See MCL 4th,* § 21.632; *Amchem*, 521 U.S. at

6    620.  Certification is warranted where, as here, it is demonstrated that the four prerequisites of

7    Rule 23(a), numerosity, commonality, typicality, and adequacy of representation, and one of

8    the three requirements of Rule 23(b), are satisfied.  *See* Fed. R. Civ. P. 23.  Certification of a

9    class action for damages requires a showing that "questions of law and fact common to the

10    members of the class predominate over any questions affecting only individual members, and

11    that a class action is superior to other available methods for the fair and efficient adjudication

12    of the controversy."  Fed. R. Civ. P. 23(b)(3).  Given that the Class will be certified for the

13    purposes of settlement only, the Rule 23(b)(3) requirement of superiority need not be met here

14    because manageability issues are not a bar to certification "for the proposal is that there be no

15    trial."  *Amchem*, 521 U.S. at 620.

16          Plaintiffs propose that the Court provisionally certify this action as a class action

17    pursuant to Rule 23 for the purpose of settlement.  Such provisional certification is considered

18    an appropriate device in the settlement of class actions where the agreement to settle the case

19    occurs before certification.  *See, e.g., Jaffe v. Morgan Stanley & Co., Inc.*, No. C-06-3903 TEH,

20    2008 WL 346417, at *2-3 (N.D. Cal. Feb. 7, 2008); *In re Portal Software, Inc. Sec. Litig.*, No.

21    C-03-5138 VRW, 2007 WL 1991529, at *2-3 (N.D. Cal. Jun. 30, 2007).  Under the

22    circumstances, there is more than a sufficient factual basis for the Court to provisionally certify

23    this action as a class action for the purposes of settlement and to appoint Interim Co-Lead

24    Counsel as Class Counsel.

25          With respect to numerosity, Rule 23(a)(1) requires that the class be so numerous that

26    joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  Here, more than a million

1  consumers were enrolled in the allegedly deceptive Rewards Program.  By any measure, the

2  numerosity requirement is met.  While it is true that on the low end, the Supreme Court has

3  indicated that a class of 15 "would be too small to meet the numerosity requirement," *Gen. Tel.*

4  *Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980), the Ninth Circuit recently upheld a

5  class of only 20 persons.  *Rannis v. Recchia*, 380 Fed. Appx. 646, 650-51 (9th Cir. 2010).

6      Rule 23(a)(2) requires that the court find that "there are questions of law or fact

7  common to the class."  Fed. R. Civ. P. 23(a)(2).  But the requirement is permissive: "the

8  existence of shared legal issues with divergent factual predicates is sufficient, as is a common

9  core of salient facts coupled with disparate legal remedies within the class."  *Hanlon*, 150 F.3d

10  at 1019.  Rule 23(b)(3) certification is proper because the predominance and superiority

11  requirements of that prong of Rule 23 are satisfied as well.  *See* Fed. R. Civ. P. 23(b)(3);

12  *Hanlon*, 150 F.3d at 1022 ("The Rule 23(b)(3) predominance inquiry tests whether proposed

13  classes are sufficiently cohesive to warrant adjudication by representation").

14      Here, common questions of law and fact exist and predominate (as required by Rule

15  23(b)(3)) over any individual questions, including, *inter alia*: (1) whether the enrollment

16  process employed by the Defendants was likely to deceive the public; (2) whether the

17  enrollment process was fraudulent; (3) whether the enrollment process violated the Consumers

18  Legal Remedies Act ("CLRA"); (4) whether the omissions and misrepresentations were

19  material; (5) whether Defendants breached their contractual obligations to Plaintiffs and Class

20  members; (6) whether Defendants concealed information regarding the terms and conditions of

21  enrollment and whether they had a duty to disclose such information; (7) whether Defendants

22  breached Plaintiffs' and Class members' privacy rights by transmitting their private payment

23  information; and (8) whether Plaintiffs and Class members are entitled to relief and the

24  appropriate measure of damages.  Where, as here, Defendants' liability would be determined

25  primarily by looking at their uniform policies and practices, websites and code, the common

26  questions in this litigation will predominate over any individual issues.

1      Plaintiffs also meet the typicality requirement of Rule 23(a).  All Plaintiffs, like all

2  Class members, were enrolled in an EMI Rewards Program after having purchased a product

3  on a Provide Commerce website.  All Plaintiffs assert the similar or identical legal claims as all

4  Class members.

5      With respect to the adequacy of representation requirement of Rule 23(a), the named

6  plaintiffs must not have interests antagonistic to those of the class, and the plaintiffs' attorneys

7  must be qualified, experienced, and generally able to conduct the litigation.  *See Hanlon,* 150

8  F.3d at 1020.  As discussed above, Class Counsel are exceptionally well qualified, experienced

9  and able to conduct the litigation.  In addition, the Class Representatives' interests are co-

10  extensive with those of the Class, since each Class Representative and every Class Member

11  have been injured in the same manner by Defendants, and Plaintiffs seek relief that is identical

12  to that which is sought by every other member of the Class.  *See Lierboe v. State Farm Mut.*

13  *Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (finding that plaintiffs must have been

14  injured themselves, not merely represent injured parties).

15      Having volunteered to serve as representatives for the Class, Plaintiffs have taken a

16  leadership role in the litigation, performed and stood ready to perform any number of tasks, and

17  demonstrated a commitment to bringing about the best results possible for their fellow Class

18  members.  Moreover, Plaintiffs and Class Counsel have no interests antagonistic to those of the

19  Class and are not subject to any unique defenses.  Plaintiffs and Class Counsel have and will

20  continue to fairly and adequately protect the interests of the Class.

21      **D.**      **The Proposed Form And Method Of Class Notice Satisfies Due Process.**

22      Rule 23(e)(1) of the Federal Rules of Civil Procedure provides that "[t]he court must

23  direct notice in a reasonable manner to all class members who would be bound by the

24  proposal."  Rule 23 further requires "the best notice practicable under the circumstances,

25  including individual notice to all members who can be identified through reasonable effort."

26  *See* Fed. R. Civ. P. 23(c)(2)(B).

MPA ISO PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 20
09-CV-02094-AJB (WVG)

1    Here, the parties have agreed to provide direct email notice of the settlement to all

2    Settlement Class members, provide supplemental notice by U.S. Mail where emails are no

3    longer valid, and provide information via a website created for the settlement managed by the

4    Claims Administrator.  Anderson Decl., Ex. 1, at 10.  Where, as here, Class members provided

5    their email addresses to Defendants in connection with their original transactions, such notice

6    more than satisfied notice and due process requirements.  *See, e.g., Browning v. Yahoo! Inc.*,

7    No. C04-01463 HRL, 2007 WL 4105971, at *4 (N.D. Cal. Nov. 16, 2007) (finding email notice

8    particularly appropriate in case where class members' claims arise from their visits to

9    defendants' websites) (citing *Lundell v. Dell, Inc*., No. CIVA C05-3970 JWRS, 2006 WL

10   3507938, at *1 (N.D. Cal. Dec. 5, 2006) (finding direct email notice best practicable notice)).

11   The Summary Notice (Anderson Decl., Ex. 1, Exhibit C) will be sent to all Class

12   members via email or, alternatively, via postcard by U.S. Mail in the event the email is

13   undeliverable.  Class members can then access the Full Notice (*id.*, Exhibit B) and Claim Form

14   (*id.,* Exhibit D) on a website established and maintained by the Claims Administrator.  Class

15   members may also request download the Full Notice and Claim Form or request that a paper

16   copy of the Full Notice and Claim Form be sent via U.S. Mail.  *Id.*, Exhibit C.

17   The Full and Summary Notices were collaboratively written by the parties, and are

18   written in plain English.  Moreover, the Full and Summary Notices clearly provide information

19   to Class members about the benefits of the settlement, how to be excluded from the Class or

20   object to the settlement, and how Class members' legal rights are affected by remaining in or

21   opting out of the Class.

22   For the reasons set forth above, the notice plan agreed to in the settlement is the best

23   notice practicable and affords Class members with all due process protections required by Rule

24   23.  As such, the Full and Summary Notices and notice plan should be approved.

25   **V.    CONCLUSION**

26   For all of the foregoing reasons, the Plaintiffs respectfully request that this Court grant

MPA ISO PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 21
09-CV-02094-AJB (WVG)

1   this motion in its entirety consistent with the [Proposed] Order Granting Preliminary Approval

2   of Class Action Settlement, Approval of Form Notice and Preliminary Certification of

3   Settlement Class submitted herewith.

4   Dated: June 13, 2012                              ANDRUS ANDERSON LLP

5                                                     By:  _____/s/ Jennie Lee Anderson_____
                                                              Jennie Lee Anderson
6

7                                                     Jennie Lee Anderson, State Bar No. 203586
                                                      Lori E. Andrus, State Bar No. 205816
8                                                     ANDRUS ANDERSON LLP
                                                      155 Montgomery Street, Suite 900
9                                                     San Francisco, CA 94104
                                                      Telephone:  (415) 986-1400
10                                                    Facsimile:  (415) 986-1474
                                                      jennie@andrusanderson.com
11                                                    lori@andrusanderson.com

12                                                    James R. Patterson, State Bar No. 211102
                                                      Alisa A. Martin, State Bar A. 224037
13                                                    PATTERSON LAW GROUP
                                                      402 West Broadway, 29th Floor
14                                                    San Diego, CA 92101
                                                      Telephone:  (619) 756-6990
15                                                    Facsimile:  (619) 756-6991
                                                      jim@pattersonlawgroup.com
16                                                    alisa@pattersonlawgroup.com

17

18

19

20

21

22

23

24

25

26

MPA ISO PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 22
09-CV-02094-AJB (WVG)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Bruce Steckler
Mazin A. Sbaiti
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181
bsteckle@baronbudd.com
msbaiti@baronbudd.com

Isam C. Khoury, State Bar No. 58759
Michael D. Singer, State Bar No. 115301
Kimberly D. Neilson, State Bar No. 216571
COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101
Telephone:  (619) 595-3001
Facsimile:  (619) 595-3000
ikhoury@ck-lawfirm.com
msinger@ck-law.com
kneilson@ck-law.com

*Interim Co-Lead Class Counsel for Plaintiffs
and the Proposed Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE

I, Jennie Lee Anderson , hereby certify that on June 13, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record registered with the CM/ECF system.

Dated: June 13, 2012

ANDRUS ANDERSON LLP

By:  _____/s/ Jennie Lee Anderson_____
              Jennie Lee Anderson

Jennie Lee Anderson, State Bar No. 203586
Lori E. Andrus, State Bar No. 205816
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone:  (415) 986-1400
Facsimile:  (415) 986-1474
jennie@andrusanderson.com
lori@andrusanderson.com

MPA ISO PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 24
09-CV-02094-AJB (WVG)