1

**<u>TABLE OF EXHIBITS TO ANDERSON DECLARATION</u>**

2                                                                                                    <u>**Page No.**</u>

3   Exhibit 1 – Settlement Agreement and Release ........................................................................ 1

4   Exhibit 2 – Andrus Anderson LLP firm resume .................................................................... 54

5   Exhibit 3 – Patterson Law Group firm resume..................................................................... 64

6   Exhibit 4 – Baron & Budd, P.C. firm resume ...................................................................... 68

7   Exhibit 5 – Cohelan Khoury & Singer firm resume............................................................. 91

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT 1

# SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE ("*Settlement Agreement*") is entered into between plaintiffs Josue Romero, Gina Bailey, Jennifer Lawler, John Walters, Daniel Cox, Christopher Dickey, Grant Jenkins, and Bradley Berentson (collectively "*Plaintiffs*"), individually and in their representative capacity on behalf of the Class, and defendants Provide Commerce, Inc. ("*Provide Commerce*") and Regent Group, Inc. dba Encore Marketing International, Inc. ("*EMI*") (Provide Commerce and EMI collectively, "*Defendants*") (Plaintiffs and Defendants collectively, "*Parties*," or singularly, "*Party*").

## RECITALS

A.    On August 19, 2009, plaintiff Josue Romero commenced a civil action in the Superior Court of the County of San Diego entitled *Josue Romero v. Provide Commerce, Inc., Regent Group, Inc. dba Encore Marketing International, et al.*, Case No. 37-2009-00096492-CU-BT-CTL.   On September 25, 2009, Provide Commerce removed the case to the United States District Court for the Southern District of California, which assigned it Case No. 09-CV-02111.

B.    On September 24, 2009, then-plaintiff Bobbi Sledge (who, as explained below, is no longer a named plaintiff) initiated the action entitled *Sledge v. Provide Commerce, Inc.*, Case No. 09-CV-2094 in the United States District Court for the Southern District of California.

C.    On November 13, 2009, the United States District Court for the Southern District of California consolidated the *Sledge* and *Romero* cases under Case No. 09-CV-2094 with the new title *In re EasySaver Rewards Litigation* ("*Action*"), and appointed interim class counsel.

D.    The then-plaintiffs filed their consolidated complaint on December 14, 2009.  It added two new named plaintiffs (Kenyon and Bailey) and dropped plaintiff Sledge.

E.    On February 22, 2010, Provide Commerce and EMI filed motions to dismiss. On August 13, 2010, the district court entered an order granting in part and denying in part the motions, dismissing with prejudice the then-plaintiffs' claims against Provide Commerce for violation of the Electronic Funds Transfer Act and Electronic Communications Privacy Act, and denying the motions as to the then-plaintiffs' other claims.

F.    On August 30, 2010, Provide Commerce answered the consolidated complaint, and on September 9, 2010, EMI answered the consolidated complaint.  The answers generally and specifically denied the consolidated complaint's allegations and raised several separate and additional defenses.

G.    On February 10, 2011, the then-plaintiffs filed a first amended complaint, which added then-plaintiff Albert Parker (who, as explained below, is no longer a named plaintiff).  Provide Commerce and EMI answered on March 11, 2011.  The answers generally and specifically denied the first amended complaint's allegations and raised several separate and additional defenses.

H.    On May 26, 2011, the court granted the then-plaintiffs and Defendants' joint motion for leave to amend to allow the then-plaintiffs to file a second amended complaint.  Provide Commerce answered on June 22, 2011 and EMI answered on June 28, 2011.  The answers generally and

specifically denied the second amended complaint's allegations and raised several separate and additional defenses.

      **I.**     The Action is related to yet another case.  In February 2010, then-plaintiff Alissa Herbst filed *Herbst v. Encore Marketing Int'l, Inc., et al.*, Case. No. 2:10-cv-00870 in the United States District Court for the District of New Jersey.  *Herbst* was transferred to the United States District Court for the Southern District of California on February 17, 2011, and assigned Case No. 11-cv-00349.  On June 17, 2011, the court consolidated *Herbst* with the Action, ordered that the operative complaint would be the second amended complaint in the Action or any subsequent amendment thereto (thus dropping plaintiff Herbst as a plaintiff), and maintained the previously appointed interim class counsel in the Action.

      **J.**     On July 28, 2011, the then-plaintiffs filed a third amended complaint, wherein plaintiff Kenyon withdrew and plaintiffs Berentson and Jenkins joined the Action as plaintiffs.  Both Provide Commerce and EMI filed motions to dismiss the claims of then-plaintiff Parker.  As part of their opposition to the motions to dismiss, then-plaintiff Parker sought to voluntarily withdraw due to his lack of standing, and the remaining then-plaintiffs requested leave to file a fourth amended complaint to add plaintiffs Lawler, Walters, Cox, and Dickey.  On December 7, 2011, the Court dismissed plaintiff Parker, granted the remaining then-plaintiffs leave to amend to file the fourth amended complaint, and denied Defendants' motions to dismiss as moot.

      **K.**     Plaintiffs filed the fourth amended complaint on December 14, 2011.  Plaintiffs assert their claims in their individual capacity and their capacity as representatives of a class of similarly situated persons.  Based on the alleged circumstances surrounding their enrollment in EasySaver Rewards, RedEnvelope Rewards, or Preferred Buyers Pass, Plaintiffs assert a total of ten claims against Provide Commerce and EMI: (1) breach of contract (against Provide Commerce only); (2) breach of contract (against EMI only); (3) breach of implied covenant of good faith and fair dealing; (4) fraud; (5) violations of the Consumers Legal Remedies Act ("CLRA"); (6) unjust enrichment; (7) violation of the Electronic Funds Transfer Act ("EFTA") (against EMI only); (8) invasion of privacy; (9) negligence; and (10) violations of the Unfair Competition Law ("UCL").

      **L.**     Provide Commerce and EMI respectively filed motions to dismiss the claims of plaintiffs Lawler, Walters, Cox, and Dickey on January 24, 2012.  Such plaintiffs filed their opposition on February 13, 2012, and Defendants filed their respective replies on February 23, 2012.  A hearing on the motions to dismiss is presently not set.  Defendants have not answered the fourth amended complaint.

      **M.**     The Parties have participated in numerous settlement conferences and mediations in an effort to resolve the Action.  On December 15, 2010, the Parties appeared before Magistrate Judge William Gallo and participated in an Early Neutral Evaluation conference ordered by the court.  On May 18, 2011, the Parties participated in a full-day private mediation session before Judge Leo S. Papas (Ret.).  On May 20, 2011, the Parties again appeared before Magistrate Judge William Gallo and participated in a Mandatory Settlement Conference ordered by the court.  On June 20, 2011, Magistrate Judge William Gallo conducted a Mandatory Settlement Conference with Defendants and their respective insurance carriers only.  Magistrate Judge William Gallo conducted follow up telephone conferences with all or certain Defendants and all or certain of their respective insurance carriers on July 18, 2011, August 5, 2011, and August 17, 2011.  Magistrate Judge William Gallo conducted an in-person Mandatory Settlement Conference with Plaintiffs only on October 7, 2011.

The Parties continued to discuss a potential settlement over the next several months, and agreed to attend a second private mediation.  On April 9, 2012, the Parties participated in a full-day private mediation session before Judge Edward Infante (Ret.).  At the conclusion of the mediation, the Parties reached an agreement on the high-level terms of a settlement, conditioned on the Parties negotiating and executing a complete written agreement, which in turn is subject to court approval.

      **N.**     The Parties have investigated the facts and have analyzed the relevant legal issues with regard to the claims and defenses asserted in the Action.  Based on these investigations, Plaintiffs believe the Action has merit, while Defendants believe the Action has no merit.  The Parties have also each looked at the uncertainties of trial and the benefits to be obtained under the proposed settlement, and have considered the costs, risks, and delays associated with the continued prosecution of this complex litigation, and the likely appeals of any rulings in favor of either Plaintiffs or Defendants.

      **O.**     Accordingly, it is now the intention of the Parties and the objective of this Settlement Agreement to avoid the costs of trial and settle and dispose of, fully and completely and forever, any and all claims and causes of action that Plaintiffs asserted or that could have been asserted in the Action.

**AGREEMENT**

      **1.**     **DEFINITIONS.**  The following section defines terms that are not defined above.  Some definitions use terms that are defined later in this section:

      **1.1**     The terms ***"$20 Credit"*** or ***"$20 Credits"*** means a single transferable $20 credit valid only for on-line purchases at ProFlowers.com, RedEnvelope.com, Berries.com, and CherryMoonFarms.com that Provide Commerce agrees to provide each Class Member.  The $20 Credit is subject to certain terms, which are set forth in Section 2.2 of this Settlement Agreement.

      **1.2**     The terms ***"Authorized Claimant"*** or ***"Authorized Claimants"*** mean any Class Member who is eligible for and validly and timely submits a Claim Form to receive a Settlement Payment according to the terms of this Settlement Agreement.

      **1.3**     The terms ***"Claim Form"*** or ***"Claim Forms"*** mean the form eligible Class Members must complete and timely submit to receive a Settlement Payment under this Settlement Agreement.  The Claim Form submitted to the Court for approval must be in the form attached as **Exhibit D**.

      **1.4**     The term ***"Claimant"*** means any Class Member who submits a Claim Form for a Settlement Payment under this Settlement Agreement.

      **1.5**     The term ***"Claims Administrator"*** means the entity, and any successors to that entity, that Defendants retain to administer the Settlement process provided for in the Settlement Agreement, which includes, but is not limited to: (i) preparing, issuing, distributing, emailing, and monitoring all necessary notices and forms, declarations, filings, and related documents, including developing, maintaining, and operating an Internet website specifically created for the Settlement of this Action; (ii) communicating with and responding to Class Members; (iii) computing Settlement Payments to Authorized Claimants; (iv) establishing or maintaining an account for the Gross Cash Fund; and (v) distributing payments out of the Gross Cash Fund or Net Cash Fund.  Defendants will

retain the claims administrator after requesting and evaluating quotes from The Garden City Group, Inc., Epiq Consulting, and Rust Consulting.  The selected claims administrator need not have the lowest quote, but its quote should not be substantially more expensive.

       **1.6**     The terms **"Class Counsel"** or **"Plaintiffs' Counsel"** means the law firms of Patterson Law Group, APC, Baron & Budd, P.C., Andrus Anderson LLP, and Cohelan Khoury & Singer.

       **1.7**     The terms **"Class**," **"Class Member**," and **"Class Members"** mean all persons who, between August 19, 2005 and the date of entry of the preliminary approval order, placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled by Regent Group Inc. dba Encore Marketing International, Inc. in one or more of the following membership programs: EasySaver Rewards, RedEnvelope Rewards, or Preferred Buyers Pass.

       **1.8**     The term **"Court"** means the United States District Court for the Southern District of California.

       **1.9**     The term **"Fairness Hearing"** means the hearing at which the Court decides whether to approve this Settlement Agreement as being fair, reasonable, and adequate.

       **1.10**    The term **"Final Order and Judgment"** means a proposed order and judgment approving the Settlement of this Action.  The order submitted to the Court shall be in the form attached as **Exhibit E**.

       **1.11**    The term **"Final Settlement Date"** means the date in which either of the following events has occurred: **(a)** if no appeal or request for review is filed or made, thirty-one (31) days after Defendants receive ECF notice from Plaintiffs or the Court that the Court entered the Final Approval Order and Judgment or **(b)** if any appeal or request for review is filed or made, fourteen (14) days after the date on which Plaintiffs file and Defendants receive ECF notice that a court entered an order affirming the Final Approval Order and Judgment or denied review after either the exhaustion of all appeals or the time for seeking all appeals has expired.

       **1.12**    The term **"Full Notice"** means the legal notice of the proposed Settlement terms, as approved by Class Counsel, Provide Commerce's Counsel, EMI's Counsel, and the Court, to be provided to Class Members under Section 3.3 of this Settlement Agreement.  The Full Notice submitted to the Court for approval shall be in the form attached as **Exhibit B.**

       **1.13**    The term **"Gross Cash Fund"** means the $12.5 million described in Section 2.1 of this Settlement Agreement.

       **1.14**    The term **"Net Cash Fund"** means the remaining balance of the Gross Cash Fund that shall be distributed to Authorized Claimants as described in Section 2.1 of this Settlement Agreement after payment of any and all fees and costs from the Gross Cash Fund, including, but not limited to, all claims administration fees and costs, court-approved Class Counsel fees and costs award, and court-approved Class Representative enhancement awards.

       **1.15**    The term **"Internet Posting"** means a website set up by the Claims Administrator for the proposed Settlement for the purposes of, among other things, providing the Class

with the Full Notice of the Settlement, receiving email addresses from those Class Members receiving Summary Notice by U.S. mail in the event of email undeliverability, receiving Claim Forms submitted by Claimants, and making the Full Notice and Claim Form available for downloading.

   **1.16** The term *"Membership Program"* or *"Membership Programs"* means EasySaver Rewards, RedEnvelope Rewards, or Preferred Buyers Pass.

   **1.17** The term *"Named Plaintiffs"* means Plaintiffs in their individual capacities.

   **1.18** The term *"Preliminary Approval and Provisional Class Certification Order"* or *"Preliminary Approval Order"* means a proposed order preliminarily approving the Settlement of this Action and provisionally certifying the Class.  This order must be submitted to the Court in the form attached as **Exhibit A**.

   **1.19** The term *"Provide Commerce's Counsel"* means the law firm of Cooley LLP.

   **1.20** The term *"EMI's Counsel"* means the law firm of Myron M. Cherry & Associates, LLC.

   **1.21** The term *"Settlement"* means the settlement of this Action and related claims.

   **1.22** The term *"Settlement Payment"* or *"Settlement Payments"* means a payment to an Authorized Claimant or payments to Authorized Claimants from the Net Cash Fund as described under Section 2.1(d) of this Settlement Agreement.

   **1.23** The term *"Summary Notice"* means the legal notice summarizing the proposed Settlement terms, as approved by Class Counsel, Provide Commerce's Counsel, EMI's Counsel, and the Court, which is to be provided to Class Members under Section 3.3 of this Settlement Agreement by email or U.S. mail in the event of email undeliverability.  The Summary Notice submitted to the Court for approval shall be in the form attached as **Exhibit C**.

  **2.**  SETTLEMENT TERMS

   As consideration for the Settlement, which is subject to Court approval, Defendants will pay a total of $12.5 million and Provide Commerce will provide a $20 Credit to each Class Member according to the terms set forth below.  Based on Defendants' verified discovery responses, there are between approximately 1.25 million and 1.35 million Class Members, each of whom will automatically receive the $20 Credit described below and have the opportunity, if they are eligible, to make a claim for a payment from the Net Cash Fund described below.

   **2.1**  **Cash Fund.**  In accordance with Section 2.1(f) of this Settlement Agreement, Defendants will pay $12.5 million to establish the Gross Cash Fund to be used to pay any and all fees and costs, including, but not limited to, all claims administration fees and costs, court-approved Class Counsel's fees and costs award, and court-approved Named Plaintiffs' enhancement awards.  The remaining balance – Net Cash Fund – shall be distributed to Authorized Claimants as described below. If the Court approves the Settlement of this Action, and subject to Section 2.1(f) of this Settlement Agreement, Defendants shall make their payments within seven (7) days after the Final Settlement Date.  The Gross Cash Fund will pay for, in order:

(a)     **Claims Administration.**   All fees and costs incurred by the Claims Administrator for the administration of the Settlement, including, but not limited to: (i) preparing, issuing, distributing, emailing, and monitoring all necessary notices and forms, declarations, filings, and related documents, including developing, maintaining, and operating an Internet website specifically created for the Settlement of this Action; (ii) communicating with and responding to Class Members; (iii) computing Settlement Payments from the Net Cash Fund to Authorized Claimants; (iv) establishing or maintaining an account for the Gross Cash Fund; and (v) distributing payments out of the Gross Cash Fund or Net Cash Fund.

(b)     **Named Plaintiffs' Enhancement Awards.**  Enhancement awards of up to $15,000 each for plaintiffs Josue Romero and Gina Bailey (who participated in various court-ordered settlement conferences and the first mediation, responded to written discovery, and had their depositions taken), up to $10,000.00 each to plaintiffs Bradley Berentson, Grant Jenkins, Daniel Cox, and Jennifer Lawler (who responded to written discovery and had their depositions taken, or in the case of plaintiff Lawler, prepared, took time off work, and travelled to San Diego, California for her deposition, which ultimately did not occur), and up to $5,000.00 each to plaintiffs John Walters and Christopher Dickey (who responded to written discovery), subject to Court approval.  Plaintiffs agree to not petition the Court for or otherwise seek more than these amounts for enhancements awards.  A reduction by the Court or by an appellate court of the enhancement award sought by Plaintiffs shall not affect any of the Parties' rights and obligations under the Settlement Agreement, and shall only serve to increase the amount of the Net Cash Fund to be distributed as Settlement Payments to Authorized Claimants or any remainder, both of which are addressed in Section 2.1(d)-(e) of this Settlement Agreement.  If the Court approves the Settlement of this Action and enhancement awards to the Named Plaintiffs, Defendants agree to pay, through the Claims Administrator as a distribution from the Gross Cash Fund, the enhancement awards approved by the Court up to the amounts specified above to Named Plaintiffs within fourteen (14) days after the Final Settlement Date.

(c)     **Class Counsel's Attorneys' Fees and Costs Award.**   Class Counsel's Attorneys' fees and costs award of up to, and not more than, $8.65 million in fees and $200,000 in costs, subject to Court approval.  Defendants agree not to oppose this request, and do not currently take and will not take a position on the total Settlement value or total value of the $20 Credit in connection with obtaining Court approval of the Settlement or with respect to Class Counsel's motion or application for attorneys' fees and costs.  A reduction by the Court or by an appellate court of Class Counsel's attorneys' fees and costs award shall not affect any of the Parties' other rights and obligations under the Settlement Agreement, and shall only serve to increase the amount of the Net Cash Fund to be distributed as Settlement Payments to Authorized Claimants or any remainder, both of which are addressed below.  Nothing in this Settlement Agreement shall prohibit Class Counsel from appealing any reduction of

requested attorneys' fees and costs awarded by Court.  In accordance with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), Class Counsel will file any papers supporting its request for attorneys' fees and costs with the Court fourteen (14) days prior to the deadline for Class Members to object to the Settlement, as such deadline is defined in Section 3.9 of this Settlement Agreement.   Defendants agree to pay, through the Claims Administrator as a distribution from the Gross Cash Fund, Class Counsel's Attorneys' fees and costs award approved by the Court up to $8.65 million to one or more of the Class Counsel, as specified by Class Counsel, within fourteen (14) days after the Final Settlement Date.

**(d)**      **Settlement Payments to Class Members.**  After all payments are made out of the Gross Cash Fund for the items listed in Section 2.1(a)-(c) of this Settlement Agreement, the Net Cash Fund shall be distributed to Authorized Claimants. To be eligible for a Settlement Payment from the Net Cash Fund, a Class Member must submit a Claim Form signed under penalty of perjury stating, among other things, that he/she did not knowingly authorize his/her enrollment in the Membership Program(s) for which he/she was charged and did not take advantage of any of the benefits of the Membership Program(s) other than the dollar-off-code for a future Provide Commerce website purchase.  Only Class Members who were actually enrolled in a Membership Program and were charged at least the activation fee and one monthly membership fee are eligible to receive a Settlement Payment from the Net Cash Fund.  No Class Member will be entitled to receive a Settlement Payment from the Net Cash Fund to the extent he/she already received a refund or chargeback of the monthly membership fees he/she paid or to the extent he/she was enrolled but was not charged a monthly membership fee at all.   Class Members who used or requested a benefit, directory, or other service provided through any of the Membership Programs other than the dollar-off-code for a future Provide Commerce website purchase (including, but not limited to, cash back on gift cards, travel and/or leisure discounts, discounted movie or theme park tickets or free concierge services), are not eligible to receive a Settlement Payment from the Net Cash Fund.  The amount to be received by an Authorized Claimant will depend upon the number of claims submitted and dollar value of such claims, and shall be up to, but not more than, the amount of monthly fees the Authorized Claimant paid for Membership Program(s) less any full or partial refund the Authorized Claimant previously received.   Depending upon the number of claims received and the dollar value of such claims, the Net Settlement Fund may be sufficient to pay all Authorized Claimants for the full amount of their claims. If the claims submitted exceed in dollar amount the amount of the Net Cash Fund, Authorized Claimants' payments will be reduced on a pro-rated basis, such that the total number and dollar value of all Authorized Claimants' claims shall not exceed the amount of the Net Cash Fund.  If the Court approves the Settlement of this Action, Defendants, through the Claims Administrator, must mail the Settlement Payments from the Net Cash Fund to Authorized Claimants within twenty-five (25) calendar days following the Final Settlement Date.

(e)     **Remainder.**  Any unclaimed portion of the Net Cash Fund after distribution of Settlement Payments to Authorized Claimants and any returned Settlement Payments to Authorized Claimants will be paid on an equal basis to the following non-profit college or university academic institutions located in San Diego County, California, with the payments specified to be used for a chair, professorship, fellowship, lectureship, seminar series or similar funding, gift, or donation program developed and coordinated between Provide Commerce and the respective institutions (depending on the amount of the remainder) regarding internet privacy or internet data security: California State University at San Diego (San Diego State University), University of California at San Diego, and University of San Diego School of Law.  If the Court approves the Settlement of this Action, Defendants, through the Claims Administrator, must mail or wire the payments from the Net Cash Fund to the remainder recipients within sixty (60) calendar days following the Final Settlement Date.

(f)     **Less Than Full Funding of Cash Fund.**  Defendants' respective contributions to the Gross Cash Fund shall be conditioned upon and in accordance with the agreement reached amongst themselves (including their respective insurers).  If the total amount of $12.5 million is not contributed to the Gross Cash Fund from Defendants collectively in accordance with the agreement reached amongst themselves and their respective insurers, then the Settlement Agreement shall be null and void *ab initio*, the Final Order and Judgment shall be vacated by its own terms, Defendants shall not be jointly liable for the total amount of the Gross Cash Fund or the contribution of the other, and the Parties shall revert to their respective positions in the Action.

     **2.2     $20 Credit.**  Provide Commerce agrees to provide each Class Member with one $20 Credit.  The $20 Credit shall be fully transferable and shall be valid only for on-line purchases at ProFlowers.com, RedEnvelope.com, Berries.com, and CherryMoonFarms.com.  The $20 Credit will be distributed to all Class Members by email (the email address to which Direct Email Notice was sent for all deliverable Direct Email Notices or if undeliverable and Direct Mail Notice is provided, the email address the Class Member provides to the Claims Administrator).   The $20 Credit shall be subject to the following terms: (i) expires one year after distribution date; (ii) not valid for order or delivery of products on December 17 to 24, 2012, February 4 to 14, 2013, May 1 to 12, 2013, and December 16 to 24, 2013 (and corresponding time periods in 2014 through the expiration date should the $20 Credit not be distributed until 2013); (iii) one $20 Credit per Class Member; (iv) not redeemable for cash and not refundable; (v) will not be replaced if lost or stolen; (vi) not valid for Same Day, International or Wedding Services (including, not valid on www.floristexpress.net, www.floristexpressonline.net, www.fruitbaskettoday.com, and ProFlowersInternational.com), third party hosted products (*e.g.* wine), or for the purchase of Giftcards; (vii) not combinable with discount or gift codes, cannot be used with hyperlink or URL based offers (including certain email offers or third party promotions) or previous purchases, but does apply to markdown, bundled, and discounted products; and (viii) must be used in a single transaction (no change, credit, or cash given and any balance not used is lost).

3.      **CLASS SETTLEMENT PROCEDURES**

       **3.1      Cooperation to Obtain Court Approval.**  The Parties will take all reasonable steps necessary to secure the Court's approval of this Settlement Agreement and the Settlement.

       **3.2      Preliminary Approval and Provisional Class Certification.**  As soon as practicable after this Settlement Agreement is signed, Plaintiffs must move or apply for preliminary approval of the Settlement and provisional class certification.  The motion or application must request the Court to:

      **(a)**      preliminarily approve this Settlement Agreement as being the product of serious, informed, non-collusive negotiations, having no obvious deficiencies, not improperly granting preferential treatment to the proposed class representatives or segments of the class, and falling within the range of possible approval;

      **(b)**      preliminarily approve the form, manner, and content of the Full Notice, Summary Notice, and Claim Form described in Sections 3.3 and 3.6, and attached as **Exhibits B - D**;

      **(c)**      set the date and time of the Fairness Hearing between one hundred seventy-one (171) and one hundred eighty-five (185) calendar days after entry of the preliminary approval order, subject to the Court's availability;

      **(d)**      provisionally certify the Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure for settlement purposes only;

      **(e)**      stay all proceedings in the Action until the Court renders a final decision on approval of the Settlement;

      **(f)**      appoint the Named Plaintiffs as Class Representatives for settlement purposes only; and

      **(g)**      appoint the law firms of Patterson Law Group, APC, Baron & Budd, P.C., Andrus Anderson LLP, and Cohelan Khoury & Singer as Class Counsel for settlement purposes only.

The proposed Preliminary Approval and Provisional Class Certification Order must be submitted to the Court in the form attached as **Exhibit A.**

       **3.3      Notice.**  Subject to the Court granting Preliminary Approval of the Class Settlement and Provisional Class Certification, the Parties agree that Defendants, through their retained Claims Administrator, will provide the Class with notice of the proposed Settlement by the following methods.

      **(a)**      **Internet Posting.**  Starting no later than seventy-five (75) calendar days after entry of the Preliminary Approval Order, the Claims Administrator will set up an Internet website and post the Full Notice and Claim Form, both of which shall be downloadable.  The website will be active for a period of sixty (60)

consecutive calendar days.  The website shall be designed and constructed to accept electronic Claim Form submission, and will also provide a mechanism to receive updated email addresses by mail and electronically through the Internet website from those Class Members that receive Summary Notice by U.S. mail as described below.  The website domain name shall be non-inflammatory, shall not infringe upon any of Provide Commerce's or EMI's trade names or service marks, and is subject to the approval of each of the Parties, which approval shall not be unreasonably withheld.

 **(b)** **Summary Notice By Direct Email.**  Starting no later than seventy-five (75) calendar days after entry of the Preliminary Approval Order, Defendants, through the Claims Administrator, will send Summary Notice by email to each Class Member at the email address that EMI maintains for each Class Member, including persons that have previously indicated that they do not wish to be contacted by EMI.  The Summary Notice sent by email must be in the form attached as **Exhibit C**, and will provide the URL of the Internet website containing the Full Notice and a U.S. postal mailing address for the Claims Administrator so that Class Members may request a paper copy of the Claim Form or Full Notice by U.S. mail.  The email address from which the Summary Notice is sent shall be non-inflammatory, shall not infringe upon any of Provide Commerce's or EMI's trade names or service marks, and is subject to the approval of each of the Parties, which approval shall not be unreasonably withheld.

 **(c)** **Summary Notice By Direct U.S. Mail.**  As soon as reasonably possible after receiving notification of undeliverability, and no later than ninety-five (95) calendar days after entry of the Preliminary Approval Order, Defendants, through the Claims Administrator, will send Summary Notice on a postcard by U.S. mail to all Class Members to whom Summary Notice by direct email was not deliverable and for whom EMI has a facially valid postal address, including persons that have previously indicated that they do not wish to be contacted by EMI.  The Summary Notice sent by postcard must be in the form attached as **Exhibit C**, and will provide the URL of the Internet website containing the Full Notice and a U.S. postal mailing address for the Claims Administrator so that Class Members may request a paper copy of the Claim Form or Full Notice by U.S. mail.

 **3.4** **CAFA Notice.**  Not later than ten (10) calendar days after the Settlement Agreement is filed with the Court, Defendants shall jointly serve upon the relevant government officials notice of the proposed Settlement in accordance with 28 U.S.C. § 1715.

 **3.5** **Proof of Notice.**  No later than seven (7) calendar days before the filing date for Plaintiffs' motion in support of the Final Order and Judgment, Defendants must send by email a declaration from the Claims Administrator to Class Counsel confirming that Defendants, through the Claims Administrator, provided the Class with notice of the proposed Settlement in accordance with Section 3.3 of this Settlement Agreement.

**3.6     Claim Form.**  To be entitled to receive a Settlement Payment from the Net Cash Fund, Class Members must accurately complete a Claim Form, signed under penalty of perjury, and deliver that form to the Claims Administrator no later than one hundred thirty-five (135) calendar days after the entry of the Preliminary Approval Order.  The Claim Form must be in the form attached as **Exhibit D**, and must include certifications acknowledged by Class Members under penalty of perjury that at the time the Class Member was enrolled, he/she did not knowingly authorize his/her enrollment in the Membership Program(s) for which he/she was charged and did not use any of the benefits of the Membership Program(s) other than the dollar-off-code for a future Provide Commerce website purchase.  The Claim Form may be submitted electronically or by U.S. mail.  The electronic Claim Form on the webpage shall be programmed such that if the Claimant fails to fulfill any of the information or certification requirements before clicking on the "submit" button, the page will immediately display a conspicuous warning window or page in the middle of the screen informing the Claimant of such failure, specifying the deficiency, and explaining that failure to remedy the deficiency will prevent submission of the Claim Form unless remedied.  The Claims Administrator shall also take all reasonable actions to contact any Claimant who submits a deficient Claim Form on paper via U.S. Mail.  The deficiency notice for a paper Claim Form shall expressly state which pieces of information or certifications must be completed or made for the claim to be deemed non-deficient.  The delivery date is deemed to be the date (a) the Claim Form is deposited in the U.S. mail as evidenced by the postmark, in the case of submission by U.S. mail, or by date of delivery if sent by FedEx, UPS, or comparable courier, or (b) in the case of submission electronically through the Internet website for the Settlement, the date the Claims Administrator receives the Claim Form, as evidenced by the transmission receipt.  Any Class Member who fails to submit a valid and timely Claim Form is not an Authorized Claimant and will not receive a Settlement Payment from the Net Cash Fund.

**3.7     Right to Verify.**  The Claims Administrator will review all submitted Claim Forms for completeness, validity, accuracy, and timeliness, and may contact any Claimant to request any missing information required on the Claim Form.  The Claims Administrator will determine the validity of any claim, and as part of that determination, verify that, according to EMI's records, the information set forth in a submitted Claim Form is accurate and that the Claimant is a Class Member and is eligible to receive a Settlement Payment.  The Claims Administrator may also contact Defendants to determine whether a Claimant is a Class Member and is eligible to receive a Settlement Payment.  Defendants are also entitled, at their option, to review submitted Claim Forms.

**3.8     Disputed Claims.**  If the Parties dispute a Claim Form's timeliness or validity, the Parties must meet and confer in good faith to resolve the dispute.  EMI's records will be entitled to a rebuttable presumption of accuracy.

**3.9     Objections.**  Any Class Member who has not submitted a timely written exclusion request pursuant to Section 3.10 of this Settlement Agreement and who wishes to object to the fairness, reasonableness or adequacy of the Settlement Agreement or the proposed Settlement or to the attorneys' fees and costs award requested by Class Counsel, must do so by filing a written objection with the Court and delivering a copy of the objection to Class Counsel, Provide Commerce's Counsel, and EMI's Counsel no later than one hundred thirty-five (135) calendar days after entry of the Preliminary Approval Order.  The delivery date is deemed to be the date the objection is deposited in the U.S. Mail as evidenced by the postmark.  It shall be the objector's responsibility to ensure receipt of any objection by the Court, Class Counsel, Provide Commerce's Counsel, and EMI's Counsel.  To be considered by the Court, the objection must include: (1) a heading containing the name and case number of the Action: *In re EasySaver Rewards Litigation*, Case No. 3:09-cv-02094-

AJB (WVG); (2) the Class Member's name, email address, postal address, and telephone number; (3) a detailed statement of each objection and the factual and legal basis for each objection, and the relief that the Class Member is requesting; (4) a list of and copies of all documents or other exhibits which the Class Member may seek to use at the Fairness Hearing; and (5) a statement of whether the Class Member intends to appear, either in person or through counsel, at the Fairness Hearing, and if through counsel, a statement identifying the counsel's name, postal address, phone number, email address, and the state bar(s) to which the counsel is admitted.  Any Class Member who files and serves a written objection, as described in this section, has the option to appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, or to the award of attorneys' fees and costs.  However, Class Members or their attorneys intending to make an appearance at the Fairness Hearing must include a statement of intention to appear in the written objection filed with the Court and delivered to Class Counsel, Provide Commerce's Counsel, and EMI's Counsel, and only those Class Members who include such a statement may speak at the Fairness Hearing.  If a Class Member makes an objection or appears at the Fairness Hearing through an attorney, the Class Member will be responsible for his or her personal attorney's fees and costs.

       **3.10**    **Exclusion Requests.**  Class Members may elect not to be part of the Class and not to be bound by this Settlement Agreement.  To make this election, Class Members must send a letter or postcard to the Claims Administrator stating: (a) the name of the Action, "*In re EasySaver Rewards Litigation*"; (b) the full name, address, and telephone number of the person requesting exclusion; and (c) a statement that he/she does not wish to participate in the Settlement, postmarked no later one hundred thirty-five (135) calendar days after entry of the Preliminary Approval Order.

       **(a)**    **Exclusion List.**  Defendants must serve on Class Counsel a list of Class Members who have timely and validly excluded themselves from the Class no later than ten (10) calendar days before the filing date for Plaintiffs' motion in support of the Final Order and Judgment.  Such list may be attached as an exhibit to the proof of notice declaration from the Claims Administrator addressed in Section 3.5 of this Settlement Agreement.

       **(b)**    **Blow-up Clause.**  Despite this Settlement Agreement, if more than one thousand two hundred fifty (1,250) Class Members request exclusion, then either Provide Commerce or EMI may, in either's sole discretion, at any time before the Fairness Hearing, notify Class Counsel in writing that it has elected to terminate this Settlement Agreement.   If this Settlement Agreement is terminated under this section, it will be deemed null and void *ab initio*.  In that event: (i) the Provisional Class Certification Order and all of its provisions will be vacated by its own terms; (ii) the Action will revert to the status that existed before the Settlement Agreement's execution date; and (iii) no term or draft of this Settlement Agreement, or any part or aspect of the Parties' settlement discussions, negotiations, or documentation will have any effect or be admissible into evidence, for any purpose, in this Action or any other proceeding.

       **3.11**    **Fairness Hearing and Final Order and Judgment.**  In connection with their motion or application for preliminary approval of the Settlement, Plaintiffs shall request that the Fairness Hearing be held between one hundred seventy-one (171) and one hundred eighty-five (185)

calendar days after entry of the Preliminary Approval Order, subject to the Court's availability. Before the Fairness Hearing, Plaintiffs must move or apply for Court approval of a proposed Final Order and Judgment, which shall be submitted to the Court in the form attached as **Exhibit E**.  Class Counsel must file with the Court a complete list of all Class Members who have validly and timely excluded themselves from the Class.  Class Counsel must also draft the application papers and give Provide Commerce's Counsel and EMI's Counsel drafts of the motion or application and proposed order to review at least seven (7) calendar days before the application's filing deadline.  Defendants shall be permitted, but not required, to file their own joint or individual brief or statement of non-opposition in support of the motion or application for Final Order and Judgment.

      **3.12    Action Status If Settlement Not Approved, Final Settlement Date Does Not Occur, or Gross Cash Fund Not Fully Funded.**  This Settlement Agreement is being entered into for settlement purposes only.  If the Court conditions its approval of either the Preliminary Approval Order or the Final Order and Judgment on any modifications of this Settlement Agreement or Exhibits thereto (including the Summary Notice, Full Notice, or Claim Form) that are not acceptable to all Parties, if the Court does not approve the Settlement or enter the Final Order and Judgment, if the Final Settlement Date does not occur for any reason, or if the total amount of $12.5 million is not contributed to the Gross Cash Fund as addressed in Sections 2.1 and 2.1(f) of this Settlement Agreement, then this Settlement Agreement will be deemed null and void *ab initio*.  In that event (a) the Preliminary Approval Order and all of its provisions or the Final Order and Judgment and all of its provisions, as applicable, will be vacated by its own terms, including, but not limited to, vacating conditional certification of the Class, conditional appointment of Plaintiffs as class representatives and conditional appointment of Plaintiffs' Counsel as Class Counsel, (b) the Action will revert to the status that existed before the Settlement Agreement's execution date, (c) no term or draft of this Settlement Agreement, or any part of the Parties' settlement discussions, negotiations or documentation will have any effect or be admissible into evidence for any purpose in the Action or any other proceeding, and (d) Defendants shall retain all their rights to proceed with their presently pending motions to dismiss and to object to the maintenance of the Action as a class action, and nothing in this Settlement Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any Party concerning whether the presently pending motions to dismiss should be granted or denied or the Action may properly be maintained as a class action.

      **3.13    Distribution of $20 Credit.**   If the Court approves the Settlement of this Action, Provide Commerce, through the Claims Administrator, must email the $20 Credit to Class Members within twenty-five (25) calendar days following the Final Settlement Date.

    **4.**      DISMISSAL OF ACTION AND RELEASES

      **4.1    Judgment and Enforcement.**   The Parties agree that should the Court grant final approval of the proposed Settlement and enter judgment, the Final Order and Judgment shall include a provision for the retention of the Court's jurisdiction over the Parties to enforce the terms of this Settlement Agreement.

      **4.2    Class Members' Release.**   Upon entry of the Final Order and Judgment, Named Plaintiffs and all Class Members who do not validly and timely request to be excluded from the proposed Settlement, and each of their respective successors, assigns, legatees, heirs, and personal representatives release and forever discharge defendants Provide Commerce, Inc. and Regent Group, Inc., and each of their respective direct or indirect parents, wholly or majority owned subsidiaries,

affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of their present and former directors, officers, employees, shareholders, agents, representatives, attorneys, accountants, insurers, and all persons acting by, through, under or in concert with them, or any of them, from all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, which they have or may have arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Action including, but not limited to, (i) the marketing, advertising, enrollment, registration, disclosure of membership billing terms, handling of personal or financial information, or sharing of contact and payment information as they relate to the Membership Programs, (ii) the past or continued billing, debiting, or charging of fees associated with the Membership Programs, (iii) the adequacy or inadequacy of any notification of enrollment or copy of authorization to debit accounts for any fees associated with any of the Membership Programs (or any alleged failure to provide a copy of such authorization), (iv) the billing cycle, time period, or frequency of the charges for the Membership Programs, and (v) any and all claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, violations of the California Consumers Legal Remedies Act, unjust enrichment, violations of the Electronic Funds Transfer Act, invasion of privacy – intrusion into private matters, negligence, or violations of California's Unfair Competition Law (the **"*Released Claims*"**).

With respect to the Released Claims, the Named Plaintiffs and all Class Members who do not validly and timely request to be excluded from the Settlement, and each of their respective successors, assigns, legatees, heirs, and personal representatives, expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

Named Plaintiffs and all Class Members fully understand that the facts in existence at the time this Settlement Agreement is executed and entry of the Preliminary Approval Order may be different from the facts now believed by Named Plaintiffs and Class Members and Class Counsel to be true and expressly accept and assume the risk of this possible difference in facts and agree that this Settlement Agreement remains effective despite any difference in facts.  Further, Named Plaintiffs and the Class Members agree that this waiver is an essential and material term of this release and the Settlement Agreement that underlies it and that without such waiver the Settlement Agreement would not have been accepted or agreed to.

        **4.3    Named Plaintiffs' Release.**  Upon entry of the Final Order and Judgment, Named Plaintiffs, and each of their successors, assigns, legatees, heirs, and personal representatives release and forever discharge defendants Provide Commerce, Inc. and Regent Group, Inc., and each of their respective direct or indirect parents, wholly or majority owned subsidiaries, affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of their present and former directors, officers, employees, shareholders, agents, representatives, attorneys, accountants, insurers, and all persons acting by, through, under or in concert with them, or any of them, from all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements,

promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent as of the date the Parties execute this Settlement Agreement.

In addition, Named Plaintiffs, and each of their successors, assigns, legatees, heirs, and personal representatives, expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

Named Plaintiffs fully understand that the facts in existence at the time this Settlement Agreement is executed may be different from the facts now believed by Named Plaintiffs and their Counsel to be true and expressly accept and assume the risk of this possible difference in facts and agree that this Settlement Agreement remains effective despite any difference in fact.  Further, Named Plaintiffs agree that this waiver is an essential and material term of this release and the Settlement Agreement that underlies it and that without such waiver the Settlement Agreement would not have been accepted or agreed to.

5.    **ADDITIONAL PROVISIONS**

5.1    **Defendants' Denial of Wrongdoing.**  This Settlement Agreement reflects the Parties' compromise and Settlement of the disputed claims. Its provisions, and all related drafts, communications and discussions, cannot be construed as or deemed to be evidence of an admission or concession of any point of fact or law (including, but not limited to, matters respecting Defendants' presently pending motions to dismiss or class certification) by any person or entity and cannot be offered or received into evidence or requested in discovery in this Action or any other action or proceeding as evidence of an admission or concession.

5.2    **Change of Time Periods.**   All time periods and dates described in this Settlement Agreement are subject to the Court's approval.   These time periods and dates may be changed by the Court or by the Parties' written agreement without notice to the Class.

5.3    **Real Parties in Interest.**  In executing this Settlement Agreement, the Parties warrant and represent that they, including Plaintiffs in their individual capacity and representative capacity on behalf of the Class, are the only persons having any interest in the claims asserted in this Action.  Neither these claims, nor any part of these claims, have been assigned, granted, or transferred in any way to any other person, firm, or entity.

5.4    **Voluntary Agreement.**   The Parties executed this Settlement Agreement voluntarily and without duress or undue influence.

5.5    **Binding on Successors.**  This Settlement Agreement binds and benefits the Parties' respective successors, assigns, legatees, heirs, and personal representatives.

**5.6     Parties Represented by Counsel.**  The Parties acknowledge that: (a) they have been represented by independent counsel of their own choosing during the negotiation of this Settlement and the preparation of this Settlement Agreement; (b) they have read this Settlement Agreement and are fully aware of its contents; and (c) their respective counsel fully explained to them the Settlement Agreement and its legal effect.

**5.7     Authorization.**  Each Party warrants and represents that there are no liens or claims of lien or assignments, in law or equity, against any of the claims or causes of action released by this Settlement Agreement and, further, that each Party is fully entitled and duly authorized to give this complete and final release and discharge.

**5.8     Entire Agreement.**  This Settlement Agreement and attached exhibits contain the entire agreement between the Parties and constitute the complete, final, and exclusive embodiment of their agreement with respect to the Action. This Settlement Agreement is executed without reliance on any promise, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Settlement Agreement.

**5.9     Construction and Interpretation.**  Neither the Parties nor any of the Parties' respective attorneys will be deemed the drafter of this Settlement Agreement for purposes of interpreting any provision in this Settlement Agreement in any judicial or other proceeding that may arise between them.  This Settlement Agreement has been, and must be construed to have been, drafted by all the Parties to it, so that any rule that construes ambiguities against the drafter will have no force or effect.

**5.10     Headings and Formatting of Definitions.**  The various headings used in this Settlement Agreement are solely for the Parties' convenience and may not be used to interpret this Settlement Agreement.  Similarly, bolding and italicizing of definitional words and phrases is solely for the Parties' convenience and may not be used to interpret this Settlement Agreement.  The headings and the formatting of the text in the definitions do not define, limit, extend, or describe the Parties' intent or the scope of this Settlement Agreement.

**5.11     Exhibits.**  The exhibits to this Settlement Agreement are integral parts of the Settlement Agreement and are incorporated into this Settlement Agreement as though fully set forth in the Settlement Agreement.

**5.12     Modifications and Amendments.**  No amendment, change, or modification to this Settlement Agreement will be valid unless in writing signed by the Parties or their counsel.

**5.13     Governing Law.**  This Settlement Agreement is governed by California law and must be interpreted under California law and without regard to conflict of laws principles.

**5.14     Further Assurances.**  The Parties must execute and deliver any additional papers, documents and other assurances, and must do any other acts reasonably necessary to perform their obligations under this Settlement Agreement and to carry out this Settlement Agreement's expressed intent.

**5.15     Agreement Constitutes a Complete Defense.**  To the extent permitted by law, this Settlement Agreement may be pled as a full and complete defense to, and may be used as the basis

for an injunction against, any action, suit, or other proceedings that may be instituted, prosecuted or attempted in breach of or contrary to this Settlement Agreement.

      **5.16**   **Execution Date.**  This Settlement Agreement is deemed executed on the date the Settlement Agreement is signed by all of the undersigned.

      **5.17**   **Counterparts.**  This Settlement Agreement may be executed in counterparts, each of which constitutes an original, but all of which together constitutes one and the same instrument.  Several signature pages may be collected and annexed to one or more documents to form a complete counterpart.  Photocopies or PDF copies of executed copies of this Settlement Agreement may be treated as originals.

      **5.18**   **Recitals.**  The Recitals are incorporated by this reference and are part of the Settlement Agreement.

      **5.19**   **Severability.**  If any provision of this Settlement is declared by the Court to be invalid, void, or unenforceable, the remaining provisions of this Settlement will continue in full force and effect, unless the provision declared to be invalid, void, or unenforceable is material, at which point the Parties shall attempt to renegotiate the Settlement or, if that proves unavailing, Named Plaintiffs, Provide Commerce, or EMI can terminate the Settlement Agreement without prejudice to any Party.

      **5.20**   **Inadmissibility.**   This Settlement Agreement (whether approved or not approved, revoked, or made ineffective for any reason) and any proceedings or discussions related to this Settlement Agreement are inadmissible as evidence of any liability or wrongdoing whatsoever in any Court or tribunal in any state, territory, or jurisdiction.  Further, neither this Settlement Agreement, the Settlement contemplated by it, nor any proceedings taken under it, will be construed or offered or received into evidence as an admission, concession or presumption that class certification is appropriate, except to the extent necessary to consummate this Settlement Agreement and the binding effect of the Final Order and Judgment.

      **5.21**   **No Conflict Intended.**  Any inconsistency between this Settlement Agreement and the attached exhibits will be resolved in favor of this Settlement Agreement.

      **5.22**   **List of Exhibits:**  The following exhibits are attached to this Settlement Agreement:

      Exhibit A – [Proposed] Order Granting Preliminary Approval of Class Settlement and Provisional Class Certification

      Exhibit B – Full Notice

      Exhibit C – Summary Notice

      Exhibit D – Claim Form

      Exhibit E – [Proposed] Final Order Approving Class Action Settlement and Judgment

**The Parties have agreed to the terms of this Settlement Agreement and have signed below.**

Dated:      June __, 2012            **PLAINTIFF JOSUE ROMERO**

_____
Josue Romero,
Individually and in his Representative Capacity

Dated:      June __, 2012            **PLAINTIFF GINA BAILEY**

_____
Gina Bailey,
Individually and in her Representative Capacity

Dated:      June __, 2012            **PLAINTIFF JENNIFER LAWLER**

_____
Jennifer Lawler,
Individually and in her Representative Capacity

Dated:      June /?, 2012            **PLAINTIFF JOHN WALTERS**

_____
John Walters,
Individually and in his Representative Capacity

Dated:      June __, 2012            **PLAINTIFF DANIEL COX**

_____
Daniel Cox,
Individually and in his Representative Capacity

Dated:      June __, 2012            **PLAINTIFF CHRISTOPHER DICKEY**

_____
Christopher Dickey,
Individually and in his Representative Capacity

Dated:      June __, 2012            **PLAINTIFF GRANT JENKINS**

_____
Grant Jenkins,
Individually and in his Representative Capacity

Dated:      June __, 2012            **PLAINTIFF BRADLEY BERENTSON**

_____
Bradley Berentson,
Individually and in his Representative Capacity

The Parties have agreed to the terms of this Settlement Agreement and have signed below.

Dated:   June ___, 2012        **PLAINTIFF JOSUE ROMERO**

_____
Josue Romero,
Individually and in his Representative Capacity

Dated:   June ___, 2012        **PLAINTIFF GINA BAILEY**

_____
Gina Bailey,
Individually and in her Representative Capacity

Dated:   June ___, 2012        **PLAINTIFF JENNIFER LAWLER**

_____
Jennifer Lawler,
Individually and in her Representative Capacity

Dated:   June ___, 2012        **PLAINTIFF JOHN WALTERS**

_____
John Walters,
Individually and in his Representative Capacity

Dated:   June ___, 2012        **PLAINTIFF DANIEL COX**

_____
Daniel Cox,
Individually and in his Representative Capacity

Dated:   June ⅓ 2012        **PLAINTIFF CHRISTOPHER DICKEY**

_____
Christopher Dickey,
Individually and in his Representative Capacity

Dated:   June ___, 2012        **PLAINTIFF GRANT JENKINS**

_____
Grant Jenkins,
Individually and in his Representative Capacity

Dated:   June ___, 2012        **PLAINTIFF BRADLEY BERENTSON**

_____
Bradley Berentson,
Individually and in his Representative Capacity

**The Parties have agreed to the terms of this Settlement Agreement and have signed below.**

Dated:     June ___, 2012          **PLAINTIFF JOSUE ROMERO**

                                   _____
                                   Josue Romero,
                                   Individually and in his Representative Capacity

Dated:     June _13_ 2012          **PLAINTIFF GINA BAILEY**

                                   _____
                                   Gina Bailey,
                                   Individually and in her Representative Capacity

Dated:     June ___, 2012          **PLAINTIFF JENNIFER LAWLER**

                                   _____
                                   Jennifer Lawler,
                                   Individually and in her Representative Capacity

Dated:     June ___, 2012          **PLAINTIFF JOHN WALTERS**

                                   _____
                                   John Walters,
                                   Individually and in his Representative Capacity

Dated:     June ___, 2012          **PLAINTIFF DANIEL COX**

                                   _____
                                   Daniel Cox,
                                   Individually and in his Representative Capacity

Dated:     June ___, 2012          **PLAINTIFF CHRISTOPHER DICKEY**

                                   _____
                                   Christopher Dickey,
                                   Individually and in his Representative Capacity

Dated:     June ___, 2012          **PLAINTIFF GRANT JENKINS**

                                   _____
                                   Grant Jenkins,
                                   Individually and in his Representative Capacity

Dated:     June ___, 2012          **PLAINTIFF BRADLEY BERENTSON**

                                   _____
                                   Bradley Berentson,
                                   Individually and in his Representative Capacity

The Parties have agreed to the terms of this Settlement Agreement and have signed below.

Dated:      June __, 2012                **PLAINTIFF JOSUE ROMERO**

_____
Josue Romero,
Individually and in his Representative Capacity

Dated:      June __, 2012                **PLAINTIFF GINA BAILEY**

_____
Gina Bailey,
Individually and in her Representative Capacity

Dated:      June __, 2012                **PLAINTIFF JENNIFER LAWLER**

_____
Jennifer Lawler,
Individually and in her Representative Capacity

Dated:      June __, 2012                **PLAINTIFF JOHN WALTERS**

_____
John Walters,
Individually and in his Representative Capacity

Dated:      June __, 2012                **PLAINTIFF DANIEL COX**

_____
Daniel Cox,
Individually and in his Representative Capacity

Dated:      June __, 2012                **PLAINTIFF CHRISTOPHER DICKEY**

_____
Christopher Dickey,
Individually and in his Representative Capacity

Dated:      June __, 2012                **PLAINTIFF GRANT JENKINS**

_____
Grant Jenkins,
Individually and in his Representative Capacity

Dated:      June _13_, 2012              **PLAINTIFF BRADLEY BERENTSON**

_~Bradley Berents~_____
Bradley Berentson,
Individually and in his Representative Capacity

**The Parties have agreed to the terms of this Settlement Agreement and have signed below.**

Dated:     June ___, 2012              **PLAINTIFF JOSUE ROMERO**

_____
Josue Romero,
Individually and in his Representative Capacity

Dated:     June ___, 2012              **PLAINTIFF GINA BAILEY**

_____
Gina Bailey,
Individually and in her Representative Capacity

Dated:     June ___, 2012              **PLAINTIFF JENNIFER LAWLER**

_____
Jennifer Lawler,
Individually and in her Representative Capacity

Dated:     June ___, 2012              **PLAINTIFF JOHN WALTERS**

_____
John Walters,
Individually and in his Representative Capacity

Dated:     June ___, 2012              **PLAINTIFF DANIEL COX**

_____
Daniel Cox,
Individually and in his Representative Capacity

Dated:     June ___, 2012              **PLAINTIFF CHRISTOPHER DICKEY**

_____
Christopher Dickey,
Individually and in his Representative Capacity

Dated:     June 12, 2012              **PLAINTIFF GRANT JENKINS**

_____
Grant Jenkins,
Individually and in his Representative Capacity

Dated:     June ___, 2012              **PLAINTIFF BRADLEY BERENTSON**

_____
Bradley Berentson,
Individually and in his Representative Capacity

**The Parties have agreed to the terms of this Settlement Agreement and have signed below.**

Dated:      June ___, 2012          PLAINTIFF JOSUE ROMERO

                                    _____
                                    Josue Romero,
                                    Individually and in his Representative Capacity

Dated:      June ___, 2012          PLAINTIFF GINA BAILEY

                                    _____
                                    Gina Bailey,
                                    Individually and in her Representative Capacity

Dated:      June 13, 2012           PLAINTIFF JENNIFER LAWLER

                                    _Jennifer Lawler_____
                                    Jennifer Lawler,
                                    Individually and in her Representative Capacity

Dated:      June ___, 2012          PLAINTIFF JOHN WALTERS

                                    _____
                                    John Walters,
                                    Individually and in his Representative Capacity

Dated:      June ___, 2012          PLAINTIFF DANIEL COX

                                    _____
                                    Daniel Cox,
                                    Individually and in his Representative Capacity

Dated:      June ___, 2012          PLAINTIFF CHRISTOPHER DICKEY

                                    _____
                                    Christopher Dickey,
                                    Individually and in his Representative Capacity

Dated:      June ___, 2012          PLAINTIFF GRANT JENKINS

                                    _____
                                    Grant Jenkins,
                                    Individually and in his Representative Capacity

Dated:      June ___, 2012          PLAINTIFF BRADLEY BERENTSON

                                    _____
                                    Bradley Berentson,
                                    Individually and in his Representative Capacity

The Parties have agreed to the terms of this Settlement Agreement and have signed below.

Dated:     June 12, 2012              PLAINTIFF JOSUE ROMERO

                                      _____
                                      Josue Romero,
                                      Individually and in his Representative Capacity

Dated:     June ___, 2012             PLAINTIFF GINA BAILEY

                                      _____
                                      Gina Bailey,
                                      Individually and in her Representative Capacity

Dated:     June ___, 2012             PLAINTIFF JENNIFER LAWLER

                                      _____
                                      Jennifer Lawler,
                                      Individually and in her Representative Capacity

Dated:     June ___, 2012             PLAINTIFF JOHN WALTERS

                                      _____
                                      John Walters,
                                      Individually and in his Representative Capacity

Dated:     June ___, 2012             PLAINTIFF DANIEL COX

                                      _____
                                      Daniel Cox,
                                      Individually and in his Representative Capacity

Dated:     June ___, 2012             PLAINTIFF CHRISTOPHER DICKEY

                                      _____
                                      Christopher Dickey,
                                      Individually and in his Representative Capacity

Dated:     June ___, 2012             PLAINTIFF GRANT JENKINS

                                      _____
                                      Grant Jenkins,
                                      Individually and in his Representative Capacity

Dated:     June ___, 2012             PLAINTIFF BRADLEY BERENTSON

                                      _____
                                      Bradley Berentson,
                                      Individually and in his Representative Capacity

The Parties have agreed to the terms of this Settlement Agreement and have signed below.

Dated:    June ___, 2012

PLAINTIFF JOSUE ROMERO

_____

Josue Romero,
Individually and in his Representative Capacity

Dated:    June ___, 2012

PLAINTIFF GINA BAILEY

_____

Gina Bailey,
Individually and in her Representative Capacity

Dated:    June ___, 2012

PLAINTIFF JENNIFER LAWLER

_____

Jennifer Lawler,
Individually and in her Representative Capacity

Dated:    June ___, 2012

PLAINTIFF JOHN WALTERS

_____

John Walters,
Individually and in his Representative Capacity

Dated:    June /2, 2012

PLAINTIFF DANIEL COX

_____

Daniel Cox,
Individually and in his Representative Capacity

Dated:    June ___, 2012

PLAINTIFF CHRISTOPHER DICKEY

_____

Christopher Dickey,
Individually and in his Representative Capacity

Dated:    June ___, 2012

PLAINTIFF GRANT JENKINS

_____

Grant Jenkins,
Individually and in his Representative Capacity

Dated:    June ___, 2012

PLAINTIFF BRADLEY BERENTSON

_____

Bradley Berentson,
Individually and in his Representative Capacity

18 of 19

Dated:     June 13, 2012              **DEFENDANT PROVIDE COMMERCE, INC.**

By:   BLAKE  T.  BILSTAD

Title:   SVP, General Counsel & Secretary

On behalf of Provide Commerce, Inc.

Dated:     June ___, 2012              **DEFENDANT REGENT GROUP, INC.**

By:

Title:

On behalf of Regent Group, Inc.

19 of 19

Dated:     June __, 2012                    **DEFENDANT PROVIDE COMMERCE, INC.**

 

 

_____

By:_____

Title:_____

On behalf of Provide Commerce, Inc.

Dated:     June 13, 2012                    **DEFENDANT REGENT GROUP, INC.**

_____

By:_____ Barry N Natter _____

Title:_____ General Counsel _____

On behalf of Regent Group, Inc.

# EXHIBIT A

### [PROPOSED] ORDER GRANTING PRELIMINARY
### APPROVAL OF CLASS SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
UNITED STATES DISTRICT COURT
10
SOUTHERN DISTRICT OF CALIFORNIA
11
12  | IN RE: EASYSAVER REWARDS | Case No.  09-CV-2094-AJB (WVG)
LITIGATION
13  | **[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION**
14
15
16  | Courtroom:  12
Judge:       Hon. Anthony J. Battaglia
17

18       On _____, 2012, this Court considered plaintiffs Josue Romero, Gina Bailey,

19  Jennifer Lawler, John Walters, Daniel Cox, Christopher Dickey, Grant Jenkins, and Bradley

20  Berentson's (collectively "Plaintiffs") motion for preliminary approval of class settlement and

21  provisional class certification under Rule 23 of the Federal Rules of Civil Procedure.  This Court

22  reviewed the motion, including the Settlement Agreement and Release ("Settlement Agreement").

23  Based on this review and the findings below, the Court found good cause to grant the motion.

24  **FINDINGS:**

25       **1.**      The Settlement Agreement was the product of serious, informed, non-collusive

26  negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to the

27  proposed class representatives or segments of the class, and falls within the range of possible

28  approval;

1.

2.      The Full Notice, Summary Notice, and Claim Form (attached to the Settlement Agreement) comply with due process because the notices and forms are reasonably calculated to adequately apprise class members of (i) the pending lawsuit, (ii) the proposed settlement, and (iii) their rights, including the right to either participate in the settlement, exclude themselves from the settlement, or object to the settlement;

3.      The Class is so numerous that joinder of all Class Members is impracticable;

4.      Plaintiffs' claims are typical of the Class's claims;

5.      There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members; and

6.      Class Certification is superior to other available methods for the fair and efficient adjudication of the controversy.

7.      Defendants Provide Commerce, Inc. ("Provide Commerce") and Regent Group, Inc. dba Encore Marketing International, Inc. ("RGI") (Provide Commerce and RGI collectively, "Defendants") gave notice pursuant to 28 U.S.C. § 1715(b) on [insert: date].

**IT IS ORDERED THAT:**

1.      **Settlement Approval**.  The Settlement Agreement, including the Full Notice, Summary Notice, and Claim Form, attached to the Settlement Agreement as Exhibits B-D are preliminarily approved.

2.      **Provision of Class Notice**.  Defendants will notify Class Members of the settlement in the manner specified under Section 3.3 of the Settlement Agreement with all costs associated with claims administration and providing notice to Class Members being paid from the Gross Cash Fund pursuant to Section 2.1(a) of the Settlement Agreement.

3.      **Claim for Settlement Payment**.  Class Members who are eligible and want to receive a Settlement Payment under Section 2.1(d) of the Settlement Agreement must accurately completely and deliver a Claim Form to the Claims Administrator no later than one-hundred-and-thirty-five (135) calendar days after entry of this Preliminary Approval Order.

4.      **Objection to Settlement**.  Class Members who have not submitted a timely written exclusion request pursuant to paragraph 6 below and who want to object to the Settlement

2.

Agreement must deliver a written objection to Class Counsel and Provide Commerce's Counsel, and RGI's Counsel, and must file such objection with the Court, no later than one hundred and thirty-five (135) calendar days from when the Court enters this Preliminary Approval Order.  The delivery date is deemed to be the date the objection is deposited in the U.S. Mail as evidenced by the postmark.  The objection must include: (1) a heading containing the name and case number of the Action: *In re EasySaver Rewards Litigation*, Case No. 3:09-cv-02094-AJB (WVG); (2) the Class Member's name, email address, postal address, and telephone number; (3) a detailed statement of each objection and the factual and legal basis for each objection, and the relief that the Class Member is requesting; (4) a list of and copies of all documents or other exhibits which the Class Member may seek to use at the Fairness Hearing; and (5) a statement of whether the Class Member intends to appear, either in person or through counsel, at the Fairness Hearing. The objection will not be valid if it only objects to the lawsuit's appropriateness or merits.

**5.      Failure to Object to Settlement.**  Class Members who fail to object to the Settlement Agreement in the manner specified above will: (1) be deemed to have waived their right to object to the Settlement Agreement; (2) be foreclosed from objecting (whether by a subsequent objection, intervention, appeal, or any other process) to the Settlement Agreement; and (3) not be entitled to speak at the Fairness Hearing.

**6.      Requesting Exclusion**.  Class Members who want to be excluded from the settlement must send a letter or postcard to the Claims Administrator postmarked no later than one hundred and thirty-five (135) calendar days from when the Court enters this Order stating: (a) the name of the Action, "*In re EasySaver Rewards Litigation*"; (b) the full name, address, and telephone number of the person requesting exclusion; and (c) a statement that he/she does not wish to participate in the Settlement.

**7.      Provisional Certification**.  The Class is provisionally certified as a class of all persons who, between August 19, 2005 and the date of entry of the preliminary approval order, placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled by Regent Group Inc. dba Encore Marketing International, Inc. in one or more of the following membership programs: EasySaver Rewards, RedEnvelope Rewards, or Preferred

3.

Buyers Pass.  Excluded from the Class are (a) Provide Commerce and RGI, (b) any entities in which Provide Commerce or RGI have a controlling interest or which have a controlling interest in Provide Commerce or RGI, (c) the officers, directors, employees, subsidiaries, affiliates, and attorneys of Provide Commerce or RGI, and (d) the Judges presiding over the Lawsuit and any of their employees or immediate family members.

**8.      Appointment of Class Representative and Class Counsel**.  Plaintiffs are each conditionally certified as Class Representatives to implement the Parties' proposed Settlement in accordance with the Settlement Agreement.   The law firms of Patterson Law Group, APC (through attorney James R. Patterson), Baron & Budd, P.C. (through attorney Bruce W. Steckler), Andrus Anderson LLP (through attorney Jennie Lee Anderson), and Cohelan Khoury & Singer (through attorney Michael D. Singer) are appointed as Class Counsel.  Plaintiffs and Class Counsel must fairly and adequately protect the Class's interests.

**9.      Termination**.  If the Settlement Agreement terminates by its terms for any reason, including, but not limited to, if Court does not approve the Settlement or enter the Final Order and Judgment, if the Final Settlement Date under the Settlement Agreement does not occur for any reason, or the total amount of $12.5 million is not contributed to the Gross Cash Fund from Defendants collectively, the following will occur: (a) this Order will be vacated; (b) class certification will automatically be vacated, and therefore Plaintiffs will stop functioning as class representatives and Class Counsel will revert to their prior status as interim class counsel; and (c) this Action will revert to its previous status in all respects as it existed immediately before the Parties executed the Settlement Agreement, including no class certification and Defendants shall retain all their rights to proceed with their pending motions to dismiss.  This Order will not waive or otherwise impact the Parties' rights or arguments.

**10.     No Admissions.**  Nothing in this Order is, or may be construed as, an admission or concession on any point of fact or law by or against any Party.

**11.     Stay of Dates and Deadlines.**   All discovery and pretrial proceedings and deadlines, are stayed and suspended until further notice from the Court, except for such actions as are necessary to implement the Settlement Agreement and this Order.

4.

1      **12.**    **CAFA Notice.**  Defendants have complied with 28 U.S.C. § 1715(b).

2      **13.**    **Fairness Hearing**.  On _____2012, at _____ [one hundred seventy-one (171) and one hundred eighty-five (185) calendar days after entry of the preliminary approval order, subject to the Court's availability], this Court will hold a Fairness Hearing to determine whether the Settlement Agreement should be finally approved as fair, reasonable, and adequate. All papers supporting Plaintiffs' request for attorneys' fees and costs must be filed no later than fourteen (14) calendar days before the deadline for Class Members to object to the settlement. All other papers supporting Final Approval of the Settlement Agreement must be filed no later than seven (7) calendar days before the Fairness Hearing.  This Court may order the Fairness Hearing to be postponed, adjourned, or continued.  If that occurs, Defendants will not be required to provide additional notice to class members.

DATED:_____      _____

                         Hon. Anthony J. Battaglia
                         U.S. DISTRICT COURT JUDGE

5.

# EXHIBIT B

**FULL NOTICE**

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**
*In re EasySaver Rewards Litigation*
**Case No. 3:09-cv-02094-AJB (WVG)**
**United States District Court for the Southern District of California**

You are receiving this notice to inform you of a proposed settlement of a class action lawsuit entitled *In re EasySaver Rewards Litigation*, Case No. 3:09-cv-02094-AJB (WVG), pending in the United States District Court for the Southern District of California (the "Action").

> **The proposed settlement ("Settlement") is on behalf of a nationwide class of persons (the "Class") defined as: All persons who, between August 19, 2005 and [insert: date of entry of the preliminary approval order], placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled by Regent Group Inc. dba Encore Marketing International, Inc. in one or more of the following membership programs: EasySaver Rewards, RedEnvelope Rewards, or Preferred Buyers Pass (the "Membership Programs")**.

The Provide Commerce, Inc. websites include ProFlowers.com, RedEnvelope.com, CherryMoonFarms.com, SecretSpoon.com, (formerly operated), and Berries.com (also known as Shari's Berries) (collectively the "Provide Commerce Websites"). Excluded from the Class are (a) Defendants Provide Commerce, Inc. ("Provide Commerce") and Regent Group, Inc. dba Encore Marketing International, ("EMI") (collectively the "Defendants"), (b) any entities in which Provide Commerce or EMI have a controlling interest or which have a controlling interest in Provide Commerce or EMI, (c) the officers, directors, employees, subsidiaries, affiliates, and attorneys of Provide Commerce or EMI, and (d) the Judges presiding over the Action and any of their employees or  immediate family members.  **The Settlement will resolve the Action in which it was alleged, among other things, that persons were enrolled in one or more of the Membership Programs and charged membership fees without their knowledge or consent and did not receive an appropriate confirmation of their enrollment.**

The proposed Settlement will provide a combination of benefits to the Class as described more fully below.  Certain benefits will be provided to the Class without any further action required by Class Members.  Other benefits are available only to certain eligible Class Members through the claims process described below.

**The Court has granted preliminary approval of the Settlement, and a hearing on the fairness of the proposed Settlement has been set for _____, 2012 at _____ before the Honorable Anthony J. Battaglia in Courtroom 12 of the U.S. District Court for the Southern District of California, 940 Front Street, San Diego, California 92101-8900.**  At that time, the Court will determine whether the Settlement is fair, reasonable, and adequate, and will also consider the request of Class Counsel for attorneys' fees and costs and enhancement awards for the class representatives and any objections.  This Notice explains the nature of the Action and provides a summary of the proposed Settlement, your rights, obligations, and options under the proposed Settlement, all of which are further explained below.  **You should read this notice carefully because it will affect your legal rights and obligations regardless of whether you take any action.**

### SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS

**1.   What is this Notice and why should I read it?**

This Notice is to inform you of a proposed Settlement of a class action lawsuit entitled *In re EasySaver Rewards Litigation*, Case No. 3:09-cv-02094-AJB (WVG), which is referred to in this Notice as the "Action." This Notice provides a summary of the proposed Settlement and the benefits available to Class Members.  This Notice also provides Class Members with an explanation of their rights, obligations, and options under the proposed Settlement and the deadlines within which to exercise them.

**2.   What is a class action lawsuit and what is this Action about?**

A class action lawsuit is a legal action in which one or more people seek to represent a large group of people called the "class."  The purpose of a class action lawsuit is to resolve at one time all of the similar legal claims of the members of the group.  Here, the Named Plaintiffs in the Action alleged that they and other persons were enrolled in one or more of the Membership Programs and  charged membership fees without their knowledge or consent after placing an order for merchandise with a Provide Commerce Website and did not receive an appropriate confirmation of their enrollment.  The Named Plaintiffs have asserted various legal claims, including claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, unjust enrichment, invasion of privacy – intrusion into private matters, negligence, and for alleged violations of California's Consumers Legal Remedies Act, California's Unfair Competition Law and the federal Electronic Funds Transfer Act.  Defendants deny any wrongdoing or liability whatsoever, and no court or other entity has made any judgment or other determination of liability or the merits of the Named Plaintiffs' allegations.

**3.   Why is there a Proposed Settlement?**

The Court has not decided in favor of either side in the case.  The Named Plaintiffs believe their claims have merit.  Defendants deny all allegations of wrongdoing or liability against them whatsoever and further contend that their conduct was lawful at all times.  Defendants are settling to avoid the expense, inconvenience, and inherent risk of litigation, as well as the interferences with and disruption to ongoing business operations that are associated with litigation.  Plaintiffs and their attorneys believe that the proposed Settlement is in the best interest of the Class because it provides an appropriate recovery for Class Members now while avoiding the risk, expense, and delay of pursuing the case through trial and any appeals.

The proposed Settlement was reached after several months of negotiations, including several mediation sessions before impartial mediators and the Magistrate Judge of the United States District Court assigned to the case.

**4.   Who is included in the proposed Settlement?**

By Order dated _____, 2012, the Court provisionally certified this case as a class action for purposes of effectuating the proposed Settlement with the Class defined as:  All persons who, between August 19, 2005 and [insert: date of entry of the preliminary approval order], placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled by Regent Group Inc. dba Encore Marketing International, Inc. in one or more of the following membership programs: EasySaver Rewards, RedEnvelope Rewards, or Preferred Buyers Pass.  Excluded from the Class are (a) Provide Commerce and RGI, (b) any entities in which Provide Commerce or RGI have a controlling interest or which have a controlling interest in Provide Commerce or RGI, (c) the officers, directors, employees, subsidiaries, affiliates, and attorneys of Provide Commerce or RGI, and (d) the Judges presiding over the Lawsuit and any of their employees or immediate family members.

**5.   What benefits does the proposed Settlement provide and what are my options?**

The Settlement provides a combination of benefits to Class Members.  As part of the proposed Settlement, all Class Members will automatically be sent by email one fully transferable $20 credit valid only for a future on-line purchase of merchandise at ProFlowers.com, RedEnvelope.com, Berries.com, and CherryMoonFarms.com ("$20 Credit").  Defendants will also collectively pay a total of $12.5 Million ("Gross Cash Fund") to be used to pay any and all fees and costs, including, but not limited to, all claims administration fees and costs, court-approved Class Counsel's fees and costs award, and court-approved Named Plaintiffs' enhancement awards for serving as class representatives as further described below.  The remaining balance ("Net Cash Fund") shall be distributed to eligible Class Members that submit valid claims as further described below.

If the Settlement is approved by the Court, you will automatically be sent by email the $20 Credit.  No further action is required on your part to obtain this benefit, unless you received a notice on a postcard by U.S. Mail, in which case you must provide a valid email address to the Claims Administrator to be sent the $20 Credit

by email.  The $20 Credit will not be sent until after the Court approves the proposed Settlement, the timing of which is more fully described in the Settlement Agreement.  The $20 Credit is subject to the following terms: (i) expires one year after distribution date; (ii) not valid for order or delivery of products on December 17 to 24, 2012, February 4 to 14, 2013, May 1 to 12, 2013, and December 16 to 24, 2013 (and corresponding time periods in 2014 through the expiration date should the $20 Credit not be distributed until 2013); (iii) one $20 Credit per Class Member; (iv) not redeemable for cash and not refundable; (v) will not be replaced if lost or stolen; (vi) not valid for Same Day, International or Wedding Services (including, not valid on www.floristexpress.net,         www.floristexpressonline.net,         www.fruitbaskettoday.com,         and ProFlowersInternational.com), third party hosted products (*e.g.* wine), or for the purchase of Giftcards; (vii) not combinable with discount or gift codes, cannot be used with hyperlink or URL based offers (including certain email offers or third party promotions) or previous purchases, but does apply to markdown, bundled, and discounted products; and (viii) must be used in a single transaction (no change, credit, or cash given and any balance not used is lost).

If the Settlement is approved by the Court, the Gross Cash Fund will pay for, in order (i) all fees and costs incurred by the Claims Administrator for the administration of the Settlement, including, but not limited to, preparing, issuing, distributing, emailing, and monitoring all necessary notices and forms, declarations, filings, and related documents, including developing, maintaining, and operating an Internet website specifically created for the Settlement of this action, communicating with and responding to Class Members, computing Settlement Payments from the Net Cash Fund to Class Members that have made claims, establishing or maintaining an account for the Gross Cash Fund, and distributing payments out of the Gross Cash Fund or Net Cash Fund, (ii) Named Plaintiffs' enhancement awards of up to $15,000 each for plaintiffs Romero and Bailey, up to $10,000.00 each to plaintiffs Berentson, Jenkins, Cox, and Lawler, and up to $5,000.00 each to plaintiffs Walters and Dickey, and (iii) Class Counsel's Attorneys' fees and costs Award of up to, and not more than, $8.65 million in fees and $200,000 in costs.  After any and all fees and costs are paid out of the Gross Cash Fund, the Net Cash Fund will be distributed to eligible Class Members that submit valid claims on a pro rata basis up to the full amounts charged for monthly membership fees less any full or partial refund previously received.

Class Members may be eligible for a payment from the Net Cash Fund.  To be eligible for this potential additional benefit, a Class Member must submit a Claim Form signed under penalty of perjury stating, among other things, that at the time they were enrolled they did not knowingly authorize their enrollment in the Membership Program(s) for which they were charged and did not use any of the benefits of the Membership Program(s) other than the dollar-off-code for a future Provide Commerce website purchase.  The amount to be received by eligible Class Members will depend upon the number of claims submitted and the amount of fees paid for Membership Program(s) less any full or partial refund previously received.  Only individuals who were actually enrolled in a Membership Program and were charged the activation fee and at least one monthly membership fee are eligible to participate in this claims process.  Some members enrolled and later cancelled their memberships and received full or partial refunds of their monthly membership fees.  Other members received a full or partial refund through a chargeback, which is a bank-initiated reversal or return of charges or transfers of funds from the individual's credit card or bank account.  No member will be entitled to receive a payment to the extent he/she already received a refund or chargeback of the monthly membership fees he/she paid.  Also, some members enrolled but were not charged a monthly membership fee at all.  This could have occurred for a variety of reasons, including that their credit or debit card was not accepted for a charge of the membership fee or that the member himself or herself cancelled the membership prior to being billed for the monthly membership fee.  Individuals who were never charged a monthly membership fee will not be entitled to any additional benefits other than the $20 Credit referenced above.  Class Members who used or requested a benefit, directory, or other service provided through any of the Membership Programs other than the dollar-off-code for a future Provide Commerce website purchase (including, but not limited to, cash back on gift cards, travel and/or leisure discounts, discounted movie or theme park tickets or free concierge services) are not eligible to participate in this claims process.  Depending upon the number of claims and the type of claims received, the Settlement fund may be sufficient to satisfy the full amount of all claims.  If the claims submitted exceed in dollar amount the amount of the Net Cash Fund, Claimants will receive pro-rated payments on their claims.  To the extent the claims submitted do not exceed in dollar amount the amount of the Net Cash Fund or any payments mailed are returned as undeliverable, any unclaimed portion of the Net Cash Fund will be paid on an equal basis to the following non-profit college or university academic institutions located in San Diego County, California, with the payments specified to be used for a chair, professorship, fellowship, lectureship,

seminar series or similar funding, gift, or donation program developed and coordinated between Provide Commerce and the respective institutions (depending on the amount of the remainder) regarding internet privacy or internet data security: California State University at San Diego (San Diego State University), University of California at San Diego, and University of San Diego School of Law.

Enrollment in a Membership Program, eligibility, the amount of fees paid and not previously refunded, and all other information provided in the Claim Form will be subject to verification through EMI's records by the Claims Administrator, and those records will have a rebuttable presumption of accuracy.  Defendants are also entitled, at their option, to review submitted Claim Forms.  You may submit a Claim Form by mail or electronically by going to the homepage at www._____.com and following the instructions provided on the website.   You can also obtain a Claim Form by writing to the Claims Administrator at: _____.  **Your Claim Form must be completed and submitted by _____ to be eligible for this additional potential benefit.**  The submission date is deemed to be the date (a) the Claim Form is deposited in the U.S. Mail as evidenced by the postmark, in the case of submission by U.S. mail, or by date of delivery if sent by FedEx, UPS, or comparable courier, or (b) in the case of submission electronically through the Settlement website, the date the Claims Administrator receives the Claim Form as evidenced by the transmission receipt.

**6.   Who represents the proposed Settlement Class?**

The Court has approved the appointment of the following lawyers and law firms ("Class Counsel") as counsel for the Class Members:

| | |
|---|---|
| James R. Patterson | Bruce W. Steckler |
| PATTERSON LAW GROUP, APC | BARON & BUDD PC |
| 402 West Broadway, 29th Floor | 3102 Oak Lawn Avenue, Suite 1100 |
| San Diego, California 92101 | Dallas, Texas 75219 |
| | |
| Michael D. Singer | Jennie Lee Anderson |
| COHELAN KHOURY & SINGER | ANDRUS ANDERSON LLP |
| 605 C Street, Suite 200 | 155 Montgomery Street, Suite 900 |
| San Diego, California 92101 | San Francisco, California 94104 |

From the beginning of the case in 2009 to the present, Class Counsel has not received any payment for their services in prosecuting this case or in obtaining this proposed Settlement, nor have they been reimbursed for any out-of-pocket expenses they have incurred.  Class Counsel will apply to the Court for an award of attorneys' fees and costs in a total amount of up to, and not more than, $8.65 million in fees and $200,000 in costs to be paid from the Settlement Fund.  Defendants have agreed not to oppose Class Counsel's application for an award of attorneys' fees and costs of up to this amount amounts.  If the Court approves Class Counsel's motion or application for fees and costs, it will be paid from the Settlement Fund.  Class Members will not have to pay anything toward the fees or costs of Class Counsel.  You do not need to hire your own lawyer because Class Counsel is working on your behalf and will seek final approval of the Settlement on behalf of the Class Members.  You may hire your own lawyer to represent you in this case if you wish, but it will be at your own expense.

**7.   How can I exclude myself from the Settlement Class?**

Any Class Member has the right to be excluded from the Class by written request.  If you wish to be excluded from the Class you must send a letter or postcard to the Claims Administrator stating: (a) the name of the Action, "*In re EasySaver Rewards Litigation*"; (b) your full name, address, and telephone number; and (c) a statement that you do not wish to participate in the Settlement.  **A Class Member's exclusion request must be must be postmarked no later than _____, 2012 and sent to the Claims Administrator at the following address: _____.**

A request for exclusion that does not include all of the above information, that is sent to an address other than the one listed above or that is not timely postmarked will not be valid and the person requesting exclusion will be considered a member of the Class and be bound by the Settlement as a Class Member.

If you properly and timely request to exclude yourself from the Class, you will not have any rights as a member of the Class pursuant to the proposed Settlement, will not receive any of the proposed Settlement's benefits described in this Notice, will not be bound by any further orders or the judgment entered in the Action, and will remain able to pursue any claims alleged in the Action against Defendants on your own and at your own expense and with your own counsel. If you proceed on an individual basis after excluding yourself from the Class you may receive more, or less, of a benefit than you would otherwise receive under this proposed Settlement, or no benefit at all.

### 8.  How can I object to the Settlement?

If you do not exclude yourself from the Class, you can comment in opposition to the Settlement, which is known as an objection, and you have the right to appear before the Court to express your opposition. **Your written objection in opposition to the Settlement must be submitted in writing and filed with the Court by _____, 2012.**  The address for the Clerk of the Court is as follows:  Office of the Clerk, U.S. District Court for the Southern District of California, 880 Front Street, Suite 4290, San Diego, California 92101-8900. You must also send copies of your written objection in opposition to the Settlement to the attorneys for the parties at the following addresses:

> **Class Counsel:**
> James R. Patterson
> PATTERSON LAW GROUP, APC
> 402 West Broadway, 29th Floor
> San Diego, California 92101
>
> **Counsel for Provide Commerce, Inc.:**
> Michael G. Rhodes
> Leo P. Norton
> Michelle C. Doolin
> COOLEY LLP
> 4401 Eastgate Mall
> San Diego, California 92121-9109
>
> **Counsel for EMI:**
> Myron M. Cherry
> Jacie C. Zolna
> MYRON M. CHERRY & ASSOCIATES, LLC
> 30 North LaSalle Street, Suite 2300
> Chicago, Illinois 60602

To be valid and considered by the Court, any such written objection must include the following information: (1) a heading referring to *In re EasySaver Rewards Litigation*, Case No. 3:09-cv-02094-AJB (WVG); (2) your name, email address, postal address, and telephone number; (3) a detailed statement of each objection you are making and the factual and legal basis for each objection, and the relief that you are requesting; (4) a list of and copies of all documents or other exhibits which you may seek to use at the final approval hearing; and (5) a statement of whether you intend to appear, either in person or through counsel, at the final approval hearing.  You may, but need not, file and serve your objection through counsel of your choice, and you may appear at the Fairness Hearing either in person or through personal counsel hired at your expense.  If you do make your objection or appearance at the Fairness Hearing through an attorney, you will be responsible for your personal attorney's fees and costs.  Also, if you intend to appear at the Fairness Hearing through personal counsel hired at your expense, you must identify the counsel's name, postal address, phone number, email address, and the state bar(s) to which the counsel is admitted in your written objection.  Any Points and Authorities submitted in support of your written objection must contain any and all legal authority upon which you will rely.

If you do not submit a written objection to the proposed Settlement or the motion or application of Class Counsel for Named Plaintiffs' enhancement awards and Class Counsel's attorneys' fees and costs in accordance with the deadline and procedure set forth above, you will waive your right to be heard at the Fairness Hearing.

If you do not object as described above and you do not exclude yourself from the Class, you will be deemed to have consented to the Court's certification of and jurisdiction over the Class, and to have released the claims at issue against Defendants as explained below and will otherwise be bound by the proposed Settlement.

**9.   When and where is the Fairness Hearing?**

**The Fairness Hearing has been set for _____, 2012 at _____ before the Honorable Anthony J. Battaglia in Courtroom 12 of the U.S. District Court for the Southern District of California, 940 Front Street, San Diego, California 92101-8900.**  The Court will hear any comments from the parties or objections concerning the fairness of the proposed Settlement at the Fairness Hearing, including the amount requested by Class Counsel for Named Plaintiffs' enhancement awards and Class Counsel's attorneys' fees and costs.

You **do not** need to attend the Fairness Hearing to remain a Class Member or to obtain any benefits under the proposed Settlement.  You or your own personal attorney may attend the hearing if you wish, at your own expense.  You do not need to attend this hearing to have a properly filed and served written objection as described in Paragraph 8 to be considered by the Court.

**10. What is the effect of final Settlement approval?**

If the Court approves the proposed Settlement after the Fairness Hearing, it will enter a judgment dismissing the Action with prejudice and releasing all related legal claims against the Defendants and parties related to them (the "Released Parties") based on the allegations in the Action.  This means that Class Members will be forever barred from bringing, continuing, or being part of any other lawsuit based on their enrollment or membership in any of the Membership Programs, any charges incurred for the Membership Programs or any of the allegations in the Action.  If you do not exclude yourself from the Class, the proposed Settlement will be your sole mechanism for obtaining any relief and you will be barred from suing Provide Commerce or EMI in an effort to obtain additional payments or relief.  If you are a Class Member and do not want to be barred from bringing, continuing, or being part of such a lawsuit, you must exclude yourself from the Class and the proposed Settlement through the procedures outlined above in Paragraph 7.

The Named Plaintiffs and all Class Members who do not validly and timely request to be excluded from the proposed Settlement, and each of their successors, assigns, legatees, heirs, and personal representatives, release and forever discharge defendants Provide Commerce, Inc. and Regent Group, Inc., and each of their respective direct or indirect parents, wholly or majority owned subsidiaries, affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of their present and former directors, officers, employees, shareholders, agents, representatives, attorneys, accountants, insurers, and all persons acting by, through, under or in concert with them, or any of them, from all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, which they have or may have arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Action including, but not limited to, (i) the marketing, advertising, enrollment, registration, disclosure of membership billing terms, handling of personal or financial information, or sharing of contact and payment information as they relate to the Membership Programs, (ii) the past or continued billing, debiting, or charging of fees associated with the Membership Programs, (iii) the adequacy or inadequacy of any notification of enrollment or copy of authorization to debit accounts for any fees associated with any of the Membership Programs (or any alleged failure to provide a copy of such authorization), (iv) the billing cycle, time period, or frequency of the charges for the Membership Programs, and (v) any and all claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, violations of the California Consumers Legal Remedies Act,

unjust enrichment, violations of the Electronic Funds Transfer Act, invasion of privacy – intrusion into private matters, negligence, or violations of California's Unfair Competition Law (the "Released Claims").

With respect to the Released Claims, the Named Plaintiffs and all Class Members who do not validly and timely request to be excluded from the proposed Settlement, and each of their respective successors, assigns, legatees, heirs, and personal representatives, expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

The Named Plaintiffs and all Class Members fully understand that the facts on which the Settlement Agreement is executed may be different from the facts believed by the Named Plaintiffs and Class Members to be true and expressly accept and assume the risk of this possible difference in facts and agree the Settlement Agreement remains effective despite any difference in facts.  Further, the Named Plaintiffs and Class Members agree that this waiver is an essential and material term of this release and the Settlement Agreement that underlies it and that without such waiver the Settlement Agreement would not have been accepted or agreed to.

**If the proposed Settlement is not approved, the case will proceed as if no settlement had been attempted or reached.  There can be no assurance that if the Settlement is not approved and the case resumes that Class Members will recover more than what is provided for under the Settlement, or will recover anything at all.**

**11.  Where can I get more information about the proposed Settlement?**

This Notice provides only a summary of the matters relating to the Settlement.  More detailed information is provided in the Settlement Agreement.  You can view the Settlement Agreement and obtain more information about the Settlement at www._____.com.  In order to see the complete case file, including the Settlement Agreement and all other pleadings and papers filed in the Action, you should visit the website of the Administrative Office of the U.S. Courts, PACER Service Center, located at http://pacer.psc.uscourts.gov/.  You may also visit or call the Clerk's office at the Edward J. Schwartz U.S. Courthouse located at 940 Front Street, San Diego, California 92101-8900, (619) 557-5600.  The Clerk will tell you how to obtain the file for inspection and copying at your own expense, but will not address any questions about the proposed Settlement or the Action.

**PLEASE DO <u>NOT</u> CONTACT THE COURT (INCLUDING THE CLERK OF THE COURT OR THE JUDGE), PROVIDE COMMERCE, INC. OR THE MEMBERSHIP PROGRAM PROVIDER (REGENT GROUP, INC.) WITH QUESTIONS ABOUT THE SETTLEMENT, ANY OF THE BENEFITS PROVIDED UNDER THE SETTLEMENT, OR THE ACTION**

**PLEASE ADDRESS ANY FURTHER CONTACT TO THE CLAIMS ADMINISTRATOR AT**

*In re EasySaver Rewards Litigation* Claims Administrator
[MAILING ADDRESS]
[CITY], [STATE] [ZIP CODE]
EMAIL: [EMAIL ADDRESS]


Dated: _____, 2012          By: Order of the United States District Court for the Southern
                                            District of California
                                            HONORABLE ANTHONY J. BATTAGLIA
                                            UNITED STATES DISTRICT COURT JUDGE

# EXHIBIT C

## SUMMARY NOTICE

**IF YOU PLACED AN ORDER FOR MERCHANDISE ON A WEBSITE OPERATED BY PROVIDE COMMERCE, INC., BETWEEN AUGUST 19, 2005 AND [INSERT: DATE OF ENTRY OF THE PRELIMINARY APPROVAL ORDER] AND WERE SUBSEQUENTLY ENROLLED IN ONE OR MORE OF THE FOLLOWING MEMBERSHIP PROGRAMS: EASYSAVER REWARDS, RED ENVELOPE REWARDS OR PREFERRED BUYERS PASS, YOU MIGHT BE A CLASS MEMBER IN A LAWSUIT TITLED *IN RE EASYSAVER REWARDS LITIGATION,* PENDING IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, CASE NO. 3:09-CV-02094-AJB (WVG).  A PROPOSED SETTLEMENT OF THIS NATIONWIDE CLASS ACTION HAS BEEN REACHED.  IF YOU ARE A CLASS MEMBER, THE PROPOSED SETTLEMENT WILL AFFECT YOUR LEGAL RIGHTS AND OBLIGATIONS.**

**The Court has granted preliminary approval of the Settlement and set a hearing on the fairness of the proposed Settlement for _____, 2012 at _____ before the Honorable Anthony J. Battaglia in Courtroom 12 of the U.S. District Court for the Southern District of California, 940 Front Street, San Diego, California 92101-8900.**  At that time, the Court will determine whether the Settlement is fair, reasonable and adequate, and will also consider the request of Class Counsel for attorneys' fees and costs and an enhancement award for the class representatives and any objections.  As part of the proposed Settlement, all Class Members will automatically be sent by email one transferable $20 Credit valid only for on-line purchases of merchandise at certain Provide Commerce, Inc. websites (with certain other limitations described in the Full Notice).  No further action is required by Class Members to obtain this $20 Credit.  Class Members may also be eligible for an additional monetary benefit.  To be eligible for this potential additional benefit, a Class Member must meet certain eligibility requirements and submit a Claim Form signed under penalty of perjury stating, among other things, that they did not knowingly authorize their enrollment in the membership program in which they were enrolled and did not use any of the benefits of the program other than the dollar-off-code for a future Provide Commerce website purchase.  More detailed information about the nature of and eligibility for this potential additional benefit is set forth in the Full Notice.  You can view and download the Full Notice of the proposed Settlement Agreement, a copy of the Claim Form, and obtain other information at the Claims Administrator's website: www._____.com.  You may also request a copy of the Full Notice and a Claim Form from the Claims Administrator by mail:

*In re EasySaver Rewards Litigation* Claims Administrator
[MAILING ADDRESS]
[CITY], [STATE] [ZIP CODE]

You have until **[one hundred thirty-five (135) days after entry of the Preliminary Approval Order]** to exclude yourself from the Class or to object to the Settlement, as well as to submit a Claim Form.  You will be deemed part of the Class and to have released Regent Group, Inc. and Provide Commerce, Inc. from all claims as described in the Full Notice and Settlement Agreement if you do not request to be excluded from the Settlement before [one hundred thirty-five (135) days after entry of the Preliminary Approval Order].

# EXHIBIT D

### CLAIM FORM

# CLAIM FORM

*In re EasySaver Rewards Litigation*
**Case No. 3:09-cv-02094-AJB (WVG)**
**United States District Court for the Southern District of California**

**INSTRUCTIONS**:  You must fill out this claim form completely and accurately.  If you fail to provide all of the information required in this claim form, your claim may be rejected or delayed.  For purposes of this claim form, the term "Membership Programs" includes EasySaver Rewards, RedEnvelope Rewards and Preferred Buyers Pass.  **YOU MUST SUBMIT YOUR CLAIM FORM NO LATER THAN [ONE HUNDRED THIRTY-FIVE (135) DAYS AFTER ENTRY OF THE PRELIMINARY APPROVAL ORDER].**  *By submitting this claim form, you will be included as a member of the Class identified in the Full Notice, and thereby will be releasing Provide Commerce, Inc. and Regent Group, Inc. from all claims as provided in the Settlement Agreement and this claim form.  If you also submit a request for exclusion from the Class and Settlement in addition to this claim form, the request for exclusion will be deemed invalid.*

1.   <u>**Contact Information:**</u>

Please legibly print or type the following information:

_____
First Name              Last Name

_____ _____
Current Street Address

_____ _____   _____
City                          State      Zip        Phone Number

Current Email Address(es):  _____      _____

                            _____      _____

If you resided at a prior address or used a different email address at any time from August 19, 2005 to the present, and you believe your prior contact information may have been used at the time of your enrollment please list all such addresses and the approximate dates you resided there:

Address:_____        Dates of residence:  _____
        _____
        _____

Address:_____        Dates of residence:  _____
        _____
        _____

(attach additional pages if necessary)

Other Email Address(es)

                            _____      _____

                            _____      _____

(attach additional pages if necessary)

2.     <u>**Required Certifications**</u> **(THE FAILURE TO CLICK BOTH CERTIFICATIONS WILL RESULT IN DENIAL OF YOUR MONETARY CLAIM):**

Check each of the following two statements to certify that both are applicable to you, as well as true and correct:

☐   To the best of my knowledge, information and belief, I did not knowingly agree to enroll in any of the Membership Programs described in the Class Notice.

☐   I did not use a benefit, directory, or other service provided through any of the Membership Programs described in the Class Notice (including, but not limited to, cash back on gift cards, travel or leisure discounts, discounted movie or theme park tickets or free concierge services)

*Defendants Provide Commerce, Inc. and Regent Group, Inc. may verify the accuracy of your claim.*

**3.**     **Release:**

On behalf of myself and my successors, assigns, legatees, heirs, and personal representatives, I release and forever discharge defendants Provide Commerce, Inc. and Regent Group, Inc., and each of their respective direct or indirect parents, wholly or majority owned subsidiaries, affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of their present and former directors, officers, employees, shareholders, agents, representatives, attorneys, accountants, insurers, and all persons acting by, through, under or in concert with them, or any of them, from all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, which I have or may have arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Action including, but not limited to, (i) the marketing, advertising, enrollment, registration, disclosure of membership billing terms, handling of personal or financial information, or sharing of contact and payment information as they relate to the Membership Programs, (ii) the past or continued billing, debiting, or charging of fees associated with the Membership Programs, (iii) the adequacy or inadequacy of any notification of enrollment or copy of authorization to debit accounts for any fees associated with any of the Membership Programs (or any alleged failure to provide a copy of such authorization), (iv) the billing cycle, time period, or frequency of the charges for the Membership Programs, and (v) any and all claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, violations of the California Consumers Legal Remedies Act, unjust enrichment, violations of the Electronic Funds Transfer Act, invasion of privacy – intrusion into private matters, negligence, or violations of California's Unfair Competition Law (the "Released Claims").

With respect to the released claims, on behalf of myself and my successors, assigns, legatees, heirs, and personal representatives, I expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

**4.**     **Required Declaration:**

**I agree that by submitting this claim form I hereby declare and state under the penalty of perjury of the laws of the United States of America that all of the forgoing is true and correct to the best of my knowledge. Entering my name and email address in the fields below and clicking "Submit" below constitutes my electronic signature on the date of its submission and my acknowledgment that I am intentionally submitting a claim in accordance with the foregoing terms and those terms specified in the Full Notice and Settlement Agreement.**

**Name: _____        Email: _____**

IF SUBMITTED BY U.S. MAIL:

**I hereby declare and state under penalty of perjury under the laws of the United States of America that that all of the forgoing is true and correct to the best of my knowledge.  My signature below constitutes my acknowledgment that I am intentionally submitting a claim in accordance with the foregoing terms and those terms specified in the Full Notice and Settlement Agreement.**

Dated:_____          Signature: _____

# EXHIBIT E

**[PROPOSED] FINAL ORDER APPROVING
CLASS ACTION SETTLEMENT AND JUDGMENT**

1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10          SOUTHERN DISTRICT OF CALIFORNIA
11

12  IN RE: EASYSAVER REWARDS              Case No.  09-CV-2094-AJB (WVG)
    LITIGATION
13                                        **[PROPOSED] FINAL ORDER**
                                          **APPROVING CLASS ACTION**
14                                        **SETTLEMENT AND JUDGMENT**

15                                        Courtroom:  12
                                          Judge:        Hon. Anthony J. Battaglia
16

17

18       On _____, 2012, this Court heard plaintiffs Josue Romero, Gina Bailey, Jennifer
19  Lawler, John Walters, Daniel Cox, Christopher Dickey, Grant Jenkins, and Bradley Berentson's
20  (collectively "Plaintiffs") motion for final approval of the proposed class action settlement.  This
21  Court reviewed: (a) the motion and the supporting papers, including, the Settlement Agreement
22  and Release ("Settlement Agreement"); (b) any objections filed with or presented to the Court; (c)
23  the parties' responses to any objections; and (d) counsels' arguments.  Based on this review and
24  the findings below, the Court found good cause to grant the motion.
25  / / /
26  / / /
27  / / /
28

                                        1.

**FINDINGS:**

**1.** The Settlement Agreement was fair, reasonable, and adequate.

**2.** The parties adequately performed their obligations under the Settlement Agreement.

**3.** Defendants Provide Commerce, Inc. ("Provide Commerce") and Regent Group, Inc. dba Encore Marketing International, Inc. ("RGI") (Provide Commerce and RGI collectively, "Defendants") provided notice to Class Members in compliance with Section 3.3 of the Settlement Agreement, due process, and Rule 23 of the Federal Rules of Civil Procedure. The notice: (i) fully and accurately informed Class Members about the lawsuit and settlement; (ii) provided sufficient information so that Class Members were able to decide whether to accept the benefits offered, opt-out and pursue their own remedies, or object to the proposed settlement; (iii) provided procedures for Class Members to file written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed settlement; and (iv) provided the time, date and place of the final fairness hearing.

**4.** An award of $_____ in attorneys' fees and of $_____ in costs to Class Counsel is fair and reasonable in light of the nature of this case, Class Counsel's experience and efforts in prosecuting this Action, and the benefits obtained for the Class.

**5.** An enhancement award of $_____ each to plaintiffs Josue Romero and Gina Bailey, of $_____ each to plaintiffs Bradley Berentson, Grant Jenkins, Daniel Cox, and Jennifer Lawler, and of $_____ to plaintiffs John Walters and Christopher Dickey is fair and reasonable in light of: (a) Plaintiffs' respective risks (including financial, professional, and emotional) in commencing this action as the Class Representatives; (b) the time and effort spent by the respective Plaintiffs in litigating this action as the Class Representative; and (c) Plaintiffs' public interest service.

**IT IS ORDERED THAT:**

**1.** **Class**. The Class is defined as:

All persons who, between August 19, 2005 and the date of entry of

2.

the preliminary approval order, placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled by Regent Group Inc. dba Encore Marketing International, Inc. in one or more of the following membership programs: EasySaver Rewards, RedEnvelope Rewards, or Preferred Buyers Pass. Excluded from the Class are (a) Provide Commerce and RGI, (b) any entities in which Provide Commerce or RGI have a controlling interest or which have a controlling interest in Provide Commerce or RGI, (c) the officers, directors, employees, subsidiaries, affiliates, and attorneys of Provide Commerce or RGI, and (d) the Judges presiding over the Lawsuit and any of their employees or immediate family members.

2.     **Binding Effect of Order**.  This order applies to all claims or causes of action settled under the Settlement Agreement, and binds all Class Members, including those who did not properly request exclusion under paragraph 6 of the Preliminary Approval of Class Settlement and Provisional Class Certification Order.  This order does not bind persons who filed timely and valid Requests for Exclusions.  Attached as Exhibit A is a list of persons who properly requested to be excluded from the settlement.

3.     **Release**.  Plaintiffs and all Class Members who did not properly request exclusion are: (1) deemed to have released and discharged Defendants from all claims arising out of or asserted in this action and all claims released under the Settlement Agreement; and (2) barred and permanently enjoined from asserting, instituting, or prosecuting, either directly or indirectly, these claims.  The full terms of the release described in this paragraph are set forth in Sections 4.2 and 4.3 of the Settlement Agreement.

4.     **$20 Credit**.  Provide Commerce will provide one $20 Credit by email to each Class Member as set forth in Sections 2.2 and 3.13 of the Settlement Agreement no later than twenty-five (25) calendar days after the Final Settlement Date, which is defined under Section 1.11 of the Settlement Agreement.

5.     **Cash Fund**.  Defendants will pay a total of $12.5 million to establish the Gross Cash Fund to be used to pay any and all fees and costs, including, but not limited to, all claims administration fees and costs, Class Counsel's fees and costs award set forth below, and Plaintiffs' enhancement awards set forth below, with the remaining balance, defined as the Net Cash Fund under the Settlement Agreement, to be distributed to Class Members who are eligible

3.

1   for and validly and timely submit Claim Forms in the form of Settlement Payments as described
2   under Section 2.1(d) of the Settlement Agreement.

3         **6.**     **Less Than Full Funding of Cash Fund**.  If the total amount of $12.5 million is
4   not contributed to the Gross Cash Fund from Defendants collectively in accordance with the
5   agreement reached amongst themselves and their respective insurers within fourteen (14) days of
6   the docketing of this order, then the Settlement Agreement shall be null and void *ab initio* and
7   this order will be vacated as provided for under Sections 2.1(f) and 3.12 of the Settlement
8   Agreement.

9         **7.**     **Attorney's Fees and Costs**.  Class Counsel is awarded $_____
10  in fees and costs.  Defendants, through the Claims Administrator, must pay Class Counsel this
11  amount from the Gross Cash Fund according to the timeline set forth in Section 2.1(c) of the
12  Settlement Agreement.

13        **8.**     **Calculation of Attorneys' Fees**.  The Court used the _____ method to
14  calculate the attorneys' fees award.  [Using the lodestar method, the Court finds that Class
15  Counsel's hours and expenses were reasonable.  The Court has considered the appropriate factors
16  to determine that a multiplier is/is not appropriate. ] [The Court calculates a multiplier of __.__ by
17  dividing the total award ($_____) by the lodestar figure ($_____).] [The
18  Court did/did not cross-check these calculations.] [The awarded attorneys' fees reflect
19  approximately (_____)% of the settlement value, calculated by dividing the total fee
20  award ($_____) by the settlement value (_____) made available to the Class
21  as a result of the Settlement Agreement.]

22        **9.**     **Enhancement Awards**.  Plaintiffs Josue Romero and Gina Bailey are awarded
23  $_____ each as an enhancement award, plaintiffs Bradley Berentson, Grant Jenkins, Daniel
24  Cox, and Jennifer Lawler are awarded $_____ each as an enhancement award, and
25  plaintiffs John Walters and Christopher Dickey are awarded $_____ each as an
26  enhancement award.  Defendants, through the Claims Administrator, must pay Plaintiffs these
27  amounts from the Gross Cash Fund according to the timeline set forth in Section 2.1(b) of the
28  Settlement Agreement.

4.

1        **10.    Settlement Payments**.  Defendants, through the Claims Administrator, must make

2    Settlement Payments from the Net Cash Fund to Authorized Claimants according to Section

3    2.1(d) of the Settlement Agreement by mailing Settlement Payments to Authorized Claimants no

4    later than twenty-five (25) calendar days after the Final Settlement Date, which is defined under

5    Section 1.11 of the Settlement Agreement.

6        **11.    Remainder**.  Any unclaimed portion of the Net Cash Fund after mailing of

7    Settlement Payments to Authorized Claimants and after any mailed Settlements are returned to

8    the Claims Administrator as undeliverable must be paid on an equal basis to the following non-

9    profit college or university academic institutions located in San Diego County, California, with

10   the payments specified to be used for a chair, professorship, fellowship, lectureship, seminar

11   series or similar funding, gift or donation program developed and coordinated between Provide

12   Commerce and the respective institutions (depending on the amount of the remainder) regarding

13   internet privacy or internet data security: California State University at San Diego (San Diego

14   State University), University of California at San Diego, and University of San Diego School of

15   Law.  Defendants, through the Claims Administrator, must mail or wire the payments from the

16   Net Cash Fund according to the timeline set forth in Section 2.1(e) of the Settlement Agreement.

17       **12.    Dismissal of Action**.  This action, including all of the individual and class claims

18   included therein, is hereby dismissed on the merits and with prejudice.  The Clerk of the Court is

19   hereby instructed to close the file for this action.

20       **13.    Court's Jurisdiction**.  Pursuant to the parties' request, the Court will retain

21   jurisdiction over this action and the parties until final performance of the Settlement Agreement.

22

23   DATED:_____            _____

24                                           Hon. Anthony J. Battaglia
                                            UNITED STATES DISTRICT COURT JUDGE

25

26

27

28

5.

# EXHIBIT 2

# ANDRUS ⟋⟍ ANDERSON LLP

155 Montgomery Street · Suite 900, San Francisco, California 94104
T: 415.986.1400 · F: 415.986.1474 · www.andrusanderson.com

## The Firm

The law firm of Andrus Anderson LLP ("Andrus Anderson") has a diverse practice representing plaintiffs in cases involving unlawful business and employment practices, personal injury and mass tort, defective products, antitrust violations and consumer protection.  Our clients include individuals, classes and/or groups of individuals, and small businesses across the nation.

## Current Cases And Recent Successes

Andrus Anderson has a thriving practice representing individual and class plaintiffs in a variety of cases.  Andrus Anderson currently represents individuals in personal injury, product liability and employment matters, and also has considerable class action and complex litigation experience, as the partial list of recent and ongoing matters demonstrates:

a.  *Honda/Michelin PAX Tire Litigation.*  Andrus Anderson represented consumers in *Olson v. American Honda Motor Company, Inc.,* Case No. RG07341165, Alameda Superior Court; and the following federal cases consolidated into Multidistrict Litigation No. 1911, before Judge Roger Titus in the District of Maryland, where Andrus Anderson was appointed Co-Lead Class Counsel (*Williams v. American Honda Motor Co., Inc.*, Case  No.1:07-cv-05933, filed in the Northern District of Illinois; *Palmer v. American Honda Motor Co., Inc.*, Case No. CV07-1904-PHX-DGC, filed in the District of Arizona; *Longo v. American Honda Motor Co., Inc.*, Case No. 07-CIV-9399, filed in the Southern District of New York; and *Smith v. American Honda Motor Co., Inc.*, Case No .07-61524, filed in the Southern District of Florida).  The litigation involved

consumers who purchased or leased Honda and Acura vehicles equipped with the PAX® Tire and Wheel Assembly System.  Plaintiffs alleged that Honda misrepresented and failed to disclose the defective nature of the PAX Systems causing injury to plaintiffs and class members.  The firm achieved a nationwide settlement, given final approval on June 25, 2009, wherein class members were reimbursed for premature wear on their tires, received an extended warranty on PAX tires installed on their vehicles for the life of the vehicles, and additional safety features, including the opportunity to obtain a spare tire kit and enhanced emergency service.  The litigation was expanded to include owners of certain Nissan vehicles equipped with the PAX Systems and tires.

b.  *Tietsworth v. Sears Roebuck and Co., C*ase No. 09-00288-JF-PSG, pending in the Northern District of California.  Andrus Anderson is lead counsel in this class action challenging the manufacturer and seller of defective high-end washing machines.

c.  *Artis v. Deere & Co., et al.*, 10-cv-05289-WHA.  Andrus Anderson is co-lead counsel in this nationwide gender discrimination case in which plaintiffs allege that the hiring policies and practices employed by Deere & Co. and its business divisions are discriminatory and have a disparate impact on women.

d.  *In re EasySaver Rewards Litigation,* Case No. 09-cv-02094-MMA, pending in the Southern District of California.  Andrus Anderson has been appointed Interim Co-Lead Class Counsel in the case.  The firm represents consumers who were the victims of a so-called õrewardsö program, in which they were enrolled without their knowledge or consent and then subjected to monthly membership fees, though no benefits were conferred.  Plaintiffs are pursuing claims on behalf of a nationwide and California Class.

e.  *Ralston v. Mortgage Investors Group, Inc., et al.*, Case No. 08-00536 JF.  Andrus Anderson is lead counsel in this matter, representing homeowners in a lawsuit against Mortgage

Investors Group Inc. and Countrywide Home Loans Inc. for failure to comply with the disclosure requirements in violation of state law.  The lawsuits allege defendants sold certain Pay Option ARM loans, while failing to disclose, among other critical information, the true interest rate on the loan and that negative amortization was certain to occur if the borrower adhered to the payment schedule provided by the defendants.

   f.   *In re TFT-LCD (Flat Panel) Antitrust Litigation,* MDL No. 07-cv-01827 SI, pending in the United States District Court for the Northern District of California.  Andrus Anderson represents an indirect purchaser and proposed class in an antitrust case against the major manufacturers of Thin Film Transistor Liquid Crystal Display ("TFT-LCD") products alleging that defendants engaged in contract, combination or conspiracy to artificially inflate the prices of TFT-LCD products, such as flat screen televisions.

   g.   *In re Cathode Ray Tube (CRT) Antitrust Litigation,* MDL No. 1917 SC, pending in the United States District Court for the Northern District of California.  Andrus Anderson represents an indirect purchaser and proposed class in an antitrust case against the major manufacturers of CRTs and CRT products, including televisions and monitors alleging that defendants engaged in contract, combination or conspiracy to artificially inflate the prices of TFT-LCD products, such as flat screen televisions.

   h.   *In re Ortho Evra Products Liability Litigation*, MDL No. 1742, United States District Court for the Northern District of Ohio.  Andrus Anderson represented more than twenty individual clients and was actively involved in the Multi-District Litigation ("MDL") regarding the Ortho Evra birth control patch and women's health problems resulting from the use of the Ortho Evra birth control patch.  Andrus Anderson partner Lori Andrus was a member of the MDL Plaintiffs' Steering Committee.  The Ortho Evra patch, manufactured by Ortho-McNeil

and Johnson & Johnson, has been found to increase the risk of stroke and dangerous blood clots, and has been linked to strokes, heart attacks, and deaths in women.

i.   *Yaz, Yasmin and Ocella Contraceptive Cases Coordinated Proceeding (JCCP) No. 4608*, pending in Los Angeles County Superior Court.  Andrus Anderson represents dozens of clients brining claims against Bayer Corporation, among others, for their injuries resulting from the use of Yaz, Yasmin or Ocella birth control.  Andrus Anderson has been appointed to the Plaintiffsø Steering Committee in the case.

j.   Andrus Anderson was lead counsel in a case *California State University Wage and Hour Litigation.*  Andrus Anderson represented California State University-East Bay (Cal State) English as a second language (ESL) teachers in Alameda County Superior Court. The lawsuit, *Nelson et al., v. California State University, East Bay Foundation, Inc.,* was filed on March 23, 2009 (Case No. RG09442869).  In their complaint, current and former ESL teachers alleged that Cal State has not paid them for all hours worked, as required under Californiaøs labor laws. Specifically, the teachers claimed that Cal Stateøs refusal to pay for all time worked outside of the classroom (including preparation time, grading time and time spent meeting with students), violates California Wage Order 4-2001 and Californiaøs Business & Professions Code § 17200. Additionally, the lawsuit alleged breach of contract, failure to pay waiting time penalties to former teachers, and failure to maintain accurate time keeping records.  Andrus Anderson obtained back pay for their clients and negotiated major changes in the practices and policies at Cal State to ensure the ESL teachers are fairly compensated going forward.

k.   *Adams v. Inter-con Security Systems, Inc.*, Case No. C-06-5428, filed in the United States District Court for the Northern District of California.  Andrus Anderson and their co-counsel represented security guard employees in a multi-state class action seeking damages for unpaid

hours worked off the clock in violation of the Fair Labor Standards Act and several statesø labor laws.  The lawsuit resulted in a $4 million settlement for class members who were required to attend daily security briefings and orientation sessions without pay.

l.   *Simons v. Waste Management of Alameda County Inc.,* Case No. RG 0733746, filed in Alameda County Superior Court.  Andrus Anderson represented consumers in Alameda County who prepaid for and experienced interruptions in their garbage collection service during the July 2007 labor lock out.  The lawsuit resulted in a settlement wherein Waste Management issued full or partial credits to all customers who experienced interruptions in collection services in connection with the July 2007 lock out.

m.  *Garcia v. Service Master Global Holdings, Inc.,* Case No. CV075754, Marin County Superior Court.  Andrus Anderson and co-counsel represented nine Filipino American employees against the Terminix companies and its supervisors and managers, for unlawful harassment and discrimination, and violations of state labor statutes and common law.

n.   *In re Wells Fargo Mortgage Lending Practices*, MDL No. 1930, before Judge Maxine M. Chesney, in the Northern District of California.  Andrus Anderson represents plaintiff Ruby Brown, on behalf of herself and other similarly-situated African American homeowners, seeking redress for the discriminatory impact of Defendantsø home financing policies and practices pursuant to the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq. and the Fair Housing Act, 42 U.S.C. § 3601 et seq. (õFHAö).

## Partner Biographies

### *LORI ERIN ANDRUS*

Born in Lafayette, Louisiana, Ms. Andrus is a member of the bar of the District of Columbia and of the California bar and is admitted to practice in the United States District Courts for the districts of Northern, Southern, Central and Eastern Districts of California.  Ms. Andrus has received Martindale-Hubbell's highest rating (AV) for legal ability and ethical standards.  Ms. Andrus earned her Bachelor of Arts degree from the Boston University, *cum laude,* and graduated, with honors, from Duke University School of Law.  Between college and law school, Ms. Andrus worked for two Members of Congress in Washington, D.C., first for U.S. Representative Rick Boucher from Virginia, then for U.S Representative James Hayes, from Louisiana.

Prior to co-founding Andrus Anderson, Ms. Andrus was a partner at the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP, where she litigated multiple class actions and complex matters in state and federal courts across the country in the areas of mass tort, product liability, loan discrimination, consumer fraud and employment.

Examples of class and complex litigation cases Ms. Andrus has worked on in the past include the following:

### *Mass Tort/Personal Injury*

*West v. G & H Seed Co*., CV No. 99-C-4984-A (Louisiana State Court, St. Landry Parish), a class action brought on behalf of crawfish farmers whose crops were killed by defendants' pesticides.  After class certification was affirmed on appeal, *see* 832 So.2d 274 (La. App. 2002), the Court approved $45 million settlement.

*In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL 1708 (D. Minn.), personal injury lawsuits on behalf of Guidant patients across the United States seeking damages for the injuries they suffered due to Guidant's alleged negligence with respect to the manufacturing and sale of defective defibrillators.  Ms. Andrus served as the Co-Chair of the Science/Experts Committee in the MDL.

*In re Baycol Products Litigation*, MDL No. 1431 (D. Minn.), mass tort litigation involving Baycol's serious side effects, including rhabdomyolysis.  While she was an associate at Lieff, Cabraser, Heimann & Bernstein, Ms. Andrus assisted with litigation brought on behalf of hundreds of injured clients, and helped obtained favorable settlements with Bayer A.G. and Bayer Corporation.

*In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D. La.).  While she was an associate at Lieff, Cabraser, Heimann & Bernstein, Ms. Andrus assisted in the litigation of individual personal injury lawsuits against Merck, the manufacturer of Vioxx, for false promotion of Vioxx's safety and failure to disclose the drug's dangerous side effects.

*In re Bextra/Celebrex Marketing Sales Practices and Products Liability Litigation*, MDL 1699 (N.D.Cal.), personal injury and consumer litigation arising out of the sale and marketing of the COX-2 inhibitors Bextra, Celebrex, and Parecoxib manufactured by Pfizer, Inc and its predecessor companies Pharmacia Corporation and G.D. Searle, Inc.  Ms. Andrus worked on this litigation while she was a partner at Lieff, Cabraser, Heimann & Bernstein.

*Fen-Phen ("Diet Drugs") Litigation*.  While she was an associate at Lieff, Cabraser, Heimann & Bernstein, Ms. Andrus assisted in litigation on behalf of dozens of individuals pursuing personal injury claims due to injuries from the "Fen-Phen" diet drugs fenfluramine (Pondimin) and/or dexfenfluramine (Redux).

***Discriminatory Lending Practices***

*Thompson v. WFS Financial, Inc.*, Case No. RG 03088926 (Alameda County Sup. Ct.),

*Pakeman v. American Honda Finance Corp.*, Case No. RG03088920 (Alameda County Sup.

Ct.), and *Finance Charge Markup Cases*, J.C.C.P. No. 4346 (San Francisco County Sup. Ct.).

These three nationwide class actions under the federal Equal Credit Opportunity Act alleged

discriminatory lending in the automobile financing industry, resulting in industry-wide changes

to automobile financing practices and the settlements provided for refinancing of $2 billion in

outstanding loans and other benefits valued in excess of $200 million.

***Consumer Protection and Product Liability***

*McManus, et al. v. Fleetwood Enterprises, Inc.,* Civil Action No. SA-99-CA-464-FB

(U.S.D.C. W.D. Texas), nationwide settlement class of Fleetwood motor home owners who

alleged that Fleetwood failed to adequately inform consumers of the need for auxiliary braking

systems for safe stopping.

*Providian Credit Card Cases*, JCCP No. 4085 (San Francisco County Sup. Ct.)

Nationwide settlement class of Providian credit cardholders who alleged that Providian had

engaged in widespread misconduct by charging cardholders unlawful, excessive interest and late

charges, and by promoting and selling to cardholders õadd-on productsö promising illusory

benefits and services, resulting in a $105 million settlement.

*In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, Case Nos. 03-1379,

03-1564 (S.D. Ind.) and *Bridgestone/Firestone Tire Cases I & II*, J.C.C.P. Nos. 4266 & 4270

(Sacramento Sup. Ct.).  Litigation regarding the combination of defective automobile design,

making Ford Explorers prone to rollover, and Firestoneøs defective tire design.

### JENNIE LEE ANDERSON

Born in Indianapolis, Indiana, Ms. Anderson has extensive experience representing consumers and employees in individual and class actions.  She serves as lead or co-lead counsel in multiple nationwide class actions and has proven herself an effective advocate.

Ms. Anderson earned her Bachelor of Arts degree from the University of Wisconsin-Madison and her Juris Doctor degree from University of California, Hastings College of the Law.   In law school, Ms. Anderson served as a judicial extern to the Honorable Martin J. Jenkins, District Court Judge for the Northern District of California, and was a legal intern for Legal Aid of Cambodia in Phnom Penh, Cambodia.  A member of the California bar, Ms. Anderson is also admitted to practice in the United States District Court for the Northern, Southern, Central and Eastern Districts of California and the Ninth Circuit Court of Appeals.

Prior to co-founding Andrus Anderson, Ms. Anderson practiced complex litigation in the San Francisco offices of Lieff, Cabraser, Heimann & Bernstein, LLP and Lerach Coughlin Stoia Geller Rudman & Robbins, LLP (now Robbins, Geller, Rudman & Dowd, LLP) where she prosecuted multiple class action and complex cases on behalf of plaintiffs in the areas of consumer protection, employment, securities, product liability and antitrust.  In addition, Ms. Anderson has considerable knowledge of habeas corpus proceedings, having represented indigent inmates on death row at the Habeas Corpus Resource Center in San Francisco.

A few examples of complex and class action cases on which Ms. Anderson worked in the past include the following:

#### Consumer Protection and Product Liability

*Cellphone Termination Fee Cases*, J.C.C.P. No. 4332 (Alameda County Sup. Ct.). Coordinated lawsuits against the six major wireless telephone service providers in California

alleging that the early termination fee provisions in defendants' contracts are illegal penalties under California Law, designed to unfairly tether consumers to long term contracts and prevent customers from changing their wireless service providers.

*Richison v. American Cemwood Corp.*, No. 005532 (San Joaquin County Superior Ct.). Nationwide class of approximately 30,000 owners of homes and other structures on which defective Cemwood Shakes were installed, resulting in settlements totaling $140 million.

*In re Firearms Cases*, J.C.C.P. No. 4095 (San Diego County Sup. Ct.).  This lawsuit was brought on behalf of twelve cities and counties in California against the gun industry to reduce handgun violence across the State.  The litigation resulted in five gun industry defendants agreeing to change the way they do business in California in an effort to prevent firearms from being sold in the underground market.

### *Antitrust and Business Torts*

*Microsoft Private Antitrust Litigation.*  Multiple statewide antitrust cases against Microsoft Corporation, alleging that Microsoft engaged in anticompetitive conduct and/or violated state deceptive and unfair business practices statutes to harm competition and monopolize the markets for Intel-compatible, personal computer operating system software, as well as word processing and spreadsheet software, resulting in several multi-million dollar settlements.

*Natural Gas Antitrust Cases*, J.C.C.P Nos. 4221, 4224, 4226 & 4228 (Cal. Sup. Ct.). Class action on behalf of purchasers of natural gas alleging that defendant El Paso Natural Gas Company manipulated the market for natural gas pipeline transmission capacity into California to enable its energy trading subsidiary to acquire the capacity, and then used the capacity to drive up natural gas prices on the spot market, ultimately resulting in a $1.5 billion settlement.

# EXHIBIT 3

<u>Patterson Law Group, APC</u>

Patterson Law Group is a San Diego, California based commercial litigation firm that focuses on complex class action litigation, including consumer protection, privacy, and employee rights.  Founder James Patterson has been recognized as a leader on both the state and national levels, and has been appointed lead counsel, or co-lead counsel in more than 35 state and federal class actions.

## **CONSUMER PROTECTION CLASS ACTIONS**

Our consumer advocacy practice is focused on protecting privacy and consumer rights.  We have prosecuted more than 35 class actions involving various consumer protection issues.  Representative cases that have been certified as class actions and prosecuted to judgment include: (1) *Shabaz, Korn v. Polo Ralph Lauren Corp.,* Case No. SA CV 07-1349 AG (US Dist. Ct.) (class receiving benefits of more than $10 million); (2) *Anderson v. United Retail Group*, Case No. 37-2008-00089685-CU-BT-CTL (San Diego Sup. Ct.) (class receiving benefits of approximately $4.2 million); (3) *McCarthy v. Euromarket*, Case No. 37-2008-00085041-CU-BT-CTL (San Diego Sup. Ct.) (class receiving benefits of approximately $6 million) (4); *Johnson v. New York & Company*, Case No. 37-2008-00080567-CU-BT-CTL, (San Diego Sup. Ct.) (class receiving benefits of approximately $5 million).

We are currently involved in a number of class actions pending in federal court challenging deceptive marketing practices, including:  (1) *In re: Hydroxycut Marketing and Sales Practices Litigation*, MDL No. 2087; (2) *Cox v. Clarus Marketing Group, LLC,* Case No. 3:11-cv-02711-H-RBB (S.D. Cal.); (3) *Berry v. Webloyalty.com, Inc.,* Case No. 11-55764 (9th Cir. Court of Appeals);.

We are also currently involved in class actions brought on behalf of consumers nationwide alleging unfair practices arising from the systematic and arbitrary reduction of their credit lines, including *Winkler v. Citibank*, Case No. 09-cv-1999-BTM-CAB (S.D. Cal.); *Brewster v. USAA Federal Savings Bank*, Case No. 10-CV-1633-JAH-BLM (S.D. Cal.); *Vess v. Bank of America,* Case No. 3:10-CV-00920-JAH-NLS (S.D. Cal.); *O'Leary v. Wells Fargo Bank*, Case No. 2:10-CV-01913-MCE-GGH (E.D. Cal.).

## EMPLOYEE RIGHTS ACTIONS

Our employee protection practice includes prosecution and trial of both individual and class cases.  Recent class cases currently being litigated or resolved include: (1) *LaMasa, et al. v. INDYMAC Resources, Inc.*, Case No. 626836 (Stanislaus County Sup. Ct.) (over $3,000,0000 in compensation recovered on behalf of former employees after bank failure and seizure by FDIC); (2) *DeLapp v. Union Bank*, Case No. CGC-10-500638  (San Francisco Sup. Ct.) (over $1,800,000 recovered for former employees for lost vacation pay); (3) *Fletcher v. The Toro Company*, Case No. 37-2008-00095573 (San Diego Sup. Ct.) (approximately $1,000,000 in compensation recovered for the class of only 119 people); (4) *Von Retteg v. La Costa Limousine,* Case No. 37-2008-00086676 (San Diego Sup. Ct.) (approximately $300,000 in compensation recovered for a small class of limousine drivers); (5) *Chase, et al. v. Rite Aid Corp.*, Case No. (Los Angeles County Sup. Ct.) (wage and hour class action on behalf of pharmacists employed by Rite Aid); (5) *Zapata v. BAE Systems,* Case No. 37-2008-00081654 (San Diego Sup. Ct.) (wage and hour class action); (6) *Johnson v. U.S. Vision, Inc, et al.,* Case No. 37-2010-00086511 (San Diego Sup. Ct.) (wage and hour class action); (7) *Ives v. Fidelity National Title*, Case No. 37-2009-00087068 (San Diego Sup. Ct.) (wage and hour class action); (8) *Yanez v. Gordon Trucking, Inc.*, Case No. 10cv324 (E.D. Cal.).

## TRIAL EXPERIENCE

While we take pride in our ability to appropriately evaluate and favorably resolve complex cases, we are ready, willing, and able to vigorously litigate any case through trial.  The attorneys at Patterson Law Group have significant trial experience, including notable results in *Ichor Medical Systems v. Walters* ($14 million jury verdict, S.D. Cal.) and *Oris Medical Systems v. Allion Healthcare* ($4 million settlement reached mid-trial; San Diego Sup. Ct.).  Collectively, Patterson Law Group's attorneys have tried more than 20 jury trials.

## ATTORNEYS

**Jim Patterson** is the founding member and the head of the consumer and

employment class action practice at Patterson Law Group.  He has been consistently recognized as a leader in class actions and commercial litigation by his peers, the media, and numerous courts.  After graduating from law school in 2000, Jim joined the law firm of Cooley LLP in San Diego, California.  Cooley is a large national firm that focuses, on complex litigation, including class action defense.  Jim left Cooley in 2006 to found the law firm of Harrison Patterson & O'Connor.  In 2011, the partners of Harrison Patterson & O'Connor decided to separate their respective practice areas and Jim founded Patterson Law Group, which focuses exclusively on consumer and employee class actions.   Jim has spent the last decade successfully litigating complex cases, including numerous class actions.  He has been appointed lead counsel in numerous state and federal class action cases, and has recovered hundreds of millions of dollars in benefits for his clients and class members.  Jim has been asked to speak at numerous seminars and testify before the California       Legislature       as       to       important       proposed       legislation.

**Allison Goddard** joined Patterson Law Group at its inception.  After graduating from law school in 2000, Ali joined the law firm of Cooley LLP in San Diego, California, where she focused her practice on class actions and complex litigation.  She left Cooley in 2004 to found the litigation boutique firm Jaczko Goddard.  There, Ali concentrated on intellectual property and general business litigation.  In 2011, she joined Patterson Law Group at its inception to continue working on intellectual property matters and complex class actions.  Ali is very active in the legal community and has served as President of the San Diego Chapter of the Federal Bar Association, Vice Chair of the Host Committee for the 2012 Federal Bar Association National Meeting and Convention.  She is currently a Lawyer Representative from the Southern District of California to the Ninth Circuit Judicial Conference.

**Alisa Martin** joined Patterson Law Group at its inception.  After graduating for law school in 2002, Alisa joined the law firm of Cooley LLP in San Diego, California.  She spent eight years at Cooley LLP and then left to join Harrison Patterson & O'Connor LLP.  After two years at that firm, she joined Patterson Law Group to focus exclusively on consumer and employment class actions.   She is a well recognized advocate for consumers and employees and has prosecuted and defended numerous state and federal class actions.   Alisa's training and experience at Cooley, a large national defense firm,

provides her with invaluable insight into large corporations' inner-workings and decision making process.  Alisa also is a trained clinical therapist, which honed her communications skills and ability to understand her clients' needs.

**Matt O'Connor** spent 6 years with as a government prosecutor with the Contra Costa County District Attorney's Office, and 6 years with Harrison Patterson & O'Connor LLP prior to joining Patterson Law Group. He has litigated more than 20 consumer and employee class actions, and has tried over forty cases to verdict.  Matt's training and experience as a government attorney prosecuting individuals who profit from data breaches and identity theft, many through jury trial, gives him a unique perspective on how to combat consumer fraud on a large scale.  His courtroom experience is an invaluable asset which he draws upon to reach successful resolution of complex class action cases, both in the consumer protection and employment areas of law.  Matt is a graduate of the University of California at Davis, and then Santa Clara University School of Law, where he finished Cum Laude and with a High Technology Certificate.

# EXHIBIT 4

| | | | BARON & BUDD, P.C.® |
|---|---|---|---|
| www.baronandbudd.com | 3102 Oak Lawn, Ave, Suite 1100 | Dallas, TX 75219-4281 | |
| | | | Tel: 214.521.3605<br>Fax: 214.520.1181 |



## Baron & Budd's Practice and Accomplishments

### Firm Overview

Baron & Budd, P.C. is one of the largest and most accomplished plaintiffs' law firms in the country. With approximately 50 attorneys and more than 200 staff, Baron & Budd has the resources to handle complex litigation throughout the United States. As a law firm that prides itself on remaining at the forefront of litigation, Baron & Budd has spearheaded many significant cases for entities and individuals.

Since the firm was founded in 1977, Baron & Budd has achieved national acclaim for its work on cutting-edge litigation:

- In September 2010, Scott Summy, head of Baron & Budd's water contamination litigation section, was one of only four attorneys chosen to serve both on the Plaintiffs' Executive Committee and on the Plaintiffs' Steering Committee (PSC) of the Multi-District Litigation (MDL) in the Gulf Oil Spill litigation. This appointment, made by Judge Barbier, was an honor and a testament to Mr. Summy's and Baron & Budd's strength as fair-minded and knowledgeable attorneys who can represent the best interests of thousands of individuals and businesses that have been affected by the spill.

- In August 2010, environmental attorney and Baron & Budd shareholder Burton LeBlanc of Baton Rouge, Louisiana and Baron & Budd were retained by the state of Louisiana to provide counsel to the state's designated Trustees in connection with issues related to the Deepwater Horizon explosion and resulting oil spill.

- In 2002-2006, 2008 and 2011, Baron & Budd was named to the *National Law Journal*'s "Plaintiffs' Hot List" of exemplary plaintiffs' firms in the United States.

- In 2004, *American Lawyer* named Baron & Budd one of the sixteen most successful plaintiffs' firms in the country.

- In 2006, the non-profit Public Justice named a team of Baron & Budd attorneys "Trial Lawyer of the Year" for the firm's work on behalf of a Tucson, Arizona community injured by groundwater contamination.  The litigation spanned 21 years, involved over 1,600 plaintiffs, and resulted in a total recovery of more than $150 million.

- In 2007, Russell Budd and Baron & Budd attorney Burton LeBlanc were among 14 attorneys nationwide to be honored with the Wiedemann Wysocki National Finance Council Award from the American Association for Justice in recognition of their commitment to the legal profession and their efforts to improve the civil justice system.

BARON & BUDD, P.C.®

- In 2009, Scott Summy and the Baron & Budd water contamination litigation section were finalists for the Public Justice Trial Lawyer of the Year Award for their work in *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*; MDL No. 1358.  Mr. Summy and his team negotiated a historic settlement on behalf of  more than 150 public water providers from 17 states in which the bulk of the country's major oil refiners agreed to pay more than $400 million to fund the clean up of MTBE contamination from the water supply and clean up any additional MTBE contamination that may occur in the next 30 years.

- Baron & Budd has been repeatedly selected by The Legal 500 as one of the country's premier law firms in mass tort claims and class action litigation for the firm's work on toxic tort claims.

- Scott Summy, a Baron & Budd shareholder and head of the firm's water contamination litigation section has been selected by his peers for inclusion in *The Best Lawyers in America* every year since 2006.

- Before joining Baron & Budd, now shareholders Scott Summy and Celeste Evangelisti received the 2001 California Lawyer "Attorneys of the Year" Award for Environmental Law for their work on behalf of the California non-profit organization Communities for a Better Environment.  As a result, many of the the nation's major oil companies were required to clean up more than 1,000 sites contaminated by the gasoline additive MTBE.

Additional information about Baron & Budd is available on the firm's website, www.baronandbudd.com.

BARON & BUDD, P.C.®

## Court Appointed Positions Held by Baron & Budd Shareholders

Numerous Baron & Budd shareholders have been appointed to serve on multiple steering committees, as lead counsel, class counsel and co-counsel on a number of important cases. These specific appointments include:

- Plaintiffs' Steering Committee and Plaintiffs' Executive Committee member in the Gulf oil spill MDL, *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*

- Plaintiffs' Steering Committee member for the Chinese Drywall MDL, *In Re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (E.D. La)

- Co-lead counsel on the MTBE Water Contamination cases: *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*; MDL No. 1358 (S.D. NY)

- Plaintiffs' Executive Committee for Bank Overdraft Litigation MDL *In re Checking Account Overdraft Litig*. MDL No. 2036 (S.D. Fla.)

- Lead local-counsel in two shareholder derivative class action cases, *City of St. Clair Shores Police and Fire Retirement System, Individually and on Behalf of All others Similarly Situated v. Affiliated Computer Services, Inc., et al*; Cause No. CC-09-07377-C, filed in County Court at Law No. 3, Dallas County, Texas and *In Re: Electronic Data Systems Class Action Litigation*; Cause No. 366-01078-2008, filed in the 366th Judicial District Court, Collin County, Texas

- Co-lead counsel in the *In Re: EasySaver Rewards Marketing and Sales Practices Litigation*; MDL No. 2161, (S.D. Cal)

- Class counsel in the Brazilian Blowout litigation: *In Re: Brazilian Blowout Litigation;* No. CV10 8452 JFW (MANx) (C.D.Cal)

- Co-lead counsel in *In re Semtech Corporation Securities Litigation*, Case No. 2:07-cv-07114-CAS (C.D. Cal)

BARON & BUDD, P.C.®

## Significant Areas of Litigation

### Environmental Issues

Lead Role in the Gulf Oil Spill Litigation

Immediately after the explosion that caused the massive Gulf Oil Spill, Baron & Budd got to work, helping individuals and businesses that had sustained economic and/or physical damages. Scott Summy, shareholder and head of Baron & Budd's water contamination litgation group, serves on the Plaintiffs' Executive Committee and the Plaintiffs' Steering Committee in the oil spill litigation. Shareholder Burton LeBlanc was retained by the state of Louisiana to provide counsel to the state's designated Trustees in connection with issues related to the Deepwater Horizon explosion and resulting oil spill. The firm currently represents hundreds of individuals and companies in the litigation, including the Louisiana Restaurant Association.

$423 Million National MTBE Settlement

In May 2008, Baron & Budd helped negotiated a $423 million settlement on behalf of more than 150 water providers in 17 states regarding Methyl Teritary Butyl Ether (MTBE) contamination in groundwater with many of the country's leading gas companies. The settlement requires gasoline refiners to pay water providers' costs to remove MTBE from public drinking water wells and for refiners to pay for treatment of qualifying wells that may become contaminated within the next 30 years.

Plaintiffs' cases were initially filed in their respective state courts before they were later transferred to a Multi-District Litigation (MDL) court in New York. Baron & Budd shareholder Scott Summy, who filed the first-ever MTBE case in the United States, served as national co-lead counsel. Baron & Budd shareholders Celeste Evangelisti, Cary McDougal, Laura Baughman, Carla Burke and Stephen Johnston also represented the plaintiffs.

In 2008, the team of attorneys who were involved in the MTBE litigation was recognized as finalists for the "Trial Lawyer of the Year Award," an annual award given by Public Justice, a non-profit legal organization, for any attorney's contribution to the public interest.

Clean Air for School Children

In 2008, Baron & Budd shareholder Laura Baughman and attorney Thomas Sims represented three San Francisco Bay-area environmental organizations in negotiating a settlement with Laidlaw Transit, Inc. In the settlement, Laidlaw agreed to invest a minimum of $4.7 million dollars over five years to retrofit older buses in its California fleet with air pollution control devices to reduce harmful diesel exhaust. Laidlaw also agreed to invest $23.6 million in its fleet over seven years to either retrofit additional buses or purchase new buses that meet the most stringent air pollution standards in the country,

which would ultimately protect young children from being exposed to harmful diesel exhaust. The following year, the team settled with two additional bus companies, which helped ensure that additional polluting buses would be replaced with newer, cleaner models or retrofitted with pollution control devices.

Clean Groundwater in California

In 2004, Baron & Budd shareholders Scott Summy and Laura Baughman negotiated a string of settlements on behalf of California non-profit Communities for a Better Environment (CBE) that required several major oil companies to upgrade gas station storage tanks, clean up groundwater contamination and take steps to prevent gasoline leakage from thousands of underground storage tanks in California.  Monetary and injunctive relief granted in this case was valued at $107 million.

MTBE Settlement on Behalf of the City of Santa Monica

In 2003, Baron & Budd represented the city of Santa Monica in a MTBE contamination settlement with several major oil companies.  MTBE had contaminated five of Santa Monica's eleven wells, forcing the city import water for $3 million a year.

In total, the oil companies paid $250 million, which provided funds for the city to build a water treatment system to clean MTBE from their supply, to continue buying water until their own supply was clean, and to monitor groundwater quality during and after the cleanup.

The Exxon Valdez Oil Spill

Baron & Budd is not a newcomer to oil spills and water pollution. In fact, the firm has a personal connection to the Exxon Valdez saga. In 1993, Baron & Budd was awarded the Public Justice Award for "outstanding contribution to environmental protection and public interest" for its work on the rehabilitation of the damage caused by the Exxon Valdez oil spill in Alaska'a Prince William Sound.

The Exxon Valdez oil spill occurred in remote Prince William Sound, Alaska on March 24, 1989 when the Exxon Valdez, an oil tanker bound for Long Beach, California, struck Prince William Sound's Bilgh Reef, ran aground and spilled nearly 11 million gallons of crude oil.

Much like in the recent Gulf Coast Oil Spill, the cause of Exxon Valdez can be pointed primarily at the oil company for neglecting to properly adhere to safety regulations. Exxon failed to repair the tanker's Raycas radar system, which would have warned the crew of an impending collision with the Bligh reef, because it was just too expensive to fix and operate. The tanker had been operating for more than a year without a functioning Raycas radar.

BARON & BUDD, P.C.®

As a result of the Valdez spill, the Oil Pollution Act of 1990 (OPA) was passed, allowing those who lost income or profits because of an oil spill to recover compensation from those responsible for the spill.

Groundbreaking Water Contamination Case in Tucson, Arizona

In 1985, Baron & Budd filed a lawsuit on behalf of more than 1,600 Tucson-area residents against an aircraft manufacturer, the city of Tucson and the Tucson Airport Authority over TCE contamination of the community's groundwater.  Since Tucson is the largest city in the United States that receives all of its drinking water from underground sources, the industrial solvents used at the airport an aircraft company were of particular concern. Spilled on the ground and seeping through the sandy soil into the groundwater, the invisible yet harmful contaminants caused several unusual forms of cancer and other diseases at almost epidemic levels, particularly among children in the area.

Even though the battle for justice took more than 20 years and an enormous investment in upfront resources, Baron & Budd pushed on, undeterred and prevailed. The firm's cutting-edge work on this case not only brought compensation to these individuals to help them deal with the consequences of their injuries, it helped define Arizona law on pollution coverage issues.

As a result, the public interest legal organization Public Justice presented the Baron & Budd legal team with its "Trial Lawyer of the Year Award" in 2006.  The award recognizes the trial attorney or attorneys who have made the greatest contribution to the public interest each year by trying or settling a precedent-setting case or group of cases.


**Securities Fraud**


$20 Million Settlement in Stock Back-Dating Case

Baron & Budd achieved a $20 million settlement on behalf of individuals who purchased Semtech stock. Firm shareholder Burton LeBlanc served as co-lead counsel in the case. Plaintiffs in the case alleged that Semtech manipulated grant dates for stock options, which result in understatement of Semtech's compensation expenses and overstatement of its reported income.


Protecting Shareholders' Interest in Corporate Transition

As co-lead counsel in *In Re: 7-Eleven, Inc. Shareholders Litigation*, Baron & Budd represented shareholders in negotiations to increase the amount of an offer in a transaction turning a publicly-traded company into a privately-held entity. Baron & Budd achieved a $5 per share increase in the offer which provided an additional $145 million to 7-Eleven shareholders.

BARON & BUDD, P.C.®

Suit to Protect Shareholders' Interest in Corporate Sale

Serving as lead local counsel, Baron & Budd helped negotiate a confidential settlement on behalf of Electronic Data Systems (EDS) shareholders to achieve a fair return on shareholder investment during the sale of Texas-based EDS to California-based Hewlett-Packard.  As originally proposed, many experts considered the share price set for the EDS stock to Hewlett-Packard to be undervalued.  In addition to locking in too low a share price, the proposed sale prohibited EDS directors from seeking a higher price from alternative bidders and guaranteed Hewlett-Packard $375 million if the sale did not go through.

Settlement of Mutual Fund Advisors' Breaches of Fiduciary Duties

Baron & Budd represented shareholders in recovering funds in various mutual fund families against the fund advisors for their breach of their fiduciary duties for failing to file proof of claim forms in settled securities cases for which the funds were eligible.  Baron & Budd reached a series of confidential settlements that resulted in money being returned from the fund advisor to the mutual fund.

Protecting Public Investors from Corporate Self-Dealing

In 2010, Baron & Budd, working as lead local counsel, successfully protected the interests of public investors in Affiliated Computer Services, Inc. (ACS). While ACS was being sold to Xerox, ACS's management and largest shareholder negotiated a better price for their own shares as well as remarkable future employment compensation packages.  The insiders at the same time voted to sell ACS at a price well below its fair market value, which would have forced public shareholders to sell their shares for less. Working with other national law firms, Baron & Budd was able to obtain $69 million in additional compensation for ACS public shareholders.

**Consumers' Rights**

Baron & Budd led the fight for victims' rights in two landmark victories, *Amchem Products v. Windsor* and *Ortiz v. Fibreboard Corp.*, which are widely recognized as two of the most important appellate decisions of the past decade for consumer rights.

*Ortiz v. Fibreboard Corp.*, 526 U.S. 815, 119 S. Ct. 2295 (1999) was one of the last decisions handed down by the United States Supreme Court in 1999. The Court's seven to two decision was given after months of fierce debate over whether all future claims by people who developed illnesses related to asbestos exposure should be handled as a class action, allowing the asbestos companies to settle all future asbestos claims for minimal values before most victims even knew they had a claim.

Baron & Budd fought the class action concept vigorously. In fact, Baron & Budd led the charge to throw out the Fiberboard mandatory class action settlement that would have severely limited the rights of people to pursue individual claims based on the severity of their specific illness and specific circumstances of their exposure.

Writing on behalf of the Court, Justice Souter questioned the fairness of the settlement because, if allowed to go forward, Fiberboard would essentially have a "get out of jail free card." Fiberboard would have been able to settle all asbestos claims, including all future claims, with only $500,000 of the company's own money, thus retaining virtually all of its net worth at the expense of the victims of its asbestos-containing products.

The Ortiz decision corroborated an earlier Supreme Court decision in which Baron & Budd also fought for victims' rights: *Amchem Products v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L.Ed2d 689 (1997).

Achieving this success was not an easy task. Baron & Budd fought against powerful interest groups and, surprisingly, against some other plaintiffs' law firms who were willing to trade future victims' rights for a quick pay day.


**Chinese Drywall Litigation**


Baron & Budd shareholder Bruce Steckler serves on the Plaintiffs' Steering Committee in *In Re: Chinese-Manufactured Drywall Products Liability Litigation* (MDL No. 2047) in the federal district court in New Orleans, where all Chinese drywall lawsuits have been consolidated. The firm represents more than 600 clients in the Chinese drywall litigation.

In late 2011, the PSC reached a landmark settlement with KNAUF Plasterboard Tianjin (KPT), one of the largest drywall manufacturers in the litigation. The proposed settlement could help nearly 4,500 homeowners with the defective drywall. The PSC estimates that the settlement could be valued between $800 million and $1 billion.

Near the beginning of the litigation, Russell Budd and Bruce Steckler helped negotiate a revised bankruptcy plan with WCI Communities that will allow WCI to emerge from bankruptcy and set up a Trust for WCI homeowners with contaminated Chinese drywall, partially funded by WCI.  The Trust is also authorized to maximize the amount available for remediation by pursuing claims that WCI could have pursued because of the defective drywall. Baron & Budd currently represents the WCI Trustees in litigation against WCI's insurers concerning coverage for Chinese drywall claims.

BARON & BUDD, P.C.®

**Consumer Fraud**

<u>$410 Million Bank of America Settlement Over Excessive Bank Overdraft Fees</u>

Baron & Budd served on the plaintiffs' steering committee in a class action lawsuit asserting manipulation of data by banks in order to increase overdraft fee revenue. The firm helped achieve a $410 million settlement with Bank of America, the largest bank involved in the bank overdraft fee litigation. The case alleged that Bank of America, along with a number of other banks, intentionally re-ordered debit card transactions to promote overdraft fees. Not only did the case result in repayment of these charges, but it also led to widespread changes in the banking system that affect virtually every American with a bank account. Because of the lawsuit, many large banks have changed their overdraft fee policies, no longer "re-ordering debits" and not offering "courtesy" overdraft services without customer consent. Bank of America, for example, eliminated all debit card overdraft fees in 2010.

Shareholder Bruce Steckler serves on the Plaintiffs' Executive Committee of the MDL in the overdraft fee litigation. Litigation against the other banks in the MDL is still ongoing. *In re: Checking Account Overdraft Litigation*; MDL No. 2036 (S.D.Fla).

<u>Online Scams</u>

It seems like there's a new online scam targeting consumers every day, ranging from fradulent "rewards" programs to unexplained credit cars. To help protect consumers, Baron & Budd has gone after a number of these online scams, most notably Proflowers. In 2010, the firm filed a class action lawsuit against Proflowers for perpetating a scam where an alleged "rewards" program charged unathorized monthly charges to a consumer's credit card. Shareholder Bruce Steckler serves on the Plaintiffs' Steering Committee in the Proflowers/EasySavers MDL.

**Whistleblower Issues**

<u>Medical Whistleblower Case</u>

In 2010, the AARP Foundation Litigation, the legal arm of the AARP, in a rare move, joined forces with Baron & Budd as co-counsel in a medical whistleblower case involving the aggressive marketing of the off-label use of vascular stents. With this move, AARP seeks to curb health care fraud, a major contributing factor for rising health care costs. Kevin Colquitt, a former medical device sales representative, originally filed the lawsuit in 2006 after he became concerned about the company's marketing of stents for unauthorized use. After attending law school, Mr. Colquitt became an attorney at Baron & Budd.

BARON & BUDD, P.C.®

**Harmful Pharmaceuticals**

Avandia

Baron & Budd currently represents thousands of individuals who have been harmed by using the diabetes drug Avandia.

FenPhen

Baron & Budd played a leading role in representing people harmed by the diet drug Fen-Phen. The firm was instrumental in negotiating the Seventh Amendment to the AHP Settlement Agreement, which required the defendants to place an additional $1.275 billion into a trust for those affected.

**Toxic Exposure Issues**

Closing Down the West Dallas Lead Smelter

In the West Dallas Lead Smelter case, Baron & Budd took on local environmental contamination to protect future generations of children from exposure to lead. One of Dallas' largest public housing projects sat in a low-income neighborhood directly across the street from a secondary lead smelter. For many years, the smelter converted used automotive batteries into lead components for resale. Particulate emissions from the factory smokestacks literally blanketed the surrounding community with lead-bearing soot.

Baron & Budd represented more than 200 families in a lawsuit that ultimately closed the lead smelter and paid sizable confidential settlements to court-supervised trusts for 445 children affected by lead poisoning.  Although the neurological damage to these children is irreversible, the funds recovered in the settlement have enabled them to move into adulthood with medical, rehabilitative and vocational assistance.  Closing the lead smelter and requiring the company to fund a community soil clean-up project helped prevent future damage to other neighborhood children.

Settlement for Central Texas Residents Harmed by Lead Exposure

Baron & Budd shareholder Laura Baughman represented more than 130 people who were exposed to high levels of lead and other toxic substances while growing up in a small town in Central Texas. For many years, children played at an abandoned oil refinery that had no fence, gate or warning signs to discourage the children from playing there.  Because of lead oxide used in the refining process, extremely high levels of lead contamination were found in areas where the children played on the property. Oil tanks at the refinery had also leaked and overflowed for decades, causing several large crude oil spills at the site. Because of their lead exposure, the plaintiffs suffered a decrease in IQ, neurological impairments and learning disabilities.  Baron & Budd obtained a sizeable confidential

settlement for the firm's clients, providing them with the resources to help pay for rehabilitative, psychological and other medical expenses.


Settlement for Harms Caused by Chemical Leak

Baron & Budd successfully represented more than 850 workers injured by exposure to ethylene dichloride (EDC) in Lake Charles, Louisiana as a result of the negligent and reckless conduct of Conoco, Inc., Condea Vista Chemical Company, and a number of contractors that caused one of the largest chemical spills in U.S. history. In addition to its status as a probable human carcinogen, EDC exposure can cause serious damage to the heart, central nervous system, liver, kidneys, lungs, gastrointestinal system and commonly results in depression, memory loss and personality changes.

BARON & BUDD, P.C.®

## Professional Biographies

### The Firm's Shareholders

 **Russell W. Budd** is a major force in the world of plaintiff's attorneys, having devoted his three-decade career to championing the rights of people and communities injured by corporate malfeasance. Currently Budd presides over one of the nation's largest plaintiff's firms, Baron & Budd, PC, headquartered in Dallas, Texas with offices in Austin, Texas; Los Angeles, California and Baton Rouge, Louisiana.

Mr. Budd, a shareholder of Baron & Budd since 1985 and president and managing shareholder since 2002, has expanded the firm from its cornerstone asbestos practice to a national firm capable of tackling the biggest defendants in areas as diverse as water contamination, *qui tam*, California Proposition 65 violations, pharmaceutical injuries, Chinese drywall, insurance claims and securities fraud. Most recently, the firm has begun to represent individuals and businesses that have been affected by the Gulf Oil Spill.

Over the last decade, Mr. Budd has played significant roles in asbestos litigation on a national level. As chair and member of several asbestos creditors' bankruptcy committees, Mr. Budd successfully resolved over 100,000 victims' claims with some of Wall Street's biggest companies. Mr. Budd was the chief negotiator of a $4 billion national settlement with Halliburton that established a trust fund to protect present and future asbestos victims throughout the United States - the largest asbestos trust fund of its kind anywhere in the world. He was on the committee that negotiated a $3.9 billion settlement with United States Gypsum to benefit asbestos claimants. And, he participated in negotiations that led W.R. Grace to agree to fund a bankruptcy trust on behalf of asbestos claimants with nearly $3 billion in cash and stock equity.

Under Mr. Budd's direction, Baron & Budd donated $3 million to the International Pleural Mesothelioma Program at Brigham and Women's Hospital to research curative therapy for Mesothelioma, a cancer caused by exposure to asbestos. The firm has also given generously to the Asbestos Disease Awareness Organization, Lung Cancer Alliance and to other asbestos awareness advocacy organizations.

Mr. Budd serves on the Board of Governors of the American Association for Justice (AAJ) and previously served on the Board of Directors and Executive Committee of the Texas Trial Lawyers Association (TTLA).

On July 13, 2010, Mr. Budd was awarded the prestigious Harry M. Philo Award Trial Lawyer of the Year Award from the American Association for Justice (AAJ) at the organization's annual conference in Vancouver, BC. The award was presented in recognition of his dedicated and consistent leadership in protecting the rights of individuals through the civil-justice system. In 2007, he earned the prestigious Wiedemann Wysocki National Finance Council Award from the American Association for Justice, an award honoring attorneys for their commitment to the legal profession and their efforts to improve the civil justice system.

Under Mr. Budd's leadership, Baron & Budd has won numerous awards. The firm was recently named by National Law Journal's to its "Hot List" of exemplary plaintiffs' firms in the United States and has been included in the Hot List seven times.

Mr. Budd and his wife are very involved in the community and one of the causes closest to his heart is Habitat for Humanity, which gives hardworking Dallas families a chance at first-time home ownership. He has personally contributed generously to the "Building on Faith" project, a collaborative initiative between the Dallas Faith Communities Coalition (DFCC), the City of Dallas and Habitat for Humanity to build 100 affordable single-family homes in West Dallas. In addition, Mr. Budd has donated land to the City of Dallas that enabled the completion of a massive bike and hike trail. In 2010, Mr. Budd was the only attorney selected to serve on the Foundation Board of the National Comprehensive Cancer Network (NCCN).



**Steve T. Baron** oversees Baron & Budd's asbestos litigation section and is one of the law firm's chief negotiators. Mr. Baron's efforts have helped provide compensation to thousands of asbestos victims. Along with Russell Budd, Mr. Baron participated in the Halliburton and W.R. Grace negotiations that set aside billions of dollars for the benefit of asbestos victims. Mr. Baron also serves on advisory and claimants committees for various asbestos bankruptcy trusts to protect the rights of asbestos victims.



**Dan Alberstone** has nearly 30 years of broad experience prosecuting and defending major commercial and complex business litigation matters, including extensive jury trial experience.

Mr. Alberstone has been selected as lead trial counsel by both institutional and individual clients in their most significant and high-profile matters, including partnership cases, real estate cases, breach of contract cases, entertainment cases, environmental cases, and cases alleging unfair business practices. In the real estate sector, Mr. Alberstone has successfully prosecuted a case for the American Skiing Company, the owner of the Canyons Ski Resort in Park City, Utah, in an action to force the resort's landlord to agree to an assignment of ground lease in a $123 million transaction. He also obtained a more than $14 million award for a major real estate developer in connection with the purchase and sale of an historic bank building in downtown Los Angeles. Mr. Alberstone acheived a more than $8 million award for the owner of the Edison Bar in downtown Los Angeles in an action involving the purchase and sale of a large commercial building and, successfully defended the Estate of Jonathan Ritter in an action brought to compel specific performance of a contract to purchase three citrus farms owned by the Estate.

In the entertainment area, he has successfully defeated an action by a union president and three board members against the Screen Actors' Guild and 41 other members of its national board and successfully defended screenwriter in work-for-hire action brought by employer claiming ownership of screenplay. He also represented ESPN and Good Morning America reporter Erin Andrews in connection with the prosecution of a stalker who had surreptitiously videoed Ms. Andrews in the privacy of her hotel rooms. The Los Angeles Daily Journal recognized Mr. Alberstone for obtaining one of the top plaintiff's verdicts in 2009.

BARON & BUDD, P.C.®



**Laura Baughman's** position at Baron & Budd calls upon her to exercise her knowledge as an attorney and a civil engineer.

As managing shareholder of the firm's Qui Tam litigation team, Ms. Baughman focuses on strategies to ferret out and litigate against those who have perpetrated fraud against the government. Sometimes called "whistleblower" cases, Ms. Baughman's team handles a variety of cases in which the government has been defrauded of Medicare, Medicaid, defense and other monies. The recently signed Dodd-Frank Wall Street Reform and Consumer Protection Act's provision of monetary rewards and protection to people who speak out against bribery and other types of financial fraud, has resulted in an increase in the firm's handling of such cases.

Under Ms. Baughman's direction, Baron & Budd is active in a number of Qui Tam lawsuits. The AARP Foundation recently joined one of the firm's high-profile lawsuits against several pharmaceutical companies involving the aggressive marketing of off-label use of vascular stents. Ms. Baughman is a member of Taxpayers Against Fraud, a non-profit organization dedicated to combating fraud and educating taxpayers about the realities of fraud.

In addition, Ms. Baughman leads the firm's work in California involving Proposition 65 litigation. She served as co-lead counsel in a California Proposition 65 water contamination case that required several major oil companies to clean up groundwater that had been contaminated by gasoline leaking from storage tanks and to take steps to prevent similar leaks in the future. The settlement was valued at $107 million. Ms. Baughman settled another Proposition 65 case which required the retrofitting of school buses with devices to reduce diesel engine exhaust emissions, a known carcinogen. Ms. Baughman is currently counsel on a case seeking to require the disclosure of elevated levels of lead in certain brands of children's fruit juice, canned fruits and baby food.

In addition to her legal advocacy, Ms. Baughman has a long history of community service. She has represented several clients on a pro bono basis through the Dallas Volunteer Attorney Program and over the years has served as co-chair of several committees for Attorneys Serving the Community. Formerly a member of the Dallas Bar Association's Community Involvement Committee, she was the chair of the group's "Lawyers Have Heart" 5-K run benefiting the American Heart Association. While in law school, Baughman was the vice president of Texas Law Fellowships, a non-profit public interest organization.



**Carla M. Burke**, a shareholder in Baron & Budd's water contamination litigation section, began her legal career with the firm's appellate section. Ms. Burke has taken a prominent role in the briefing and legal analysis of MTBE Multi-District Litigation cases. She has also authored and presented numerous papers and presentations on the topics of toxic tort and water contamination litigation and premises liability law. In addition to her responsibilities at the firm, Ms. Burke has served as an

BARON & BUDD, P.C.®

adjunct clinical instructor of law at the Southern Methodist University School of Law Legal Clinic and, before law school, an English professor at a local college.



Shareholder **Denyse Clancy** focuses on the litigation and appeals process for asbestos cancer cases, primarily mesothelioma.

In 2009, Ms. Clancy won two $8.5 million dollar verdicts in Philadelphia on behalf of two asbestos victims that were included in the top 100 verdicts of the year in the United States and the top 25 largest settlements and awards in Pennsylvania in 2009 by Pennsylvania Law Weekly. In 2007, Ms. Clancy won a substantial verdict from a Galveston jury on behalf of a retired pipefitter suffering from asbestos-mesothelioma.

Ms. Clancy has also achieved substantial appellate victories on behalf of asbestos sufferers and their families. She was lead appellate counsel in a case in which the California Court of Appeals decision upheld a $20 million verdict on behalf of a California asbestos sufferer and her family. In 2010, Ms. Clancy was lead appellate counsel in a case in which the Pennsylvania Court of Appeals upheld a verdict against an asbestos wire manufacturer. In 2011, she was lead appellate counsel in a case in which the California Court of Appeals reversed a summary judgment that was granted in favor of Kaiser Gypsum Company and remanded the case to the trial court.

Ms. Clancy lectures around the country on the issues of asbestos and asbestos cancer. In 2011, she was invited as Visiting Faculty to speak at the Harvard Medical School's course on "Current Concepts and Controversies in Asbestos-Related Disease."

Ms. Clancy graduated Valedictorian of the Southern Methodist University School of Law and was an Editor of the SMU Law Review.



**Tiffany N. Dickenson,** now a shareholder, joined Baron & Budd's asbestos litigation section in 2000. She is a litigation manager for several jurisdictions where the firm practices, overseeing lawsuits on behalf of people with mesothelioma. he has second-chaired trials on behalf of mesothelioma victims in Texas, as well as a Mississippi case on behalf of a man who developed cancer caused by dioxin and other harmful chemicals released from a chemical plant in his community. Ms. Dickenson received her law degree from South Texas College of Law.



**Celeste A. Evangelisti** has devoted her career to representing individuals, municipalities, and water suppliers seeking funds to clean up contaminated community water supplies. Along with Baron & Budd shareholder Scott Summy, Ms. Evangelisti was part of the legal team for Communities for a Better Environment that received the *California Lawyer* "Attorneys of the Year" Award for Environmental Law for the resolution of a precedent-setting case requiring major oil companies to

**BARON & BUDD, P.C.®**

clean up more than a thousand sites contaminated by the gasoline additive MTBE.  Ms. Evangelisti is a frequent speaker and presenter on legal topics concerning the prosecution of water contamination cases involving the gasoline additive MTBE and other water contaminants.  Ms. Evangelisti is a shareholder at Baron & Budd.



**Stephen C. Johnston** is a shareholder in Baron & Budd's water contamination litigation section.  Prior to joining the water group, Mr. Johnston spent several years in the firm's asbestos litigation group, representing victims of mesothelioma and other asbestos-related diseases.  He earned his law degree at Texas Tech University .



**J. Todd Kale** is a shareholder who first joined Baron & Budd in 2008 when the firm consolidated with Dallas-based law firm Silber Pearlman. Mr. Kale worked with mesothelioma sufferers and other victims of asbestos-related disease at Silber Pearlman from 1993, shortly after the law firm was founded, and continues that work at Baron & Budd. Mr. Kale oversees the firm's Bank-ID section and workers closely with new and potential asbestos clients.



**John Langdoc** is no stranger to the complex medical and scientific issues involved in the cases he tries. Before becoming a lawyer, he was a scientist who studied how the brain works. At Baylor College of Medicine he researched the brains of people with schizophrenia, depression, and autism. Earlier, in graduate school, Mr. Langdoc helped discover that some prescription anti-depressants can cause brain birth defects.

Mr. Langdoc melds his scientific training and experiences with a core belief that the best way to work on a legal case is "to not do any of the stuff they teach you in law school."

As a lead trial attorney, Mr. Langdoc has been successful in obtaining some of the most significant verdicts of their kind, across the country. Some of his recent verdicts include a $9M verdict against the Dow Chemical Company for a man who was exposed to carcinogens while working at their plant, Dow has announced that it plans to continue to have lawyers fight the verdict on appeal; a $20M verdict for a woman who was unknowingly exposed to carcinogens from drywall when she helped her husband clean up on some home remodeling projects, the verdict was upheld on appeal in California; a $12M verdict for a man who was exposed to carcinogens at a paper mill, the verdict resulted in a settlement agreement the day after the verdict in Pennsylvania; and an $11M verdict for a man who was exposed to carcinogens as a painter.

Mr. Langdoc is a frequent lecturer at continuing legal education seminars for attorneys. He is typically asked to lecture on his experiences working on significant legal cases, and focuses on his belief that the best thing lawyers can do is work on their cases like they

**BARON & BUDD, P.C.®**

were never mis-trained to spin and distort the truth. He has been elected a Super Lawyer Rising Star, and was elected a Shareholder and Lead Trial Attorney at Baron & Budd faster than any lawyer in the firm's history.

**J. Burton LeBlanc, IV**'s background covers the spectrum of environmental law and securities litigation. He has extensive experience litigating complex cases and has represented the state of Louisiana in cases against the oil and gas industry involving the underpayment of severance taxes and royalties.

Mr. LeBlanc has also represented governmental entities, including the state of Mississippi, in complex consumer fraud litigation. Today Mr. LeBlanc concentrates his practice in the areas of environmental law, securities litigation and asbestos litigation. Mr. LeBlanc and his firm have recovered hundreds of millions of dollars for injured working men and women in Louisiana, including multiple jury verdicts over one million dollars.

He is a past President of the Louisiana Association for Justice ("LAJ") f/k/a Louisiana Trial Lawyers Association ("LTLA") and serves on the Executive Committee of the LAJ. He has served on the Council of Directors and the Board of Governors for the LAJ as well as the Committee for the Environmental Law/Toxic Tort Section of the LAJ. He serves as vice president of the American Association for Justice ("AAJ") f/k/a the American Trial Lawyers Association ("ATLA"), and has previously serves as treasurer and parliamentarian. In addition, LeBlanc has been a member of the Executive Committee and the Board of Governors of the AAJ, where he was awarded the Wiedeman Wysocki National Finance Council Award twice, most recently in July of 2010. LeBlanc was also named to a list of top plaintiffs' attorneys compiled by surveys of top defense council in September 2010.

He has been a member of the AAJ National Finance Council, a member of the Board of Trustees of the AAJ PAC Committee, Chair of the National Finance Council, a sustaining member of the AAJ, and a member of the Leaders Forum for AAJ. He is a member of the AAJ's Section on Toxic Torts and Business Torts, a committee member of the American Bar Association's Section on Toxic Torts, and a supporting member of the Trial Lawyers for Public Justice Foundation.

In June 2008, LeBlanc & Waddell, a firm co-founded by LeBlanc, merged with the national law firm of Baron & Budd, P.C., based in Dallas,.



**Cary L. McDougal** has served as lead attorney in over 75 jury trials in state and federal court.  He has tried cases in diverse areas of the law such as premises liability, product liability, general personal injury, medical malpractice, insurance litigation and environmental litigation. As manager of Baron & Budd's water contamination litigation section, Mr. McDougal currently represents over 200 municipalities and water providers across the country that are seeking clean-up costs for the contamination of their water supplies.  His practice includes management of Baron &

**BARON & BUDD, P.C.**®

Budd's cases in the Multi-District (MDL) MTBE water contamination litigation, which is considered one of the most complex pieces of litigation in the country.  He also manages the firm's involvement in the BP Oil Spill litigation.



**Kelly N. Reddell** plays an active role in all aspects of case work-up and is integral to the overall management of the firm's general litigation section.  She represents clients in a multitude of practice areas, including hurricane-related property claims, occupational hearing loss cases, securities, and Chinese drywall.  Ms. Reddell works with institutional clients and individual families alike, giving all of her clients attentive and professional care.  Ms. Reddell participated in the first Chinese drywall trials in the federal MDL, *In Re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047, which established guidelines for remediation of the toxic drywall and compensation for the many families dealing with contamination in their homes.  She continues to take an active role in these cases.



**Bruce W. Steckler** is a shareholder and head of the general litigation section of Baron & Budd and is spearheading a variety of products liability, class action, mass tort and complex litigation cases in state and federal courts throughout the United States.  Currently, he represents over 700 plaintiffs in the Chinese Drywall Litigation in the U.S. District Court for the Eastern District of Louisiana, in both individual cases and in class actions.  He was appointed by the Hon. Eldon E. Fallon of the U.S. District Court for the Eastern District of Louisiana to serve as a member of the Plaintiffs' Steering Committee for the Chinese Drywall MDL *(In Re: Chinese-Manufactured Drywall Products Liability Litigation*; MDL No. 2047).  Mr. Steckler and his law firm were also appointed by the Hon. James Lawrence King of the U.S. District Court for the Southern District of Florida to serve on the Plaintiffs' Executive Committee for Bank Overdraft Litigation MDL (*In Re: Checking Account Overdraft Litigation*; MDL No. 2036) against some of the largest banks in the United States in the Bank Overdraft Litigation MDL.  In 2010, the largest defendant in the litigation, Bank of America, agreed to a $410 million settlement to compensation consumers for predatory business practices.  Mr. Steckler has also been appointed by Texas state court judges as lead local counsel in shareholder derivative class action cases and co-liaison counsel in a mass tort action in Texas.

Mr. Steckler's knowledge and experience in prosecuting complex litigation is further demonstrated by the diversity of clients that have sought his counsel. In the state of Texas, Mr. Steckler currently represents cities and school districts in insurance actions.  He has been retained by cities in the Commonwealth of Puerto Rico to represent them in their environmental damage claims resulting from an oil refinery explosion in October 2009.  More recently, the Port of Galveston and the Port of New Orleans have retained Mr. Steckler and his law firm to represent them in the *In Re: Marine Fender's Antitrust Litigation*; Cause No. 2:10-cv-02319-VBF-RC filed in the U.S. District Court for the Central District of California.  During the course of his professional career, Mr. Steckler has represented thousands of individuals in occupational injury cases against some of the

**BARON & BUDD, P.C.®**

largest corporations in the United States in individual cases, class actions and mass tort cases.



**Scott Summy** is a shareholder at Baron & Budd, one of the largest and oldest firms in the United States that specializes in environmental litigation.  Mr. Summy heads up the firm's water contamination litigation section, whose practice is dedicated to complex water contamination issues across the country.  Mr. Summy primarily represents public water providers, such as municipalities, water districts and utilities, and school districts whose water has been contaminated., Mr. Summy seeks cost recovery on behalf of his clients for treatment facilities, operation and maintenance costs of the treatment facility, out of pocket expenses and administrative costs. Mr. Summy also represents private well owners around the country whose wells are contaminated.  Mr. Summy has represented approximately 200 public water providers across the country with MTBE contamination, and he is designated co-lead counsel for all plaintiffs. Mr. Summy has reached settlements with most of the defendants in these cases totaling over $450 million, including BP/Amoco.

Mr. Summy is continuing to file new MTBE cases across the country.  He was also lead counsel in landmark environmental cases in California designed to protect natural resources. These cases were brought against all major oil companies and were successfully resolved, earning Mr. Summy and his legal team the "Attorney of the Year" award from *California Lawyer* in 2001.

Mr. Summy also represents over 30 water providers in atrazine litigation. Baron & Budd is the largest firm in the United States representing public water providers and private well owners on a contingency fee basis.  Through his work in water cases across the country, Mr. Summy has obtained recoveries in excess of a billion dollars against major oil companies, including BP.  Mr. Summy has been selected to be included in The Best Lawyers in America from 2006-2010.  He and his team were also Finalists for the Public Justice Trial Lawyer of the Year Award in 2009.  Mr. Summy currently serves on the Plaintiffs' Executive Committee in the Deepwater Horizon litigation.



**Roland Tellis'** practice focuses on complex litigation involving environmental cases, securities matters, and consumer fraud cases.  Tellis has represented clients in numerous jury trials, including several high profile, multi-million dollar business disputes. In 2005, Roland received commendation from the U.S. Department of Justice and the Federal Bureau of Investigation for his assistance in the successful prosecution of a $120 million securities Ponzi scheme.

In the financial sector, Tellis represented an investment adviser and broker dealer against class action allegations of securities fraud. Tellis also represented an international investment fund in litigation against foreign currency traders who perpetrated a multi-million dollar Ponzi scheme. In the business sector, Tellis represented a former Microsoft director and general manager against allegations of trade secret misappropriation, conversion and other alleged misconduct. In the environmental area, Tellis represented the world's largest producer of genetically engineered vegetable seeds in its prosecution of a

BARON & BUDD, P.C.®

misappropriation of trade secrets claim against company scientists.  In the real estate area, Tellis represented the owner of a commercial real estate portfolio valued at $1 billion in a lawsuit claiming millions due under an alleged oral partnership agreement.  In the entertainment area, Tellis successfully defeated an action by a union president and three board members against the Screen Actors' Guild and 41 other members of its national board.

**Of Counsel**

**Mazin A. Sbaiti** works in the general litigation section of Baron & Budd. He has successfully represented plaintiffs and defendants in matters involving securities, antitrust, breach-of-contract, fraud, intellectual property, consumer protection, product liability and employment matters. Often called in to represent clients seeking to replace their counsel, Mr. Sbaiti has extensive experience resuscitating cases from the brink of dismissal or default. Mr. Sbaiti is a former law clerk for the U.S. Court of Appeals for the Sixth Circuit, and summer clerk for the Eastern District of New York. He graduated with honors from Columbia Law School where he headed the Moot Court Executive Board, served on the Editorial Board of the Human Rights Law Review, taught first-year law students research and writing, was a teaching fellow in financial accounting and financial statement analysis, and published an article on Social Security Law.

**Allen Vaught** is a decorated U.S. Army veteran and former Texas State Representative. A member of the U.S. Army Reserve from 1997 until 2005, Mr. Vaught took leave from Baron & Budd in 2003 to serve in Operation Iraqi Freedom.  He commanded one of the Army's first units to enter Fallujah and served as the city's de facto mayor. Mr. Vaught heads the firm's FLSA litigation section, where he spearheads new litigation against employers who are not fairly compensating their employees.

**Associates**

**Christopher C. Colley** works with Baron & Budd clients who suffer from mesothelioma, primarily out of the firm's Baton Rouge office. Mr. Colley worked with the Dallas-based law firm Silber Pearlman until the firm consolidated with Baron & Budd in 2008.  He earned his law degree from the Texas Tech University School of Law.

**Chad Cotton** is an attorney with Baron & Budd's asbestos litigation section, representing individuals with mesothelioma and other asbestos cancers. He concentrates his practice on the liability of employers and the owners of the facilities where his clients were exposed to asbestos.  Mr. Cotton earned his J.D. from Southern Methodist University's Dedman School of Law.

**Irma Espino** is an attorney with Baron & Budd's water contamination litigation section, where she works primarily with clients who have been harmed by the Gulf Oil Spill. Espino originally joined the firm in 2002 as a case manager and later paralegal for pharmaceutical cases. In 2004, she left the firm to attend law school at the University of Miami School of Law, where she received honors in Litigation Skills and Trial Advocacy Program and was a member of the Business Law Review. She rejoined Baron & Budd in 2010.

BARON & BUDD, P.C.®

**Frank C. Fleming** is an attorney who works on probate issues for the firm's asbestos clients.  Before joining Baron & Budd, Mr. Fleming had a solo law practice in Dallas.  Mr. Fleming earned his J.D. at Southern Methodist University.

**Ann Harper** has spent her career representing people who have developed mesothelioma and other serious illnesses caused by asbestos exposure. She works in Baron & Budd's settlement department, where she oversees the firm's Client Care department and works closely with the firm's clients to pursue claims through asbestos bankruptcy trust funds.

**Alana Kalantzakis** joined Baron & Budd in 2009 after completing her legal education at Southern Methodist University.

**Mitchell McCrea** is an attorney in the law firm's water clitigation section. Growing up on his family's ranches and farm in southern New Mexico, Texas and California, Mr. McCrea was constantly aware of water's ever-increasing value and scarcity. Following graduate studies on environmental history and the history of the American West at the University of New Mexico, Mr. McCrea determined he could best make a positive impact on the world's natural resources if he was armed with a law degree. He graduated *cum laude* from Texas Tech University Law School.

**Natasha Mehta** works in Baron & Budd's commerical litigation section, which she joined in 2011. Ms. Mehta earned her J.D. at the University of California.

**Marty A. Morris** works with the firm's asbestos litigation group, representing people with mesothelioma and other asbestos-related diseases. Mr. Morris was an attorney with a well-known commercial litigation firm for several years before joining Baron & Budd in 1999.  He earned his J.D. at South Texas College of Law, where he was honored with the Order of the Coif.  He was also a member of the South Texas Law Review and the Advocacy Program.

**Mark Pifko** represents clients in complex and class action litigation matters. Mr. Pifko's practice focuses on cases involving false advertising, fraud and scientific and technical disputes. He has been on both the prosecution and defense sides of a number of class action lawsuits and other complex legal matters concerning a variety of consumer goods, including food products, consumer electronics, dietary supplements, vehicles, software and other items.

**Eric Policastro** is an attorney in the firm's asbestos litigation group, where he works closely with clients suffering from mesothelioma and other asbestos cancers.  He earned his law degree from Baylor Law School.

**M. Cristina Sanchez** is an attorney with the firm's water contamination litigation section, representing municipalities, water providers and private well owners seeking clean-up costs for polluted drinking water supplies. She earned her J.D. at Southern Methodist University's Dedman School of Law, where she was the National Champion, recipient of the Best Brief Award and Second Place Oralist in the 2002 Hispanic National Bar Association Moot Court Competition.  She also won First Place in the 2001 Southern Methodist University Client Counseling Competition and served as Chief Counsel for SMU's Criminal Defense Legal Clinic in 2002.

BARON & BUDD, P.C.®

**Thomas M. Sims** has worked on a variety of environmental cases, ranging from water contamination to air pollution.  In the Tucson, Arizona groundwater contamination case, Mr. Sims served as trial counsel in two lengthy bench trials that led to favorable verdicts for his clients.  Mr. Sims also served on the legal team that was awarded the 2006 Public Justice "Trial Lawyer of the Year" Award for their work on this Tucson water contamination case.  Mr. Sims earned his law degree, with honors, from the University of Texas School of Law.

**Peter Smith** brings a wealth of real estate and commercial expertise to Baron and Budd. Whether it's representing individuals or corporations in trial or arbitration, Mr. Smith works to reach the best solution for his clients. His practice focuses on cases involving property, partnership disputes, fraud, antitrust, breach of contract, breach of fiduciary duty, unfair business practices and copyright. In one of his notable cases, Mr. Smith worked on an action for the American Skiing Company, the owner of the Canyons Ski Resort in Park City, Utah, to compel the resort's landlord to agree to a lease in a $123 million transaction. He also worked on a trial team that successfully defended the estate of actor John Ritter in an action brought to compel specific performance of a contract to purchase three citrus farms owned by the Ritter estate.

**Natalie J. Velasco** began her career working as an adminstrative assistant at a plainittifs' law firm, where she later discovered a passion for the law. Ms. Velasco works with clients throuoghout the settlement process. She earned her J.D. at Southern Methodist University Dedman School of Law.

BARON & BUDD, P.C.®

# EXHIBIT 5

# COHELAN KHOURY & SINGER

A PARTNERSHIP OF PROFESSIONAL LAW CORPORATIONS

TIMOTHY D. COHELAN,* APLC
ISAM C. KHOURY, APC
DIANA M. KHOURY, APC
MICHAEL D. SINGER,• APLC

(* Also admitted in the District of Columbia)
(• Also admitted in Colorado)

**ATTORNEYS AT LAW**

**605 "C" STREET, SUITE 200
SAN DIEGO, CALIFORNIA 92101-5305**
Telephone: (619) 595-3001
Facsimile: (619) 595-3000

**www.ckslaw.com**

JEFF GERACI
J. JASON HILL†
KIMBERLY D. NEILSON

(† Also admitted in Illinois)
(∆ Of Counsel)

**TIMOTHY D. COHELAN** and **ISAM C. KHOURY** are the founding partners of
**COHELAN KHOURY & SINGER**, a civil litigation firm established in 1981. Since 1987,
COHELAN KHOURY & SINGER has specialized in class action cases and has been certified as
class counsel and lead counsel in numerous state and federal court cases throughout the United
States.  The firm has successfully prosecuted several class actions representing diverse groups of
victims including urban homeless entitled to emergency shelter; victims of a national health
insurance fraud scheme; retirees entitled to pension benefits; defrauded investors; and workers
entitled to back wages and expense reimbursement.

Cohelan Khoury & Singer has a broad array of experience in prosecuting class action
cases. The firm has successfully achieved a groundbreaking reversal of a class certification denial
in the published case of *Hicks v. Kaufman and Broad* (2001) 89 Cal.App.4th 908 and has
achieved statewide recognition for pro bono public interest work including successful cases
prosecuted on behalf of homeless persons in *Hoffmaster v. City of San Diego* (1997) 55
Cal.App.4th 1098.

Cohelan Khoury & Singer's public interest work has been recognized in numerous cases
including that of United States District Court Judge Milton Pollack, a Senior United States
District Court Judge for the Southern District of New York, who has publicly stated that he had
"seen no similar indication of a public service rendered by any group of lawyers in all the years I
have practiced law myself, which is for 38, or the 27 years that I have been on the bench." Judge
Pollack's comments came in connection with a class action case brought on behalf of thousands
of victims of health insurance fraud across the nation.

The firm has substantial trial experience in class action, representative, and complex
litigation, as well as individual matters. For example, the firm obtained a $3.5 million judgment
in a certified case against the State of Hawaii Child Support Enforcement Agency for wrongful
retention of child support monies. The agency was ordered to conduct an accounting and pay the
funds to the custodial parents. The firm has also represented large numbers of individuals
collectively for construction defect claims and major investment frauds, recovering monies
related to cracked slab foundations and defrauded investors of Ponzi schemes.

Cohelan Khoury & Singer's diverse practice currently includes representation of, among
others, employees contesting wage and hour violations as well as California gasoline wholesale
purchasers (dealers) for alleged antitrust violations of the Sherman Action relating to the
distribution of gasoline.

Cohelan Khoury & Singer has certified classes in heavily contested hearings against the following entities:

1. Atlantic Richfield Corporation, Chevron Corporation, Exxon Corporation, Mobil Oil Corporation, Shell Oil Company, Texaco, Inc., Tosco Corporation, Ultramar Corporation, and Unocal Corporation
2. Empire Blue Cross/Blue Shield
3. Pioneer Mortgage
4. Liebert Corporation
5. PaineWebber, Inc.
6. Dayton Hudson Corp.
7. Chartwell Financial
8. Cal Fed, Inc.
9. Jones, American Thrift
10. Service Technicians, Inc.
11. Kaufman & Broad
12. Washington Mutual Bank
13. Albertson's, Inc.
14. Wells Fargo Home Mortgage, Inc.
15. Brinker Restaurant Corp.
16. FedEx Ground Package System
17. Ethan Allen, Inc.
18. State of Hawaii Child Support Enforcement Agency
19. Victoria Apartments
20. AT&T Wireless Services, Inc.
21. Farmers Insurance Company
22. City of San Diego
23. Lewis Homes of California
24. Freedom Communications, Inc. d/b/a The Orange County Register
25. California Pizza Kitchen
26. Raytheon Company
27. Les Schwab Tire Centers of California, Inc.
28. Certified Class Counsel in close to 100 settlement classes

COHELAN KHOURY & SINGER has obtained numerous verdicts, judgments, or settlements since September 1993. Listed below are a few of the more recent examples of cases the firm has played a central role in the resolution of and which have received final approval by the Court:

- *Higgins, et al. v. Kohl's Department Stores, Inc., et al.*, San Diego Superior Court Case No. GIC832853 [consumer claims relating to sweepstakes contest];
- *Erickson, Maddox v. Bath & Body Works*, San Diego Superior Court Case No. GIC823899 [rest and meal period claim by retail employees];
- *Robles v Del Taco, Inc.*, Orange County Superior Court Case No.03CC00529 [rest, meal, and off-the-clock claims by restaurant employees];
- *Hayhurst et al. v. Barclays Global Investors USA, Inc.*, San Francisco Superior Court, Case No. CGC 05-443473 [OT misclassification claim by IT employees];
- *Mabry v. Pete's Connection*, Orange County Superior Court, Case No. 04CC00509 [OT claim by piece rate installers];

- *Bennett v. Countrywide*, San Diego Superior Court, Case No. GIC840981 [expense reimbursement claim by commission employees];
- *Huang v. SBC Services, Inc., et al.*, United States District Court Case No. 06-CV-2238 [OT misclassification claim by IT employees];
- *Evans v. Washington Mutual Bank*, Orange County Superior Court Case No. 02CC15415 [expense reimbursement and wage deduction claim by commission employees];
- *Gonzalez, et al. v. Freedom Communications, Inc. d/b/a The Orange County Register*, Orange County Superior Court Case No. 03CC08756 [home delivery carriers misclassified as "independent contractors"];
- *Aravena v. Cisco Systems, Inc.*, Orange County Superior Court Case No. 07CC01367 [OT misclassification claim by IT employees]

**TIMOTHY D. COHELAN**, Founding Partner, author of *Cohelan on California Class Actions* (Thomson-West, 1997-2011, updated annually), is the son of the late Jeffery Cohelan, former California Congressman. He is a 1974 graduate of California Western School of Law, where he was a law review editor. Mr. Cohelan served as an Officer in the U.S. Navy from 1968 to 1971 and received a B.A. from the University of Arizona in 1967. Mr. Cohelan was admitted to the State Bar of California in 1974, and was admitted to the Bar in the District of Columbia in 1996. He also served as the Chairman of the San Diego Coast Regional Commission from 1978 to 1981. From 1982 to 2006 Cohelan served the San Diego Superior Court as a Judge Pro Tem, hearing and ruling on hundred of matters during his service.

Timothy Cohelan was named a "California Lawyer of the Year" by California Lawyer Magazine (Clay Award) in 1996.  Mr. Cohelan's memberships include former member of the Board of Governors of the Association of Business Trial Lawyers for San Diego County, member of the American Bar Association and the Consumer Attorneys of California and San Diego County Bar Association. His main areas of practice include class action, civil, wage and hour and antitrust cases.

Cohelan currently serves as a Board Member of San Diego Volunteer Lawyer Program, a non-profit successor of Legal Aid. As an advocate for the homeless, Cohelan received San Diego County Bar Association honors for community service in connection with his work on behalf of SDVLP on an important class action case impacting homeless shelter locations.

**ISAM C. KHOURY,** Founding Partner, is a 1970 graduate of the University of California at San Diego and received a law degree from Hastings School of Law in 1973. Mr. Khoury is a member of the State Bar of California, admitted in 1974, the San Diego County Bar Association, Consumer Attorneys of San Diego and Consumer Attorneys of California. He has successfully litigated numerous complex civil matters to verdict, jury and non-jury.  His main areas of practice include civil tort litigation, personal injury, business torts, antitrust and class action cases.

In recent years, Mr. Khoury has emphasized wage and hour class action litigation, including all aspects of overtime eligibility and the evolving nature of California and federal employment law. He has been approved as a continuing legal education lecturer and has participated in seminars on class action wage and hour issues, the complexities of mediation, and the procedural requirements involved in class action settlements.

**DIANA M. KHOURY,** Partner, received a law degree from Western State University in 1986 and is a graduate of San Diego State University, where she received her B.S. in 1975. She is a member of the State Bar of California, admitted in 1987. Ms. Khoury is also a member of the San Diego County Bar Association, Consumer Attorneys of San Diego, Consumer Attorneys of California, American Bar Association and The Association of Trial Lawyers of America. She has served as on several committees with the San Diego County Bar Association and Consumer Attorneys of San Diego and is on the Board of Directors for the Consumer Attorneys of San Diego.

Upon being admitted to the State Bar of California, a major focus of Ms. Khoury's practice has been on consumer rights litigation, and has included civil tort litigation, personal injury, and business torts. Throughout her career, she has taken numerous jury trials to verdict. She has been a lecturer for Mandatory Continuing Legal Education regarding class actions. Ms. Khoury currently represents employees in wage and hour class actions, where her recognized specialty is class action resolution.

**MICHAEL D. SINGER**, Managing Partner, is a 1984 graduate of U.C. Hastings Law School. He graduated magna cum laude from San Francisco State University in 1980 with a B.A. in English. He was admitted to the State Bar of California in 1984 and the State Bar of Colorado in 2001. He is a member of the California Employment Lawyers Association (CELA) and the San Diego County Bar Association. He is a contributing author on California wage and hour law for the CEB publication entitled *California Wage and Hour Law: Compliance and Litigation*. In 2011, he served on the LAS-ELC Board of Directors. His main areas of practice include employment wage and hour, consumer, and unfair competition class actions and appellate practice.

Mr. Singer regularly contributes amicus curiae briefs on employment issues for CELA and also serves as wage and hour amicus liaison for CELA, reviewing and coordinating amicus filings on wage and hour issues in the California Supreme Court and Courts of Appeal. With regard to CELA, he has acted as amicus curiae liaison, coordinating, drafting or co-drafting amicus letters and briefs on a wide range of labor law issues in the rapidly developing decisional law, supporting Review in the Supreme Court, and publication or depublication of Court of Appeal decisions in the following cases since 1/1/08: *Chindarah v. Pick up Stix*, 171 Cal. App. 4th 796 (2009); California Superior Court Case No. S171864 [regarding propriety under Labor Code section 206.5 and California Rules of Court of settling with absent class members without court supervision prior to class certification] (Supporting Petition for Review; Review Denied), *Lu v Hawaiian Gardens Casino*, California Supreme Court Case No. S171442 [whether a private cause of action exists under the Labor Code for tip pooling violations](Review Granted), *Brinkley v Public Storage*, 198 P.3d 1087 (2009); California Supreme Court Case No. S168806 [denying class certification of rest and meal period claims](Review Granted), *Estrada v. Fedex Ground Package System*, 154 Cal. App. 4th 1 (2007); California Supreme Court Case No. S156595 [judgment finding drivers entitled to expense reimbursement] (supporting opposition to Review; Review denied), *Group Brewer v Premier Golf*, 168 Cal. App. 4th 1243 (2008); California Supreme Court Case No. 169666 [holding punitive damages unavailable in connection with wage claims] (supporting Petition for Review; Review Denied), *Christler v. Express Messenger*; California Supreme Court Case No. S171439 [jury verdict finding employees independent contractors] (supporting Petition for Review; Review Denied), *Watkins v. Wachovia*, 172 Cal. App. 4th 1576 (2009); California Court of Appeal Case No. B199982 [affirming dismissal of appeal following denial of class certification based on employee severance

agreement resolving claims (depublication request pending), *Ghazaryan v. Diva Limousine*, 169 Cal. App. 4th 1524 (2008); California Court of Appeal Case No. B201509 [reversing class certification denial] (publication request granted), *Bufil v Dollar Financial Group*, 162 Cal. App. 4th 1193 (2008); California Court of Appeal Case No. A118143 [reversing certification denial of meal period claims applying collateral estoppels] (publication request granted) *Kurian v. U.S. Mortgage Capital*, California Court of Appeal Case No. B201013 [regarding propriety of wage compromises under Labor Code section 206.5] (publication request denied) *BCBG Overtime Cases*, 163 Cal. App. 4th 1293 (2008); California Supreme Court Case No. S165348 [propriety of defendant bringing preemptive motion to deny class certification] (depublication request denied); *Kenny v Supercuts*, 252 F.R.D. 641 (2008); United State District Court Case No. C 06-07521 CRB, *Salazar v Avis*, 251 F.R.D. 529 (2008), United State District Court Case No. 07-CV-0064-IEG-WMC [denying certification of rest and meal period claims] (request that 9th Circuit Court of Appeals certify question to the California Supreme Court denied), and *Methodist Hospital v Superior Court*, California Court of Appeal Case No. B208295 [ruling a private right of action exists for rest and meal period claims under Labor Code section 226.7] (supporting opposition to Petition for Writ; Writ denied).

Mr. Singer is a contributor to the Los Angeles Daily Journal, having authored articles on the California Court of Appeal decision in *Parris v. Superior Court* regarding communications with absent class members (May, 2003), SB 796 (Dunn, D-Garden Grove), California's Private Attorney General Law providing employees a private right of action against employers for civil penalties under the Labor Code (October 2003), the California Court of Appeal decision in *Bell v. Farmers Ins. Exch.* and its guidance for the use of statistical sampling and extrapolation to prove aggregate class-wide damages (February 2004), and the then-pending Supreme Court decision regarding Sav-On and Overtime Class Suits.

He is an MCLE lecturer on class action procedure and wage and hour issues and has argued appeals in the Second, Third, and Ninth Federal Circuit Courts of Appeals, as well as the Second and Fourth California District Courts of Appeal. Published decisions include *Hicks v. Kaufman and Broad Home Corp.* (2001) 89 Cal.App.4th 908 (reversing the denial of certification of a class of home buyers for construction defects), *Hicks v. Superior Court* (2004) 115 Cal.App.4th 77 (challenging implied construction warranty disclaimers), *Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co.* (1998) 68 Cal.App.4th 856 (defending challenge to attorney disqualification),and *Save Our NTC, Inc. v. City of San Diego* (2003) 105 Cal.App.4th 285 (challenging private development of former naval training center). He also contributed to the briefing of *Aguilar v. Atlantic Richfield, et al.* (2001) 25 Cal.4th 826 (summary judgment of antitrust claim of certified class of 20 million California drivers).

**JEFF GERACI**, Of Counsel, is a 1982 graduate of Pitzer College with a degree in Sociology.  He is a 1990 graduate of the University of San Diego School of Law, and has practiced employment law for over seventeen years.  He has handled matters in California state and federal trial and appellate courts, and before many administrative agencies, including the California Division of Labor Standards Enforcement, the Department of Fair Employment and Housing, the Equal Employment Opportunity Commission, the California State Personnel Board, the California Board of Psychology, and the California State Commission for Teacher Credentialing.

Mr. Geraci has provided counseling and representation in all areas of employment law, including wrongful termination, employment discrimination, sexual harassment, and wage and hour laws.  His practice is now focused on class actions, including wage and hour class action

litigation and consumer actions.

Mr. Geraci's published decisions include *McAlindin v. County of San Diego* (1999) 192 F.3d 1226 [reversing summary judgment in a disability discrimination case] and *Araiza v. National Steel and Shipbuilding* (S.D. Cal. 1997) 973 F. Supp. 963 [denying mandatory arbitration of employment claims under a collective arbitration agreement].

Mr. Geraci is a member of the Labor and Employment Law sections of the California and San Diego County Bar Associations, and has served as Editor of the Employment Law column for the Consumer Attorneys of San Diego monthly publication, *Trial Bar News*.  He is a past recipient of the Wiley W. Manuel Award for Pro Bono Service.


**J. JASON HILL**, Attorney, is a 1992 graduate of the University of Illinois at Ubrana-Champaign and holds a B.A. in Philosophy, Political Science and Communications. In 1995, he received his J.D. degree from California Western School of Law, where he was a member of the Law Review an International Law Journal, as well as editor of the Telecommunications Law Forum. Currently, Mr. Hill is admitted to the bar in both California and Illinois, and is a broker licensed by the California Department of Real Estate. He maintains memberships not only with the San Diego County Bar Association, but also the National Association of Realtors, the California Association of Realtors and the San Diego Association of Realtors.

Prior to joining Cohelan Khoury & Singer, Hill represented large institutional clients in a variety of civil litigation settings, including insurance coverage, employment law, health care law, general and professional liability, as well as, premises and product liability claims. He has particular emphasis on all aspects of professional liability claims in a healthcare setting, as well as claims brought pursuant to the Emergency Medical Treatment and Active Labor Act (EMTALA) and the Elder Abuse and Dependent Adult Civil Protections Act (EADACPA). Mr. Hill is also an accomplished appellate practitioner and has briefed and/or argued over 40 matters in both state and federal courts of appeal, yielding several published decisions on a range of legal issues.


**KIMBERLY D. NEILSON**, Attorney, is a 2001 graduate of the University of San Diego School of Law. She graduated with honors and received a B.A. in Psychology from the University of Tulsa in 1998. While at the University of Tulsa, she interned for the Northern District of Oklahoma Probation Office in Tulsa, Oklahoma. She is a member of the State Bar of California, admitted in 2001. Ms. Neilson is a member of the San Diego County Bar Association, San Diego Lawyers Club, California Employment Lawyers Association and Consumer Attorneys of San Diego. She is active in the San Diego legal community, having chaired a committee for the San Diego County Bar Association and served on a committee for the San Diego Lawyers Club and volunteered at the annual Women's Resource Fair.

Her main areas of practice include civil litigation, employment, wage and hour and consumer class actions. She has been extensively involved in pro bono activities. Ms. Neilson has participated in a class action trial advocating on behalf of low-income tenants for local rent control ordinance violations which resulted in a verdict on the tenants' behalf.  She also represented the rights of San Diego's homeless residents, resulting in a settlement with the City of San Diego which prohibited the City from targeting homeless persons for illegal lodging tickets under Penal Code Section 467(j). She currently volunteers as a Court Appointed Special Advocate (C.A.S.A.) with Voices for Children, serving as an advocate for San Diego County foster youth.