1  Jennie Lee Anderson, State Bar No. 203586
2  Lori E. Andrus, State Bar No. 205816
   ANDRUS ANDERSON LLP
3  155 Montgomery Street, Suite 900
   San Francisco, CA 94104
4  Telephone:  (415) 986-1400
   Facsimile:  (415) 986-1474
5  jennie@andrusanderson.com
   lori@andrusanderson.com

6  James R. Patterson, State Bar No. 211102
   Alisa A. Martin, State Bar No. 224037
7  PATTERSON LAW GROUP
   402 West Broadway, 29th Floor
8  San Diego, CA 92101
   Telephone:  (619) 756-6990
9  Facsimile:  (619) 756-6991
   jim@pattersonlawgroup.com
10 alisa@pattersonlawgroup.com

11 *Co-Lead Interim Class Counsel for the Proposed Class*

12 *[Additional Counsel Listed On Signature Page]*

13

14              UNITED STATES DISTRICT COURT

15          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

16 | In Re: EASYSAVER REWARDS | CASE NO.: 09-CV-02094-AJB (WVG) |
17 | LITIGATION | |
   | | **MEMORANDUM OF POINTS AND** |
18 | | **AUTHORITIES IN SUPPORT OF** |
   | | **FINAL APPROVAL OF CLASS** |
19 | This Document Relates to all Actions | **ACTION SETTLEMENT AND** |
   | | **PLAINTIFFS' UNOPPOSED MOTION** |
20 | | **FOR (1) ATTORNEYS' FEES AND** |
   | | **COSTS AND (2) INCENTIVE** |
21 | | **AWARDS** |
22 | | |
   | | Date:  January 28, 2013 |
23 | | Time:  2:00 p.m. |
   | | Judge:  Anthony J. Battaglia |
24 | | Courtroom: 12 |
25 | | **CLASS ACTION** |
26

27

28

## **TABLE OF CONTENTS**

I.    INTRODUCTION.............................................................................................. 1

II.   THE SETTLEMENT WARRANTS FINAL APPROVAL. ................................. 3

   A.   The Proposed Settlement Is Fair Because It Is The Product of Extensive Arms-Length
       Negotiation .............................................................................................. 4

   B.   Relevant Criteria Support Final Approval Of The Proposed Settlement. ........................ 4

   C.   The Settlement Offers Substantial Benefits, While Continued Litigation Poses
       Considerable Risks. .................................................................................... 5

      1.    Risk That The Class Might Not Be Certified............................................. 7

      2.    The Amount Offered In Settlement ....................................................... 8

      3.    Extent Of Discovery And The State Of The Proceedings ............................. 9

      4.    The Experience And Views Of Counsel ................................................ 10

      5.    The Presence Of A Government Participant........................................... 10

      6.    Absence Of Collusion .................................................................... 11

      7.    Reaction From The Class ................................................................ 11

   D.   The Request For Attorneys' Fees And Costs Is Reasonable And Well-Supported. ....... 11

   E.   The Requested Awards To The Class Representatives Should Be Granted. .................. 12

   F.   The Sole Objector In The Case Lacks Standing And The Objection Has No Merit....... 13

      1.    The Perryman Objection is Not a Bona Fide Objection. ............................ 14

      2.    The Objection Should Be Dismissed For Lack Of Standing Because a Decrease in
          Fees Will Not Improve the Objector's Position—Save for Mr. Frank's Ideological
          Agenda.................................................................................... 16

      3.    The Objection Should Be Overruled. ................................................... 17

         a)    The Settlement Is Fair And The Objector Has Not Demonstrated Otherwise..... 17

         b)    This Is Not A Coupon Settlement And The Fees And Cost Sought Are
            Reasonable And Well Supported. .......................................................... 18

         c)    The *Cy Pres* Award Complies With Ninth Circuit Standards. .................... 21

      4.    The Objector Should Be Required To Post A Bond On Appeal. ................... 23

III.  CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A&M Records, Inc. v. Napster, Inc.,*
  239 F.3d 1004 (9th Cir. 2001) .................................................................. 24

*Azizian v. Federated Dep't Stores, Inc.,*
  499 F.3d 950 (9th Cir. 2007) .................................................................... 25

*Barnes v. FleetBoston,*
  No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) ................ 25

*Baxter v. Intelius,*
  No. SACV 09-1031-AG, 2010 WL 3791487 (C.D. Cal. Sep. 16, 2010) .......................... 6

*Berry v. Webloyalty.com, Inc.,*
  No. 10-CV-1358-H (CAB), 2011 WL 1375665 (S.D. Cal. Apr. 11, 2011) ........................ 6

*Blessing v. Sirius XM Radio, Inc.,*
  No. 11-3696-CV, 2012 WL 6684572 (2d Cir. Dec. 20, 2012).................................. 15

*Boyd v. Bechtel Corp.,*
  485 F. Supp. 610 (N.D. Cal. 1979).......................................................... 9

*Catala v. Resurgent Capital Servs. L.P.,*
  Civil No. 08cv2401 NLS, 2010 WL 2524158 (S.D. Cal. June 22, 2010) ........................ 22

*Churchill Vill., L.L.C. v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004) .................................................................. 19

*CLRB Hanson Indus., LLC v. Weiss & Assocs., PC,*
  465 Fed. Appx. 617 (9th Cir. 2012) .......................................................... 19

*Dennis v. Kellogg Co.,*
  697 F.3d 858 (9th Cir. 2012) .......................................................... 22, 23

*Donovan v. Sovereign Sec., Ltd.,*
  726 F.2d 55 (9th Cir. 1984) .................................................................. 24

*Ellis v. Naval Air Rework Facility,*
  87 F.R.D. 15 (N.D. Cal 1980) ................................................................ 10

*Fernandez v. Victoria Secret Stores, LLC*, Case No. 06-cv-04149 MMM (SHx), 2008 U.S.
  Dist. LEXIS 123546, at * 38-40 (C.D. Cal. 2008) .......................................... 20

*Ferrington v. McAfee, Inc.,*
  No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ............................ 6

*Fleury v. Richemont North America, Inc.,*
  No. C-05-4525 EMC, 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) ...................... 20, 21, 25

*Fulford v. Logitech, Inc.*,
    No. C-08-2041-MMC, 2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) .................. 7

*Galloway v. Kan. City Landsmen, LLC*,
    No. 4:11-1020-cv-W-DGK, 2012 U.S. Dist. LEXIS 147148 (W.D. Mo. Oct. 12, 2012) ..... 21

*Garner v. State Farm Auto Ins. Co.*,
    No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Ap. 22, 2010) .................. 4, 11

*Glasser v. Volkswagen of Am., Inc.*,
    645 F.3d 1084 (9th Cir. 2011) .................................................................... 3, 17

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................... 4, 12, 18

*Harris v. Vector Mktg. Corp.*,
    No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ....................................... 22

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ................................................................. 22

*In re Apple Inc. Sec. Litig.*,
    No. 5:06-CV-05208-JF (HRL), 2011 WL 1877988 (N.D. Cal. May 17, 2011) ............. 15, 16

*In re Broadcom Corp. Sec. Litig.*,
    Case No. SACV 01-275 DR, 2005 U.S. Dist. LEXIS 45656 (C.D. Cal. Dec. 9, 2005) .. 25

*In re EasySaver Rewards Litig.*,
    737 F. Supp. 2d 1159 (S.D. Cal. Aug. 13, 2010) ................................................. 6

*In re HP Inkjet Printer Litig.*,
    No. 5:05-cv-3580 JF, 2011 WL 1158635 (N.D. Cal. Mar. 29, 2011) ................................... 21

*In re Initial Pub. Offering Sec. Litig.*,
    728 F. Supp. 2d 289 (S.D.N.Y. 2010) ........................................................ 24, 25

*In re Ins. Brokerage Antitrust Litig.*,
    MDL No. 1663, 2007 WL 1963063 (D.N.J. Jul. 2, 2007) .................................... 24

*In re MagSafe Apple Power Adapter Litigation*,
    No. C 09–01911 JW 2012 WL 2339721 (N.D. Cal. May 29, 2012) ........................... 15

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................ 18

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................. 19

*In re Online DVD Rental Antitrust Litigation*
    (N.D. Cal.), No. 4:09-md-02029-PJH ....................................................... 15

*In re VistaPrint Corp. Mktg. and Sales Practices Litig.,*
  MDL No. 4:08-md-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009), *aff'd, Bott v. Vistaprint USA, Inc.,* 392 Fed. Appx. 327 (5th Cir. 2010).......................................................... 6

*In re Wireless Facilities, Inc. Sec. Litig. II,*
  253 F.R.D. 607 (S.D. Cal. 2008) .......................................................................... 4

*Johnson v. Gen. Mills, Inc.,*
  276 F.R.D. 519 (C.D. Cal. 2011)........................................................................... 8

*Keithly v. Intelius Inc.,*
  764 F. Supp. 2d 1257 (W.D. Wash. 2011) ............................................................ 6

*Kinsley v. Network Assocs., Inc.,*
  312 F.3d 1123 (9th Cir. 2002) ............................................................................ 17

*Knight v. Red Door Salons, Inc.,*
  No. C-08-1520-SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................... 4

*Lane v. Facebook, Inc.,*
  696 F.3d 811 (9th Cir. 2012) ....................................................................... 22, 23

*Lonardo v. Travelers Indem. Co.,*
  706 F. Supp. 2d 766 (N.D. Ohio 2010) .......................................................... 15, 16

*Mazza v. Am. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) ............................................................................... 8

*Nachshin v. AOL, LLC,*
  663 F.3d 1034 (9th Cir. 2011) ..................................................................... 22, 23

*Officers for Justice v. Civil Serv. Comm'n,*
  688 F.2d 615 (9th Cir. 1982).............................................................................. 3

*Pecover v. Electronic Arts, Inc.,*
  No. 4:08-cv-02820 (N.D. Cal.)........................................................................... 15

*Perkins v. Standard Oil Co.,*
  487 F.2d 672 (9th Cir. 1973).............................................................................. 24

*Radosti v. Envision EMI, LLC,*
  760 F. Supp. 2d 73 (D.D.C. 2011)....................................................................... 21

*Rodriguez v. West Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009) ..................................................................... *passim*

*Shames v. Hertz Corp.,*
  No. 07-VC-2174-MMA(WMC), 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012)........ 19, 20, 21

*Six (6) Mexican Workers v. Ariz. Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990) ...................................................................... 2, 22

*Sobel v. Hertz Corp.*,
    No. 3:06-CV-00545-LRH-RAM, 2011 WL 2559565 (D. Nev. Jun. 27, 2011) .................... 21

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ......................................................................... 3, 5, 13, 14

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1970 (2012) ...................................... 8

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) .......................................................................................... 20

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) ....................................................................................... 5

*Weeks v. Kellogg Co.*,
    No. CV 09-08102, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011)............. 15, 23

*Wolford v. Gaekle* (*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*),
    33 F.3d 29 (9th Cir. 1994) ......................................................................................... 17, 25

*Young v. Polo Retail, LLC,* 2007 U.S. Dist. LEXIS 27269 (N.D. Cal. 2007)............................ 20

*Zucker v. Occidental Petroleum Corp.*,
    192 F.3d 1323 (9th Cir. 1999) *cert. denied*, 146 L. Ed. 2d 481, 120 S. Ct. 1671 (2000)...... 17

**STATUTES**

28 U.S.C. § 1712(b)(2) ................................................................................................ 21

28 U.S.C. § 1715 ........................................................................................................ 11

28 U.S.C. § 1961 ........................................................................................................ 24

MCL 4th § 21.61 .......................................................................................................... 3

MCL 4th § 21.62 .......................................................................................................... 9

**OTHER AUTHORITIES**

Fed. R. App. P. Rule 7 ............................................................................................... 24

Fed. R. Civ. P. Rule 23 ................................................................................................. 3

Fed. R. Civ. P. Rule 23(h)(2)..................................................................................... 17

http://www.ca9.uscourts.gov/content/faq.php ........................................................ 25

http://www.federalreserve.gov/releases/h15/data.htm ........................................... 24

# I.      INTRODUCTION.

Plaintiffs and Class Representatives Josue Romero, Gina Bailey, Jennifer Lawler, John Walters, Daniel Cox, Christopher Dickey, Grant Jenkins and Bradley Berentson seek an order from this Court granting final approval of the preliminarily-approved class action settlement (the "Settlement") with Provide Commerce, Inc. and Regent Group, Inc. d/b/a Encore Marketing International and Encore Marketing International, Inc. (collectively "Defendants"), and granting Plaintiffs' Unopposed Motion for (1) Attorneys' Fees and Costs and (2) Incentive Awards ("Motion for Attorneys' Fees, Costs and Incentive Awards").

With the assistance of the Honorable Edward Infante (Ret.), the parties crafted a fair and equitable nationwide settlement that provides substantial benefits to approximately 1.3 million consumers who placed an order on a Provide Commerce website, sought to obtain a $15 off "Thank You" credit from Provide Commerce, and were subsequently enrolled in and charged fees in connection with EasySaver Rewards, RedEnvelope Rewards, or Preferred Buyers Pass (collectively "Rewards Program") from August 19, 2005 to the present (the "Class").[1]  With an estimated value of more than $38 million, the proposed Settlement provides meaningful relief to all Class members.   Specifically, the Settlement provides that the Defendants will establish a non-reversionary fund ("Cash Fund") of $12.5 million from which eligible Class members have been given an opportunity to claim a full refund of monthly fees charged in connection with the Rewards Program by simply attesting that they did not intend to enroll in the Reward Program.   Every Class member will also automatically receive a fully transferrable $20 credit good for online purchases on any of the following Provide Commerce websites: Proflowers.com, RedEnvelope.com, Berries.com and CherryMoonFarms.com websites ("Merchandise Code").   They are not required to assert a claim or do anything whatsoever to receive this direct benefit, and there are a number of items available at these

---

[1] A more detailed description of the factual allegations is set forth in Plaintiffs' Memorandum of Points and Authorities In Support of Unopposed Motion for Preliminary Approval ("Preliminary Approval Motion") (Dkt. No. 248), and the Declaration of Jennie Lee Anderson in Support of Unopposed Motion for Preliminary Approval ("Anderson Prelim. App. Decl.") (Dkt. No. 248-2).

1    websites for less than $20.

2        This favorable settlement is the result of Plaintiffs' and Class Counsel's aggressive

3    litigation of the case in the face of extraordinary risks for a more than three years.  To this day,

4    there remains a striking split among the district courts about whether the conduct complained of

5    here, *i.e.*, the online marketing practice of retailers sharing consumers' billing information,

6    including their debit and credit card numbers and home addresses, for ongoing "reward club"

7    type memberships, is even actionable, and the issue is pending before the Ninth Circuit Court

8    of Appeals, rendering the risks of continuing litigation all the more acute.

9        The Settlement is free of collusion and results from arms' length negotiations.  Only

10   after at least **six** separate settlement conferences, including two private mediations, did the

11   parties agree to the Settlement.

12       The Settlement has also been widely accepted by the Class.  Each of the 1,304,868

13   Class members received direct notice by email and/or U.S. Mail advising them of their rights

14   under the Settlement, including their right to make a claim from the Cash Fund, opt out of the

15   settlement, or be heard by the Court.[2]  Of the more than 1.3 million Class members who

16   received direct notice, **only one** Class member filed an objection to the Settlement and only 39

17   have requested to be excluded from the Class.  *See* Keough Decl., ¶¶ 6-7.  In other words,

18   99.99% of the Class members are participating in the Settlement.

19       Notably, the sole Class member who filed an objection also filed a claim under the

20   Settlement and **will receive a 100 percent** refund of the monthly charges he paid for the

21   Rewards Program, and receive the $20 Merchandise Code. *See* Declaration of Jennifer M.

22   Keough Regarding Brian Perryman and Aaron Meyer ("Suppl. Keough Decl."), ¶ 8.  The

23   objection has no merit and should be overruled.  Because the objecting Class member will

24   _____

25       [2] This Court already determined that the proposed notice program meets the requirements of due process and
     applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient

26   notice to all individuals entitled thereto.  *See* Order Granting Preliminary Approval of Glass Settlement and
     Provisional Class Certification ("Preliminary Approval Order") at 2.  Consistent with that plan, the Court-

27   appointed administrator, Garden City Group, sent direct notice via email and/or U.S. Mail to approximately 1.3
     million Class members in accordance with the approved plan. *See* Keough Decl., ¶ 4-5.

28

1   receive a full refund of monthly Reward Program fees paid, and his recovery will not be

2   reduced in any way by the Court's granting of Plaintiff's Motion for Attorneys' Fees, Costs and

3   Incentive Awards, he lacks standing to object to the fees, costs and awards requested. *Glasser*

4   *v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011) ("[A] class member must be

5   'aggrieved' by the fee award to have standing to challenge it.").

6        Nothing negative has happened since the Court preliminarily approved the Settlement.

7   Plaintiffs now seek an order granting final approval of the Settlement and granting Plaintiffs'

8   Motion for Attorneys' Fees, Costs and Incentive Awards, filed on November 26, 2012 (Dkt.

9   Nos. 255-255-1).

10  **II.    THE SETTLEMENT WARRANTS FINAL APPROVAL.**

11       When faced with a motion for final approval of a class action settlement under Rule 23

12  of the Federal Rules of Civil Procedure, a court's inquiry is whether the settlement is "fair,

13  adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  A merits

14  final approval, when "the interests of the class as a whole are better served by the settlement

15  than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61, at

16  480 (2010).

17       Although the Court possesses "broad discretion" in issuing a final determination that a

18  proposed class action settlement is fair, "the court's intrusion upon what is otherwise a private

19  consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

20  necessary to reach a reasoned judgment that the agreement is not the product of fraud or

21  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as

22  a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv.*

23  *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  The Ninth Circuit has "long deferred to the

24  private consensual decision of the parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965

25  (9th Cir. 2009) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).  "[I]n

26  evaluating whether the settlement is fair and adequate, the Court's function is not to second

27  guess the settlement's terms." *Garner v. State Farm Auto Ins. Co.*, No. CV 08 1365 CW

28

(EMC), 2010 WL 1687832, *8 (N.D. Cal. Ap. 22, 2010).  In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998).

### A.   The Proposed Settlement Is Fair Because It Is The Product of Extensive Arms-Length Negotiation

The proposed Settlement was negotiated at arm's length over the course of at least six settlement sessions and with the able and considerable assistance of the Honorable Edward Infante (Ret.).  *See* Anderson Prelim. App. Decl., ¶¶ 2-3.  "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair."  *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citations omitted); *see also Garner*, 2010 WL 1687832 at *13 ("Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable."); *Knight v. Red Door Salons, Inc.*, No. C-08-1520-SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) (same).

The settlement negotiations began on December 15, 2010, when the Court convened an Early Neutral Evaluation Conference.  (Dkt. No. 90).  On May 18, 2011, the parties conducted a day-long mediation session with the Honorable Leo S. Papas (Ret.), but were unable to come to an agreement.  On May 20, 2011, June 20, 2011 and October 7, 2011, Magistrate Judge Gallo convened three additional settlement conferences.  (Dkt. Nos. 109, 131, 198).  After these five failed attempts, on April 9, 2012, the parties conducted a full-day mediation with the Judge Infante, during which the parties reached a settlement in principle.  The parties continued to disagree on several terms, however, and vigorously negotiated the terms for several more weeks, until June 13, 2012, when the parties entered into the proposed Settlement.

### B.   Relevant Criteria Support Final Approval Of The Proposed Settlement.

In deciding whether to grant final approval to a class action settlement, courts consider several factors, including:

[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement.

*Rodriguez*, 563 F.3d at 963.  The list of factors is not exhaustive and should be tailored to each case.  *Staton,* 327 F.3d at 959.  The relevant criteria support final approval of the proposed Settlement.

    **C.**    **The Settlement Offers Substantial Benefits, While Continued Litigation Poses Considerable Risks.**

The benefits of settlement and plaintiffs' chances of success are typically evaluated together.  *See, e.g.*, *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) ("An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement.") (internal quotation marks omitted).  Although Plaintiffs have thoroughly developed the factual and legal bases for their claims and have gathered substantial evidence showing the conduct alleged was deceptive and illegal, one cannot ignore significant risks in continuing the litigation had settlement not occurred.[3]

The risks associated with continued litigation are perhaps best illustrated by the sharp disagreement among the district courts of whether Plaintiffs' claims are even actionable.  This case is one of several federal lawsuits challenging the online marketing practice of retailers sharing consumers' billing information for purposes of ongoing "reward club" type memberships, many of which have been dismissed by the district courts on the grounds that the offer details and disclosures associated with enrollment in similar online reward clubs are not deceptive as a matter of law.  *See Berry v. Webloyalty.com, Inc.,* No. 10-CV-1358-H (CAB), 2011 WL 1375665, at *14 (S.D. Cal. Apr. 11, 2011); *In re VistaPrint Corp. Mktg. and Sales Practices Litig.,* MDL No. 4:08-md-1994, 2009 WL 2884727, at *12 (S.D. Tex. Aug. 31, 2009), *aff'd, Bott v. Vistaprint USA, Inc.,* 392 Fed. Appx. 327, 328 (5th Cir. 2010); *Baxter v.*

---

[3] *See* Declaration of Hon. Edward A. Infante (Ret.) In Support Of Final Approval Of The Proposed Class Settlement ("Infante Decl."), ¶ 4, 6-9.

1  *Intelius*, No. SACV 09-1031-AG (MLGx), 2010 WL 3791487 (C.D. Cal. Sep. 16, 2010).  *But*

2  *see In re EasySaver Rewards Litig.,* 737 F. Supp. 2d 1159, 1172 (S.D. Cal. Aug. 13, 2010)

3  (finding the overall process may be deceptive; upholding plaintiffs' claims); *Keithly v. Intelius*

4  *Inc.*, 764 F. Supp. 2d 1257, 1267-69 (W.D. Wash. 2011) (same); *Ferrington v. McAfee, Inc.*,

5  No. 10-CV-01455-LHK, 2010 WL 3910169, at *9-11 (N.D. Cal. Oct. 5, 2010) (same).

6  Importantly, the *WebLoyalty* matter is on appeal before the Ninth Circuit following the district

7  court's order granting defendant's motion to dismiss plaintiffs' claims in their entirety and the

8  outcome is impossible to predict.  Continued litigation presents substantial risk that Class

9  members' claims could be curtailed or eliminated altogether.  *See* Infante Decl., ¶¶ 7-9.

10     Faced with these substantial risks, the benefits to the Class are overwhelmingly

11  favorable.  The proposed settlement Class consists of

12 
13     All persons who, between August 19, 2005 and the date of entry of the
      Preliminary Approval order, placed an order with a website operated by Provide
      Commerce, Inc. and were subsequently enrolled by Regent Group Inc. dba
14     Encore Marketing International, Inc. in one or more of the following
      membership programs:   EasySaver Rewards, RedEnvelope Rewards, or
15     Preferred Buyers Pass.

16  Anderson Prelim. App. Decl., Ex. 1 ("Settlement Agreement And Release"), at 4.

17     For a release of claims and upon final approval, Provide Commerce will directly email

18  *every Class Member* $20 in the form of a Merchandise Code.  Class members were not

19  required to submit a claim form to be eligible to receive this code.  The Merchandise Codes

20  will be fully transferable and valid for one year for online purchases at Proflowers.com,

21  RedEnvelope.com, Berries.com and CherryMoonFarms.com.  *Id.*, Ex. 1 at 3, 5.

22     The Merchandise Code is particularly relevant and valuable here because a primary

23  allegation in the lawsuit is that every single Class member was offered, and requested, a $15

24  "Thank You" gift credit that was not received on the anticipated terms.  Under the Settlement,

25  not only will Class members receive the benefit originally requested—the benefit of their

26  bargain—but in a higher amount and in a fully transferrable form, thus substantiating its cash

27  value.  At the time of settlement, these websites offered an array of items under $20, but Class

28

1  members may use the money towards larger purchases as well.  *Id.*, ¶ 15.

2        As an additional benefit, the Settlement requires Defendants to fund a $12.5 million

3  Cash Fund.  All eligible Class members were given the opportunity to submit claims for a cash

4  refund of all previously unreimbursed monthly membership fees.  To make a claim for a cash

5  refund, Class members were merely required to verify that they did not intend to enroll in the

6  Reward Program and provide their contact information for the refund.  *See, id.*, Ex. 1, at 19.

7  Class members were ***not*** required to submit documents or any proof of payment to receive a

8  cash refund.  *Id.*  All Class members who submitted a claim are expected to receive the full

9  value of their claims.  Suppl. Keough Decl., ¶ 8.  The requested attorneys' fees and costs,

10  incentive awards and administration costs will also be paid from the Cash Fund, (consistent

11  with the Settlement agreement, Notices, and Preliminary Approval Order), and will not reduce

12  the amount paid out to Class members.  *See id.*  Any remaining funds will be distributed as a *cy*

13  *pres* award, subject to Court approval, to fund higher education projects relating to internet

14  privacy and consumer protection.  Anderson Prelim. App. Decl, Ex. 1, at 8.

15        This Settlement offers substantial benefits and avoids the substantial risks associated

16  with continued litigation.  "In this case, the negotiated amount is fair and reasonable no matter

17  how you slice it.  There is no evidence of fraud, overreaching, or collusion." *Rodriguez*, 563

18  F.3d at 965.  "[T]his Settlement … guarantees a recovery that is not only substantial, but also

19  certain and immediate, eliminating the risk that class members would be left without any

20  recovery … at all." *Fulford v. Logitech, Inc.*, No. C-08-2041-MMC, 2010 U.S. Dist. LEXIS

21  29042, at *8 (N.D. Cal. Mar. 5, 2010).

22            **1.**    <u>**Risk That The Class Might Not Be Certified**</u>

23        Another risk Plaintiffs would face going forward is whether their claims would be

24  certified and be maintained as a class through trial.  Defendants deny that class certification is

25  appropriate in this case.  Defendants were expected to vigorously oppose class certification and

26  argue that choice-of-law issues render the proposed class unmanageable, *see, e.g., Mazza v.*

27  *Am. Honda Motor Co.,* 666 F.3d 581, 594-96 (9th Cir. 2012) (holding that "each class

28

1    member's consumer protection claim should be governed by the consumer protection laws of

2    the jurisdiction in which the transaction took place….Because the law of multiple jurisdictions

3    applies here … variances in state law overwhelm common issues and preclude … a single

4    nationwide class), and that individual issues, including whether some Class members intended

5    to enroll in the Reward Program undermine the required commonality and typicality for certain

6    of Plaintiffs' claims*, see, e.g., Stearns v. Ticketmaster Corp*., 655 F.3d 1013, 1024 (9th Cir.

7    2011), *cert. denied*, 132 S.Ct. 1970 (2012) (holding in a rewards program case that the district

8    court did not err in refusing to certify a Consumers Legal Remedies Act class of plaintiffs). *But*

9    *see Johnson v. Gen. Mills, Inc.,* 276 F.R.D. 519, 522 (C.D. Cal. 2011) ("[T]he fact that some

10   people have bought the [product] for other reasons does not sufficiently rebut an inference of

11   materiality to defeat certification….).

12          The Court could refuse to certify the Class in part or in whole if Defendants were able

13   to present convincing case law and facts to support their position.  This would effectively wipe

14   out any recovery for more than a million people, leaving only the named Plaintiffs to pursue

15   their individual claims.

16                              **2.        The Amount Offered In Settlement**

17          The Settlement provides substantial benefits that are directly in-line with the very

18   benefits that each Class member requested in the first place—a $15 credit from Provide

19   Commerce.  The Settlement also provides all eligible Class members (those who did not intend

20   to enroll and have not previously received a full refund) with the opportunity to obtain

21   monetary relief for their out-of-pocket losses.  Valued at ***more than $38 million***, the proposed

22   Settlement provides meaningful relief to all Class members, and perhaps as importantly,

23   disgorges a significant amount from the Defendants in both cash ($12.5 million) and more than

24   $26 million in merchandise credit.  *See* Infante Decl., ¶¶ 12-13.  Defendants changed their

25   business practices and curtailed the underlying conduct on which Plaintiffs' claims are

26   premised shortly after the lawsuit was filed (and plaintiffs contend was at least in part due to

27   the lawsuit), and no longer engage in the challenged conduct.  All unused money from the Cash

28

1  Fund shall go to three academic institutions to specifically fund programs regarding internet

2  privacy programs, thereby providing additional benefits to the Class.

3  **3.   Extent Of Discovery And The State Of The Proceedings**

4      Substantial investigation and discovery were completed prior to the Settlement.  Courts

5  consider the extent of discovery completed and the stage of the proceedings in determining

6  whether a class action settlement is fair, adequate and reasonable.  *Boyd v. Bechtel Corp.*, 485

7  F. Supp. 610, 616-617 (N.D. Cal. 1979); *see also* MCL 4th § 21.62 at 486 ("Some factors that

8  may bear on a review of settlement . . . [include] the maturity of the underlying substantive

9  issues, as measured by the information and experience gained through adjudicating individual

10 actions, developing scientific knowledge, and other factors that bear on the probable outcome

11 of a trial on the merits.").

12      There simply can be no question that counsel for Plaintiffs sufficiently investigated this

13 case, using all formal and informal discovery methods available.  Prior to filing the lawsuit,

14 counsel for Plaintiffs conducted substantial research through public records and the Internet to

15 verify the scope and nature of the conduct alleged.  After filing the lawsuit, counsel for

16 Plaintiffs continued their investigation and aggressively sought formal discovery.  Plaintiffs

17 propounded   extensive   written   discovery,   including   numerous   document   requests,

18 interrogatories and requests for admission.  Plaintiffs further filed several motions to compel

19 discovery.  Plaintiffs took seven corporate and fact depositions in California and Maryland over

20 several months.   Defendants produced over 450,000 pages documents.   Plaintiffs' counsel

21 expended   significant   time   and   resources   reviewing   the   documents   produced,   utilizing

22 technology to enable them to fully analyze the weight of the evidence produced.   Plaintiffs'

23 counsel also conducted extensive third party discovery, issuing at least 22 nonparty document

24 subpoenas to credit card companies and companies who Defendants represented offered certain

25 benefits to class members as part of the Rewards Program.  Plaintiffs' counsel also retained and

26 worked closely with source code experts who evaluated Defendants' electronic code, reviewed

27 and analyzed discovery regarding Defendants' data system, and retained and worked with a

28

1    statistics expert to prepare potential damages models.  *See* Anderson Prelim. App. Decl., ¶¶ 5-

2    12.  The Settlement is the result of a thorough and extensive investigation, formal and informal

3    discovery, and an evaluation of Plaintiffs' claims.

### 4.    The Experience And Views Of Counsel

5         Class Counsel advocates the proposed Settlement as fair, reasonable, adequate, and in

6    the best interest of the Settlement Class as a whole.  Here, Class Counsel is extremely qualified

7    and well-informed about the facts and law of the case and believe this proposed Settlement to

8    be an excellent result.  *See* Anderson Prelim. App. Decl., Exs. 2-5; ¶3; *See also* Supplemental

9    Declaration of Isam C. Khoury In Support of Plaintiffs' Unopposed Motion for (1) Attorneys'

10   Fees and Costs and (2) Incentive Awards, and Final Approval of Settlement ("Khoury Suppl.

11   Decl."), ¶17.   Where class counsel is qualified and well informed, their opinion that a

12   settlement is fair, reasonable, and adequate is entitled to significant weight.  *See Ellis v. Naval*

13   *Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal 1980).

14        Judge Infante, a retired jurist with more than 30 years of facilitating resolutions of

15   disputes as a judge and a mediator, endorsed counsel for both Plaintiffs and Defendants as

16   being highly skilled and knowledgeable.  Infante Decl., ¶¶ 2-3.  Judge Infante worked closely

17   with the parties to craft the terms of the Settlement, is extremely knowledgeable about the facts

18   and strength and weaknesses of the parties' respective cases, and supports the Settlement as

19   fair, adequate and reasonable.  *Id.,* ¶14.

### 5.    The Presence Of A Government Participant

21        No governmental entity is a party to this action.  However, in compliance with the

22   notice provision of the Class Action Fairness Act, 28 U.S.C. § 1715, notice of this Settlement

23   was provided to the U. S. Attorney General, and the Attorneys General of each of the 50 states

24   in which Settlement Class members may reside.[4]  "Although CAFA does not create an

25   affirmative duty for either state or federal officials to take any action in response to a class

---

[4] This Court has already found that the notice provided to state and federal officials pursuant to the Class Action Fairness Act ("CAFA") was adequate.  Preliminary Approval Order at 5.

1   action settlement, CAFA presumes that, once put on notice, state or federal officials will raise

2   any concerns that they may have during the normal course of the class action settlement

3   procedures." *Garner*, 2010 WL 1687832, at *14.

4          The Attorneys General from approximately fifteen states contacted Class Counsel in

5   July 2012 to discuss the terms of the proposed Settlement.  *See* Declaration of Bruce W.

6   Steckler In Support of Final Approval Of The Proposed Class Settlement ("Steckler Decl."),

7   ¶¶2-3.  During these discussions, Class Counsel explained the full range of benefits conferred

8   on the Class and the associated risks with continued litigation.  *Id.*  Satisfied with counsel's

9   explanation of that the Settlement is in the best interests of their States' citizens, not one

10  governmental entity has objected.  *Id., ¶4.*

11                    **6.**     **Absence Of Collusion**

12         The Court must address the absence of collusion in considering the reasonableness of a

13  settlement submitted for final approval.  Here, there is ample evidence that the proposed

14  Settlement results from arms' length negotiations with two respected mediators and substantial

15  assistance from Magistrate Gallo over a period of years.  *See* Anderson Prelim. App. Decl., ¶¶

16  2-4.  Throughout the mediation process, the negotiations were highly adversarial, non-

17  collusive, and at arm's length.  Infante Decl., ¶¶10-11.

18                    **7.**     **Reaction From The Class**

19         Reaction to the Settlement from the Class has been overwhelmingly positive.  Only one

20  objection was filed and only 39 individuals asked to be excluded.  Keough Decl., ¶¶ 6-7.

21         **D.**     **The Request For Attorneys' Fees And Costs Is Reasonable And Well-
                      Supported.**

22
23         As set forth more fully in Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs and

24  Incentive Awards (Dkt. No. 255-1), and the documents filed in support thereof, the requested

25  $8.65 million in attorneys' fees and costs of $200,000 are justified and fair.  If granted, the

26  award will not reduce the cash payment made to any Class members, and the award sought is

27  reasonable considering the work done and the results achieved.

28

The Settlement is the result of strenuous and efficient efforts by Class Counsel throughout challenging phases of investigation, discovery, and adversarial litigation in a case involving complex facts and novel issues of law.  Throughout this process, Class Counsel shouldered immense costs and considerable risks.  They worked tirelessly with no guarantee of ever being paid, and in the face of a clear split of authority as to the underlying law.

Because the reasonable value of the Settlement is $38 million, *see* Infante Decl., ¶12-13, the requested attorneys' fees of $8.65 million constitutes only 22.7% of the total value of the Settlement, and is presumptively reasonable based upon the Ninth Circuit's attorneys' fees benchmark of 25% of the settlement value.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

Moreover, Plaintiffs' fee request also satisfies a lodestar-multiplier crosscheck.  *See* Motion for Attorneys' Fees, Costs and Incentive Awards, at 11-14.  Plaintiffs' collective lodestar as of November 2012 was $4,264,116.50 (constituting only a 2.1 multiplier, which will be further reduced by work to be performed until the case is completed), and Plaintiffs' hourly rates are reasonable and consistent with reasonable hourly rates charged in the district.  *Id.; see also* Suppl. Khoury Decl., ¶¶ 11-16.  Although Class Counsel has incurred costs in excess of $223,398.27, Plaintiffs seek reimbursement of only $200,000 in costs.

### E.   The Requested Awards To The Class Representatives Should Be Granted.

To recognize the time and effort the Class Representatives expended for the benefit of the Class, and the risks they accepted by leading the litigation, Plaintiffs ask the Court to grant the following incentive awards, which reflect the time and effort each Class Representative dedicated to the litigation:

1)   $15,000 for Plaintiffs Romero and Bailey, who have been intimately involved in this case since 2009, gave lengthy depositions, attended multiple mandatory in-person settlement conferences with the Court (requiring them to travel and incur expenses, miss several days of work, and forgo their earnings on those days), responded to written discovery and provided amended responses thereto, and regularly consulted

with Class Counsel;

2) $10,000 for Plaintiffs Berentson, Jenkins, Cox, and Lawler, who joined the case later, but traveled for or had their depositions taken, attended in-person conferences with the Court, responded to extensive written discovery, and/or consulted with Class Counsel; and

3) $5,000 for Class Representatives Walters and Dickey, who consulted with Class Counsel, responded to extensive written discovery, and were willing to make the personal sacrifices associated with being a named plaintiff in a federal lawsuit for the good of the Class.

*See* Anderson Prelim. App. Decl., ¶ 16, Ex. 1, at 6.  Given these individuals' significant contributions to this litigation, and viewed in light of well-established standards for such awards, the amounts sought are fair and appropriate.  *See, e.g., Staton*, at 976-77) (finding incentive awards between $2,000 and $25,000 reasonable depending on participation in litigation).  Defendants do not object to these amounts, and the total of $80,000 in requested incentive awards is modest in relation to the total Settlement value of $38.5 million.

## F.   The Sole Objector In The Case Lacks Standing And The Objection Has No Merit.

The Settlement provides valuable relief to the Class and falls squarely within the range of reasonableness for settlements routinely approved by courts in this Circuit.  Neither the U.S. Attorney General nor any state attorney general has filed an objection to the Settlement.

But, as is typical in large class action settlements, a single professional objector with an anti-class action agenda has filed an objection on behalf of a nominal objector.[5]  The nominal objector received notice of the Class Settlement, filled out the claim form, and confirmed he

---

[5] *See* Objection to Proposed Settlement And Notice To Appear ("Obj.") (Dkt. No. 258.)  One other individual, Aaron Meyer, submitted a letter to counsel stating that he did not agree with the $20 Merchandise Code, or the attorneys' fees, costs and Class Representative enhancements.  Khoury Suppl. Decl. Ex. 1 (Meyer letter, dated October 11, 2012).  This was not filed with the court as an objection as required, nor properly served.  In any event, Mr. Meyer's complaints are unsubstantiated.  Moreover, the data reflects that Mr. Meyer was never charged a monthly fee in the first place, and thus would not be eligible for a portion of the Net Settlement Fund and, therefore, also lacks standing.  *See* Keough Suppl. Dec. ¶ 9.

was entitled to a refund by attesting to the fact he never intended to enroll in EasySaver Rewards and never attempted to use the benefits of the program.  Keough Suppl. Dec., ¶ 6.  He is slated to receive a full refund of the monthly fees he paid the Defendants, plus a $20 Merchandise Code over and above that which is what he originally asked for when he clicked on the coupon.  *Id.*  What, exactly, is he objecting to?

The objection assails the fairness of the Settlement as a whole, yet fails to provide any specifics.  At most, the objection shows that one person does not believe this is the best Settlement that could theoretically have been reached—even though he does not (because he cannot) claim that notice was inadequate, that his compensation is inadequate, or that the process was too difficult to complete.  An objection on this basis does not justify rejecting the Settlement and delaying or potentially all together precluding recovery for the other 1.3 million Class Members.  The standard requires that the Settlement fall within the range of fairness—this Settlement does, and 99.99% of the Class agree.

### 1.     The Perryman Objection is Not a Bona Fide Objection.

Attorney Theodore "Ted" Frank, representing nominal objector Brian Perryman, is a professional objector whose organization's ideological agenda is to end class actions, not improve them.[6] He plainly does not care about the individual Class members in this case, and he has no problem delaying or precluding their benefits altogether.  Indeed, his interests are diametrically opposite to those of the Class:

> Mr. Frank founded the "Center for Class Action Fairness LLC," a conservative group that opposes class actions for ideological reasons.  Its sole purpose is to file objections to disrupt and deter class action settlements.  As Mr. Frank puts it, he is in the business of representing objectors in class action settlements and he characterizes his attacks as "guerilla operation[s]." … Mr. Frank has an agenda unrelated to the merits of this settlement.

---

[6]Mr. Frank has filed objections in well over 30 other class action settlements in the last few years.  *See, e.g.*, *In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208-JF (HRL), 2011 WL 1877988, *4-5 (N.D. Cal. May 17, 2011); *In re Online DVD Rental Antitrust Litigation* (N.D. Cal.), No. 4:09-md-02029-PJH (Dkt. No. 581); *Weeks v. Kellogg Co.,* No. CV 09-08102, 2011 U.S. Dist. LEXIS 155472  (C.D. Cal. Nov. 23, 2011); *Pecover v. Electronic Arts, Inc.,* No. 4:08-cv-02820 (N.D. Cal.) (Dkt. No. 404); *Blessing v. Sirius XM Radio, Inc.*, No. 11-3696-CV, 2012 WL 6684572 (2d Cir. Dec. 20, 2012); *see also, Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 773, 785 (N.D. Ohio 2010) (describing objector Frank's brief as "'long on ideology and short on law.")

1   *See* Khoury Suppl. Decl. Ex. 2 (*In re MagSafe Apple Power Adapter Litig.*, No. C 09-01911

2   JW (Dkt. No. 98) at 5-6 (Jan. 27, 2012).[7]  On July 13, 2012, after the initial Settlement was

3   announced, Mr. Frank raised the exact same issues set forth in Mr. Perryman's objection in an

4   online  piece  at  http://www.pointoflaw.com/archives/2012/07/in-re-easysaver-rewards-

5   litigation-class-action-settlement.php.  Khoury Suppl. Decl., Ex. 4.

6        Frank is unconcerned with the societal benefits of the class action device, and he

7   completely dismisses the value of class settlements that provide relatively nominal payouts to a

8   large group of consumers.  His goal is to kill all consumer class actions.  He refers to plaintiffs'

9   class action lawyers as "parasites."[8]  Mr. Frank has authored numerous blog posts and articles

10  expressing his animosity toward class actions and consumer cases in general:

11      - In these desperate economic times, we're looking for ways to stimulate
          the economy.  One cheap way to do so without increasing government
12        debt is to stop making it profitable for trial lawyers to bring meritless
          cases that impose what is effectively a multibillion-dollar litigation tax
13        on productive sectors of the economy.[9]

14      - What's happening is that entrepreneurial lawyers have discovered a
          profitable means of rent-seeking: with the help of a cooperative
15        shareholder, bring a meritless shareholder derivative suit on some
          technical ground or the other, threaten to impose millions of dollars of
16        discovery expenses and hassle on the officers and directors of the

17

18

19   [7] In *In re MagSafe Apple Power Adapter Litigation*, No. C 09–01911 JW 2012 WL 2339721, *2 (N.D. Cal.

20   May 29, 2012), the district court overruled Frank's objections and required him to pay an appeals bond finding it
     highly unlikely he would prevail in his client's appeal and significant risk of non-payment of costs following

21   appeal.  Similarly, as pointed out in *True v. Am. Honda Motor Co., Inc.*, No. ED 07-cv-287 VAP-OP (C.D. Cal.),
     objector Frank "would likely be against virtually *any* consumer litigation," particularly in light of his belief that

22   the cost of class action litigation is overwhelming to the economy.  *See True v. Am. Honda Motor Co., Inc.*, No.
     ED 07-cv-287 VAP-OP, Plaintiffs' Consolidated Response to Objections to Settlement Agreement (Dkt. No. 148)

23   at 17-18 (Feb. 8, 2010), attached to the Khoury Suppl. Decl., Ex. 3.

24   [8] See Brenda Kearney, "The Deal Breakers: A look at professional class objectors in Md.," *The Daily Record*,
     May 23, 2010 (http://www.dolanmedia.com/view.cfm?recID=596685). Ex. 5 to Khoury Response Decl.  And

25   while Frank insists his objection is brought in good faith and he does not seek to profit from his work, he has
     repeatedly sought fee awards as compensation for his objections.  *See, e.g., In re Apple Inc. Secs. Litig.*, No. 5:06-
     CV-05208-JF (HRL), 2011 WL 1877988 (N.D. Cal. May 17, 2011); *Lonardo*, 706 F. Supp. 2d at 803-17

26   (unsuccessfully requesting lodestar multiplier).

27   [9] Ex. 6 to Khoury Response Decl. "Win or Lose, Trial Lawyers Get Millions in Vioxx Fees," August 18, 2011,
     http://www.manhattan-institute.org/html/miarticle.htm?id=7387#.UDVF6sF2j6U.

28

company, and collect an attorneys' fee for settling the case for a token change of no benefit to the shareholders.[10]

Mr. Perryman filed his objection on November 29, 2012, right before the original cut-off date. *See* Keough Suppl. Decl., ¶¶ 6-8. Either he did so genuinely, in which case he fully wanted the benefits offered and had no independent gripe until Mr. Frank contacted him; or he did so solely as a pretext for Mr. Frank to file this objection. Aside from Mr. Frank's agenda, it is hard to understand why Mr. Perryman is objecting to the Settlement, which will provide him 100% of all membership fees paid for a total of $121.55, plus a $20 Gift Code. *Id.*

### 2. The Objection Should Be Dismissed For Lack Of Standing Because a Decrease in Fees Will Not Improve the Objector's Position—Save for Mr. Frank's Ideological Agenda

The objector lacks Article III standing to object to the proposed Settlement, and cannot purport to represent the interests of people who never filed a claim, or filed a claim seeking a refund but never objected. Article III requires "some actual or threatened injury as a result of the putatively illegal conduct of the defendant … likely to be redressed by a favorable decision." *Wolford v. Gaekle* (*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*), 33 F.3d 29, 30 (9th Cir. 1994). In *In re First Capital Holdings,* a class member filed an objection to the plaintiffs' requested award of attorneys' fees as being too excessive. *Id.* The court held that the objector lacked standing to file the federal appeal, Rule 23(h)(2) notwithstanding, since the objector could neither show (i) she had been injured or (ii) how the injury could "likely be redressed by a favorable decision" by the federal court, both of which were necessary to confer standing. *Id.*, at 30.

The Ninth Circuit has held that where an objection merely challenges the fee award but does not show how granting the requested relief would benefit the objector or redress an injury, then there is fundamentally no standing to object. *See id.; see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1326 (9th Cir. 1999) *cert. denied*, 146 L. Ed. 2d 481, 120 S.

---

[10] Ex. 7 to Khoury Response Decl. "Important Seventh Circuit ruling against shareholder derivative strike suits," June 14, 2012, http://www.pointoflaw.com/archives/2012/06/important-seventh-circuit-ruling-against-shareholder-derivative-strike-suits.php.

1    Ct. 1671 (2000) (finding lack of standing where "it is hard to see how cutting plaintiffs'

2    attorneys' fees can do [the class member] any good [because] he gets the same [settlement]

3    whether the fee is cut or not . . .,"); *Kinsley v. Network Assocs., Inc.*, 312 F.3d 1123, 1126 (9th

4    Cir. 2002) (finding lack of standing because objector could not demonstrate how vacating fee

5    award would benefit objector). The Ninth Circuit has held that conjectural allegations that a

6    fee award might be collusive or that reducing it might have resulted in a better outcome for the

7    objector cannot meet the constitutional requirement that the injury be "concrete and

8    particularized" and that the possibility of redress is not "conjectural or hypothetical." *Glasser*

9    *v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1089 (9th Cir. 2011).

10        Mr. Perryman concedes—as he must—that he received adequate notice, that he was

11    able to fill the form out and submit without trouble, and that he wanted to participate in the

12    benefits of the Settlement. *See* Declaration of Brian Perryman*,* (Dkt. No. 258-1) at pp. 1-3.

13    Mr. Perryman does not identify or explain how he has been aggrieved by the Settlement or how

14    a reduction in the fee award would redress whatever wrong he asserts exists. To the contrary,

15    Mr. Perryman stands to receive the full value of his claims--$121—and cannot show how

16    adjusting the fee award would in any way improve his position. Thus, Mr. Perryman has not

17    suffered any "injury," much less one that could be "redressed by a favorable decision" in this

18    Court or in the Ninth Circuit. He stands to gain nothing by his objection except to advance the

19    ideological agenda of Mr. Frank.

20          **3.**    **The Objection Should Be Overruled.**

21          **a)**    **The Settlement Is Fair And The Objector Has Not**

22                 **Demonstrated Otherwise.**

23        The objector has identified no way in which the settlement is unfair. The Settlement not

24    only provides Class members with the gift code they originally requested–on better terms and

25    at $20 instead of $15—but it also gave everyone the opportunity to claim a cash refund.

26

27

28

Out of the approximately 1,300,000 consumers who comprise the Class and received direct notice of the Settlement, only one filed an objection.[11]   (Dkt. No. 258.) This small percentage (0.000077%) constitutes strong evidence of the fairness of the Settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding that a low number of objections supports fairness finding); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness").  Significantly, "[i]n litigation involving a large class it would be 'extremely unusual' not to encounter objections," thus the fact that objections were filed does not undermine final approval.  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478 (S.D.N.Y. 1998).  And this case compares favorably to the number of objections the Ninth Circuit regularly considers in other cases when approving class action settlements.  *Rodriguez*, 563 F.3d at 967 (finding a favorable class reaction where 54 of 376,301 putative class members who received notice submitted objections); *Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004) (finding a favorable class reaction when 45 individuals submitted objections out of 90,000 putative class members who received notice).

### b) This Is Not A Coupon Settlement And The Fees And Cost Sought Are Reasonable And Well Supported.

The objector's protestations that this is a coupon settlement are belied by the facts and the law.  The $20 Merchandise Code is fully transferrable, can be used to purchase items under $20, and, thus, legally and factually different from a "coupon."  In *CLRB Hanson Indus., LLC v. Weiss & Assocs., PC*, 465 Fed. Appx. 617, 619 (9th Cir. 2012), the Ninth Circuit expressly held that a settlement that gives "cash or cash-equivalents" is *not* a coupon settlement for CAFA purposes.  *See also* Infante Decl., ¶ 12 (explaining the value and appropriateness of the

---

[11]As noted above, additionally, the parties received a second objection that was not filed with the Court or properly submitted, but that, in any event, lacks merit.  *See* Khoury Response Decl." ¶3.

Merchandise Code component of this Settlement, including that the Merchandise Codes are fully transferrable and can be used to purchase items under $20, that all Class members exhibited an affirmative desire to receive a merchandise credit—in a lower amount and encumbered by enrollment in a rewards program—and the ease with which Class members can redeem the Merchandise Codes).

Applying the *CLRB Hanson* standards, Judge Michael Anello of this Court recently determined that vouchers for free car rentals are tantamount to "cash equivalents" and not coupons within the meaning of CAFA. *See Shames v. Hertz Corp.*, No. 07-VC-2174-MMA(WMC), 2012 WL 5392159, at *16 (S.D. Cal. Nov. 5, 2012). There, the class was "offer[ed] the option between cash and vouchers for free products (as opposed to *discounts* on products where class members are required to purchase the products and pay the difference between the full and coupon-discounted price)." *Id.* (emphasis in original). He found that the value of the free products especially where cash was an option rendered the settlement not a coupon settlement. Other courts in this Circuit are in accord. Specifically, in *Fernandez v. Victoria Secret Stores, LLC*, Case No. 06-cv-04149 MMM (SHx), 2008 U.S. Dist. LEXIS 123546, at * 38-40 (C.D. Cal. 2008), a Central District Court judge held that a settlement that distributed a transferrable gift card to defendants' stores was not a coupon. *Id.* The court noted that the award had cash value, in that it could be sold because it was transferrable, and that, because the amount exceeded from a compensatory standpoint what each plaintiff would have received had there been no violation of the law, it was amply fair. *Id.*

Similarly, in *Young v. Polo Retail, LLC,* Case No.3:2002-cv-04546, 2007 U.S. Dist. LEXIS 27269, at *3-4 (N.D. Cal. 2007), District Court Judge Vaughn Walker also held that a settlement involving cash and transferrable merchandise credits was not a coupon settlement. He noted that plaintiffs would receive refunds, and could also use the merchandise credits to purchase a vast array of items from defendant, and could also sell them for money. *Id.* ("More compelling than the availability of alternative items like Polo brand paint or perfume is the transferability of the gift cards; this enables class members to obtain cash—something all class

1  members will find useful."). *See also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463

2  F.3d 646, 654 (7th Cir. 2006) ("We recognize that the pre-paid envelopes are not identical to

3  coupons, since they represent an entire product, not just a discount on a proposed purchase.").

4  Here, the $20 Merchandise Codes are fully transferrable and can purchase an entire product,

5  and Class Members were also able to claim full cash refunds of any fees they paid .

6       The cases cited by the objector detract nothing from the above analysis or conclusion.

7  In *Fleury v. Richemont North America, Inc.,* No. C-05-4525 EMC, 2008 WL 3287154 (N.D.

8  Cal. Aug. 6, 2008), Obj. at 6, District Court Judge Chen found that the proposed class action

9  settlement's $100 credits to be used for purchase of a Cartier watch from defendant's store

10 "could be characterized as coupons" under CAFA. *Id.* at *2. Unlike the Merchandise Codes

11 here, the *Fleury* Cartier watch credits could hardly be used to purchase a watch given the

12 reality that "most Cartier products cost significantly more than $100." *Id.*, at *2. As noted

13 above, however, a noncash benefit cannot be a coupon if it allows a consumer to buy an entire

14 product. The other cases cited by the objector are equally inapposite. *See* Obj. at 6 (citing *In re*

15 *HP Inkjet Printer Litig.,* No. 5:05-cv-3580 JF, 2011 WL 1158635, *10-11 (N.D. Cal. Mar. 29,

16 2011) (awarding fees based on the lodestar method and did not discuss whether the $5,000,000

17 e-credit equated to a coupon settlement); *Galloway v. Kan. City Landsmen, LLC*, No. 4:11-

18 1020-cv-W-DGK, 2012 U.S. Dist. LEXIS 147148, at *10-11 (W.D. Mo. Oct. 12, 2012)

19 (finding a certificate was a coupon where it provided only for $5.00 off any car rental or $25.00

20 off any car rental exceeding $150.00, excluding taxes and fees); *Radosti v. Envision EMI, LLC*,

21 760 F. Supp. 2d 73, 78 (D.D.C. 2011) (applying a constructive common fund approach and

22 finding the "agreement reached by the parties provides substantial benefits to the members of

23 the class due to the amount of funds ***made available*** for the vouchers.") (emphasis added);

24 *Sobel v. Hertz Corp.,* No. 3:06-CV-00545-LRH-RAM, 2011 WL 2559565, *4 (D. Nev. Jun. 27,

25 2011) (finding a "strictly a coupon settlement" for a nontransferable $10-20 discount on a

26

27

28

1    future car rental and with "no settlement fund or any provision for cash payments.").[12]

2    For these reasons and those set forth in Plaintiffs' Motion for Attorneys' Fees, Costs

3    and Incentive Awards, the attorneys' fees sought are objectively reasonable and supported by

4    lodestar cross-check.

5                    c)      **The *Cy Pres* Award Complies With Ninth Circuit Standards.**

6    The Ninth Circuit has held *cy pres* is acceptable in the settlement context, provided the

7    award is "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the

8    silent class members." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038-39 (9th Cir. 2011) (citing

9    *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990); *Harris*

10   *v. Vector Mktg. Corp.,* No. C-08-5198 EMC, 2012 WL 381202, *5 (N.D. Cal. Feb. 6, 2012)

11   (approving *cy pres* distribution where "*cy pres* beneficiaries identified by the parties [were] all

12   proper, taking into account, 'the nature of the plaintiffs' lawsuit, the objectives of the

13   underlying statutes, and the interests of the silent class members, including their geographic

14   diversity'"); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 641 (S.D. Cal. 2011) (approving

15   settlement, including *cy pres* award); *Catala v. Resurgent Capital Servs. L.P.,* Civil No.

16   08cv2401 NLS, 2010 WL 2524158 (S.D. Cal. June 22, 2010) (same).   The Ninth Circuit

17   recently reiterated the standards required for approval of *cy pres* distribution in *Dennis v.*

18   *Kellogg Co.,* 697 F.3d 858 (9th Cir. 2012): "To ensure that the settlement retains some

19   connection to the plaintiff class and the underlying claims ... a *cy pres* award must qualify as

20   'the next best distribution' to giving the funds directly to class members." *Id.* at 865.   The

21   Ninth Circuit *cy pres* doctrine does not require that the parties select a *cy pres* recipient that

22   "the court or class members would find ideal…such an intrusion into the private parties'

23

24

_____

25   [12] Even if this were a coupon settlement under CAFA, which it is not, the Court may   award attorneys' fees based
     upon the lodestar and multiplier method. 28 U.S.C. § 1712(b)(2) ("Nothing in this subsection shall be construed to

26   prohibit application of a lodestar with a multiplier method of determining attorney's fees."). *See also Shames*,
     2012 WL 5392159, at *18 (awarding fees based on the lodestar method over protestations of an objector that fees

27   should not be awarded until all claims are processed in a settlement involving a choice between a small cash
     payment or vouchers for up to two free car rental days).

28

1    negotiations would be improper and disruptive to the settlement process." *Lane v. Facebook,*

2    *Inc.*, 696 F.3d 811, 820-821 (9th Cir. 2012).

3         In this litigation, the Class comprises nationwide internet users asserting that the online

4    marketing and sales practices violated federal law and California state consumer statute. Thus,

5    the proposed *cy pres* distribution to three San Diego non-profit colleges or universities,

6    specifically for the use of a chair, professorship, fellowship, lectureship, seminar series or

7    similar funding, gift, or donation program regarding internet privacy or internet data security, is

8    appropriate and properly "tethered to the nature of the lawsuit and the interests of the silent

9    class members." *Nachshin,* at 1039.[13] The recipients, while local to this Court, engage in a

10   nationwide academic dialogue and place students from across the country. *See*

11   *http://www.sandiego.edu.*  Moreover, the internet is without geographic scope, and so education

12   regarding it will benefit all.

13        Similarly, the Ninth Circuit's recent decision in *Dennis v. Kellogg Co.*, 697 F.3d 858,

14   861 (9th Cir. 2012), a case involving California's consumer statutory claims based on

15   defendant's allegedly misleading advertising, the court held appropriate *cy pres* recipients may

16   be "organizations dedicated to protecting consumers from, or redressing injuries caused by,

17   false advertising."  *Id*. at *6 (finding improper cy pres award to unspecified charities to feed

18   indigent).  Unlike *Kellogg*, the *cy pres* component here is only awarded after all payments are

19   made to the Class members who submitted valid claims.

20        Finally, objections to the *cy pres* recipients based on speculation that they were chosen

21   because of relationships to class counsel or defense counsel are meritless.  *Cf. Lane v.*

22   *Facebook, Inc.*, *supra,* 696 F.3d at 821 (finding presence of settling defendant's employee on

23   the board of directors for the entity which was to receive *cy pres* award did not undermine

---

24   [13]  Although in *Nachshin*, the court held the beneficiaries were not sufficiently connected to the class or
25   underlying objectives of the lawsuit, it also opined that the parties may nonetheless be able to propose an
     appropriate beneficiary.  *Id.* at 1040-41.  The court stated, "[i]t is clear that all members of the class share two
26   things in common: (1) they use the internet, and (2) their claims against [the defendant] arise from a purportedly
     unlawful advertising campaign that exploited users' outgoing e-mail messages." *Id.* at 1041.  Thus, "[t]he parties
27   should not have trouble selecting beneficiaries from any number of non-profit organizations that work to protect
     internet users from fraud, predation, and other forms of online malfeasance." *Id.*

28

1    settlement).  Defense counsel includes a large, global law firm with thousands of attorneys,

2    each of whom has current or past professional relationships with various organizations.  Class

3    Counsel consists of several well-respected firms comprised of attorneys who work with various

4    organizations around the country, which does not interfere with their ability to zealously

5    represent the Class.  Indeed, the *cy pres* recipients were not chosen because of any relationship

6    to counsel.  *See* Khoury Suppl. Decl., ¶ 10.  Instead, the *cy pres* beneficiaries designated in the

7    Settlement sufficiently serve the Class and the objectives of this lawsuit.

8    **4.    The Objector Should Be Required To Post A Bond On Appeal.**

9         This Court has the authority to impose a bond in an amount necessary to insure that any

10   appellants have the ability to pay Plaintiffs' costs and fees should opposing an appeal be

11   necessary.  *See A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1028 (9th Cir. 2001); *See*

12   *also* Fed. R. App. P. 7 ("Rule 7").

13        If an appeal is filed and ultimately unsuccessful, Plaintiffs will be entitled to the cost of

14   opposing the appeal, as well as interest on the Cash Fund component of the Settlement,

15   including attorneys' fees.  *See* 28 U.S.C. § 1961.[14]  While Rule 7 does not require plaintiffs to

16   make any "showing of costs for a bond motion", *In re Ins. Brokerage Antitrust Litig.,* MDL No.

17   1663*,* 2007 WL 1963063, at *3-5 (D.N.J. Jul. 2, 2007), courts routinely apply $25,000 as a

18   ***minimum*** benchmark amount of costs for an appeal of class action settlement objections.

19   *See, e.g., Id.*, at *3 (imposing a "reasonable" $25,000 appeal bond for objectors to class

20   settlement based on line of precedent); *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp.

21   2d 289, 295 (S.D.N.Y. 2010) (assessing $25,000 on settlement objectors for cost aspects of

22   Rule 7 bond).  A reasonable method for calculating the estimated interest on the $12.5

23   million Cash Fund is to use the current applicable interest rate of 0.14%[15] for 24 months,

---

[14]  *See also Donovan v. Sovereign Sec.*, *Ltd.,* 726 F.2d 55 (9th Cir. 1984); *Perkins v. Standard Oil Co.*, 487
F.2d 672, 676 (9th Cir. 1973).

[15]  The applicable interest rate is equal to "the weekly average 1-year constant maturity Treasury yield, as
published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of
the judgment."  28 U.S.C. § 1961.  According to the Federal Reserve's web site, for the week ended January 11,
2013, this rate was 0.14%.  *See* http://www.federalreserve.gov/releases/h15/data.htm.

1   which is a conservative estimate of the length of time it will take to resolve a class action

2   appeal.[16]   This calculation yields an estimated interest of $35,000.[17]   Should this Court

3   overrule the objections, Plaintiffs, seek an order requiring the objector to post a $60,000

4   bond on appeal to ensure payment of costs and interest when the appeal is ultimately

5   unsuccessful.[18]

6          When determining whether a bond should be posted, district courts in the Ninth Circuit

7   consider:   (1) the appellant's financial ability to post a bond; (2) the risk that the appellant

8   would not pay the appellees' costs if the appeal loses; (3) the merits of the appeal; and (4)

9   whether the appellant has shown bad faith or vexatious conduct.   *Fleury v. Richemont North*

10  *Am. Inc.,* No. C-05-4525 EMC, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008); *Azizian v.*

11  *Federated Dep't Stores, Inc.,* 499 F.3d 950, 961 (9th Cir. 2007).   Here, all factors weigh in

12  favor of imposing a bond.   *First*, there is nothing to suggest that Perryman and/or his counsel

13  are financially unable to post the reasonable bond requested.   *Second*, the risk that the appellant

14  would not pay is substantial because the costs and interest to be owed if the appeal is

15  unsuccessful are significant compared to Mr. Perryman's individual stake in the litigation, and

16  because Class Counsel would be required to institute collection proceedings in multiple

17  jurisdictions to collect amounts owed, given that Mr. Perryman and his counsel are located in

18  diverse jurisdictions (Perryman lives in Virginia; his counsel in Washington D.C.).   *See In re*

19  *Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 293-97 (S.D.N.Y. 2010); *Fleury*, 2008

20  WL 4680033, at *7.   *Third*, as discussed above, the objection and any appeal that may follow

21  the objection being overruled are meritless, particularly considering the fact that Mr. Perryman

---

22      [16] The Frequently Asked Questions section of the Ninth Circuit's web site indicates that decisions on appeals

23  are usually rendered between 15-32 months from when an appeal is filed.   *See*
    http://www.ca9.uscourts.gov/content/faq.php   (Question Nos. 17 and 18).

24      [17] $12,500,000 x .0014 x 24/12 = $35,000

25      [18] A bond of $60,000 is exceedingly conservative under the circumstances.   *See, e.g., Barnes v. FleetBoston*,
    No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) (appealing objector required to

26  *post bond of $645,111.60* to cover costs and interest for anticipated one-year delay in distribution of $12.5
    million settlement to class); *In re Broadcom Corp. Sec. Litig.*, Case No. SACV 01-275 DR (MLGx), 2005

27  U.S. Dist. LEXIS 45656, at *9-11 (C.D. Cal. Dec. 9, 2005) (ordering objector to post appeal *bond of over
    $1.2 million* in response to appeal of final order approving class action settlement).

28

1  lacks standing to appeal.  **Fourth**, the appellant and his attorney have exhibited bad faith or

2  vexatious conduct.   As discussed above, Mr. Frank is a serial objector whose only goal is to do

3  away with consumer class actions altogether, and Mr. Perryman's complaints that the

4  Settlement is somehow unfair to him, although is taking full advantage of the Settlement

5  benefits and set to receive a full refund, are not credible.

6      For these reasons, requiring a bond of $60,000 for any appeal is appropriate.

7  **III.**    **CONCLUSION**

8      For the reasons set forth above, Plaintiffs respectfully request that this Court grant final

9  approval to the proposed Settlement and grant Plaintiffs' Motion for Fees, Costs and Incentive

10  Awards in its entirety.

11  **Respectfully submitted this 18th Day of January, 2013:**

12   Dated:  January 18, 2013                    BARON & BUDD, P.C.

13                                                 By: */s/ Mazin A. Sbaiti*_____
                                                    Mazin A. Sbaiti
14                                                 3102 Oak Lawn Avenue, Suite 1100
                                                    Dallas, TX 75219
15                                                 Telephone: (214) 521-3605
                                                    Facsimile: (214) 520-1181
16                                                 msbaiti@baronbudd.com

17                                                 *On Behalf of the Co-Lead Counsel for the Class*

18                                                 Jennie Lee Anderson, State Bar No. 203586
                                                    Lori E. Andrus, State Bar No. 205816
19                                                 ANDRUS ANDERSON LLP
                                                    155 Montgomery Street, Suite 900
20                                                 San Francisco, CA 94104
                                                    Telephone:  (415) 986-1400
21                                                 Facsimile:  (415) 986-1474
                                                    jennie@andrusanderson.com
22                                                 lori@andrusanderson.com

23                                                 James R. Patterson, State Bar No. 211102
                                                    Alisa A. Martin, State Bar No. 224037
24                                                 PATTERSON LAW GROUP
                                                    402 West Broadway, 29th Floor
25                                                 San Diego, CA 92101
                                                    Telephone:  (619) 756-6990
26                                                 Facsimile:  (619) 756-6991
                                                    jim@pattersonlawgroup.com
27                                                 alisa@pattersonlawgroup.com

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bruce W. Steckler
The Steckler Law Firm
12700 Park Central Drive, Suite 900
Dallas, TX 75251
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
bruce@stecklerlaw.com

Isam C. Khoury, State Bar No. 58759
Michael D. Singer, State Bar No. 115301
Kimberly D. Neilson, State Bar No. 216571
COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101
Telephone:  (619) 595-3001
Facsimile:  (619) 595-3000
ikhoury@ckslaw.com
msinger@ckslaw.com
kneilson@ckslaw.com

*Co-Lead Class Counsel for Plaintiffs and the
Class*

1

### CERTIFICATE OF SERVICE

2       I, Mazin A. Sbaiti, hereby certify that on January 18, 2013, I electronically filed the

3   foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4   such filing to all counsel of record registered with the CM/ECF system.

5

Dated: January 18, 2013

6                                          BARON & BUDD, P.C.

7

                           By: */s/ Mazin A. Sbaiti*_____

8                                    Mazin A. Sbaiti

                                 BARON & BUDD, P.C.

9                                    3102 Oak Lawn Avenue, Suite 1100

                                 Dallas, TX 75219

10                                   Telephone: (214) 521-3605

                                 Facsimile: (214) 520-1181

11                                   msbaiti@baronbudd.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28