UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re: EASYSAVER REWARDS LITIGATION

Case No. 09-cv-02094-BAS-WVG

**ORDER**

## I. BACKGROUND

On February 4, 2013, the Honorable Anthony Battaglia issued a Final Order approving the class settlement; granting Plaintiffs' motion for attorneys' fees, costs and incentive awards; and overruling Objector Perryman's objections. [ECF No. 271.] Based on this Order, on February 21, 2013, Judge Battaglia entered a Final Judgment dismissing with prejudice the action and retaining jurisdiction over the implementation, administration and enforcement of the Final Judgment, the Settlement Agreement and all matters ancillary thereto. [ECF No. 277.]

Objector Perryman appealed. While the case was on appeal, it was transferred from the calendar of Judge Battaglia to the calendar of Judge Cynthia Bashant. [ECF No. 295.]

On March 19, 2015, the Court of Appeals issued an order and memorandum

vacating the district court's judgment and remanding the case for further proceedings consistent with its newly decided *In re Online DVD-Rental Antitrust Litig.*, No. 12-15709, 779 F.3d 934 (9th Cir. 2015). [ECF No. 302.] On July 27, 2016, this court heard oral argument from the Plaintiffs on behalf of the class members, the Defendants and Objector Perryman, on the effect of *In re Online DVD-Rental Antitrust* on the settlement approved by Judge Battaglia. Having considered the oral arguments as well as the various written submissions to the court, the court adopts the orders of Judge Battaglia in their entirety [ECF No. 271, 277] and finds this settlement is not a "coupon settlement" requiring adherence to 28 U.S.C. § 1712.

## II. STATEMENT OF FACTS

According to Plaintiffs, when class members completed a purchase on one of Provide Commerce Inc. ("Provide Commerce")'s retail websites, they were presented with a pop-up window offering $15.00 off their next purchase as a "Thank you" gift, and asking them to enter their zip code and email address and click "Accept" to receive the gift. [Fourth Amended Complaint, ECF No. 221, ¶¶3, 26.] Provide Commerce then transmitted this private payment information to Encore Marketing International ("EMI") without consent. [*Id.* ¶¶1-3.] EMI proceeded to enroll class members in a Rewards Program and charged their credit or debit cards a $1.95 activation fee, followed by a $14.95 monthly fee. [*Id.* ¶¶3, 26.]

Defendants Provide Commerce and EMI deny these allegations, claiming the Rewards Program details were adequately disclosed and that Plaintiffs entered into electronic contracts with EMI for membership in the Rewards Program. [ECF No. 248-1.]

## III. SETTLEMENT TERMS

The Court adopts the Background and Proposed Settlement Terms outlined in Judge Battaglia's Final Order approving class settlement. [ECF No. 271.] However, the Court emphasizes the following findings of fact about the settlement:

1. The total settlement in this case was a $12.5 million non-reversionary cash

|   |   |
|---|---|
| 1 | fund plus $20.00 merchandise credits[1] automatically sent via e-mail or direct mail to all class members without the need for a claim form submission. If all class members used the full $20.00 merchandise credit, the total settlement would be $38 million. [ECF No. 248-3 §2.] |

2. The non-reversionary cash fund was to reimburse those class members who had been charged an activation or monthly fees without their consent. Any amounts left over after reimbursement of all class members seeking reimbursement and after deduction of attorneys' fees and costs would go to a *cy pres* fund to fund higher education projects relating to internet privacy and consumer protection. [*Id.* §2.1d, e.]

3. The settlement was specifically tailored to address the alleged harm inflicted in this case, that is, return of any cash charged to class members' credit or debit cards for unwanted enrollment in the Rewards Program, plus a $20.00 merchandise credit to compensate for the $15.00 "Thank You" gift offer.

4. The $20.00 merchandise credit did not require class members to hand over more of their own money before they could take advantage of it. [ECF No. 262 at 7-8; 265 at 18.]

5. The $20.00 merchandise credit was valid for any product or service offered on several different websites, was not valid only for select products or services and could be used for marked down, bundled or discounted products. [ECF No. 248-3 §2.2.]

6. The $20.00 merchandise credits were fully transferrable. [*Id.*]

7. The $20.00 merchandise credits were emailed or direct mailed to class members who had expressed an interest in receiving such a credit by

---

[1] The Court uses the term "merchandise credit" in lieu of "coupon" or "gift card" since these latter terms are obviously loaded terms. Whether the "merchandise credit" constitutes a coupon or a gift card depends less on the labels put on it by counsel or the court and more on the inherent nature of how the merchandise credit could be used.

clicking on a pop-up window offering them a $15.00 future credit, entering their zip code and email and clicking on "accept." [*Id.*]

8. The $20.00 merchandise credit did have a one-year expiration date and did have black-out dates. [*Id.*]

## IV. APPLICATION OF *DVD-RENTAL ANTITRUST LITIGATION*.

In *In re Online DVD-Rental Antitrust Litgation,* 779 F.3d 934 (9th Cir. 2015), the Ninth Circuit found that the proposed class settlement was not a "coupon settlement" subject to the confines of 28 U.S.C. §1712. The Court first found that concerns with "coupon settlements" addressed by section 1712 were concerns about settlements in which class members received nothing more than promotional coupons to purchase more products from Defendants. *Id.* at 950. In particular, the Court pointed to situations where class members were required to give Defendants more money to obtain the benefit of the coupon and where the coupons were only valid for select products or services. *Id.* at 951.

In contrast, the DVD-Rental Antitrust settlement provided class members with a $12.00 Walmart gift card if they submitted a claim through a website, or alternatively $12.00 in cash or a $12.00 Walmart gift card if they submitted a claim by mail. The Court distinguished this type of settlement from one where class members received "a discount—frequently a small one—on class members' purchases from the settling Defendant." *Id.*

The Court placed great emphasis on the fact that the DVD-Rental Antitrust settlement "[i]nstead of merely offering class members the chance to receive a percentage discount on a purchase of a specific item or set of items . . . gives class members $12.00 to spend on any item carried on the website of a giant, low-cost retailer. The class member need not spend any of his own money and can choose from a large number of potential items to purchase." *Id.* The Court also considered that the gift cards were freely transferrable and did not expire. *Id.*

Similar to the DVD-Rental Antitrust settlement, the settlement in this case

allows class members to purchase any number of products from several different websites, many of which do not require the class member to spend any of his own money. They are not discount coupons; they are $20.00 that can be used for or toward the purchase of any on-line item. The merchandise credits are not limited to purchase of a specific item or set of items.

However, this case is stronger than the DVD-Rental Antitrust settlement, because this is a case where the class members have expressed a desire to have and an interest in getting $15.00 off their next purchase. That is what made them a member of the class. Each class member clicked on a pop-up offering him or her $15.00 off the next purchase. Therefore, each class member expressed a clear preference for this type of reward. Furthermore, the settlement also involves a cash payment as well as a merchandise credit, so that any class members who were wrongfully charged can be made whole. Therefore, unlike any other settlement the Court has been able to find, this settlement was specifically tailored to the harm suffered by the class members and the interest they had in receiving this "Thank you" gift.

This Court is mindful that this case differs from the DVD-Rental Antitrust settlement in two important respects: the merchandise credits expired after one year and there were black-out dates for use of the credits. The Court recognizes that this militates against construing the merchandise credits as gift cards, but given the other factors, particularly the fact that these merchandise credits were very similar to the "Thank You" gifts that class members were trying to obtain, the Court finds this settlement was not a coupon settlement subject to the strictures of section 1712.

V.  **ATTORNEYS' FEES AND INCENTIVE AWARD**

Ultimately, Objector Perryman's main concern is not that he, or other class members, did not get enough out of the settlement. His concern is that the class attorneys and representatives got too much. Hence, the Court revisits Judge Battaglia's findings that the attorneys' fees and incentive awards were reasonable.

### A. Legal Standard

Courts have an independent obligation to ensure that the attorneys' and class representative fees award, like the settlement, is reasonable. *In re Bluetooth Headsets Products Liability Litig.,* 654 F.3d 935, 941 (9th Cir. 2011). Where a settlement produces a common fund for the benefit of the entire class, the courts have the discretion to employ a "percentage of recovery method." *Id.* at 942. Typically, courts calculate 25% of the fund as a "bench mark" for a reasonable fee award. *Id.* The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002). Thus, courts are encouraged to cross-check this method by employing the "lodestar method" as well. *In re Bluetooth*, 654 F.3d at 949.

Under the "lodestar method," the Court multiplies the number of hours the prevailing party reasonably expended by a reasonable hourly rate for the work. *Id.* at 941. The hourly rate may be adjusted for the experience of the attorney. *Id.* The resulting amount is "presumptively reasonable." *Id.* However, the Court may adjust this presumptively reasonable amount upward or downward by an appropriate positive or negative multiplier reflecting a whole host of reasonableness factors including the quality of the representation, the complexity and novelty of the issues, the risk of nonpayment, and, foremost in consideration, the benefit achieved for the class. *Id.* at 942.

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class actions cases" and "do not, by themselves, create an impermissible conflict between class members and their representative[]." *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 943 (9th Cir. 2015). Nonetheless, the Court has obligation to assure that the amount requested is fair. *In re Bluetooth,* 654 F.3d at 941.

### B. Analysis

Counsel in this case negotiated a class settlement worth as much as $38 million

on behalf of 1,500,000 class members. Class counsel requests an $8.65 million award in attorneys' fees, which is 22.7% of the overall recovery, below the typical 25% benchmark.

Nonetheless, Objector Perryman argues that the $38 million is overinflated since it requires class members to use their $20 merchandise credit, and a more realistic assessment of the recovery is the fund with no merchandise credits included, or $12.5 million. The Objector fails to take into consideration the fact that these 1,500,000 class members were individuals who expressed an interest in receiving these merchandise credits. They requested the "Thank you" gifts in the first place. Therefore, the chances of them actually using these gifts are much higher than others who have not expressed a preference or interest in receiving the gifts.

Nonetheless, the Court finds it appropriate to cross-check the requested amount with a lodestar calculation. As of November 26, 2012 (almost four years ago and before any of the pre and post-appeal proceedings), attorneys Patterson, Khoury, Steckler, Stonebarger and Anderson submitted declarations to the Court detailing the reasonable attorney hours expended on this litigation. (ECF No. 255-2 through 255-6.) The Court finds the rates billed by the attorneys (ranging from $625 to $750 for partners; $340 to $450 for associates, $125 to $260 for paralegals, $575 for of-counsel, and $105 for legal assistants) are reasonable and reflect the prevailing rate seen by this Court in other similar cases. Furthermore, the Court has reviewed these bills and finds the hours expended to be reasonable. Class counsel successfully opposed several dispositive motions in the case, amended the complaint multiple times to conform to discovery, took and defended numerous depositions in California and Maryland, propounded written discovery leading to defense production of 450,000 pages of discovery, issued 22 non-party document subpoenas, organized and coded over a million pages of documents, and participated in six settlement conferences including two private mediations. [ECF No. 255-1 through -6.] The resulting lodestar amount of $4,264,116.50 is presumptively reasonable.

However, the Court also finds that a positive multiplier of 2 is appropriate in this case. The attorneys had a great deal of experience in class action litigation and took a case that was largely of first impression. The case involved the automatic enrollment of individuals in Reward Programs, an area of class action litigation that had not been explored before. This case was taken on a contingency fee basis and has required the lawyers to "float" the costs and attorneys' fees for seven years now, at great risk to them. Finally, the attorneys achieved excellent results for the class— class members got both their "Thank you" gift and their money back from the automatic enrollment. Therefore, the Court finds the requested attorneys' fees are reasonable both under a percentage of recovery and a lodestar calculation.[2]

Furthermore, the Court finds the incentive awards to be reasonable based on the requirements for the named class members in this case. The amounts are tiered based on the amount of time the named class members were involved in the litigation and the burdens on each named class member. For Romero and Bailey, for whom counsel is requesting $15,000 each, they were both deposed, subject to written discovery, required to travel and attend mandatory settlement conferences and required to participate in other case-related meetings and conference calls. (Patterson Decl., ECF No. 255-2 ¶¶9-11.) For Berentson, Jenkins, Cox and Lawler, for whom counsel is requesting $10,000 each, they were required to travel to San Diego for depositions and they, too, were subject to written discovery and participated in other case-related meetings and conference calls. (*Id.*) Finally, for Walters and Dickey, for whom counsel is requesting $5,000 each, although they were not deposed, they were required to participate in case-related meetings and conference calls. (*Id.*) All Named Plaintiffs were required to gather information to support their claims and respond to inquiries from class counsel over the now seven years this case has been pending. The Court finds the requested amounts to be reasonable.

---

[2] As the Court noted earlier, this completely omits any attorney hours expended on the appellate and post-appellate process. Obviously, the multiplier would be considerably less now.

## VI. ORDER

This Court, having reconsidered the settlement in the light of *In re Online DVD Rental Antitrust Litigation*, adopts and reinstates the Orders of Judge Battaglia. (ECF Nos. 271, 277.) Judgment is entered in the Plaintiff Class Members' favor and the case is dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: August 9, 2016

Hon. Cynthia Bashant
United States District Judge