UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE EASYSAVER REWARDS LITIGATION | Case No. 09-cv-02094-BAS-WVG |
| | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS** |
| | **[ECF No. 338]** |

After a decade and two trips to the Court of Appeals, one issue remains in this consumer class action involving coupons: the proper amount of the attorney's fee award. The Ninth Circuit vacated the Court's prior award because it did not comply with the Class Action Fairness Act ("CAFA"). Now, upon remand, Plaintiffs renew their request for attorney's fees. (ECF No. 338.) They ask the Court to ignore the value of the settlement's coupon relief but still award the same amount of fees. (*Id.*) Defendants do not oppose, but the class member who succeeded in challenging the prior award on appeal objects to Plaintiffs' request. (ECF Nos. 342, 343.)

- 1 -

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for attorney's fees and costs. The Court grants Plaintiffs' request for costs, but denies without prejudice the request for attorney's fees.

## BACKGROUND

To provide context for the Ninth Circuit's decision that vacated the prior fee award, the Court first reviews CAFA's provisions concerning coupon settlements. The Court then summarizes the proceedings up until the Ninth Circuit's decision. Finally, the Court turns to the Ninth Circuit's opinion before considering Plaintiffs' renewed request for the same amount of attorney's fees.

## I. The Class Action Fairness Act

### A. Coupon Settlements

"Congress passed CAFA 'primarily to curb perceived abuses of the class action device.'" *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) (quoting *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009)). "One such perceived abuse is the coupon settlement, where defendants pay aggrieved class members in coupons or vouchers but pay class counsel in cash." *Id.* Congress was concerned that "the full value of coupons was being used to support large awards of attorney's fees" in these settlements, "regardless of whether class members had any interest in using the coupons." *In re Easysaver Rewards Litig.*, 906 F.3d 747, 755 (9th Cir. 2018). Hence, "CAFA directs courts to apply heightened scrutiny to coupon settlements." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (citing 28 U.S.C. § 1712(e)).

CAFA, however, does not define a "coupon." *See* 28 U.S.C. § 1711. In *In re Online DVD*, 779 F.3d 934, the Ninth Circuit outlined three factors to determine whether a credit or similar item is a "coupon." These factors are: (1) whether the class members must "hand

over more of their own money before they can take advantage of" the credit; (2) whether the credit is valid only "for select products or services"; and (3) how much flexibility the credit provides, including whether it expires or is freely transferrable. *Id.* at 951. If the court concludes a settlement awards coupons, CAFA impacts the calculation of an award of attorney's fees for obtaining coupon relief. *See* 28 U.S.C. § 1712.

### B.    Attorney's Fees in Coupon Settlements

Typically, when a class action settlement involves a common fund, courts "have discretion to employ either the lodestar method or the percentage-of-recovery method" to calculate an attorney's fee award. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "Under the 'percentage-of-recovery method,' a fee award is calculated as a percentage of the settlement fund." *Easysaver*, 906 F.3d at 754 (quoting *Bluetooth*, 654 F.3d at 942). In comparison, the "lodestar method" involves "multiplying the number of hours the prevailing party reasonably expended on the litigation . . . by a reasonable hourly rate." *Bluetooth*, 654 F.3d at 941.

CAFA, however, affects the use of these methods in coupon settlements. Title 28 U.S.C. § 1712 provides:

> **(a) Contingent fees in coupon settlements.**—If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.
>
> **(b) Other attorney's fee awards in coupon settlements.**—
>
> > **(1) In general.**—If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.
> >
> > . . . .

**(c) Attorney's fee awards calculated on a mixed basis in coupon settlements.**—If a proposed settlement in a class action provides for an award of coupons to class members and also provides for equitable relief, including injunctive relief—

> (1) that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a); and

> (2) that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (b).

This statute's text is puzzling. *Easysaver*, 906 F.3d at 758 n.10; *see also Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) (Posner, J.) ("This is a badly drafted statute."). Before the Ninth Circuit's decision in this case, the Ninth Circuit had interpreted the relationship between § 1712's "bewildering" subsections in *In re HP Inkjet Printer Litigation*, 716 F.3d 1173. There, the district court approved a $1.5 million attorney's fee award as part of a settlement that provided both coupon and injunctive relief to class members. *Id.* at 1175. Two class members objected, arguing the fee award violated CAFA and § 1712. *Id.*

In resolving the objectors' argument, a majority of the Ninth Circuit panel interpreted § 1712(a) to mean: "If the district court awards 'any' attorney's fees, and those attorney's fees are 'attributable to the award of coupons,' then the fees award must be calculated in the manner prescribed by § 1712(a) (*i.e.*, using the redemption value of the coupons)." *HP Inkjet*, 716 F.3d at 1181. However, because "Congress did not define the term 'attributable to' anywhere in CAFA," the Ninth Circuit also had to construe this term. *Id.* It reasoned that "attributable to" means "to explain as caused or brought about by: regard as occurring in consequence or on account of." *Id.* (quoting Webster's Third New International Dictionary (2002)). Then, in applying this term, the Ninth Circuit explained:

//

//

//

[A]n attorneys' fees award is 'attributable to' an award of coupons where the attorneys' fees award is a 'consequence' of the award of coupons. Or, put differently, attorneys' fees are 'attributable to' an award of coupons where '*the* [singular] award of the coupons' is the condition precedent to the award of attorneys' fees.

*Id.* (alteration in original). Hence, "§ 1712(a) governs cases where the class obtains only coupon relief," because "[i]n such a case the portion of any attorneys' fees award that is attributable to the award of the coupons must be one hundred percent." *Id.* at 1182–83.

Turning to the district court's fee award, the Ninth Circuit held the district court erred because it based the $1.5 million fee award on a "rough estimate of the ultimate value of [the] settlement." *HP Inkjet*, 716 F.3d at 1186. This estimate included the district court's "valuation of both the injunctive *and* coupon relief." *Id.* CAFA, however, required the court "to calculate the redemption value of the coupons before awarding any attorneys' fees that were 'attributable to' the coupon relief." *Id.* Because the district court had not done so, the Ninth Circuit reversed the fee award. *Id.* at 1187.

Accordingly, the Ninth Circuit's interpretation of § 1712(a) in *HP Inkjet* indicates the district court is required to calculate a percentage value of the coupons redeemed to award any attorney's fees for work that is "attributable to" the coupon relief. 716 F.3d at 1183–85. In contrast, the dissent in *HP Inkjet* interpreted CAFA to permit "the use of a lodestar to calculate attorney's fees on the basis of hours reasonably expended on the class action as a whole, rather than as a percentage of the value of the class recovery." *Id.* at 1187–99 (Berzon, J., dissenting); *see also In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 708 (7th Cir. 2015) (finding persuasive Judge Berzon's view of § 1712 and reasoning "§ 1712 permits a district court to use the lodestar method to calculate attorney's fees to compensate class counsel for the coupon relief obtained for the class"); *Newberg on Class Actions* § 15:71 (5th ed. rev. June 2019) (summarizing the decisions interpreting § 1712 and noting several circuits have adopted a different reading of § 1712 than the *HP Inkjet* majority). With CAFA's coupon provisions and the *HP Inkjet* decision as a backdrop, the Court turns to the settlement in this case and the Ninth Circuit's ensuing opinion.

## II.     Settlement and First Appeal[1]

Defendant Provide Commerce, Inc. ("Provide") operates online businesses that sell flowers, chocolates, fruit baskets, and other similar items.  According to the Complaint, Plaintiff Josue Romero and seven other class representatives (collectively, "Plaintiffs") purchased items from a Provide business and were then presented with a pop-up advertisement for $15 off another item from the same website.  Clicking the pop-up directed Plaintiffs to a different website and instructed them to enter their contact information and click "Accept."  This process (irrespective of whether Plaintiffs entered their contact information or clicked "Accept") enrolled Plaintiffs in Provide's membership rewards program.  Provide then transmitted Plaintiffs' payment information to a separate company, Defendant Regent Group, Inc. ("Regent"), which proceeded to charge Plaintiffs a $1.95 activation fee and a recurring $14.95 monthly membership fee.  Plaintiffs did not consent to joining the rewards program or, by extension, to having their data transferred to Regent.  Plaintiffs also never received "the promised coupons, gift codes, or any other savings benefits."

In 2009, Plaintiffs filed a putative class action against Defendants in this Court, alleging violations of various state laws arising from Defendants' operation of their membership rewards program.  After more than two years of litigation, including extensive discovery and mediation, the parties agreed to settle.  The proposed settlement provides class members with two forms of relief: monetary reimbursement of membership fees upon submission of a claim and a $20 credit.

The settlement establishes a $12.5 million fund from which Defendants will pay up to $8.7 million in attorney's fees; $80,000 in enhancement awards to the named plaintiffs; and $200,000 in litigation costs.  The approximately $3.5 million remaining will be available to fund the settlement's administration costs and to reimburse class members for

---

[1] The Court and the parties are well-versed in the allegations underlying this consumer class action. Hence, for simplicity's sake, the Court incorporates the Ninth Circuit's summary of the proceedings up to the second appeal.  *See Easysaver*, 906 F.3d at 752–54.

their membership fees "on a pro rata basis up to the full amount owed." To receive such a refund, class members had to submit a claim affirming that they had neither intended to enroll in the program nor used any program benefits other than the initial discount code. After the refunds are issued, any remaining funds are to be distributed as a *cy pres* award to San Diego State University, the University of California at San Diego, and the University of San Diego School of Law "for a chair, professorship, fellowship, lectureship, seminar series or similar funding, gift, or donation program . . . regarding internet privacy or internet data security."

The settlement also directs Defendants to email every class member a $20 credit that can be used to purchase items on Defendants' websites. Unlike with the refund, class members were not required to submit a claim to receive the credit. The credits are to be fully transferable, but they will include a series of restrictions, including that they expire one year after their distribution date and they cannot be used in the lead-up to Christmas, Valentine's Day, or Mother's Day. The credits also cannot be used for same-day orders, nor can they be combined with other promotions.

In June 2012, the Court preliminarily approved the settlement. The parties informed the Court that the class contained approximately 1.3 million consumers who had been enrolled in the rewards program at some point since August 2005.

Class members were then notified of the settlement and given a 135-day period to request a refund, during which only about 3,000 class members did so. Their submitted claims requested a total of $225,000 in cash refunds, leaving approximately $3 million of the settlement's cash fund to be distributed to the *cy pres* beneficiaries. Separately, class counsel moved for $8.7 million in fees and $200,000 in costs.

In January 2013, the Court held a final settlement approval hearing at which class member Brian Perryman ("Objector") objected to the settlement. He argued that the attorney's fee award did not comply with CAFA's requirements for settlements awarding coupons and that the *cy pres* award was improper. The Court rejected these objections and issued a final order approving both the settlement and class counsel's accompanying fee

request. The Court's order placed the full settlement value at $38 million, including $12.5 million for the cash fund and $25.5 million for the $20 credits to be distributed to the approximately 1.3 million class members. Objector appealed, and the Ninth Circuit vacated and remanded for further proceedings in light of its decision in *In re Online DVD*, 779 F.3d 934, which, as mentioned above, addressed what qualifies as a "coupon" under CAFA.

On remand, this Court determined that, under *In re Online DVD*, the credits should not be construed as coupons, and that it was therefore unnecessary to apply CAFA's requirements for coupon settlements. In the Court's view, it was particularly significant that class members had, by virtue of their inclusion in the class, shown "an interest in getting $15.00 off their next purchase" from Defendants. Considering this factor in conjunction with the holding of *In re Online DVD*, the Court concluded the "settlement was not a coupon settlement subject to the strictures of section 1712."

Again using $38 million as the total value of the settlement, this Court then approved the fee award based on both percentage-of-recovery and lodestar calculations. Under the percentage-of-recovery method, the Court concluded that an $8.7 million attorney's fee award was reasonable because it represented 23% of the settlement value—below the 25% benchmark typically used in the Ninth Circuit. The Court then cross-checked the reasonableness of the award using the lodestar method. Based on declarations reciting the hours spent by class counsel on this case and their hourly rates, class counsel's fees came to approximately $4.3 million. The Court decided that class counsel's rates and hours were reasonable and, further, that a multiplier of two—necessary for the lodestar figure to match the $8.7 million awarded under the settlement—was appropriate. As a result, the Court reinstated its prior approval of the settlement and the fee award.

## III. Second Appeal

Objector again appealed to challenge the attorney's fee and *cy pres* awards. *Easysaver*, 906 F.3d at 754. As to the fee award, Objector argued the Court erred in not

applying CAFA's coupon settlement provisions. *Id.* The Ninth Circuit agreed. *Id.* at 756. The Ninth Circuit explained that, "[r]egardless of the substance of the underlying claim or injury, CAFA prevents settling parties from valuing coupons at face value without accounting for their redemption rate." *Id.* Therefore, the Court of Appeals held this Court improperly merged its "coupon analysis with whether the settlement was fair and reasonable." *Id.*

Then, in performing a new coupon analysis, the Ninth Circuit found the $20 credits awarded in the settlement are coupons. *Easysaver*, 906 F.3d at 756–758. And having established the credits are coupons, the Ninth Circuit held this court erred when it "incorporated the full face value of the coupons into both its percentage-of-recovery calculation and lodestar calculation of the attorney's fee award." *Id.* at 758. As mentioned above, this Court had reasoned that the $8.7 million fee award was reasonable because it was only 23% of the total $38 million recovery. But the Ninth Circuit explained that "because the $38 million figure did not account for the redemption rate of the credits, it is unclear whether the fee award is in fact a reasonable percentage of the settlement fund." *Id.* Therefore, the Ninth Circuit could not approve this Court's percentage-of-recovery evaluation without the redemption information. *Id.*

Nevertheless, the settling parties argued that this Court's award could be upheld based on the lodestar calculation. *Easysaver*, 906 F.3d at 759. In response, the Ninth Circuit reviewed 28 U.S.C. § 1712 and summarized its interpretation from *HP Inkjet* in a footnote. *Id.* at 758, 759 n.11. There, the Ninth Circuit noted: "Although settlements like this one that award coupons and monetary relief are not expressly mentioned in *In re HP*, it must be the case that § 1712(b) also encompasses the use of the lodestar method for this type of mixed settlement. Such settlements would otherwise exist in a no-man's land with no guidance from § 1712." *Id.* at 759 n.11. Hence, the Ninth Circuit stated that CAFA allows a court to use the lodestar method in these circumstances "to determine any portion of attorney's fees *not attributable* to coupons." *Id.* at 759 (emphasis added).

Relying on *HP Inkjet*, the Ninth Circuit then repeated that CAFA does not permit the district court to approximate the ultimate value of the settlement and then award fees without considering the redemption value of the coupons. *Easysaver*, 906 F.3d at 759. "In particular, in a mixed settlement, a district court may use the lodestar approach provided that it does so without reference to the dollar value of the settlement fund—or, of course, it may reference the dollar value of the settlement fund if it accounts for the redemption rate of the coupons in calculating that dollar value."[2] *Id.* Consequently, the Ninth Circuit held that this Court—like the district court in *HP Inkjet*—erred when the Court "reverse-engineered the lodestar multiplier using a value of the settlement that included the full face value of all the $20 coupons." *Id.* Therefore, although this Court calculated an initial $4.3 million lodestar fee "independently of any specific consideration of the coupons," the Ninth Circuit explained this figure "lost this independence when [the Court] used a multiplier to match the lodestar fee to the percentage-of-recovery fee—which was, by definition, a percentage of the full value of the settlement, including the face value of the coupons." *Id.* at 759. The value of the coupon relief thus "impermissibly informed" this Court's approval of the lodestar fee. *Id.* at 759–60.

Accordingly, the Ninth Circuit vacated the fee award and remanded for it to "be recalculated in a manner that treats the $20 credits as coupons under CAFA." *Easysaver*, 906 F.3d at 760. The Ninth Circuit then rejected Objector's challenges to the *cy pres* component of the settlement. *Id.* at 760–762. And, "given both the structure of [the]

---

[2] There appears to be some tension between the Ninth Circuit's majority opinion in *HP Inkjet* and the circuit court's decision in this case. *HP Inkjet* suggests that in a mixed coupon settlement, at least some of the attorney's fees will be "attributable to" the coupon relief because fees are "*never* 'attributable to' an attorney's work on the action"; rather, "[t]hey are 'attributable to' the relief obtained for the class." *See* 716 F.3d at 1181–87. Therefore, *HP Inkjet* indicates a court should calculate the redemption rate of the coupons to compensate counsel for obtaining the coupon relief—in addition to using the lodestar method to award fees for non-coupon relief under § 1712(b). *See id.*; *see also Newberg on Class Actions* § 15:71 (5th ed. rev. June 2019) (interpreting *HP Inkjet* to impose a "percentage method requirement" when a settlement awards coupon relief). *Easysaver*, however, indicates that so long as a mixed settlement falls under § 1712(b), a court that lacks the redemption rate information may still be able to award fees for the settlement using the lodestar method if the court is careful not to reference the dollar value of the total settlement fund or the coupon relief. *See* 906 F.3d at 758–60.

settlement agreement and the focus of Objector's challenges," the Ninth Circuit held that it was "unnecessary to reverse the entire settlement approval in conjunction with [its] vacatur of the fee award." *Id.* at 762. Thus, the Ninth Circuit otherwise affirmed the settlement approval. *Id.* Upon remand, this Court set a briefing schedule to allow the parties and Objector to again address the proper fee award. (ECF No. 337.)

## ANALYSIS

In their renewed motion for attorney's fees and costs, Plaintiffs continue to seek a total of approximately $8.7 million in attorney's fees and $200,000 in costs. (Mot. 1:15–16.) They ask the Court to award these fees for the entire settlement by using only the lodestar method. (*Id.* 8:5–9:13.) Hence, they propose that the Court not base any of its fee award on the value of the coupons or their redemption rate. *See Easysaver*, 906 F.3d at 760 n.13.

When the Court cross-checked its percentage-of-recovery calculation for the prior fee award, the Court calculated the lodestar to be approximately $4.3 million. Now, Plaintiffs submit that the lodestar should be $6.3 million. (Mot. 11:10–11.) To justify the nearly 50% increase, Plaintiffs explain that class counsel have "worked an additional 1670.4 hours since" the first fee motion was filed in 2012. (*Id.* 9:22–23.) They also argue that the Court should award fees at class counsel's current rates, which have increased since 2012. (*Id.* 9:22–23.) Finally, Plaintiffs ask the Court to apply a multiplier of 1.38 to the new $6.3 million lodestar—to again reach a total of $8.7 million in fees. (*Id.* 1:15–17, 26:12–18:7.) Under the settlement's "clear sailing agreement," Defendants agree to neither object to an attorney's fee up to this amount nor "take a position on the total Settlement value or total value of the $20 credit" being distributed to the class. (Settlement Agreement § 2.1(c), ECF No. 248-3.) *See also Bluetooth*, 654 F.3d at 947 (discussing clear sailing agreements).

Objector challenges the renewed fee request on several grounds. First, he argues that Plaintiffs' lodestar approach is improper because CAFA requires the Court to defer

"much of class counsel's fee . . . until the redemption rate of the coupons can be ascertained." (Opp'n 1:14–16.) Second, Objector argues that Plaintiffs' fee request disproportionately benefits class counsel at the expense of the class. (*Id.* 4:3–7:1.) Third, Objector argues the fee request suffers from other "infirmities," including that class counsel are seeking fees for excessive and duplicative work. (*Id.* 7:1–13:2.)

Some of these objections have merit. Namely, in light of the history of this case, the Court also has concerns with Plaintiffs' suggested approach to recalculating the fee award. Plaintiffs also appear to be seeking fees for class counsel's time spent trying to collect fees from the common fund, which is improper. The Court addresses these issues in turn and denies without prejudice the fee request.

### A.    Bifurcation of the Fee Award

As mentioned, Plaintiffs ask the Court to apply only the lodestar method to calculate an appropriate fee award for the entire settlement. Indeed, the Ninth Circuit noted CAFA "allows courts to use the lodestar approach to determine any portion of attorney's fees *not attributable* to coupons in mixed settlements that award both coupons and non-coupon relief." *Easysaver*, 906 F.3d at 759 (emphasis added). Therefore, in Plaintiffs' view, so long as the Court does not reference "the dollar value of the settlement fund" or the value of the coupon relief, none of the proposed $8.7 million award would be "attributable to" the coupon relief that class counsel obtained in the parties' mixed settlement. *See id.*; *but see also HP Inkjet*, 716 F.3d at 1182 ("Attorney's fees are *never* 'attributable to' an attorney's work on the action. They are 'attributable to' the relief obtained for the class.").

Objector argues CAFA requires a more nuanced approach in this circuit. (Opp'n 2:11–4:2.) Relying on *HP Inkjet*, summarized above, Objector argues that the "portion of the fee award that is attributable to the recovery of coupons must be awarded under § 1712(a) as a percentage of the coupons redeemed." (*Id.* 2:22–23 (citing *HP Inkjet*, 716 F.3d at 1184).) Therefore, he argues the Court must determine what portion of the fees in this case is attributable to the award of coupons. (*Id.* 3:2–3.) And, because the Court and

Plaintiffs previously valued the coupon relief as approximately two-thirds of the total value of the settlement ($25.5 million out of $38 million), Objector argues the Court should find two-thirds of the requested fees must be "attributable to" the coupons. (*Id.* 3:6–12.) Based on this analysis, Objector asks the Court to bifurcate the fee request by deferring two-thirds of the proposed $8.7 million award to be "eventually awarded (or not) as a percentage of those coupons actually redeemed." (*Id.* 3:9–11.) The likely result would be that class counsel could recover fees based on only a third of their time spent on the action. (*See id.*) In reply, Plaintiffs double-down on their proposed approach, but they do not address *HP Inkjet*'s discussion of "attributable to" in § 1712(a) when responding to Objector's argument. (*See* Reply 4:14–7:5.)

Of the two proposed approaches, the Court finds bifurcation to be more appropriate in these circumstances, albeit on different terms than Objector suggests. Even if the Ninth Circuit's opinion allows this Court to recalculate a fee award for the entire settlement using only the lodestar method, there are several drawbacks to this approach. For instance, because the redemption rate of the coupons is unknown, the Court would have to determine an appropriate lodestar for the complete settlement without referencing the value of the coupon relief or the total dollar value of the settlement. *See Easysaver*, 906 F.3d at 759 ("[I]n a mixed settlement, a district court may use the lodestar approach provided that it does so without reference to the dollar value of the settlement fund—or, of course, it may reference the dollar value of the settlement fund if it accounts for the redemption rate of the coupons[.]"). A footnote in the Ninth Circuit's opinion suggests that "it may be possible in some cases for a district court to evaluate the reasonableness of the hours expended and whether 'the level of success achieved by the plaintiff' warrants an upward or downward departure without considering the award of coupons at all." *Id.* at 759 n.12. However, the Court declines to attempt to do so here when Plaintiffs are seeking fees for the entire settlement. The Court previously based its fee determination and lodestar multiplier in large part on the total dollar value of the settlement. It would be inconsistent

for the Court to now ignore the value of the coupon relief yet ultimately approve the same amount of attorney's fees for the same settlement.

In the same vein, Plaintiffs' proposed approach of awarding all of the fees before determining the redemption rate of the coupons would deprive the Court of the ability to cross-check its lodestar calculation because the Court could not determine the final value of the settlement. *See, e.g.*, *Wing v. Asarco Inc.*, 114 F.3d 986, 990 (9th Cir. 1997). "[E]ven though the lodestar method may be a perfectly appropriate method of fee calculation," the Ninth Circuit has "also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." *Bluetooth*, 654 F.3d at 944. And although a percentage cross-check can be less helpful where "classwide benefits are not easily monetized," the coupon relief here can be monetized by examining the redemption rate. *See Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 547 (9th Cir. 2016). The Court found it helpful to cross-check its prior percentage-of-recovery fee determination with a lodestar calculation. The Court would similarly find it helpful to cross-check a new lodestar calculation against a percentage of the sum of both the non-coupon relief and the value of the redeemed coupons. Alternatively, if the Court were to assess a lodestar figure for only the non-coupon relief—the $12.5 million cash fund—the Court may choose to cross-check the lodestar figure with a percentage of only the cash fund—leaving fees for the coupon relief to be determined separately.

Thus, given that Plaintiffs are seeking fees based on all the relief provided in the mixed settlement, the Court finds it more appropriate to apply the percentage-of-recovery method to award fees for the coupon relief, *see* 28 U.S.C. § 1712(a), and the lodestar method to award fees for only the non-coupon relief, *see id.* § 1712(b). The fees awarded using the lodestar method for the non-coupon relief will therefore be "not attributable to" the coupon relief. *See Easysaver*, 906 F.3d at 759; *see also HP Inkjet*, 716 F.3d at 1181–84. And to be clear, regardless of whether the Ninth Circuit's case law requires the Court to adopt this approach—which Plaintiffs and Objector dispute—the Court affirmatively elects to do so given the circumstances of this case. *See Easysaver*, 906 F.3d at 759, 760

- 14 -

& n.3; *HP Inkjet*, 716 F.3d at 1184–85, 1186 n.19; *see also Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969, 974 (8th Cir. 2016) (noting that although courts disagree on whether § 1712(a) limits courts' discretion to use the lodestar method in coupon settlements, no court has held that CAFA "usurps the discretion granted the district court . . . and gives class counsel the *right* to elect [only] the lodestar methodology").

One advantage to this approach is that the Court's fee award will compensate class counsel for their success in obtaining a certain benefit for the class—the $12.5 million fund—and "take into account the speculative nature of" the coupon relief. *See HP Inkjet*, 716 F.3d at 1186 n.19; *cf. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 334 (3d Cir. 1998) (approving of the district court's plan to bifurcate a fee award to provide "an immediate payment based on a percentage of the guaranteed minimum recovery of $410 million, while requiring future payments to be based on actual results in recognition that the ultimate class recovery is not quantifiable at this point"). This approach is also more consistent with the Court's prior fee determination, which was based on the total value of the settlement and the overall benefit to the class members. *See Bluetooth*, 654 F.3d at 942 (providing "the benefit obtained for the class" is the "[f]oremost" consideration for assessing whether to adjust a lodestar fee).

To carry out this approach, the Court will bifurcate the fee award. The Ninth Circuit suggested bifurcation as one option to proceed in both this case, *Easysaver*, 906 F.3d at 760 n.3, and *HP Inkjet*, 716 F.3d at 1186 n.19.[3] Specifically, the Court will deny without prejudice the present motion for attorney's fees based on the entire settlement. The Court will then allow Plaintiffs to resubmit a request for attorney's fees that is based on only the non-coupon portion of the settlement—*i.e.*, the $12.5 million cash fund. *Cf. McKnight v.*

---

[3] The Court is unconvinced by Plaintiffs' argument that the law of the case doctrine means the Court can only apply the lodestar method to determine fees for the entire settlement under § 1712(b). (*See* Reply 4:14–7:5.) The Ninth Circuit held § 1712(b) "encompasses the use of the lodestar method for this type of mixed settlement," but nothing in the opinion precludes this Court from bifurcating the fee award to separately account for both the coupon and non-coupon relief. *See Easysaver*, 906 F.3d at 759 n.11. Rather, as mentioned, the Ninth Circuit suggested the Court could take this approach. *See id.* at 760 n.13.

- 15 -

*Uber Techs., Inc.*, No. 14-CV-05615-JST, 2019 WL 3804676, at *7–8 (N.D. Cal. Aug. 13, 2019) (denying without prejudice a motion for attorney's fees in a coupon settlement and ordering the plaintiffs to file an amended motion). Hence, the Court will assess the reasonableness of Plaintiffs' fee request, including any request for a multiplier, based on the non-coupon relief. *See* 18 U.S.C. § 1712(b). Further, after the parties distribute the coupons to the class members, Plaintiffs may then return to the Court to seek an additional fee award based on the value of the coupons redeemed by the class members. *See id.* § 1712(a).

The Court recognizes that the settlement is structured to not distribute the coupons until the approval order is finalized and the amount of the fee award has been determined. (*See* Settlement Agreement §§ 1.11, 3.12, 3.13, ECF No. 248-3.) And the settlement agreement provides that if the Court "conditions its approval . . . on any modifications of this Settlement Agreement . . . that are not acceptable to all Parties," the settlement may be unwound. (*Id.* § 3.12.) But the Ninth Circuit has already approved the substance of the settlement. Moreover, the Settlement Agreement also provides that a reduction in class counsel's fees "shall not affect any of the Parties' other rights and obligations under the Settlement Agreement, and shall only serve to increase the amount of the" cash fund to be distributed to class members and ultimately the *cy pres* recipients. (*Id.* § 2.1(c).) At most, the Court's proposed approach would require the parties to deviate from the procedural deadlines included in the Settlement Agreement. Although bifurcation may be detrimental to class counsel's interests, modifying the procedural timelines in the settlement agreement to allow the coupons to be distributed for the Court to complete the fee calculation and finalize the amounts to be deducted from the common fund would not materially affect the class members' or Defendants' interests under the settlement.

If the parties are unwilling to arrange for the redemption rate to be provided to the Court, class counsel may also opt to forego recovering fees for obtaining the coupon relief altogether, in which case the Court will only award fees based on the non-coupon relief. *Cf. HP Inkjet*, 716 F.3d at 1186 ("Of course, had the settlement been structured so that the

redemption value of the coupons was ascertainable before final settlement approval, plaintiffs' attorneys would have been entitled to seek compensation for both the coupon and the injunctive relief obtained for the class."). Regardless of how the parties choose to proceed, however, the Court will not award attorney's fees based on the entire mixed settlement without having access to the redemption information.

That said, the Court is also unpersuaded by Objector's argument that the Court should predetermine that two-thirds of any fee award must be "attributable to" the coupon relief. (*See* Opp'n 3:6–12.) Objector's argument invites the Court to once again value the coupons at their face value—$25.5 million out of the $38 million total potential settlement value. (*Id.*) The Court will not do the same thing that caused it to be in this situation to begin with.

Accordingly, the Court denies without prejudice Plaintiffs' request for $8.7 million in attorney's fees. Going forward, the Court will bifurcate the fee award in the manner described above and invite a revised request for attorney's fees.

### B.    Fees to Collect Fees

Although the Court has denied Plaintiffs' request for attorney's fees, the Court addresses one of Objector's challenges that will impact a future fee request. Objector argues that class counsel's lodestar is excessive because it appears to include time spent pursuing the fee award. (Opp'n 8:8–17.) Plaintiffs do not respond to this specific objection. (*See* Reply 7:6–8:14.)

"Time spent obtaining an attorneys' fee in common fund cases is not compensable because it does not benefit the plaintiff class." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). The time spent on fee litigation does not benefit the class because, "rather than creating or preserving the common fund, the fee litigation actually depletes it." *Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690, 694 n.5 (9th Cir. 1991).

This rule applies to this mixed-settlement coupon case. Class counsel's fees are to be deducted from the $12.5 million common fund. And upon review, Plaintiffs appear to be seeking to recover for time spent preparing fee petitions. For example, one of class counsel's time reports includes approximately $110,000 in time spent preparing the motion for preliminary approval, as well as the "motion for attorney fees and incentives" and the "renewed motion for attorney fees following second appeal." (Patterson Decl. Ex. 1, ECF No. 338-3.) Other time reports do not include enough information to allow the Court to resolve Objector's challenge. Therefore, there is some merit to Objector's complaint that class counsel's lodestar figure improperly includes time spent trying to recover fees from the common fund. Accordingly, the Court orders that any future fee request exclude the time spent pursuing fees from the common fund, and Plaintiffs shall explain to the Court how much time has been deducted from their proposed lodestar to account for this instruction.

## C.    Costs

Separately, Plaintiffs move for an award of $200,000 in costs. Class counsel submit that they have incurred out-of-pocket costs totaling $268,290, but they seek a maximum of $200,000 pursuant to the settlement agreement. (Mot. 18:9–16.) Objector does not challenge the request for costs. (*See* Opp'n.) The Court previously approved Plaintiffs' request for these costs in 2012. (ECF No. 271.) It is unclear whether the Ninth Circuit's opinion requires the Court to revisit this issue. *See Easysaver*, 906 F.3d at 763. For the avoidance of doubt, however, the Court incorporates its prior determination and grants Plaintiffs' renewed request for $200,000 in costs.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for attorney's fees and costs. The Court grants Plaintiffs' request for an award of $200,000 in costs to class counsel. The Court, however, denies without prejudice

09cv02094

Plaintiffs' request for $8.7 million in attorney's fees based on the entire settlement. The Court bifurcates the fee award in the manner described in this order. If Plaintiffs wish to seek fees based on only the non-coupon portion of the settlement, they may file a new motion for attorney's fees that is consistent with this order no later than **November 1, 2019**. The Court will provide Defendants and Objector an opportunity to respond to any future fee request.

Further, unless class counsel choose to forego recovering any fees based on the coupon relief, the Court **ORDERS** Plaintiffs and Defendants to meet and confer regarding the plan for distributing the credits under the settlement to allow the parties to determine the redemption rate of the coupons. The parties shall file a joint status report no later than **October 25, 2019**, informing the Court of their plan for distributing the credits, including whether they have chosen to amend the settlement agreement or whether the Court needs to enter an amended judgment to allow for distribution of the credits. *See McKnight*, 2019 WL 3804676, at *8.

**IT IS SO ORDERED.**

**DATED: September 27, 2019**

Hon. Cynthia Bashant
United States District Judge

- 19 -