1
2
3
4
5
6
7
8
9
10
11

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

IN RE EASYSAVER REWARDS
LITIGATION

Case No. 09-cv-02094-BAS-WVG

**ORDER GRANTING IN PART
PLAINTIFFS' RENEWED MOTION
FOR ATTORNEY'S FEES**

**[ECF No. 356]**

Presently before the Court is Plaintiffs' renewed motion for attorney's fees.  Class counsel seek approximately $5.7 million in fees based on the non-coupon portion of the parties' settlement.  Class member Brian Perryman objects.  The Court finds this motion suitable for determination on the papers submitted and without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).  For the following reasons, the Court **GRANTS IN PART** Plaintiffs' renewed motion for attorney's fees.

1

**BACKGROUND**

2      This case has endured for over a decade.  Its history includes two appeals, a

3   hodgepodge of motions, and now a bankruptcy.  To provide context for Plaintiffs' renewed

4   fee motion, the Court first reviews CAFA's provisions concerning coupon settlements.

5   The Court then summarizes the parties' settlement, the Ninth Circuit's opinion vacating

6   the prior fee award, and this Court's follow-up order.  Finally, the Court summarizes

7   bankruptcy developments that impact the renewed fee request.

8   **I.     The Class Action Fairness Act**

9          **A.     Coupon Settlements**

10      "Congress passed CAFA 'primarily to curb perceived abuses of the class action

11   device.'"  *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) (quoting

12   *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009)).  "One such perceived abuse

13   is the coupon settlement, where defendants pay aggrieved class members in coupons or

14   vouchers but pay class counsel in cash."  *Id.*  Congress was concerned that "the full value

15   of coupons was being used to support large awards of attorney's fees" in these settlements,

16   "regardless of whether class members had any interest in using the coupons."  *In re*

17   *Easysaver Rewards Litig.*, 906 F.3d 747, 755 (9th Cir. 2018).  Hence, "CAFA directs courts

18   to apply heightened scrutiny to coupon settlements."  *In re Online DVD-Rental Antitrust*

19   *Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (citing 28 U.S.C. § 1712(e)).

20      CAFA, however, does not define a "coupon."  *See* 28 U.S.C. § 1711.  In *Online*

21   *DVD*, 779 F.3d 934, the Ninth Circuit outlined three factors to determine whether a credit

22   or similar item is a "coupon."  These factors are: (1) whether the class members must "hand

23   over more of their own money before they can take advantage of" the credit; (2) whether

24   the credit is valid only "for select products or services"; and (3) how much flexibility the

25   credit provides, including whether it expires or is freely transferrable.  *Id.* at 951.  If the

26   court concludes a settlement awards coupons, CAFA impacts the calculation of an award

27   of attorney's fees for obtaining coupon relief.  *See* 28 U.S.C. § 1712.

28

1

**B.      Attorney's Fees in Coupon Settlements**

2

Typically, when a class action settlement involves a common fund, courts "have

3

discretion to employ either the lodestar method or the percentage-of-recovery method" to

4

calculate an attorney's fee award.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d

5

935, 942 (9th Cir. 2011).  "Under the 'percentage-of-recovery method,' a fee award is

6

calculated as a percentage of the settlement fund." *Easysaver*, 906 F.3d at 754 (quoting

7

*Bluetooth*, 654 F.3d at 942).  In comparison, the "lodestar method" involves "multiplying

8

the number of hours the prevailing party reasonably expended on the litigation . . . by a

9

reasonable hourly rate." *Bluetooth*, 654 F.3d at 941.

10

CAFA, however, affects the use of these methods in coupon settlements.  Title 28

11

U.S.C. § 1712 provides:

12

**(a) Contingent fees in coupon settlements.**—If a proposed settlement in a

13

class action provides for a recovery of coupons to a class member, the portion
of any attorney's fee award to class counsel that is attributable to the award of

14

the coupons shall be based on the value to class members of the coupons that

15

are redeemed.

16

**(b) Other attorney's fee awards in coupon settlements.**—

17

**(1) In general.**—If a proposed settlement in a class action provides for

18

a recovery of coupons to class members, and a portion of the recovery
of the coupons is not used to determine the attorney's fee to be paid to

19

class counsel, any attorney's fee award shall be based upon the amount

20

of time class counsel reasonably expended working on the action.

21

. . . .

22

**(c) Attorney's fee awards calculated on a mixed basis in coupon**

23

**settlements.**—If a proposed settlement in a class action provides for an award
of coupons to class members and also provides for equitable relief, including

24

injunctive relief—

25

(1) that portion of the attorney's fee to be paid to class counsel that is

26

based upon a portion of the recovery of the coupons shall be calculated
in accordance with subsection (a); and

27

28

> (2) that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (b).

This statute's text is puzzling. *Easysaver*, 906 F.3d at 758 n.10; *see also Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) (Posner, J.) ("This is a badly drafted statute."). Before the Ninth Circuit's decision in this case, the Ninth Circuit had interpreted the relationship between § 1712's "bewildering" subsections in *HP Inkjet*, 716 F.3d 1173. There, the district court approved a $1.5 million attorney's fee award as part of a settlement that provided both coupon and injunctive relief to class members. *Id.* at 1175. Two class members objected, arguing the fee award violated CAFA and § 1712. *Id.*

In resolving the objectors' argument, a majority of the Ninth Circuit panel interpreted § 1712(a) to mean: "If the district court awards 'any' attorney's fees, and those attorney's fees are 'attributable to the award of coupons,' then the fees award must be calculated in the manner prescribed by § 1712(a) (*i.e.*, using the redemption value of the coupons)." *HP Inkjet*, 716 F.3d at 1181. However, because "Congress did not define the term 'attributable to' anywhere in CAFA," the Ninth Circuit also had to construe this term. *Id.* It reasoned that "attributable to" means "to explain as caused or brought about by: regard as occurring in consequence or on account of." *Id.* (quoting Webster's Third New International Dictionary (2002)). Then, in applying this term, the Ninth Circuit explained:

> [A]n attorneys' fees award is 'attributable to' an award of coupons where the attorneys' fees award is a 'consequence' of the award of coupons. Or, put differently, attorneys' fees are 'attributable to' an award of coupons where '*the* [singular] award of the coupons' is the condition precedent to the award of attorneys' fees.

*Id.* (alteration in original). Hence, "§ 1712(a) governs cases where the class obtains only coupon relief," because "[i]n such a case the portion of any attorneys' fees award that is attributable to the award of the coupons must be one hundred percent." *Id.* at 1182–83.

Turning to the district court's fee award, the Ninth Circuit held the district court erred because it based the $1.5 million fee award on a "rough estimate of the ultimate value

of [the] settlement." *HP Inkjet*, 716 F.3d at 1186. This estimate included the district court's "valuation of both the injunctive *and* coupon relief." *Id.* CAFA, however, required the court "to calculate the redemption value of the coupons before awarding any attorneys' fees that were 'attributable to' the coupon relief." *Id.* Because the district court had not done so, the Ninth Circuit reversed the fee award. *Id.* at 1187.

Accordingly, the Ninth Circuit's interpretation of § 1712(a) in *HP Inkjet* indicates the district court is required to calculate a percentage value of the coupons redeemed to award any attorney's fees for work that is "attributable to" the coupon relief. 716 F.3d at 1183–85. In contrast, the dissent in *HP Inkjet* interpreted CAFA to permit "the use of a lodestar to calculate attorney's fees on the basis of hours reasonably expended on the class action as a whole, rather than as a percentage of the value of the class recovery." *Id.* at 1187–99 (Berzon, J., dissenting); *see also In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 708 (7th Cir. 2015) (finding persuasive Judge Berzon's view of § 1712 and reasoning "§ 1712 permits a district court to use the lodestar method to calculate attorney's fees to compensate class counsel for the coupon relief obtained for the class"); *Newberg on Class Actions* § 15:71 (5th ed. Dec. 2019) (summarizing the decisions interpreting § 1712 and noting several circuits have adopted a different reading of § 1712 than the *HP Inkjet* majority). With CAFA's coupon provisions and the *HP Inkjet* decision as a backdrop, the Court turns to the settlement in this case and the Ninth Circuit's ensuing opinion.

## II.    Settlement and First Appeal[1]

Defendant Provide Commerce, Inc. operates online businesses that sell flowers, chocolates, fruit baskets, and other similar items. According to the Complaint, Plaintiff Josue Romero and seven other class representatives purchased items from a Provide Commerce business and were then presented with a pop-up advertisement for $15 off another item from the same website. Clicking the pop-up directed Plaintiffs to a different

---

[1] The Court and the parties are well-versed in the allegations underlying this consumer class action. Hence, for simplicity's sake, the Court incorporates the Ninth Circuit's summary of the proceedings up to the second appeal. *See Easysaver*, 906 F.3d at 752–54.

website and instructed them to enter their contact information and click "Accept." This process (irrespective of whether Plaintiffs entered their contact information or clicked "Accept") enrolled Plaintiffs in Provide's membership rewards program. Provide Commerce then transmitted Plaintiffs' payment information to a separate company, Defendant Regent Group, Inc. ("Regent"), which proceeded to charge Plaintiffs a $1.95 activation fee and a recurring $14.95 monthly membership fee. Plaintiffs did not consent to joining the rewards program or, by extension, to having their data transferred to Regent. Plaintiffs also never received "the promised coupons, gift codes, or any other savings benefits."

In 2009, Plaintiffs filed a putative class action against Defendants in this Court, alleging violations of various state laws arising from Defendants' operation of their membership rewards program. After more than two years of litigation, including extensive discovery and mediation, the parties agreed to settle. The proposed settlement provides class members with two forms of relief: monetary reimbursement of membership fees upon submission of a claim and a $20 credit.

The settlement establishes a $12.5 million fund from which Defendants will pay up to $8.7 million in attorney's fees; $80,000 in enhancement awards to the named plaintiffs; and $200,000 in litigation costs. The approximately $3.5 million remaining will be available to fund the settlement's administration costs and to reimburse class members for their membership fees "on a pro rata basis up to the full amount owed." To receive such a refund, class members had to submit a claim affirming that they had neither intended to enroll in the program nor used any program benefits other than the initial discount code. After the refunds are issued, any remaining funds are to be distributed as a *cy pres* award to San Diego State University, the University of California at San Diego, and the University of San Diego School of Law "for a chair, professorship, fellowship, lectureship, seminar series or similar funding, gift, or donation program . . . regarding internet privacy or internet data security."

The settlement also directs Defendants to email every class member a $20 credit that can be used to purchase items on Defendants' websites.  Unlike with the refund, class members were not required to submit a claim to receive the credit.  The credits are to be fully transferable, but they will include a series of restrictions, including that they expire one year after their distribution date and they cannot be used in the lead-up to Christmas, Valentine's Day, or Mother's Day.  The credits also cannot be used for same-day orders, nor can they be combined with other promotions.

In June 2012, the Court preliminarily approved the settlement.  The parties informed the Court that the class contained approximately 1.3 million consumers who had been enrolled in the rewards program at some point since August 2005.

Class members were then notified of the settlement and given a 135-day period to request a refund, during which only about 3,000 class members did so.  Their submitted claims requested a total of $225,000 in cash refunds, leaving approximately $3 million of the settlement's cash fund to be distributed to the *cy pres* beneficiaries.  Separately, class counsel moved for $8.7 million in fees and $200,000 in costs.

In January 2013, the Court held a final settlement approval hearing at which class member Brian Perryman ("Objector") objected to the settlement.  He argued that the attorney's fee award did not comply with CAFA's requirements for settlements awarding coupons and that the *cy pres* award was improper.  The Court rejected these objections and issued a final order approving both the settlement and class counsel's accompanying fee request.  The Court's order placed the full settlement value at $38 million, including $12.5 million for the cash fund and $25.5 million for the $20 credits to be distributed to the approximately 1.3 million class members.  Objector appealed, and the Ninth Circuit vacated and remanded for further proceedings in light of its decision in *Online DVD*, 779 F.3d 934, which, as mentioned above, addressed what qualifies as a "coupon" under CAFA.

On remand, this Court determined that, under *Online DVD*, the credits should not be construed as coupons, and that it was therefore unnecessary to apply CAFA's requirements

for coupon settlements. In the Court's view, it was particularly significant that class members had, by virtue of their inclusion in the class, shown "an interest in getting $15.00 off their next purchase" from Defendants. Considering this factor in conjunction with the holding of *Online DVD*, the Court concluded the "settlement was not a coupon settlement subject to the strictures of section 1712."

Again using $38 million as the total value of the settlement, this Court then approved the fee award based on both percentage-of-recovery and lodestar calculations. Under the percentage-of-recovery method, the Court concluded that an $8.7 million attorney's fee award was reasonable because it represented 23% of the settlement value—below the 25% benchmark typically used in the Ninth Circuit. The Court then cross-checked the reasonableness of the award using the lodestar method. Based on declarations reciting the hours spent by class counsel on this case and their hourly rates, class counsel's fees came to approximately $4.3 million. The Court decided that class counsel's rates and hours were reasonable and, further, that a multiplier of two—necessary for the lodestar figure to match the $8.7 million awarded under the settlement—was appropriate. As a result, the Court reinstated its prior approval of the settlement and the fee award.

### III.   Second Appeal

Objector again appealed to challenge the attorney's fee and *cy pres* awards. *Easysaver*, 906 F.3d at 754. As to the fee award, Objector argued the Court erred in not applying CAFA's coupon settlement provisions. *Id.* The Ninth Circuit agreed. *Id.* at 756. The Ninth Circuit explained that, "[r]egardless of the substance of the underlying claim or injury, CAFA prevents settling parties from valuing coupons at face value without accounting for their redemption rate." *Id.* Therefore, the Ninth Circuit held this Court improperly merged its "coupon analysis with whether the settlement was fair and reasonable." *Id.*

Then, in performing a new coupon analysis, the Ninth Circuit found the $20 credits awarded in the settlement are coupons. *Easysaver*, 906 F.3d at 756–758. And having established the credits are coupons, the Ninth Circuit held this Court erred when it

"incorporated the full face value of the coupons into both its percentage-of-recovery calculation and lodestar calculation of the attorney's fee award." *Id.* at 758. As mentioned above, this Court had reasoned that the $8.7 million fee award was reasonable because it was only 23% of the total $38 million recovery. But the Ninth Circuit explained that "because the $38 million figure did not account for the redemption rate of the credits, it is unclear whether the fee award is in fact a reasonable percentage of the settlement fund." *Id.* Therefore, the Ninth Circuit could not approve this Court's percentage-of-recovery evaluation without the redemption information. *Id.*

Nevertheless, the settling parties argued that this Court's award could be upheld based on the lodestar calculation. *Easysaver*, 906 F.3d at 759. In response, the Ninth Circuit reviewed 28 U.S.C. § 1712 and summarized its interpretation from *HP Inkjet* in a footnote. *Id.* at 758, 759 n.11. There, the Ninth Circuit noted: "Although settlements like this one that award coupons and monetary relief are not expressly mentioned in *In re HP*, it must be the case that § 1712(b) also encompasses the use of the lodestar method for this type of mixed settlement. Such settlements would otherwise exist in a no-man's land with no guidance from § 1712." *Id.* at 759 n.11. Hence, the Ninth Circuit stated that CAFA allows a court to use the lodestar method in these circumstances "to determine any portion of attorney's fees *not attributable* to coupons." *Id.* at 759 (emphasis added).

Relying on *HP Inkjet*, the Ninth Circuit then repeated that CAFA does not permit the district court to approximate the ultimate value of the settlement and then award fees without considering the redemption value of the coupons. *Easysaver*, 906 F.3d at 759. "In particular, in a mixed settlement, a district court may use the lodestar approach provided that it does so without reference to the dollar value of the settlement fund—or, of course, it may reference the dollar value of the settlement fund if it accounts for the redemption rate of the coupons in calculating that dollar value."[2] *Id.* Consequently, the Ninth Circuit

---

[2] There appears to be some tension between the Ninth Circuit's majority opinion in *HP Inkjet* and the circuit court's decision in this case. *HP Inkjet* suggests that in a mixed coupon settlement, at least some of the attorney's fees will be "attributable to" the coupon relief because fees are "*never* 'attributable

- 9 -

held that this Court—like the district court in *HP Inkjet*—erred when the Court "reverse-engineered the lodestar multiplier using a value of the settlement that included the full face value of all the $20 coupons." *Id.* Therefore, although this Court calculated an initial $4.3 million lodestar fee "independently of any specific consideration of the coupons," the Ninth Circuit explained this figure "lost this independence when [the Court] used a multiplier to match the lodestar fee to the percentage-of-recovery fee—which was, by definition, a percentage of the full value of the settlement, including the face value of the coupons." *Id.* at 759. The value of the coupon relief thus "impermissibly informed" this Court's approval of the lodestar fee. *Id.* at 759–60.

Accordingly, the Ninth Circuit vacated the fee award and remanded for the award to "be recalculated in a manner that treats the $20 credits as coupons under CAFA." *Easysaver*, 906 F.3d at 760. The Ninth Circuit then rejected Objector's challenges to the *cy pres* component of the settlement. *Id.* at 760–762. And, "given both the structure of [the] settlement agreement and the focus of Objector's challenges," the Ninth Circuit held that it was "unnecessary to reverse the entire settlement approval in conjunction with [its] vacatur of the fee award." *Id.* at 762. Thus, the Ninth Circuit otherwise affirmed the settlement approval. *Id.*

## IV.   Post-Remand Proceedings

### A.   Fee Request

Upon remand, Plaintiffs filed a new motion for attorney's fees and costs. (Post-Remand Fee Mot., ECF No. 338.) This request sought the same amount of attorney's fees as before—$8.7 million. (*Id.* 1:15–16.) Plaintiffs asked the Court to award these fees for

---

to' an attorney's work on the action"; rather, "[t]hey are 'attributable to' the relief obtained for the class." *See* 716 F.3d at 1181–87. Therefore, *HP Inkjet* indicates a court should calculate the redemption rate of the coupons to compensate counsel for obtaining the coupon relief—in addition to using the lodestar method to award fees for non-coupon relief under § 1712(b). *See id.*; *see also Newberg on Class Actions* § 15:71 (5th ed. Dec. 2019) (interpreting *HP Inkjet* to impose a "percentage method requirement" when a settlement awards coupon relief). *Easysaver*, however, indicates that so long as a mixed settlement falls under § 1712(b), a court that lacks the redemption rate information may still be able to award fees for the settlement using the lodestar method if the court is careful not to reference the dollar value of the total settlement fund or the coupon relief. *See* 906 F.3d at 758–60.

the entire settlement by using only the lodestar method. (*Id.* 8:5–9:13.)  Hence, they proposed that the Court not base any of its fee award on the value of the coupons or their redemption rate. *See Easysaver*, 906 F.3d at 760 n.13.

In cross-checking the percentage of recovery calculation for the Court's prior fee award, the Court had calculated the lodestar to be approximately $4.3 million.  In their post-remand fee request, Plaintiffs submitted that the lodestar should be $6.3 million. (Post-Remand Fee Mot. 11:10–11.)  To justify the nearly 50% increase, Plaintiffs explained that class counsel had "worked an additional 1670.4 hours since" the first fee motion was filed in 2012.  (*Id.* 9:22–23.)  They also argued that the Court should award fees at class counsel's then-current rates, which had increased significantly since 2012.  (*Id.* 9:22–23.) Finally, Plaintiffs asked the Court to apply a multiplier of 1.38 to the new $6.3 million lodestar—to again reach a total of $8.7 million in fees.  (*Id.* 1:15–17, 26:12–18:7.)  Under the settlement's "clear sailing agreement," Defendants agree to neither object to an attorney's fee award up to this amount nor "take a position on the total settlement value or total value of the $20 credit" being distributed to the class.  (Settlement Agreement § 2.1(c), ECF No. 248-3.)  *See also Bluetooth*, 654 F.3d at 947–48 (discussing clear sailing agreements).

Objector challenged the post-remand fee request on several grounds.  (Objs. to Post-Remand Fee Mot., ECF No. 343.)  First, he argued that Plaintiffs' lodestar approach was improper because CAFA requires the Court to defer "much of class counsel's fee . . . until the redemption rate of the coupons can be ascertained."  (*Id.* 1:14–16.)  Second, Objector argued that Plaintiffs' fee request disproportionately benefited class counsel at the expense of the class.  (*Id.* 4:3–7:1.)  Third, Objector argued the fee request suffered from other "infirmities," including that class counsel were seeking compensation for their time spent pursuing fees.  (*Id.* 7:1–13:2.)

Some of these objections had merit.  (Post-Remand Fee Order, ECF No. 352.) Namely, considering the history of this case, the Court had concerns with Plaintiffs' suggested approach to recalculating the fee award for the entire settlement.  (*Id.* 11:6–8.)

The Court explained that it had previously based its fee determination and lodestar cross-check in large part on the total dollar value of the settlement. (*Id.* 13:26–27.) Therefore, the Court reasoned that it would be inconsistent to "ignore the value of the coupon relief yet ultimately approve the same amount of attorney's fees for the same settlement." (*Id.* 13:27–14:2.) Rather, given that Plaintiffs were seeking fees based on all the relief provided in the mixed settlement, the Court found "it more appropriate to apply the percentage-of-recovery method to award fees for the coupon relief, *see* 28 U.S.C. § 1712(a), and the lodestar method to award fees for only the non-coupon relief, *see id.* § 1712(b)." (*Id.* 14:20–23.)   The Ninth Circuit had previously suggested this approach, and the Court reasoned that the approach would ensure that fees awarded using the lodestar method would be "not attributable to" the coupon relief." (*Id.* 14:23–25 (citing *Easysaver*, 906 F.3d at 759; *HP Inkjet*, 716 F.3d at 1181–84).)

To carry out this approach, the Court stated it would bifurcate the fee award. (Post-Remand Fee Order 15:18.)   Specifically, the Court denied without prejudice Plaintiffs' request for fees based on the entire settlement. (*Id.* 15:20–21, 18:28–19:1.)   The Court then permitted Plaintiffs to resubmit a request for attorney's fees that is based on only the non-coupon portion of the settlement—i.e., the $12.5 million cash fund. (*Id.* 15:21–23, 19:2–4.)   Further, the Court stated that "after the parties distribute the coupons to the class members, Plaintiffs may then return to the Court to seek an additional fee award based on the value of the coupons redeemed by the class members."[3]   (*Id.* 16:5–8.)

The Court also addressed Objector's argument that Plaintiffs' lodestar was excessive because it appeared to include time spent pursuing the fee award. (Post-Remand Fee Order 17:6–8.)   Time spent pursuing fees in a common fund case is not compensable. *In re Wash.*

---

[3] In adopting this approach, the Court also rejected Objector's argument that it should predetermine that two-thirds of any fee award must be "attributable to" the coupon relief. (Post-Remand Fee Order 17:6–8.)   As the Court explained: "Objector's argument invites the Court to once again value the coupons at their face value—$25.5 million out of the $38 million total potential settlement value. The Court will not do the same thing that caused it to be in this situation to begin with." (*Id.* 17:8–11 (citation omitted).)

*Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).  Consequently, the Court ordered "that any future fee request exclude the time spent pursuing fees from the common fund, and Plaintiffs shall explain to the Court how much time has been deducted from their proposed lodestar to account for this instruction."  (Post-Remand Fee Order 18:10–13.)  Finally, the Court granted Plaintiffs' request for $200,000 in costs.  (*Id.* 18:15–23.)

### B.   Bankruptcy Developments

While Plaintiffs' post-remand fee motion was pending, events unfolded that further muddled this case.  Defendant Provide Commerce, Inc. is now known as Provide Commerce, LLC, and the entity is a subsidiary of FTD Companies, Inc.  (ECF No. 349.)  FTD Companies, Inc. and its subsidiaries filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the District of Delaware.  (*Id.*)  The bankruptcy court is jointly administrating the cases—including Provide Commerce's bankruptcy—under the caption *In re FTD Companies, Inc.*, No. 19-11240 (LSS) (Bankr. Del. 2019) ("Bankruptcy Action").  (*Id.*)

"Chapter 11 of the Bankruptcy Code sets out a framework for reorganizing a bankrupt business.  The filing of a petition creates a bankruptcy estate consisting of all the debtor's assets and rights.  The estate is the pot out of which creditors' claims are paid." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019) (citations omitted).  A bankruptcy filing also triggers an automatic stay.  11 U.S.C. § 362.  "Among other things, the stay bars commencement or continuation of lawsuits to recover from the debtor, enforcement of liens or judgments against the debtor, and exercise of control over the debtor's property."  *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 589 (2020) (citing 11 U.S.C. § 362).

Shortly after filing for bankruptcy, Provide Commerce and the other debtor companies moved in the Bankruptcy Action to establish procedures for selling substantially all of their assets.  Bankruptcy Action, ECF No. 82; *see also* Del. Bankr. L.R. 6004-1 (addressing sale procedures motions).  Bankruptcy Code § 363 provides that a debtor may,

"after notice and a hearing, . . . use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1); *see also id.* §§ 1101, 1107(a); 2 Bankruptcy Law Manual § 11:38 (5th ed. Dec. 2019).   In their motion, the debtors reported that they had been marketing their businesses for sale before filing bankruptcy. Bankruptcy Action, ECF No. 82.   They also had secured a "stalking horse bid" for certain assets since entering bankruptcy.[4]   *Id.*   Indeed, they reported that "the key focus of [their] Chapter 11 Cases is transitioning the Debtors' Assets to new owners efficiently and expeditiously."   *Id.*

The debtors further requested that any sale of assets in bankruptcy include findings that shield the asset purchaser from successor liability.   Bankruptcy Action, ECF No. 82. The Bankruptcy Code allows property to be sold "free and clear of any interest in such property of an entity other than the estate."   11 U.S.C. § 363(f).   An "interest in such property" includes "obligations that may flow from ownership of property" or "obligations that are connected to, or arise from, the property being sold."   *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 258–59 (3d Cir. 2000).

To illustrate, in *In re Trans World Airlines, Inc.*, 322 F.3d 283, 285–87 (3d Cir. 2003), a failing airline was facing employment discrimination charges brought by the Equal Employment Opportunity Commission ("EEOC").   Separately, the airline had also agreed to establish a travel voucher program as part of a court-approved settlement in a sex discrimination class action.   *Id.*   In bankruptcy, the airline sought to sell its assets to a

---

[4] As one court explained:

> In the bankruptcy context, a stalking horse bidder reaches an agreement with the debtor-in-possession to purchase assets prior to the court-supervised auction of those assets. Because this bid will be exposed to higher and better bids at auction, the agreement typically provides for a break-up fee to compensate the stalking horse bidder for setting the floor at auction, exposing its bid to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement.

*In re SpecialtyChem Prod. Corp.*, 372 B.R. 434, 436 (E.D. Wis. 2007).   Further, stalking horse bids may generate interest in the assets and create a sense of confidence in the value of the assets among prospective buyers.   *In re Reagan*, 403 B.R. 614, 619 (B.A.P. 8th Cir. 2009).

different airline free and clear of these liabilities.  *Id.* at 286.  The EEOC and the sex discrimination class members objected to the asset sale.  *Id.*  The Delaware bankruptcy court approved the sale with protections against successor liability; however, because the court reasoned the employment discrimination claims and voucher program could be treated as unsecured claims against the bankruptcy estate.  *Id.*  The Third Circuit affirmed, noting that allowing the claimants to pursue successor liability claims "while limiting other creditors' recourse to the proceeds of the asset sale would be inconsistent with the Bankruptcy Code's priority scheme."  *Id.* at 292.

After Provide Commerce's bankruptcy filing, Plaintiffs retained separate bankruptcy counsel.  (Renewed Fee Mot. 9:1–2; Patterson Decl. ¶ 10, Ex. 2, ECF No. 356-2.)  In their capacity as class representatives, Plaintiffs filed in the Bankruptcy Action a limited objection to the debtor companies' asset sale procedures motion.  Bankruptcy Action, ECF No. 152.  Plaintiffs' objection summarized this class action, attached the parties' Settlement Agreement, and reported that Defendants' insurers were to fund the settlement.  *Id.*  Plaintiffs then objected "to confirm that the bidding procedures and sale will not include the insurance policies of the Debtors or the proceeds of those policies that have been committed to the funding of the Settlement Agreement, which need to remain in the estate, subject to the claims of the EasySaver Class Representatives and other members of the certified class."  *Id.*  Plaintiffs filed two other similar objections.  Bankruptcy Action, ECF Nos. 513, 534.

Further, Plaintiffs filed a motion for relief from the automatic stay.  Bankruptcy Action, ECF No. 514.  The relief motion similarly summarized this case's settlement and reported that Defendants' insurance carriers had agreed to pay $10 million of the $12.5 million cash settlement amount.  *Id.*  Thus, Plaintiffs asked the bankruptcy court to modify the automatic stay to allow: (i) this Court "to determine the legal fees award as instructed by the Ninth Circuit"; and (ii) "the EasySaver Class to pursue payment from the Defendants' insurers of their portion of the Settlement Amount."  *Id.*  The bankruptcy court granted the request.  Bankruptcy Action, ECF No. 660.

Finally, Plaintiffs moved in bankruptcy court for authorization to file a class proof of claim against Provide Commerce.[5]  Bankruptcy Action, ECF No. 758.  In a joint status report filed in this Court, the parties recognize, however, that "there is no guaranty that the Class Proof of Claim will be allowed or receive any distribution in the bankruptcy proceeding." (ECF No. 355.)  And as forecasted above, the parties report that Provide Commerce's assets have been sold as part of the Bankruptcy Action.  (*Id.* at 2–3.)  The parties also submit that Plaintiffs' class claims "are not entitled to any priority over other unsecured claims against the Debtors' estates," as "their claims are, at best, classified as general unsecured claims."  (*Id.* at 3.)  Hence, given the structure of the bankruptcy, the parties represent that the class's unsecured claims "are largely worthless," and as of the date of the status report, the debtor companies "project that distributions to holders of allowed general unsecured claims will range between 0% and 5% of their allowed amount." (*Id.*)  Furthermore, given the approved liquidation plan, the debtor companies will be "dissolved for all purposes and [have] no further legal existence under any applicable state or federal law" when the plan becomes effective.  (Bankruptcy Action, ECF No. 1037.)

## C. Renewed Fee Motion

Plaintiffs now renew their request for an award of attorney's fees.  Their counsel state they have chosen to forego recovering attorney's fees based on the coupon relief. (Renewed Fee Mot. 1:8–9.)  They now seek fees based "solely on the cash fund"

---

[5] Rule 23 automatically applies to adversary proceedings in bankruptcy under Bankruptcy Rule 7023, but the same is not true for contested matters.  *See* Fed. R. Bankr. P. 7023; 9014(c).  Rather, the decision to apply Rule 23 and allow "a class action proof of claim is a matter of discretion."  *In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017).  In exercising this discretion, the bankruptcy court determines whether: (1) "it is beneficial to apply Bankruptcy Rule 7023, via Bankruptcy Rule 9014(c), to the claims administration process"; and (2) "the requirements of Federal Rule 23 have been satisfied, such that a class proof of claim may properly be filed."  *Id.*  The first requirement turns on three factors: "(1) whether the class was certified pre-petition; (2) whether the members of the putative class received notice of the bar date; and (3) whether class certification will adversely affect the administration of the estate."  *Id.* (citing *In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007)).  Plaintiffs argued all of these requirements are met.  Bankruptcy Action, ECF No. 758. And this Court, at least, has already determined that Rule 23's requirements are met outside of the bankruptcy context.

component of the settlement.  (*Id.* 1:10.)  Further, class counsel state they have "deducted half of all hours in connection with all appellate work in an attempt to remove fees expended towards the coupon" relief.  (*Id.* 1:13–15.)  Finally, class counsel declare that they have "reviewed their respective time records and removed all time associated with work on any fee petitions, or otherwise verified that no such work was billed in the first place." (*Id.* 1:26–2:1.)  Consequently, class counsel submit that their lodestar is now ~$5.7 million.  (*Id.* 2:14–15.)  They also ask the Court to apply "whatever multiplier the Court deems appropriate."  (*Id.* 2:17–18.)  Objector opposes Plaintiffs' request.  (Objs. to Renewed Fee Mot., ECF No. 358.)

## ANALYSIS

Rule 23(e) provides that the claims "of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  A class member may object to a settlement.  *Id.* 23(e)(5)(A).  "The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection." *Id.*  The court may approve the settlement "after a hearing and only on finding that it is fair, reasonable, and adequate." *Id.* 23(e)(2).  The court also "must give 'a reasoned response' to all non-frivolous objections." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982)).

In addition, Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(f).  A request for fees "must be made by motion under Rule 54(d)(2)," and a class member may similarly "object to the motion." *Id.* 23(f)(1)–(2).

The Court already determined under Rule 23(e) that the parties' settlement is "fair, reasonable, and adequate."  The Ninth Circuit affirmed the Court's fairness determination. *See supra* Background Part III.  The Court has also previously addressed nontaxable costs.

(Post-Remand Fee Order 18:15–23.)  Hence, the only issue remaining is the amount of a "reasonable attorney's fee" award Rule 23(h).

This motion is Plaintiffs' third fee request, and circumstances have changed.  The proposed lodestar is lower than the second request, but bankruptcy developments have obscured the benefits of the settlement.  Objector also raises several new challenges to the fee request and incorporates his prior lodestar-based challenges.  Some of Objector's arguments concern threshold issues regarding class counsel's entitlement to fees and the procedural soundness of the motion.  The remainder of Objector's contentions impact the Court's lodestar calculation and potential multiplier.  Consequently, the Court will first address the threshold objections; the Court will then turn to the lodestar and resolve the balance of the objections.

## I.    Threshold Objections

### A.    Validity of the Settlement

Objector first argues there is no basis for a fee award because the potential shortfall in the settlement's cash fund component means the settlement is now void.  (Objs. to Renewed Fee Mot. 2:19–4:6.)   Objector highlights Section 2.1(f) of the Settlement Agreement, which provides the settlement is "void ab initio" if Defendants do not contribute the necessary amount to the cash fund.  Given the potential shortfall and this provision, Objector argues there is no underlying settlement or judgment to support a fee award.  (*Id.* 3:14–15, 4:6.)  Plaintiffs counter that Objector is impermissibly attempting to relitigate the fairness of the settlement, and they argue the purpose of Section 2.1(f) "was to ensure that the Defendants complied in good faith in allocating the cash contribution, not for Class Members to nullify the Settlement after final approval."  (Reply to Renewed Fee Mot. 1:16–27, ECF No. 359.)

Objector's argument is self-destructive.  Under the settlement, he is expected to receive a 100% cash refund of the charges he incurred while being enrolled in one of Defendants' reward programs.  But if the Court accepts Objector's position, the settlement could be void, and Objector would likely receive nothing.  The class members' claims

would be reinstated, but they would be subject to the Bankruptcy Code's automatic stay, and the principal defendant will no longer exist after the bankruptcy.  There is little doubt that this outcome would mean game over for the class, notwithstanding that neither the class representatives nor Defendants seek to unravel the settlement in the eleventh year of this litigation.

But aside from being against Objector's own interests, this objection is unconvincing.  The fairness or validity of the settlement is not before the Court.  As mentioned, the Court already determined the settlement was fair and entered judgment.  The Ninth Circuit affirmed the fairness determination and remanded for the fee award to "be recalculated in a manner that treats the $20 credits as coupons under CAFA." *Easysaver*, 906 F.3d at 760.  The Court is carrying out this instruction—not redetermining the settlement's fairness under Rule 23(e).

Moreover, an objection to a fee request under Rule 23(f) is not the proper avenue to attack the fairness or validity of the settlement or this Court's judgment.  Finally, the Court notes that Objector's argument falters under the plain language of the Settlement Agreement.  Although it appears Defendants ultimately may not be able to fully fund the settlement, that event has not yet transpired, and the clause has not been triggered.  For these reasons, this objection is unpersuasive.

## B.    Adequacy of Representation

Objector next argues that Plaintiffs' counsel's representation has been so inadequate that counsel are not entitled to any fees whatsoever.  (Objs. to Renewed Fee Mot. 4:7–9:17.)  In a common fund case, the court "'has a special duty to protect the interests of the class' and must 'act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is.'" *Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012) (citation omitted) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 970 (9th Cir. 2003); *Wash. Pub. Power*, 19 F.3d at 1302).  This duty includes considering "whether class counsel has properly discharged its duty of loyalty to absent class members."  *Id.*

And the court "has broad discretion to deny fees to an attorney who commits an ethical violation" pursuant to "long-standing equitable principles." *Id.*

Objector supports this contention by targeting class counsel's recent conduct in the Bankruptcy Action. He argues counsel have failed to "zealously advance the interests of the absent class members who are entitled to settlement coupons" and are inappropriately "proposing to allocate the entirety of the insurance proceeds to the settlement cash fund (from which their fee will be drawn)." (Objs. to Renewed Fee Mot. 4:11–15; *see also id.* 5:21–7:15.) Objector also claims counsel have breached their fiduciary duties by "continuing to seek an above-lodestar fee, notwithstanding the elimination of any direct relief for 99.8% of the class and the separate $2 million reduction of the cash settlement fund." (*Id.* 4:15–17; *see also id.* 8:9–22.) Plaintiffs respond by arguing they have used all their available remedies in bankruptcy, and they cast Objector's argument as disingenuous. (Reply to Renewed Fee Mot. 2:1–3; 5:16–6:11.)

This objection is unpersuasive. The bankruptcy developments raise concerns about the reasonableness of the requested fee award, but Objector does not demonstrate class counsel have breached their fiduciary duties or committed an ethical violation. Rather, Plaintiffs and their counsel have taken reasonable steps to salvage the settlement in the twilight of this perennial saga. Plaintiffs' counsel retained bankruptcy counsel—at their own expense—to participate in the Bankruptcy Action on the class's behalf. Further, as summarized above, Plaintiffs moved for relief from the automatic stay, filed objections to asset sale motions to safeguard insurance proceeds, and have moved to file a class proof of claim to obtain any distribution they are entitled to in the bankruptcy proceeding. And although Objector portrays these actions as the bare minimum to preserve a fee award, the Court does not share his cynicism. Plaintiffs' actions reflect the pragmatic consequences of Provide Commerce filing for bankruptcy, including the automatic stay being imposed, the company's assets being sold off, and the unsecured nature of the class's claims.[6]

---

[6] Objector highlights the limited nature of Plaintiffs' objections to the sale procedures motions in the Bankruptcy Action, but it is not clear that Plaintiffs had a viable alternative. Their claims are

- 20 -

09cv2094

As for Objector's criticism of Plaintiffs' choice not to allocate potential insurance proceeds to the coupon portion of the settlement, the Court is similarly unmoved.  Even if a significant portion of these proceeds were allocated to the over one million non-claimants in the settlement, each non-claimant's recovery would likely be de minimis after payments for class members' claims, claims administration expenses, and at least some attorney's fees.  *Cf. In re Easysaver*, 906 F.3d at 761.

## C.    Rule 54(d)

As a final threshold point, Objector argues the renewed fee motion is procedurally deficient because it violates Federal Rule of Civil Procedure 54(d).  (Objs. to Renewed Fee Mot. 9:17–10:19.)  This rule requires that a fee motion "state the amount sought or provide a fair estimate of it."  Fed. R. Civ. P. 54(d)(2)(B)(iii).  For example, where a timely fee request asked the district court "to set a date for [movants] to supplement their request with 'later fees and costs' for inclusion in a final award," the Ninth Circuit agreed that this "amorphous request" was inadequate under Rule 54(d)(2)(B)(iii).  *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 676 (9th Cir. 2017); *see also Johnson v. Leading Edge Recovery Sols., L.L.C.*, No. 12-CV-03103-CMA-CBS, 2013 WL 5313255, at *1 (D. Colo. Sept. 23, 2013) (relying on Rule 54(d) to deny a supplemental fee request where the initial fee motion sought "any additional amounts as determined by the Court").

Plaintiffs' motion asks the Court to "apply a lodestar of $5,696,506."  (Renewed Fee Mot. 12:7–8.)  Plaintiffs further request the Court use "whatever multiplier the Court deems

---

unsecured, and this Court is doubtful that Provide Commerce's assets would have been sold without protection from successor liability.  *Cf. Trans World Airlines*, 322 F.3d at 292 (discussed above) (affirming sale of assets that precluded successor liability for voucher program arising out of a class action settlement).

Objector also notes Plaintiffs' settlement-based claims could be nondischargeable in bankruptcy because they arise from a settlement of alleged fraud claims.  (Objs. to Renewed Fee Mot. 6 n.5 (citing 11 U.S.C. § 523(a)(2); *Archer v. Warner*, 538 U.S. 314 (2003)).)  "Liquidating corporations, however, are automatically precluded from discharge."  *In re Dominguez*, 51 F.3d 1502, 1508 (9th Cir. 1995).  And "[i]n most cases, the right to sue a liquidated corporate debtor for any shortfall is of little practical use because it no longer has any assets."  Kathleen P. March et al., California Practice Guide: Bankruptcy § 22:1083 (2019).  Hence, without additional explanation from Objector, the Court discerns little value in the potential nondischargeability of Plaintiffs' claims.

appropriate for the risks and work achieved." (*Id.* 10–12.)  This second request draws Objector's ire: he argues class counsel are "seeking an improper failsafe fee award—their proclaimed lodestar adjusted however the Court deems reasonable." (Objs. to Renewed Fee Mot. 10:15–17.)  In response, Plaintiffs highlight that Objector "cites no authority for the proposition that Plaintiffs' motion for fees must include a 'specifically requested multiplier,'" and they argue their motion satisfies Rule 54(d)'s requirement. (Reply to Renewed Fee Mot. 7:16–22.)

This objection has merit.  The purpose of Rule 54(d)(2)(B)(iii) is plainly to provide sufficient notice to adversaries of a fee request.  *See* Fed. R. Civ. P. 54(d) advisory committee's note to 1993 amendment ("What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate).").  With adequate notice, an adversary can make an informed decision as to whether and how to oppose the fee request.  If parties are seeking an enhancement of their baseline fees, they should "provide a fair estimate of" the total amount sought.  *See id.* 54(d)(2)(B)(iii).

That said, any violation of Rule 54(d) is harmless and nonprejudicial here.  The Court ultimately awards an amount of fees that is significantly less than the proposed lodestar, eliminating any concern arising from Plaintiffs' request for an unspecified positive multiplier.  And the Court is mindful that the Federal Rules of Civil Procedure should be "should be construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see also Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988) ("[T]he requirements of the rules of procedure should be liberally construed and . . . 'mere technicalities' should not stand in the way of consideration of a case on its merits.").  Thus, although there is merit to this objection, the Court declines to deny the renewed fee motion on this basis. *Cf. DeShiro v. Branch*, 183 F.R.D. 281, 285 (M.D. Fla. 1998) (overlooking Rule 54(d) deficiency in light of the strong policy of resolving cases on the merits, albeit in different circumstances).

## II.     Lodestar Calculation

Having addressed the threshold objections, the Court turns to calculating the lodestar.  The Court has already determined that the lodestar method is the appropriate approach for the renewed fee request.  *See supra* Background Part IV.A.  This method "begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate."  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (en banc) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).  The Court then may apply a risk multiplier to the lodestar and adjust the figure upward or downward.  *Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016).

Plaintiffs propose a lodestar of ~$5.7 million, calculated as follows:

**Patterson Law Group**
**(ECF No. 356-2)**

| Name | Position | Hours | Rate | Amount |
|------|----------|-------|------|--------|
| James R. Patterson | Partner | 1,040.80 | $795.00 | $827,436.00 |
| Harry W. Harrison | Partner | 14.00 | $795.00 | $11,130.00 |
| Allison H. Goddard | Partner | 4.00 | $795.00 | $3,180.00 |
| Alisa A. Martin | Partner | 850.30 | $675.00 | $573,952.50 |

Total:     **$1,415,698.50**

**Stonebarger Law**
**(ECF No. 356-3)**

| Name | Position | Hours | Rate | Amount |
|------|----------|-------|------|--------|
| Gene J. Stonebarger | Partner | 247.00 | $795.00 | $196,365.00 |
| Elaine W. Yan | Associate | 11.00 | $395.00 | $4,345.00 |

Total:     **$200,710.00**

**Cohelan Khoury & Singer**
**(ECF Nos. 356-4; 363)**

| Name | Position | Hours | Rate | Amount |
|------|----------|-------|------|--------|
| Timothy Cohelan | Partner | 74.30 | $850.00 | $63,155.00 |
| Isam Khoury | Partner | 157.10 | $825.00 | $129,607.50 |
| Michael Singer | Partner | 171.125 | $825.00 | $141,178.13 |

| Kimberly Neilson | Associate | 561.15 | $675.00 | $378,776.25 |
| Amber Worden | Paralegal | 2.26 | $200.00 | $452.00 |

**Total:** **$713,168.88**

### Andrus Anderson LLP
### (ECF Nos. 338-2; 356-5)

| Name | Position | Hours | Rate | Amount |
|---|---|---|---|---|
| Jennifer Anderson | Partner | 1,092.70 | $795.00 | $868,696.50 |
| Lori Andrus | Partner | 119.40 | $795.00 | $94,923.00 |
| Jennifer Marlowe | Associate | 141.40 | $610.00 | $86,254.00 |
| Jessica Moy | Associate | 45.40 | $510.00 | $23,154.00 |
| Paul Laprairie | Associate | 14.50 | $390.00 | $5,655.00 |
| Kelli Good | Paralegal | 77.20 | $315.00 | $24,318.00 |
| Jaime Pacheco | Paralegal | 37.40 | $315.00 | $11,781.00 |
| Joann Pham | Paralegal | 2.20 | $315.00 | $693.00 |
| Caitlin May | Law Clerk | 13.20 | $295.00 | $3,894.00 |
| Ryan McEwan | Law Clerk | 182.50 | $295.00 | $53,837.50 |
| Sara Tosdal | Law Clerk | 8.90 | $295.00 | $2,625.50 |
| Maria Lopez | Paralegal | 0.60 | $260.00 | $156.00 |

Subtotal: $1,175,987.50

Coupon Relief Adjustment: -$135,994.75

**Total:** **$1,039,992.75**

### Steckler Gresham Cochran PLLC
### (ECF Nos. 356-6; 362-2)

| Name | Position | Hours | Rate | Amount |
|---|---|---|---|---|
| Melissa Hutts | Partner | 135.00 | $825.00 | $111,375.00 |
| Bruce W. Steckler | Partner | 1,171.40 | $825.00 | $966,405.00 |
| Burton LeBlanc | Partner | 122.00 | $825.00 | $100,650.00 |
| Ann Saucer | Of Counsel | 53.75 | $795.00 | $42,731.25 |
| Stefani Eisenstat | Of Counsel | 21.40 | $795.00 | $17,013.00 |
| Renee Melancon | Partner | 33.25 | $765.00 | $25,436.25 |
| Mazin Sbaiti | Of Counsel | 1,902.45 | $650.00 | $1,236,592.50 |
| Sharon Bautista | Associate | 17.00 | $610.00 | $10,370.00 |

| Kim Peters | Paralegal | 11.75 | $175.00 | $2,056.25 |
|---|---|---|---|---|
| Kim James | Paralegal | 35.00 | $175.00 | $6,125.00 |
| Stephanie Wilkins | Paralegal | 43.00 | $175.00 | $7,525.00 |
| Jamie Baciak | Paralegal | 279.75 | $175.00 | $48,956.25 |
| Lia Salverino | Paralegal | 219.00 | $125.00 | $27,375.00 |
| Paul Thornton | Paralegal | 64.00 | $125.00 | $8,000.00 |
| Whitney Ashley | Paralegal | 70.50 | $125.00 | $8,812.50 |
| Gregg Thoreck | Paralegal | 64.00 | $125.00 | $8,000.00 |

Subtotal: $2,627,423.00

Coupon Relief Adjustment: -$300,486.25

**Total: $2,326,936.75**

**Grand Total: $5,696,506.88**

## A. Hours

The lodestar method begins with the court "determining how many hours were reasonably expended on the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). "Determining the number of hours reasonably expended requires 'considering whether, in light of the circumstances, the time could reasonably have been billed to a private client.'" *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (quoting *Moreno*, 534 F.3d at 1111); *see also United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107–08 (9th Cir. 2015) ("Hours not reasonably expended are those that are 'excessive, redundant, or otherwise unnecessary.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983))).

The proposed lodestar summarized above excludes some hours spent on this case. First, in ruling on the post-remand fee request, the Court ordered that any renewed fee request exclude time spent pursuing fees. *See supra* Background Part IV.A. Class counsel attest that this time has been deducted from their request.[7]

Second, because class counsel are seeking fees based only on the non-coupon relief, class counsel declare that they have deducted half the time spent on the appeals—for a total

---

[7] (Patterson Decl. ¶ 8, ECF No. 356-2; Stonebarger Decl. ¶ 5, ECF No. 356-3; Singer Decl. ¶ 5, ECF No. 356-4; Anderson Decl. ¶ 3, ECF No. 356-5; Steckler Decl. ¶ 3, ECF No. 356-6.)

reduction of ~750–800 hours.[8]   Class counsel made this deduction in response to the Court's instruction that Plaintiffs may submit "a request for attorney's fees that is based on only the non-coupon portion of the settlement."  (Post-Remand Fee Order 15:18–16:14.) Class counsel explain that "timekeeping was not segregated throughout the history of the case, as Plaintiffs' efforts were concentrated on prevailing on the underling claims and pursuing resolution of the case, not in the remedies eventually agreed upon."  (Renewed Fee Mot. 11:2–5.)  Further, the idea to provide partial relief in the form of $20 credits "did not arise until after years of litigation, well into the settlement process." (*Id.* 11:6–7.)  Thus, class counsel argue "the task of dividing the largely indivisible efforts into those pertaining to the monetary fund and those pertaining solely to coupon relief" is difficult. (*Id.* 11:15–17.)

Further, class counsel state that nearly all of the time spent litigating the coupon remedy was done on appeal, but the appeals involved not only the coupon remedy but also the *cy pres* remedy and the reasonableness of the overall settlement.  (Patterson Decl. ¶ 8, ECF No. 356-2.)  Hence, class counsel "have conservatively reduced by half" the time spent on appeals to exclude work done in pursuit of the coupon remedy.  (*Id.*)[9]

Given the history of the case, the Court finds this approach is reasonable.  The parties did not reach their settlement that includes both cash and coupon relief until after more than two years of litigation, including extensive discovery and mediation.  *See supra* Background Part II.  It is not practicable, in hindsight, to apportion every hour class counsel spent between either the coupon or non-coupon relief.  And as the Court previously determined, it makes little sense to determine that "two-thirds" of the fee award must be

---

[8]  (*See* Patterson Decl. ¶ 8, ECF No. 356-2 (deducting 135.6 hours or $100,170 of time spent on appeals *and fee applications*); Stonebarger Decl. ¶ 5, ECF No. 356-3 (deducting 21.5 hours of time spent on appeals); Singler Decl. ¶ 5, ECF No. 356-4 (deducting 87.425 hours or $61,433.13 of time spent on appeals); Anderson Decl. ¶ 5, ECF No. 356-5 (deducting 183 hours or $135,994.75 of time spent on appeals); Steckler Decl. ¶ 5 (deducting 384.37 hours or $300,486.25 of time spent on appeals); *see also* Renewed Fee Mot. 11:18–12:4.)

[9]  (*See also* Stonebarger Decl. ¶ 5, ECF No. 356-3; Singer Decl. ¶ 5, ECF No. 356-4; Singer Decl. ¶ 5, ECF No. 365-5; Anderson Decl. ¶ 5, ECF No. 356-5; Steckler Decl. ¶ 5, ECF No. 356-6.)

"attributable to" the coupon relief based on the face value of the coupons.  (Post-Remand Fee Order 17:6–11.)  Further, the Court will assess the reasonableness of the remaining hours in light of only the non-coupon relief, eliminating the concern that the fees will be attributable to the coupon relief.

Third, the proposed lodestar does not include time spent related to the Bankruptcy Action.[10]  Nor does it include "further work in this Court to finalize and process the settlement, future work defending against the next appeal by the objector that is likely if not certain, and future work associated with the administration of the payment of claims to the class members."  (Renewed Fee Mot. 13:12–15.)  Thus, Plaintiffs' counsel seek fees for only the hours included above.

Objector attacks this component of the lodestar on several fronts.  First, he argues Plaintiffs' counsel improperly include "time for unsuccessful, non-beneficial, and wasteful scorched-earth litigation tactics."  (Objs. to Post-Remand Fee Mot. 7:6–8.)  Objector claims these tactics include: "(1) vexing a good faith objector with an outsized $60,000 appeal bond; (2) filing a doomed motion for summary affirmance [in the Ninth Circuit]; (3) opposing the motion of a bipartisan coalition of Attorneys General to file an amicus brief in the Ninth Circuit; and (4) unsuccessfully moving for rehearing of the Ninth Circuit's vacation of the initial approval order."  (*Id.* 9:7–12.)  This first challenge is unpersuasive. Some of Plaintiffs' tactics may have been aggressive or unsuccessful, but they were part of Plaintiffs' broader efforts to defend the settlement on appeal.  The Court is hesitant to second-guess the appropriateness of specific tactics years later with the advantage of hindsight.  "Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war."  *Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991);

---

[10]  (Patterson Decl. ¶ 9, ECF No. 356-2; Anderson Decl. ¶ 6, ECF No. 356-5 (noting request does not include $71,216.50 in attorney's fees and $18,329.76 in costs incurred "defending the Ninth Circuit's order upholding the settlement before the United States Supreme Court and pursuing class claims in the bankruptcy action"); Steckler Decl. ¶ 5, ECF No. 356-6 (noting request similarly does not include $33,825 in fees and $38,062.87 in costs incurred defending Ninth Circuit's decision and pursuing class claims in the bankruptcy action).

*see also In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 608 (9th Cir. 1997) ("Good legal representation regularly includes some work which does not bear fruit.").  The Court is unpersuaded that the lodestar is improper because it includes time spent on these activities.

Objector also argues the suggested lodestar includes excessive, duplicative time spent on mediation, settlement, and conferencing.  (Objs. to Post-Remand Fee Mot. 8:12–9:10.)  He highlights that several firms spent hundreds of hours on mediation and settlement, as well as several hundred hours on "general case management issues," "attorney communications/strategy," and "miscellaneous correspondence."  (*Id.*; *see also* Suppl. Objs., ECF No. 364.)  The Court already determined that substantially all of these hours were reasonably expended in pursuit of the settlement.  (*See* ECF No. 328 at 7:26–27 (noting class counsel participated in six settlement conferences including two private mediations).)[11]  And given the history of the case, as well as the adjustments mentioned above, this objection to the revised lodestar is unpersuasive.[12]  Overall, the Court adopts the hours in the proposed lodestar set forth above and finds they are the amount "reasonably expended on the litigation."  *See Moreno*, 534 F.3d at 1111; *cf. Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."); *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (noting when confronted with "a voluminous fee application,"

---

[11]  *See also supra* Background Parts II–III; *compare, e.g.*, Patterson Decl. ¶ 5, Ex. 1, ECF No. 255-2 (identifying 198 hours for case management tasks for initial fee motion in 2012), *with* Patterson Decl. ¶ 8, Ex. 1, ECF No. 356-2 (identifying the same for renewed fee motion), *and* Anderson Decl. ¶ 3, Ex. 1, ECF No. 255-6 (identifying 246.6 hours spent on attorney meetings and strategy for initial fee motion in 2012), *with* Anderson Decl. ¶ 3, Ex. 1, ECF No. 338-2 (identifying 255 hours for this category for renewed fee motion).)

[12]  Objector also argued that review of two of the firms serving as class counsel was "impossible" because these firms did not submit even a "categorical breakdown by task" of their time spent on the litigation.  (Objs. to Post-Remand Fee Mot. 8 n.8.)  The Court ameliorated this concern by requiring these two firms to submit supplemental declarations, (ECF No. 361), and they did, (ECF Nos. 362–63).  The Court has considered these supplemental declarations and Objector's supplemental response (ECF No. 364) in determining how many hours were reasonably expended on the litigation.

the district court "is not required to set forth an hour-by-hour analysis of the fee request" when "exercising its billing judgment").

### B. Hourly Rates

Next, to assess reasonable hourly rates, a court considers the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The burden is on the party requesting attorney's fees to produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Evidence that the court can consider includes "[a]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney[s]." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

The Court previously considered class counsel's rates in 2013 when the Court approved Plaintiffs' initial request for fees, which was filed in November 2012. (*See* ECF Nos. 255, 271.) As set forth above, the Court again approved the initial fee motion in 2016 after the first appeal. *See supra* Background Part II. In doing so, the Court did not adjust class counsel's rates to account for the passage of time. (*See* ECF No. 328 at 7:13–20 (noting the proposed rates were from "November 26, 2012 (almost four years [prior] and before any of the pre and post-appeal proceedings)".) When class counsel filed their post-remand fee request after the second appeal, they updated their hourly rates to 2019 levels. (Post-Remand Fee Mot. 10:19–21.) This six-year adjustment explains a significant portion of the increase in the proposed lodestar from $4.3 million to $5.7 million. For example, one partner who has spent 1,000 hours on this case increased her rate from $675 to $795. (*Compare* Anderson Decl. ¶ 4, Ex. 1, ECF No. 255-6, *with* Anderson Decl. ¶ 2, Ex. 1, ECF No. 338-2.)

In Plaintiffs' renewed fee motion, class counsel still seek to be compensated based on their January 2019 rates, even though they submit that "many of their rates have since increased." (Renewed Fee Mot. 12:5–6.)  The proposed rates for counsel and their billable staff are outlined above.  Class counsel support their 2019 rates with declarations from several local attorneys and an experienced mediator, the Hon. Linda B. Quinn (Ret.). (*See* Blood Decl. ¶¶ 5, 7–13, ECF No. 338-6; Quinn Decl. ¶ 3, ECF No. 338-7; Carpenter Decl. ¶¶ 5–6, ECF No. 338-8; Lawler Decl. ¶¶ 5–6, ECF No. 338-9.)

Class counsel's request to be compensated at their recent rates is well taken.  "The lodestar should be computed either using an hourly rate that reflects the prevailing rate as of the date of the fee request, to compensate class counsel for delays in payment inherent in contingency-fee cases, or using historical rates and compensating for delays with a prime-rate enhancement."  *Stetson*, 821 F.3d at 1166; *see also Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016) (noting delay in payment can be addressed by using "the prevailing rate as of the date of the fee request" or by "using historical rates . . . with a prime-rate enhancement): *accord Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002).  Hence, the Court opts to consider the revised rates submitted by class counsel to compensate them for delay in payment.

Objector "does not contest class counsel's hourly rates *per se*," but argues that "a blended rate of $668/hour is well above the typical blended rate in this district." (Objs. to Post-Remand Fee Mot. 12 n.11.)  The Court is unmoved by this argument and finds Plaintiffs have met their burden to produce "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation."  *See Jordan*, 815 F.2d at 1263.  Therefore, the Court adopts the proposed rates included above.

### C.    Risk Multiplier, Adjustment, and Proportionality

Given the hours and rates adopted above, the initial lodestar figure is ~$5.7 million.  The Court turns to considering whether this figure should be enhanced with a risk multiplier or otherwise adjusted under the *Kerr* factors.  The Court also assesses Objector's

argument that the requested fee award would disproportionately benefit class counsel at the expense of the class.  Because these considerations intersect, the Court reviews each of these items and the participants' arguments before explaining its final fee determination.

Risk Multiplier.  In a common fund case, the court "must apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.'"  *Stanger*, 812 F.3d at 741; *see also Fischel*, 307 F.3d at 1010.  Risk enhancements in common fund cases stem from "the equitable notion that those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."  *Wash. Pub. Power*, 19 F.3d at 1300.

Plaintiffs argue all three criteria are met for a risk multiplier.  (Renewed Fee Mot. 15:14–19:1.)  They submit that class counsel accepted the case with the expectation that they would receive a risk enhancement; class counsel's hourly rates do not account for the risk; and there is ample evidence "that the case was extremely risky" because it presented "novel and complex legal questions."  (*Id.*)  That said, as noted above, Plaintiffs do not identify a suggested multiplier for the Court.  Plaintiffs previously sought a 2.0 multiplier in their initial fee motion and a 1.4 multiplier in their post-remand fee motion.  *See supra* Background Parts II, IV.A.

Objector contends the suggestion that class counsel's above-average rates "do not account for risk is outlandish."  (Objs. to Post-Remand Fee Mot. 12 n.11.)  He also argues that "the premise that this case was particularly risky does not withstand scrutiny"— because if it was risky, "one would not see an NBA lineup's worth of profit-driven firms voluntarily involving themselves in the litigation."  (*Id.* 12:17–13:15.)  Hence, he argues no multiplier is appropriate.  (*See id.* 9:13–13:11.)

Kerr Factors.  The court also "has discretion to adjust the lodestar upward or downward using a multiplier that reflects 'a host of "reasonableness" factors.'"  *Stetson*, 821 F.3d at 1166 (quoting *Bluetooth*, 654 F.3d at 942).  These factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557(1992).[13]   Because the lodestar is presumptively reasonable, "the *Kerr* factors only warrant a departure from the lodestar figure in 'rare and exceptional cases.'"  *Bluetooth*, 654 F.3d at 942 n.7 (quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.2 (9th Cir. 2000)).

"Foremost among these considerations, however, is the benefit obtained for the class."  *Bluetooth*, 654 F.3d at 942.  Therefore, where the plaintiffs "achieve[] 'only limited success,' counting *all* hours expended on the litigation—even those reasonably spent— may produce an 'excessive amount,' and the Supreme Court has instructed district courts to instead 'award only that amount of fees that is reasonable in relation to the results obtained.'"  *Id.* (quoting *Hensley*, 461 U.S. at 436, 440).

Plaintiffs rely on several of the reasonableness factors to support an unspecified positive multiplier.  (Renewed Fee Mot. 18:2–22:24.)  They argue their counsel provided skillful and high-quality work, obtained excellent results for the class, obtained an important precedent regarding *cy pres*, and litigated a case involving novel and difficult legal issues.  (*Id.*)  Objector again argues that class counsel "fail to provide a proper legal basis for the requested multiplier here."  (*See* Objs. to Post-Remand Fee Mot. 11:16–12:7.) He argues the results are far from outstanding and class counsel are relying on factors that

---

[13]   "Many of these factors are 'subsumed within the initial calculation of hours reasonably expended at a reasonable rate.'" *Bluetooth*, 654 F.3d at 942 n.7 (quoting *Hensley*, 461 U.S. at 434 n.9). And "one factor is no longer valid—whether the fee was fixed or contingent." *Id.*

- 32 -

are already subsumed in the initial lodestar calculation.  (*Id.*; *see also* Objs. to Renewed Fee Mot. 2:6–12.)

    Cross-Check and Proportionality.  Finally, a cross-check of the lodestar figure can inform the Court's fee determination.  Because the lodestar figure is presumptively reasonable, a cross-check based on the percentage-of-recovery method is not mandatory. *See In re Hyundai*, 926 F.3d at 571.  Nonetheless, the Ninth Circuit has "also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." *Bluetooth*, 654 F.3d at 944.  "Just as the lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate,' the percentage-of-recovery method can likewise 'be used to assure that counsel's fee does not dwarf class recovery.'"  *Id.* at 945 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995)).  "In the percentage method, 'the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee,' using 25% as a benchmark." *In re Hyundai*, 926 F.3d at 570 (quoting *Hanlon*, 150 F.3d at 1029).

    Objector argues a percentage cross-check reveals class counsel's request "exceeds the bounds of reason."  (*See* Objs. to Post-Remand Fee Mot. 3:3–6:24; Objs. to Renewed Fee Mot. 2:6–12, 11:2–6.)  He contends the "proposed lodestar award would provide class counsel a windfall in relation to the 'foremost' consideration: 'the benefit obtained for the class.'" (Objs. to Post-Remand Fee Mot. 6:20–22 (quoting *Bluetooth*, 654 F.3d at 942).) Consequently, Objector argues the lodestar "should be lowered to no more than a quarter of the" cash fund, "thereby augmenting the *cy pres* relief proportionally."  (Objs. to Post-Remand Fee Mot. 6:22–24; *see also* Objs. to Renewed Fee Mot. 11:2–6.)

    Plaintiffs cite to *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 882 (C.D. Cal. 2016), for the proposition that "class counsel's lodestar is not unreasonable merely because it seems large in comparison to the monetary portion of a settlement involving non-monetary relief."  (Renewed Fee Mot. 21:7–9.)  Plaintiffs, however, do not otherwise confront Objector's proportionality argument or address the results of a percentage cross-

check.  (*See* Reply to Post-Remand Fee Mot., ECF No. 347; Reply to Renewed Fee Mot., ECF No. 359.)  The Court is left to grapple with the prospect of awarding fees that far exceed the 25% benchmark.

     Adjusted Lodestar.  Having considered the grounds for a risk multiplier, the *Kerr* factors, and Objector's proportionality argument, the Court finds a downward adjustment to the proposed lodestar is warranted.  Given the history of this case, the Court finds cross-checking the lodestar with the percentage-of-recovery method to be helpful and informative.  *See supra* Background Parts II–IV.A.  Moreover, because Plaintiffs are seeking fees based on the non-coupon portion of the settlement, the relevant classwide benefits are easily monetized.  Class members are either receiving a direct benefit through a cash refund or an indirect benefit through the *cy pres* component.  Further, because these benefits and the other settlement costs all flow from a common fund, the Court can apply the percentage of recovery method to the fund.

     In doing so, the percentage cross-check raises serious concerns regarding the size of the lodestar.  Class counsel propose that they receive at least $5.7 million of the common fund.  For the purpose of awarding fees, the Court conservatively values the cash fund at $10.5 million given the parties' status report concerning the Bankruptcy Action.  (*See* ECF No. 355.)  Therefore, awarding a lodestar of $5.7 million would amount to 54% of the $10.5 million fund, well above "the 25% benchmark standard."  *See Bluetooth*, 654 F.3d at 945.  This percentage would be even higher if the Court applies Plaintiffs' requested, unspecified "small multiplier on top of the current lodestar."  (Renewed Fee Mot. 24:3–4.) In other words, class counsel are set to receive a disproportionate share of the settlement fund.

     That said, this disproportionate result is not "*per se* unreasonable."  *See Bluetooth*, 654 F.3d at 945; *see also Petroleum Prod. Antitrust Litig.*, 109 F.3d at 607 ("Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion.").  *Bluetooth* illustrates an unreasonable, disproportionate fee award.  There, the settlement allotted up

to $800,000 in attorney's fees but only $100,000 in *cy pres* awards and no direct payments to class members beyond the representatives' incentive awards. *Id.* at 938–40. After the district court awarded $800,000 in fees under the lodestar method, the Ninth Circuit remanded for more explanation in light of its concern "that the amount awarded was 83.2% of the total amount defendants were willing to spend to settle the case." *Id.* at 945.

Upon remand, the district court further scrutinized the reasonableness of the disproportionate fee award and reasoned that "[w]hile some success was obtained in [the] case, it was minimal and did not match the level of time and effort that Plaintiffs' counsel put into the case." *Bluetooth*, No. 07-ML-1822 DSF EX, 2012 WL 6869641, at *7 (C.D. Cal. July 31, 2012). Thus, although class counsel's hours may have been reasonably expended, their "limited usefulness" in light of the benefit to the class justified a downward adjustment. *Id.* at *7–8. The court consequently applied a 0.25 multiplier and awarded counsel 25% of the recalculated $931,036.20 lodestar—$232,759.05. *Id.* at *8; *see also Allen v. Bedolla*, 787 F.3d 1218, 1224 n.4, 1225 (9th Cir. 2015) (remanding for a more searching fairness inquiry and vacating a fee award where class counsel were set to receive $1.255 million in fees but class members were to receive only $373,675 in direct payments); *Tait v. BSH Home Appliances Corp.*, No. SACV 10-0711-DOC (ANx), 2015 WL 4537463, at *14 (C.D. Cal. July 27, 2015) (applying a 0.5 multiplier at class counsel's request where their lodestar was "a whopping 7.8 times the maximum amount" that was set to go to class members).

By comparison, the district court found a potentially disproportionate fee award to be reasonable in *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016). The plaintiffs in *Chambers* alleged dishwashers had a design defect that posed a safety risk because it could lead to the appliance overheating and catching on fire. *Id.* at 883. The parties reached a multi-faceted settlement that included a full recovery of costs spent on repairs; $200 to $300 in cash payments to class members who replaced their dishwashers; rebates on purchases of new dishwashers; and enhanced safety warnings to service personnel. *Id.* at 884. The settlement was valued at $4.2 million on the low end, and the

plaintiffs' counsel's unadjusted lodestar was $8.9 million.  *See id.* at 896, 903, 905.  The defendants thus argued the court should apply a 0.5 multiplier to class counsel's lodestar, claiming it dwarfed the benefits to the class.  *Id.* at 903.  In rejecting this argument, the court reasoned a lodestar cross-check was not helpful because the classwide benefits were "not easily monetized."  *Id.* at 904 (quoting *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016)); *see also id.* at 905 (noting the gross value of the settlement was estimated to be up to $116 million).  Further, given the structure of the settlement, there was "no common fund against which to apply a benchmark percentage."  *Id.*  Hence, given the "impressive" results obtained by class counsel, which included "insurance-like coverage" for future overheating events and injunctive relief in addition to monetary payments and rebates, the court applied a positive multiplier of 1.68 to the lodestar.  *Id.* at 884, 896, 902–05.

Although Plaintiffs cite to *Chambers* to support their fee request, the present case is readily distinguishable.  Unlike *Chambers*, this case has a protracted procedural history where the face value of the coupons was previously used to justify the fee award.[14]  Further, Plaintiffs' fee request will be deducted from the settlement's common fund, not paid separately by Defendants.  Finally, this settlement does not contain injunctive relief that is difficult to value, which would potentially undermine the usefulness of the percentage cross-check.  *See Chambers*, 214 F. Supp. 3d at 895.

At the same time, the fee structure here is not as problematic as that encountered in *Bluetooth* and similar cases.  There is no "kicker" provision reverting the fees not awarded back to Defendants.  *See Bluetooth*, 654 F.3d at 947; *see also Allen*, 787 F.3d at 1221 (noting the portion of settlement fund that was not paid toward attorney's fees reverted to the defendant).  And although the requested lodestar may dwarf the direct payments to

---

[14] The Court also notes that the *Chambers* court was not convinced that CAFA governed attorney's fees in that case.  *See* 214 F. Supp. 3d at 894.  And although the settlement awarded rebates on dishwasher purchases, the district court believed it did not need to resolve whether "the rebates provided under the settlement" qualified as coupons.  *Id.* at 894 n.10.  The story is not so simple here.

individual class members who submitted refund claims, the settlement also contains a significant *cy pres* component that provides an indirect benefit to class members. Thus, class counsel are not slated to receive an amount of fees that immensely exceeds the total benefit to the class. *See Bluetooth*, 654 F.3d at 945; *Allen*, 787 F.3d at 1224 n.4, 1225.

On balance, given the circumstances and history of this case, the Court finds adjusting the lodestar with a 0.6 multiplier is appropriate. This multiplier reduces the $5.7 million lodestar to $3.42 million. The adjusted fee award amounts to approximately 32.5% of the conservatively estimated $10.5 million cash fund.

The Court makes this adjustment principally based on the foremost consideration: "the benefit obtained for the class." *See Bluetooth*, 654 F.3d at 942; *cf. McCown v. City of Fontana*, 565 F.3d 1097, 1101–02 (9th Cir. 2009) ("The reasonableness of the fee is determined primarily by reference to the level of success achieved by the plaintiff."). By settling in 2012, the class members opted to receive "immediate recovery" through compromise, instead of "the mere possibility of relief in the future, after protracted and expensive litigation." *See Nat'l Rural Telecommc'ns. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Unfortunately, despite the lauded settlement, the class still ended up with "protracted and expensive litigation." *See id.* As this litigation has dragged on, class counsel's rates and the resulting lodestar have increased substantially since the first fee motion in 2012—from $4.26 million to $5.7 million. Yet the benefit flowing to the class has decreased, both due to the lower-than-expected common fund and the higher lodestar.[15] Regardless of who is to blame, the settlement is simply not as good of one as the Court believed several years ago. This conclusion is particularly true when class counsel's fees are assessed against solely the non-coupon and likely recoverable component of the settlement. Whereas counsel previously sought $8.7 million in fees for a settlement that was argued to be worth $38 million, they now seek at least $5.7 million

---

[15] These changes are to say nothing of the evaporating coupon relief to 1.2 million class members. As explained above, class counsel and the Court supported the reasonableness of the initial $4.26 million lodestar based on the substantial face value of the coupon relief. *See supra* Background Parts II–III.

1  in fees for a component of the settlement worth $10.5 million.  It was not reasonable to

2  incur $5.7 million in fees to obtain a $10.5 million common fund, even when the Court

3  accounts for the intricacies of this case.

4        Hence, as the case stands today, class counsel did not obtain "excellent results" for

5  the class.  (*See* Renewed Fee Mot. 20:14–22:1.)  These less-than-excellent results do not

6  justify class counsel receiving over half of the $10.5 million common fund, substantially

7  above the 25% benchmark.  None of Plaintiffs' arguments regarding their unspecified

8  positive multiplier or the *Kerr* factors convincingly demonstrate otherwise.  Nor does the

9  fact that Plaintiffs' lawsuit led Defendants to change their conduct before congressional

10  legislation justify class counsel receiving the lion's share of the settlement's monetary

11  benefits.  Consequently, the Court finds it appropriate to reduce the outsized lodestar to

12  more closely coincide with the benefits obtained for the class.  *See Bluetooth*, 654 F.3d at

13  954 (providing "where the plaintiff has achieved 'only limited success,' counting *all* hours

14  expended on the litigation—even those reasonably spent—may produce an 'excessive

15  amount,'" and therefore the court should "instead 'award only that amount of fees that is

16  reasonable in relation to the results obtained.'" (quoting *Hensley*, 461 U.S. at 436, 440)).

17        Further, the Court's adjusted award of $3.42 million is still substantially higher than

18  the 25% benchmark, which would equate to $2.63 million.  The Court finds deviating from

19  the benchmark is appropriate because there is evidence that this case was risky and class

20  counsel took on the case with the expectation that they would receive a risk enhancement.

21  *See Stanger*, 812 F.3d at 741.  The case also involved novel issues when it was filed, and

22  class counsel were successful in obtaining full refunds for the small portion of class

23  members who submitted claims, albeit many years later than anticipated.  But for these

24  considerations, the Court would make a larger adjustment to the lodestar to make the figure

25  equal to or less than the benchmark in light of the Court's discussion above.

26        In sum, the Court finds awarding Plaintiffs' counsel ~$3.42 million in fees based on

27  the lodestar method and the non-coupon component of the settlement is appropriate.  If

28  Plaintiffs are ultimately successful in obtaining more benefits for the class than the

anticipated $10.5 million cash fund, they may return to the Court to file a request for a supplemental award of fees.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiffs' motion for attorney's fees (ECF No. 356).  The Court awards Plaintiffs' counsel $3,417,904.13 in attorney's fees.  If Plaintiffs are successful in obtaining additional relief for the class, they may return to the Court to seek a supplemental fee award.

**IT IS SO ORDERED.**

**DATED: April 30, 2020**

Hon. Cynthia Bashant
United States District Judge

09cv2094