UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE EASYSAVER REWARDS LITIGATION | Case No. 09-cv-02094-BAS-WVG<br><br>**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR SUPPLEMENTAL ATTORNEY'S FEES (ECF No. 373)** |

Presently before the Court is Plaintiffs' Motion for Supplemental Attorney's Fees. (ECF No. 373.) Plaintiffs seek an additional award of $215,370.75 in fees in this consumer class action that reached a settlement. (*Id.*) The Motion is unopposed. The Court finds this request suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Plaintiffs' Motion for Supplemental Attorney's Fees.

**I. BACKGROUND**

The Court chronicled this action's lengthy history in its previous fee orders. (ECF Nos. 352, 367, 372.) Relevant here, this case is a consumer class action where the Court approved a settlement with two components. First, the settlement provided for class members to receive credits with a total face value of $25.5 million. Second, the settlement

established a $12.5 million common fund for paying refunds to class members, attorney's fees, litigation costs, incentive awards, and settlement administration expenses. Any funds left over will be distributed to several *cy pres* beneficiaries.

In 2013, the Court approved Plaintiffs' counsel's request for $8.7 million in attorney's fees. After subtracting this award and the other items from the common fund, about $3 million remained for distribution to the *cy pres* beneficiaries. Brian Perryman objected. He argued the *cy pres* award was improper and the attorney's fee award did not comply with the Class Action Fairness Act's requirements for coupon settlements. The Court rejected Objector's challenges, and he appealed. The Ninth Circuit vacated the settlement approval and remanded for further proceedings in light of its then-recent decision in *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015), which addresses what qualifies as a "coupon" under CAFA.

After another final approval determination, as well as a second trip to the Ninth Circuit and back, Plaintiffs filed a new motion for attorney's fees. (ECF No. 338.) They asked for the same amount of attorney's fees as before—$8.7 million. The Court ultimately bifurcated the fee award. (ECF No. 352.) Specifically, the Court permitted Plaintiffs to resubmit a request for attorney's fees that was based on only the non-coupon portion of the settlement—i.e., the $12.5 million cash fund—and then later seek an additional fee award based on the value of the coupons redeemed by the class members—if any.

Around this time, bankruptcy-related events unfolded that further muddled this case. Eventually, the Court addressed a renewed fee motion from Plaintiffs based "solely on the cash fund" component of the settlement. (ECF No. 356.) Plaintiffs sought a reduced fee award of $5.7 million based on the lodestar method.

By this time, in light of the bankruptcy developments, the Court valued the cash fund at $10.5 million—instead of $12.5 million. (ECF No. 367.) The Court determined that awarding Plaintiffs' counsel $5.7 million for recovering $10.5 million would be unreasonable. After applying the lodestar method, the Court found it appropriate to adjust the $5.7 million lodestar with a 0.6 multiplier. That adjustment reduced the $5.7 million

lodestar to $3.42 million, which is approximately 32.5% of the then-estimated $10.5 million recovery for the class. However, the Court further noted that if "Plaintiffs are ultimately successful in obtaining more benefits for the class than the anticipated $10.5 million cash fund, they may return to the Court to file a request for a supplemental award of fees." (*Id.*)

Plaintiffs now do so, reporting that their counsel ultimately secured an additional monetary benefit for the Class through the bankruptcy proceeding. Having reviewed the accompanying declarations, the Court adopts Plaintiffs' summary of the more recent events:

> Pursuant to the Bankruptcy Court's modification of the automatic stay, the undersigned counsel was tasked with pursuing payment from Provide Commerce Inc.'s insurance carriers. Like all matters in this case, this was a Sisyphean effort. In pursuing payment from the insurance carriers, it was discovered that the amount of the contributions from each of Provide Commerce's multiple carriers and respective underwriters was in dispute. As a result, the insurance carrier contributions for the cash settlement conservatively estimated by the Court at $10.5 million [were] in dispute and made distribution impossible.
>
> As such, Plaintiffs' counsel had to obtain contribution from each of Provide Commerce, Inc.'s insurance carriers. This process involved ascertaining the multiple insurance policies at issue, determining counsel for each of these carriers, [and] making demands on [the] FTD Committee Liquidation Trust and Debtor Trust . . . that these carriers tender their disputed contributions. After extensive research and demands, counsel for the FTD Committee Liquidation Trust and Debtor Trust's counsel at Kelley, Drye & Warren LLP and their subsequently retained coverage counsel at Reed Smith LLP agreed to work with Class Counsel to obtain Provide Commerce's contribution from the carriers. This coordinated effort involved multiple demands, negotiations, and eventually a mediation with the carriers, underwriters, and their respective counsel to get the carriers to contribute to the cash fund.
>
> This effort beginning in May of 2020 eventually resulted in a mediation to resolve the insurance dispute, which was memorialized in a Confidential Settlement Agreement and Release between the FTD Committee Liquidation Trust and Debtor Trust, multiple underwriters and carriers, and Class

> Plaintiffs to ensure funding of the class settlement with all of the requisite policies in accordance with the 2012 Settlement Agreement. As a result . . . the cash fund received **$11,161,811.00**, resulting in an additional **$661,811.00** to the cash fund than anticipated by the Court's conservative estimate. This also resulted in the drafting and filing of a Stipulation with the Bankruptcy Court allowing for a general unsecured claim for Class Plaintiffs in the amount of $2,500,000.00, hoped to be realized in the future.

(Mot. 3–4 (emphasis added); *see also* Steckler Decl., ECF No. 373-2; Anderson Decl., ECF No. 373-5.) In short, because Plaintiffs' counsel achieved greater success in the bankruptcy matter than anticipated in the Court's prior fee order, they now seek to recoup additional attorney's fees.

## II. ANALYSIS

The Court already determined that the lodestar method is the correct approach for fee requests based on the settlement's common fund. (ECF No. 367.) This method "begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (en banc). The Court then may apply a risk multiplier to the lodestar and adjust the figure upward or downward. *Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016).

For their supplemental fee request, Plaintiffs submit a proposed lodestar that includes 184.12 hours of time. (Steckler Decl. ¶ 4; Anderson Decl. ¶ 2.) This time was spent "ascertaining, researching, pursuing, and securing the insurance policies and carrier contributions for the cash funding of the settlement" through the bankruptcy proceeding, written demands, mediation, and settlement, which resulted in a payment to the class that is $661,811 larger than expected. (*See* Steckler Decl. ¶ 4; *see also* Anderson Decl. ¶¶ 2–3.) The Court finds these hours are the amount "reasonably expended on the litigation" in addition to those hours addressed in the Court's prior fee order. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The Court also finds Plaintiffs' counsel's proposed rates are appropriate. They are materially the same as the rates the Court approved in the prior order from 2020. (*See* ECF No. 367.) The Court thus adopts Plaintiffs' proposed lodestar of $143,580.50.

The Court turns to considering whether this figure should be enhanced with a risk multiplier or otherwise adjusted under the *Kerr* factors.  In a common fund case, the court "must apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.'"  *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016); *see also Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002).  Risk enhancements in common fund cases stem from "the equitable notion that those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

The court also "has discretion to adjust the lodestar upward or downward using a multiplier that reflects 'a host of "reasonableness" factors.'"  *Stetson*, 821 F.3d at 1166 (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)).  These factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).  "Foremost among these considerations, however, is the benefit obtained for the class." *Bluetooth*, 654 F.3d at 942.

Plaintiffs' counsel request "a modest 1.5 multiplier of their lodestar for the additional money received to the cash fund." (Mot. 7.)  They argue the bankruptcy developments threw a wrench into an already complicated case.  (*Id.* 6.)  It was not clear whether the bankrupt Defendant's insurance policies would cover the settlement or be available in light

of the bankruptcy. (*Id.*) Nor was it clear whether the insurers would agree to fund the settlement considering the appellate and bankruptcy developments. (*Id.*) Hence, Plaintiffs' counsel "accepted this legal Rubik's cube with an expectation that they would receive a risk enhancement if they obtained a favorable result for the class as indicated by the Court's Order." (*Id.*)

The Court finds a multiplier is appropriate here. Plaintiffs' counsel exceeded the Court's expectations and recovered $661,811 more than expected from the bankrupt Defendant's insurers. This additional benefit to the Class is the foremost consideration. *See Bluetooth*, 654 F.3d at 942. Further, Plaintiffs' counsel's additional work involved enforcing an almost decade-old settlement agreement against a bankrupt Defendant that was purchased by a third party. This work required more skill and involved more difficult issues than typical class action settlement proceedings. Hence, having considered the *Kerr* factors and the risk involved, the Court finds it appropriate to apply the requested multiplier to Plaintiffs' counsel's lodestar.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Supplemental Attorney's Fees. (ECF No. 373.) The Court awards Plaintiffs' counsel an additional $215,370.75 in attorney's fees from the settlement's common fund in light of their successful efforts to secure $661,811 more for the Class than the Court's prior order anticipated.

**IT IS SO ORDERED.**

DATED: November 8, 2021

Hon. Cynthia Bashant
United States District Judge